# United States Bankruptcy Court

NORTHERN DISTRICT OF ILLINOIS
219 S. Dearborn Street
Chicago, IL 60604

**Kenneth S. Gardner**, Bankruptcy Clerk

Date    8/27/2008

Michael Dobbins, Clerk
United States District Court
Northern District of Illinois
219 S Dearborn Street
Chicago, IL 60604

Case Number    08A00177 08B05230

Case Name    Casa de Cambio Majapara S.A. de C.V. vs  Wachovia Bank, N.A.

Notice of Appeal Filed    7/18/2008

Appellant    Casa de Cambio Majapara S.A. de C.V.

Dear Sir:

Pursuant to **Bankruptcy Rule 8007** transmitted herewith is the Record on Appeal.  The Record on Appeal consist of:

| | | |
|---|---|---|
| ✓ | Transmittal Letter and Civil Cover Sheet | ✓ Notice of Appeal |
| ✓ | Designation and Statement of Issues | ✓ Copy of Documents Designated |
| | Transcript of Proceeding | Exhibits |
| | In Forma Pauperis | Expedited Notice of Appeal |

Additional Items Included

08CV4909
JUDGE KOCORAS
MAGISTRATE JUDGE BROWN

**FILED**

AUG 27 2008
AUG 27 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

The following items will be transmitted as a supplemental to the Record on Appeal

Previous D C Judge _____    Case Number _____

By Deputy Clerk _____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

In re:                                      )       Chapter 11
                                            )       Case No. 08-05230
CASA DE CAMBIO MAJAPARA                     )
S.A. DE C.V.,                               )       Hon. Bruce W. Black
                        Debtor.             )
                                            )
                                            )
CASA DE CAMBIO MAJAPARA                     )
S.A. DE C.V.                                )
                        Plaintiff           )       Adv. Proc. No. 08-00177
                                            )
        v.                                  )
                                            )
WACHOVIA BANK, N.A.                         )
                                            )       **08CV4909**
                        Defendant           )       **JUDGE KOCORAS**
                                            )       **MAGISTRATE JUDGE BROWN**

AUG 27 2008  NA

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

## NOTICE OF APPEAL

Plaintiff, Casa de Cambio Majapara S.A. de C.V., appeals under 28 U.S.C. § 158(a) from

the (i) Summary Judgment and associated Memorandum Opinion of the Honorable Bruce W.

Black, Bankruptcy Judge, granting Wachovia Bank, N.A.'s Motion for Summary Judgment

entered in this proceeding on July 9, 2008 [Dkt. # 31 (opinion) and 32 (judgment)] and (ii) Order

of the Honorable Bruce W. Black, Bankruptcy Judge, granting Wachovia Bank, N.A.'s Motion

to Strike Declaration of Luis V. Echeverria and Paragraphs 17-21 of Plaintiff's Local Rule 7056-

2 Statement of Material Facts entered in this proceeding on July 14, 2008 [Dkt. # 34].  Copies of

the Summary Judgment and Memorandum Opinion are attached hereto as <u>Exhibit A</u> and

incorporated by reference.  A copy of the Order is attached hereto as <u>Exhibit B</u> and incorporated

by reference.  The names of all parties to the order appealed from and the names, addresses and

telephone numbers of their respective attorneys are as follows:

{6591 NTC A0211727.DOC}

**Appellant:**

Casa de Cambio Majapara S.A. de C.V.

**Counsel for Casa de Cambio Majapara:**

Brian L. Shaw
Mark L. Radtke
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL  60610
Phone: (312) 541-0151
Fax:    (312) 980-3888
bshaw100@shawgussis.com
mradtke@shawgussis.com

**Appellee:**

Wachovia Bank, N.A.

**Counsel for Wachovia Bank:**

Pia N. Thompson
Michael S. Leib
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, IL  60606-7484
Phone: (312) 207-1000
Fax:    (312) 207-6400
pthompson@reedsmith.com
mleib@reedsmith.com

Edward J. Estrada
Reed Smith LLP
599 Lexington Avenue
New York, NY  10022
Phone: (212) 521-5400
Fax:    (212) 521-5450
eestrada@reedsmith.com

Respectfully submitted,

Casa de Cambio Majapara, S.A. de C.V.

Dated: July 18, 2008

By:   /s/ Mark L. Radtke
            One of its attorneys

Brian L. Shaw (#6216834)
Mark L. Radtke (#6275738)
Shaw Gussis Fishman Glantz
    Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151  telephone
(312) 980-3888  facsimile

**CLOSED, APPEAL**

# U.S. Bankruptcy Court
## Northern District of Illinois (Chicago)
## Adversary Proceeding #: 08-00177
### Internal Use Only

*Assigned to:* Honorable Judge Bruce W. Black

*Related BK Case:* 08-05230

*Related BK Title:* Casa de Cambio Majapara S.A. de C.V.

*Related BK Chapter:* 11

*Demand:*

*Nature[s] of Suit:* 12 Recovery of money/property - 547 preference

*Date Filed:* 03/24/08
*Date Terminated:* 07/09/08

**FILED**

AUG 2·7 2008    **NR**

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

**Plaintiff**

---------------------

**Casa de Cambio Majapara S.A. de C.V.**

represented by **Brian L Shaw**
Shaw Gussis Fishman Glantz Wolfson & Tow
321 N Clark Street
Suite 800
Chicago, IL 60610
312-541-0151
Fax : (312) 980-3888
Email: bshaw100@shawgussis.com

**Mark L Radtke**
Shaw Gussis Fishman Glantz, etal
321 N Clark St Ste 800
Chicago, IL 60610

08CV4909
JUDGE KOCORAS
MAGISTRATE JUDGE BROWN

This is to certify that the within and attached document is a full, true and correct copy of the original thereof as the same appears on file in the office of the Clerk of the United States Bankruptcy Court for the Northern District of Illinois.
KENNETH S. GARDNER
CLERK OF COURT
BY: Deputy Clerk
Dated: 2·7 AUG 2008

312 276-1325
Fax : 312 275-0566
Email:
mradtke@shawgussis.com

**Vipin R Gandra**
Shaw Gussis Fishman Glantz
Wolfson & Tow
321 N Clark St., Suite 800
Chicago, IL 60610
312 980-3871
Email:
vgandra@shawgussis.com

V.

**Defendant**
-----------------------

**Wachovia Bank, N.A.**     represented by **Pia N Thompson**
Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606
312-207-6469
Fax : 312-207-6400
Email:
pthompson@reedsmith.com

| Filing Date | # | Docket Text |
|---|---|---|
| 03/24/2008 | ●1 | Adversary case 08-00177. (12 (Recovery of money/property - 547 preference)): Complaint by Casa de Cambio Majapara S.A. de C.V. against WACHOVIA BANK, N.A.. Fee Amount $250. Status hearing to be held on 4/24/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Exhibit A# 2 |

| | | |
|---|---|---|
| | | Exhibit B) (Gandra, Vipin) (Entered: 03/24/2008) |
| 03/24/2008 | ⊙2 | <u>Summons Link</u> Summons Issued on WACHOVIA BANK, N.A. Answer Due 04/23/2008 (Gandra, Vipin) (Entered: 03/24/2008) |
| 03/24/2008 | 3 | Receipt of Complaint(08-00177) [cmp,cmp] ( 250.00) Filing Fee. Receipt number 8525043. Fee Amount $ 250.00 (U.S. Treasury) (Entered: 03/24/2008) |
| 03/27/2008 | ⊙4 | Alias Summons Issued on Wachovia Bank, N.A. Date Issued 3/27/2008, Answer Due 4/28/2008 (RE: [2] Summons Issued). Status hearing to be held on 4/24/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Epps, Wanda) (Entered: 03/28/2008) |
| 03/28/2008 | ⊙<u>5</u> | Summons Service Executed on Wachovia Bank, N.A./Michael S Leib, Pia N Thompson, Stephen T Bobo, Reed Smith LLP 3/28/2008 (RE: 4 Alias Summons Issued). (Epps, Wanda) (Entered: 03/31/2008) |
| 04/24/2008 | ⊙6 | Hearing Continued (RE: 1 Complaint, ). Status hearing to be held on 5/29/2008 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 04/24/2008) |
| 05/21/2008 | ⊙<u>7</u> | Answer to Complaint Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. (Thompson, Pia) (Entered: 05/21/2008) |
| 05/22/2008 | ⊙<u>8</u> | Appearance Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. (Thompson, Pia) (Entered: 05/22/2008) |
| 05/23/2008 | ⊙<u>9</u> | Amended Answer to Complaint Filed by Pia N |

| | | |
|---|---|---|
| | | Thompson on behalf of Wachovia Bank, N.A.. (Thompson, Pia) (Entered: 05/23/2008) |
| 05/23/2008 | 10 | Notice of Motion Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. Hearing scheduled for 5/28/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Thompson, Pia) (Entered: 05/23/2008) |
| 05/23/2008 | 11 | Notice of Motion and Motion For Summary Judgment in favor of Defendant Wachovia Bank, N.A. and against Casa de Cambio Majapara S.A. DE C.V. Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. Hearing scheduled for 5/28/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Thompson, Pia) (Entered: 05/23/2008) |
| 05/23/2008 | 12 | Memorandum in Support Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (RE: 11 Motion for Summary Judgment, ). (Thompson, Pia) (Entered: 05/23/2008) |
| 05/23/2008 | 13 | Statement Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (RE: 11 Motion for Summary Judgment, ). (Thompson, Pia) (Entered: 05/23/2008) |
| 05/23/2008 | 14 | Declaration Declaration of Andrew Gross Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (RE: 11 Motion for Summary Judgment, ). (Attachments: # 1 Exhibit Exhibit 1) (Thompson, Pia) (Entered: 05/23/2008) |
| 05/23/2008 | 15 | Declaration of Michael S. Leib Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (RE: 11 Motion for Summary Judgment, ). (Attachments: |

| | | |
|---|---|---|
| ˇ ·ʌ | | # 1 Exhibit Exhibit 1# 2 Exhibit Exhibit 2# 3 Exhibit Exhibits 3-6# 4 Exhibit Exhibit 7) (Thompson, Pia) (Entered: 05/23/2008) |
| 05/28/2008 | ◑16 | Hearing Continued (RE: 1 Complaint,, 11 Motion for Summary Judgment, ). Status hearing to be held on 6/26/2008 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 05/28/2008) |
| 05/28/2008 | ◑17 | Order Scheduling (RE: 11 Motion for Summary Judgment, ). Hearing scheduled for 6/26/2008 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604.Reply due by: 6/23/2008 Responsive Pleading due by: 6/9/2008. Signed on 5/28/2008 (Epps, Wanda) (Entered: 05/29/2008) |
| 05/30/2008 | ◑18 | Appearance for Michael S. Leib Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. (Thompson, Pia) (Entered: 05/30/2008) |
| 06/09/2008 | ◑19 | Response in Opposition to (related document(s): 11 Motion for Summary Judgment, ) Filed by Mark L Radtke on behalf of Casa de Cambio Majapara S.A. de C.V. (Radtke, Mark) (Entered: 06/09/2008) |
| 06/09/2008 | ◑20 | Response to (related document(s): 13 Statement) Filed by Mark L Radtke on behalf of Casa de Cambio Majapara S.A. de C.V. (Attachments: # 1 Declaration of Luis V. Echeverria) (Radtke, Mark) (Entered: 06/09/2008) |
| 06/10/2008 | ◑21 | Appearance Filed by Mark L Radtke on behalf of Casa de Cambio Majapara S.A. de C.V.. (Radtke, Mark) (Entered: 06/10/2008) |
| 06/10/2008 | ◑22 | Appearance Filed by Brian L Shaw on behalf of Casa de Cambio Majapara S.A. de C.V.. (Shaw, |

| | | |
|---|---|---|
| | | Brian) (Entered: 06/10/2008) |
| 06/23/2008 | ❍23 | Notice of Motion and Motion to Strike Defendant's Motion to Strike Declaration of Luis V. Echeverria and Paragraphs 17-21 of Plaintiff's Local Rule 7056-2 Statement of Additional Material Facts Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. Hearing scheduled for 7/1/2008 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Thompson, Pia) (Entered: 06/23/2008) |
| 06/23/2008 | ❍24 | Notice of Motion and Motion to Strike Defendant's Motion to Strike Declaration of Luis V. Echeverria and Paragraphs 17-21 of Plaintiff's Local Rule 7056-2 Statement of Additional Material Facts Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. Hearing scheduled for 7/1/2008 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Motion to Strike) (Thompson, Pia) (Entered: 06/23/2008) |
| 06/23/2008 | ❍25 | Reply to (related document(s): 13 Statement) Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (Thompson, Pia) (Entered: 06/23/2008) |
| 06/23/2008 | ❍26 | Reply to (related document(s): 11 Motion for Summary Judgment, ) Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (Thompson, Pia) (Entered: 06/23/2008) |
| 06/26/2008 | ❍27 | Hearing Continued (RE: 1 Complaint,, 11 Motion for Summary Judgment, ). Status hearing to be held on 7/1/2008 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 06/26/2008) |
| | | |

| 07/01/2008 | ●28 | Hearing Continued (RE: 24 Strike). Hearing Scheduled for 07/09/2008 at 10:30 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Miller,Myrtle) (Entered: 07/01/2008) |
| 07/01/2008 | ●29 | Hearing Continued (RE: 11 Summary Judgment). Hearing Scheduled for 07/09/2008 at 10:30 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Miller,Myrtle) (Entered: 07/01/2008) |
| 07/01/2008 | ●30 | Hearing Continued (RE: 1 Complaint, ). Status hearing to be held on 7/9/2008 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Miller, Myrtle) (Entered: 07/01/2008) |
| 07/09/2008 | ●31 | Memorandum Opinion . (Hamilton, Annette) (Entered: 07/09/2008) |
| 07/09/2008 | ●32 | Order Granting Motion For Summary Judgment in favor of Wachovia Bank, N.A. and against Casa de Cambio Majapara S.A. de C.V. (Related Doc # 11). Signed on 7/9/2008. (Hamilton, Annette) (Entered: 07/09/2008) |
| 07/09/2008 | ●33 | Adversary Case 1-08-ap-00177 Closed . (Hamilton, Annette) (Entered: 07/09/2008) |
| 07/09/2008 | ●34 | Order Granting Motion to Strike (Related Doc # 24). Signed on 7/9/2008. (Hamilton, Annette) (Entered: 07/14/2008) |
| 07/14/2008 | | Reopen Document (RE: 24 Motion to Strike, ). (Hamilton, Annette) (Entered: 07/14/2008) |
| 07/18/2008 | ●35 | Notice of Appeal to District Court. Filed by Mark L Radtke on behalf of Casa de Cambio Majapara S.A. de C.V.. Fee Amount $255 (RE: 32 Order on Motion For Summary Judgment, 34 Order on |

| | | |
|---|---|---|
| | | Motion to Strike). Appellant Designation due by 7/28/2008. Transmission of Record Due by 8/27/2008. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Radtke, Mark) (Entered: 07/18/2008) |
| 07/18/2008 | 36 | Receipt of Notice of Appeal(08-00177) [appeal,ntcapl] ( 255.00) Filing Fee. Receipt number 9188314. Fee Amount $ 255.00 (U.S. Treasury) (Entered: 07/18/2008) |
| 07/18/2008 | 37 | Notice of Filing to Bk Judge and Parties on Service List (RE: 35 Notice of Appeal, ). (Henderson, LaToya) (Entered: 07/22/2008) |
| 07/28/2008 | 38 | Statement of Issues and Designation of Items to be Included in the Record on Appeal Filed by Mark L Radtke on behalf of Casa de Cambio Majapara S.A. de C.V.. (Radtke, Mark) (Entered: 07/28/2008) |
| 08/07/2008 | 39 | Appellee Designation of Contents for Inclusion in Record of Appeal Filed by Pia N Thompson on behalf of Wachovia Bank, N.A... (Thompson, Pia) (Entered: 08/07/2008) |

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No.  08 B 05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Judge Bruce W. Black |
| | ) | |
| Debtor. | ) | |
| ——————————————— | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA | ) | Adv. No. 08 A 00177 |
| S.A. DE C.V. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SUMMARY JUDGMENT

For the reasons stated in a Memorandum Opinion issued this date, the defendant's motion

for summary judgment is GRANTED, and JUDGMENT is ENTERED in favor of the defendant,

Wachovia Bank, N.A., and against the plaintiff, Casa de Cambio Majapara S.A. de C.V.

The clerk is requested to close this adversary proceeding.

DATED: July 9, 2008                    ENTERED:

Bruce W. Black
Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## ORDER

This matter coming to be heard on Wachovia Bank, National Association's **MOTION TO STRIKE DECLARATION OF LUIS V. ECHEVERRIA AND PARAGRAPHS 17-21 OF PLAINTIFF'S LOCAL RULE 7056-2 STATEMENT OF ADDITIONAL MATERIAL FACTS**, due notice having been given and the Court being fully advised in the premises,

IT IS HEREBY ORDERED THAT:

1.  The Motion is granted.

2.  Paragraphs 17-21 of Defendant's Local Rule 7056-2 Statement are stricken.

3.  Mr. Echeverria's declaration dated June 9, 2008 is stricken.

Date: 7/9/2008

Enter: _Bruce W. Black_
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE C.V., | ) | Case No. 08-05230 |
| | ) | |
| Debtor. | ) | Hon. Bruce W. Black |
| | ) | |
| _____ | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE C.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 08-00177 |
| | ) | |
| WACHOVIA BANK, N.A., | ) | |
| Defendant. | ) | |
| _____ | ) | |

## APPELLANT'S STATEMENT OF ISSUES AND DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

Pursuant to Fed. R. Bankr. P. 8006, plaintiff-appellant Casa de Cambio Majapara S.A. de C.V. ("Appellant") hereby (a) states the issues to be presented on appeal from the (i) Summary Judgment and associated Memorandum Opinion of the Honorable Bruce W. Black, Bankruptcy Judge, granting Wachovia Bank, N.A.'s Motion for Summary Judgment entered in this proceeding on July 9, 2008 [Dkt. # 31 (opinion) and 32 (judgment)] and (ii) Order of the Honorable Bruce W. Black, Bankruptcy Judge, granting Wachovia Bank, N.A.'s Motion to Strike Declaration of Luis V. Echeverria and Paragraphs 17-21 of Plaintiff's Local Rule 7056-2 Statement of Material Facts entered in this proceeding on July 14, 2008 [Dkt. # 34] and (b) designates the following items to be included in the record on appeal.

## I. STATEMENT OF ISSUES ON APPEAL

1. Did the Bankruptcy Court err when it determined that Wachovia Bank, N.A.'s prejudgment attachments of Appellant's assets during the 90 period preceding the commencement of the Appellant's bankruptcy case were transfers made to a swap participant in connection with a swap agreement and are subject to the safe harbor in section 546(g) of the Bankruptcy Code?

2. Did the Bankruptcy Court abuse its discretion when it entered an order striking the Declaration of Luis V. Echeverria and paragraphs 17-21 of Appellant's Local Rule 7056-2 statement of material facts on the basis that Mr. Echeverria did not have personal knowledge of the facts stated therein?

## II. DESIGNATION OF ITEMS FOR RECORD ON APPEAL[1]

| Docket # | Description | Filing Date |
|---|---|---|
| 1 | Adversary case 08-00177. (12 (Recovery of money/property - 547 preference)): Complaint by Casa de Cambio Majapara S.A. de C.V. against WACHOVIA BANK, N.A.. Fee Amount $250. Status hearing to be held on 4/24/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Exhibit A# 2 Exhibit B) (Gandra, Vipin) (Entered: 03/24/2008) | 3/24/2008 |
| 4 | Alias Summons Issued on Wachovia Bank, N.A. Date Issued 3/27/2008, Answer Due 4/28/2008 (RE: [2] Summons Issued). Status hearing to be held on 4/24/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Epps, Wanda) (Entered: 03/28/2008) | 3/27/2008 |
| 5 | Summons Service Executed on Wachovia Bank, N.A./Michael S Leib, Pia N Thompson, Stephen T Bobo, Reed Smith LLP 3/28/2008 (RE: 4 Alias Summons Issued). (Epps, Wanda) (Entered: 03/31/2008) | 3/28/2008 |
| 7 | Answer to Complaint Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. (Thompson, Pia) (Entered: 05/21/2008) | 5/21/2008 |
| 9 | Amended Answer to Complaint Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. (Thompson, Pia) (Entered: 05/23/2008) | 5/23/2008 |

[1] Copies of the following items, except for transcripts, are attached hereto. Due to their voluminous size and their general availability on the court's website, these items have not been served on any other party.

{6591 APP A0212139.DOC}

2

| Docket # | Description | Filing Date |
|---|---|---|
| 11 | Notice of Motion and Motion For Summary Judgment in favor of Defendant Wachovia Bank, N.A. and against Casa de Cambio Majapara S.A. DE C.V. Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. Hearing scheduled for 5/28/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Thompson, Pia) (Entered: 05/23/2008) | 5/23/2008 |
| 12 | Memorandum in Support Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (RE: 11 Motion for Summary Judgment, ). (Thompson, Pia) (Entered: 05/23/2008) | 5/23/2008 |
| 13 | Statement Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (RE: 11 Motion for Summary Judgment, ). (Thompson, Pia) (Entered: 05/23/2008) | 5/23/2008 |
| 14 | Declaration Declaration of Andrew Gross Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (RE: 11 Motion for Summary Judgment, ). (Attachments: # 1 Exhibit Exhibit 1) (Thompson, Pia) (Entered: 05/23/2008) | 5/23/2008 |
| 15 | Declaration of Michael S. Leib Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (RE: 11 Motion for Summary Judgment, ). (Attachments: # 1 Exhibit Exhibit 1# 2 Exhibit Exhibit 2# 3 Exhibit Exhibits 3-6# 4 Exhibit Exhibit 7) (Thompson, Pia) (Entered: 05/23/2008) | 5/23/2008 |
| 19 | Response in Opposition to (related document(s): 11 Motion for Summary Judgment, ) Filed by Mark L Radtke on behalf of Casa de Cambio Majapara S.A. de C.V. (Radtke, Mark) (Entered: 06/09/2008) | 6/9/2008 |
| 20 | Response to (related document(s): 13 Statement) Filed by Mark L Radtke on behalf of Casa de Cambio Majapara S.A. de C.V. (Attachments: # 1 Declaration of Luis V. Echeverria) (Radtke, Mark) (Entered: 06/09/2008) | 6/9/2008 |
| 24 | Notice of Motion and Motion to Strike Defendant's Motion to Strike Declaration of Luis V. Echeverria and Paragraphs 17-21 of Plaintiff's Local Rule 7056-2 Statement of Additional Material Facts Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. Hearing scheduled for 7/1/2008 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Motion to Strike) (Thompson, Pia) (Entered: 06/23/2008) | 6/23/2008 |
| 25 | Reply to (related document(s): 13 Statement) Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (Thompson, Pia) (Entered: 06/23/2008) | 6/23/2008 |
| 26 | Reply to (related document(s): 11 Motion for Summary Judgment, ) Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (Thompson, Pia) (Entered: 06/23/2008) | 6/23/2008 |

| Docket # | Description | Filing Date |
|---|---|---|
| 31 | Memorandum Opinion . (Hamilton, Annette) (Entered: 07/09/2008) | 7/9/2008 |
| 32 | Order Granting Motion For Summary Judgment in favor of Wachovia Bank, N.A. and against Casa de Cambio Majapara S.A. de C.V. (Related Doc # 11). Signed on 7/9/2008. (Hamilton, Annette) (Entered: 07/09/2008) | 7/9/2008 |
| 34 | Order Granting Motion to Strike (Related Doc # 24). Signed on 7/9/2008. (Hamilton, Annette) (Entered: 07/14/2008) | 7/9/2008 |
| 35 | Notice of Appeal to District Court. Filed by Mark L Radtke on behalf of Casa de Cambio Majapara S.A. de C.V.. Fee Amount $255 (RE: 32 Order on Motion For Summary Judgment, 34 Order on Motion to Strike). Appellant Designation due by 7/28/2008. Transmission of Record Due by 8/27/2008. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Radtke, Mark) (Entered: 07/18/2008) | 7/18/2008 |
| N/A | Transcript of Proceeding Before Honorable Bruce W. Black on July 1, 2008. | |
| N/A | Transcript of Proceeding Before Honorable Bruce W. Black on July 9, 2008. | |

The Appellant reserves its right to supplement the record on appeal to the extent necessary or appropriate.

Respectfully submitted,

CASA DE CAMBIO MAJAPARA S.A. DE C.V.

Dated: July 28, 2008

By: /s/ Mark L. Radtke
    One of its attorneys

Brian L. Shaw (#6216834)
Mark L. Radtke (#6275738)
Shaw Gussis Fishman Glantz
    Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151  telephone
(312) 980-3888  facsimile

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE C.V., | ) | Case No. 08-05230 |
| | ) | |
| Debtor. | ) | Hon. Bruce W. Black |
| | ) | |

| | | |
|---|---|---|
| CASA DE CAMBIO MAJAPARA S.A. DE C.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 08-00177 |
| | ) | |
| WACHOVIA BANK, N.A., | ) | |
| Defendant. | ) | |
| | ) | |

### APPELLANT'S STATEMENT OF ISSUES AND DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

Pursuant to Fed. R. Bankr. P. 8006, plaintiff-appellant Casa de Cambio Majapara S.A. de C.V. ("Appellant") hereby (a) states the issues to be presented on appeal from the (i) Summary Judgment and associated Memorandum Opinion of the Honorable Bruce W. Black, Bankruptcy Judge, granting Wachovia Bank, N.A.'s Motion for Summary Judgment entered in this proceeding on July 9, 2008 [Dkt. # 31 (opinion) and 32 (judgment)] and (ii) Order of the Honorable Bruce W. Black, Bankruptcy Judge, granting Wachovia Bank, N.A.'s Motion to Strike Declaration of Luis V. Echeverria and Paragraphs 17-21 of Plaintiff's Local Rule 7056-2 Statement of Material Facts entered in this proceeding on July 14, 2008 [Dkt. # 34] and (b) designates the following items to be included in the record on appeal.

{6591 APP A0212139.DOC}

## I.  STATEMENT OF ISSUES ON APPEAL

1.  Did the Bankruptcy Court err when it determined that Wachovia Bank, N.A.'s prejudgment attachments of Appellant's assets during the 90 period preceding the commencement of the Appellant's bankruptcy case were transfers made to a swap participant in connection with a swap agreement and are subject to the safe harbor in section 546(g) of the Bankruptcy Code?

2.  Did the Bankruptcy Court abuse its discretion when it entered an order striking the Declaration of Luis V. Echeverria and paragraphs 17-21 of Appellant's Local Rule 7056-2 statement of material facts on the basis that Mr. Echeverria did not have personal knowledge of the facts stated therein?

## II.  DESIGNATION OF ITEMS FOR RECORD ON APPEAL[1]

| Docket # | Description | Filing Date |
|---|---|---|
| 1 | Adversary case 08-00177. (12 (Recovery of money/property - 547 preference)): Complaint by Casa de Cambio Majapara S.A. de C.V. against WACHOVIA BANK, N.A.. Fee Amount $250. Status hearing to be held on 4/24/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Attachments: # 1 Exhibit A# 2 Exhibit B) (Gandra, Vipin) (Entered: 03/24/2008) | 3/24/2008 |
| 4 | Alias Summons Issued on Wachovia Bank, N.A. Date Issued 3/27/2008, Answer Due 4/28/2008 (RE: [2] Summons Issued). Status hearing to be held on 4/24/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Epps, Wanda) (Entered: 03/28/2008) | 3/27/2008 |
| 5 | Summons Service Executed on Wachovia Bank, N.A./Michael S Leib, Pia N Thompson, Stephen T Bobo, Reed Smith LLP 3/28/2008 (RE: 4 Alias Summons Issued). (Epps, Wanda) (Entered: 03/31/2008) | 3/28/2008 |
| 7 | Answer to Complaint Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. (Thompson, Pia) (Entered: 05/21/2008) | 5/21/2008 |
| 9 | Amended Answer to Complaint Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. (Thompson, Pia) (Entered: 05/23/2008) | 5/23/2008 |

---

[1] Copies of the following items, except for transcripts, are attached hereto. Due to their voluminous size and their general availability on the court's website, these items have not been served on any other party.

| Docket # | Description | Filing Date |
|---|---|---|
| 11 | Notice of Motion and Motion For Summary Judgment in favor of Defendant Wachovia Bank, N.A. and against Casa de Cambio Majapara S.A. DE C.V. Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. Hearing scheduled for 5/28/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Thompson, Pia) (Entered: 05/23/2008) | 5/23/2008 |
| 12 | Memorandum in Support Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (RE: 11 Motion for Summary Judgment, ). (Thompson, Pia) (Entered: 05/23/2008) | 5/23/2008 |
| 13 | Statement Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (RE: 11 Motion for Summary Judgment, ). (Thompson, Pia) (Entered: 05/23/2008) | 5/23/2008 |
| 14 | Declaration Declaration of Andrew Gross Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (RE: 11 Motion for Summary Judgment, ). (Attachments: # 1 Exhibit Exhibit 1) (Thompson, Pia) (Entered: 05/23/2008) | 5/23/2008 |
| 15 | Declaration of Michael S. Leib Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (RE: 11 Motion for Summary Judgment, ). (Attachments: # 1 Exhibit Exhibit 1# 2 Exhibit Exhibit 2# 3 Exhibit Exhibits 3-6# 4 Exhibit Exhibit 7) (Thompson, Pia) (Entered: 05/23/2008) | 5/23/2008 |
| 19 | Response in Opposition to (related document(s): 11 Motion for Summary Judgment, ) Filed by Mark L Radtke on behalf of Casa de Cambio Majapara S.A. de C.V. (Radtke, Mark) (Entered: 06/09/2008) | 6/9/2008 |
| 20 | Response to (related document(s): 13 Statement) Filed by Mark L Radtke on behalf of Casa de Cambio Majapara S.A. de C.V. (Attachments: # 1 Declaration of Luis V. Echeverria) (Radtke, Mark) (Entered: 06/09/2008) | 6/9/2008 |
| 24 | Notice of Motion and Motion to Strike Defendant's Motion to Strike Declaration of Luis V. Echeverria and Paragraphs 17-21 of Plaintiff's Local Rule 7056-2 Statement of Additional Material Facts Filed by Pia N Thompson on behalf of Wachovia Bank, N.A.. Hearing scheduled for 7/1/2008 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Motion to Strike) (Thompson, Pia) (Entered: 06/23/2008) | 6/23/2008 |
| 25 | Reply to (related document(s): 13 Statement) Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (Thompson, Pia) (Entered: 06/23/2008) | 6/23/2008 |
| 26 | Reply to (related document(s): 11 Motion for Summary Judgment, ) Filed by Pia N Thompson on behalf of Wachovia Bank, N.A. (Thompson, Pia) (Entered: 06/23/2008) | 6/23/2008 |

| Docket # | Description | Filing Date |
|---|---|---|
| 31 | Memorandum Opinion . (Hamilton, Annette) (Entered: 07/09/2008) | 7/9/2008 |
| 32 | Order Granting Motion For Summary Judgment in favor of Wachovia Bank, N.A. and against Casa de Cambio Majapara S.A. de C.V. (Related Doc # 11). Signed on 7/9/2008. (Hamilton, Annette) (Entered: 07/09/2008) | 7/9/2008 |
| 34 | Order Granting Motion to Strike (Related Doc # 24). Signed on 7/9/2008. (Hamilton, Annette) (Entered: 07/14/2008) | 7/9/2008 |
| 35 | Notice of Appeal to District Court. Filed by Mark L Radtke on behalf of Casa de Cambio Majapara S.A. de C.V.. Fee Amount $255 (RE: 32 Order on Motion For Summary Judgment, 34 Order on Motion to Strike). Appellant Designation due by 7/28/2008. Transmission of Record Due by 8/27/2008. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Radtke, Mark) (Entered: 07/18/2008) | 7/18/2008 |
| N/A | Transcript of Proceeding Before Honorable Bruce W. Black on July 1, 2008. | |
| N/A | Transcript of Proceeding Before Honorable Bruce W. Black on July 9, 2008. | |

The Appellant reserves its right to supplement the record on appeal to the extent necessary or appropriate.

Respectfully submitted,

CASA DE CAMBIO MAJAPARA S.A. DE C.V.

Dated: July 28, 2008

By: /s/ Mark L. Radtke
    One of its attorneys

Brian L. Shaw (#6216834)
Mark L. Radtke (#6275738)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151 telephone
(312) 980-3888 facsimile

## Miscellaneous:

<u>08-00177 Casa de Cambio Majapara S.A. de C.V. v. Wachovia Bank, N.A.</u> **CASE CLOSED on 07/09/2008**

Type: ap                    Office: 1 (Chicago)              Lead Case: 08-05230
Judge: BWB                  Disp: Judgment Entered on        Case Flag: CLOSED, APPEAL
                            Motion for Summary Judgment

### U.S. Bankruptcy Court

### Northern District of Illinois

Notice of Electronic Filing

The following transaction was received from Radtke, Mark L entered on 7/28/2008 at 2:58 PM CDT and filed on 7/28/2008

**Case Name:** Casa de Cambio Majapara S.A. de C.V. v. Wachovia Bank, N.A.
**Case Number:** <u>08-00177</u>
**WARNING: CASE CLOSED on 07/09/2008**
**Document Number:** <u>38</u>

**Docket Text:**
Statement of Issues and Designation of Items to be Included in the Record on Appeal Filed by Mark L Radtke on behalf of Casa de Cambio Majapara S.A. de C.V.. (Radtke, Mark)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** F:\DOCS\mlr\6591\STA\A0212522.PDF
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017686655 [Date=7/28/2008] [FileNumber=20473646-0] [9c95fd55332341deec88a6edb55a83e726cf11f3d812f6c21423bc73e98a281a3a 12b9417528eda1ae38a135ce830608ab3774dc9a5d8229f53ab84bf945deb4]]

### 08-00177 Notice will be electronically mailed to:

Vipin R Gandra    vgandra@shawgussis.com

Mark L Radtke    mradtke@shawgussis.com, dkrasa-berstell@akingump.com

Brian L Shaw    bshaw100@shawgussis.com

Pia N Thompson    pthompson@reedsmith.com,
cwilson@reedsmith.com;;mleib@reedsmith.com;smckessy@reedsmith.com;kpreuss@reedsmith.com

### 08-00177 Notice will not be electronically mailed to:

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA ) | |
| S.A. DE C.V., ) | Hon. Bruce W. Black |
| Debtor. ) | |
| _____ ) | |
| CASA DE CAMBIO MAJAPARA S.A. ) | |
| C.V. ) | |
| Plaintiff ) | Adv. Proc. No. 08-00177 |
| v. ) | |
| ) | |
| WACHOVIA BANK, N.A. ) | |
| ) | |
| Defendant ) | |
| ) | |

RECEIVED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
AUG 1 4 2008
KENNETH S. GARDNER, CLERK
PER REP. : EB

## WACHOVIA BANK, NATIONAL ASSOCIATION'S DESIGNATION OF ADDITIONAL ITEMS FOR RECORD ON APPEAL

NOTICE IS HEREBY GIVEN that Defendant-Appellee Wachovia Bank, National Association, pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, in connection with Casa de Cambio Majapara S.A. de C.V.'s Notice of Appeal filed on July 18, 2008, by and through their undersigned attorneys, hereby designate the following additional items to be included in the record on appeal.

| Tab No. | Docket No. | Filing Date | Document Title |
|---------|-----------|-------------|----------------|
| 1 | Exhibit A to docket number 12 in main bankruptcy case, No. 08-05230 | 03/19/2008 | Verified Statement of Luis V. Echeverria Pursuant to Federal Rule of Bankruptcy Procedure [sic] 2014(a) |
| 2 | Exhibit A to docket number 117 in main bankruptcy case, No. 08-05230 | 04/30/2008 | Declaration of Ariel Marin dated February 11, 2008 (with Declarations of Andrew Gross and Carlos A. Perez attached) |

Defendant-Appellee expressly reserves its right to supplement the record on appeal to the extent necessary or appropriate.

Dated: August 6, 2008

Respectfully submitted,

/s/Pia N. Thompson
Counsel for Party-in-Interest and Creditor
Wachovia Bank, National Association

Pia N. Thompson (ARDC No. 6225746)
Michael S. Leib (ARDC No. 6243348)
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
(312) 207-1000
pthompson@reedsmith.com

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE C.V., | ) | Case No. 08-05230 |
| | ) | |
| Debtor. | ) | Hon. Bruce W. Black |
| | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE C.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 08-00177 |
| | ) | |
| WACHOVIA BANK, N.A., | ) | |
| Defendant. | ) | |
| | ) | |

## RECORD ON APPEAL

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. _____ |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## ADVERSARY COMPLAINT TO AVOID AND RECOVER AVOIDABLE TRANSFERS

Casa de Cambio Majapara S.A. de C.V., debtor and debtor in possession herein, (the "Debtor"), pursuant to 11 U.S.C. §§ 547 and 550 and Fed. R. Bankr. P. 7001(1), brings this adversary proceeding to avoid and recover certain preferential transfers made for the benefit of Wachovia Bank, N.A. ("Wachovia") during the ninety (90) days prior to the commencement of the Debtor's bankruptcy case (the "Case"). In support thereof, the Debtor alleges as follows:

### PARTIES & JURISDICTION

1.     On March 5, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division thereby commencing the bankruptcy case, Case No. 08-05230 (the "Case").

2.     The Debtor is a corporation organized under the laws of Mexico. The Debtor's principal remaining United States' assets are located in Chicago, Illinois.

{6591 CMP A0202395.DOC}

3.      Upon information and belief, Wachovia is a national banking association with its principal place of business in North Carolina and various offices in the United States and abroad, including in New York, Illinois and Mexico City.

4.      This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(F) and 1334(b), applicable rules of the Court and other applicable orders of the United States District Court of the Northern District of Illinois. If, for any reason, the Court determines that all or portions of the Complaint constitutes a non-core matter, the Debtor consents to the entry of final judgments and orders by the Bankruptcy Court.

5.      The Case is a chapter 11 proceeding currently pending in this District. Thus, pursuant to 28 U.S.C. §§ 1408 and 1409, this District is the proper venue for this adversary proceeding.

## BACKGROUND

6.      The Debtor has operated as a foreign exchange ("FX") bureau in Mexico since 1989. The Debtor engaged in FX transactions and the purchase and sale of items such as bill payment orders, checks and drafts in foreign currencies. For example, the Debtor would accept checks drawn on United States banks from its customers and provide cash to the customers on the same day and then would electronically transmit those checks to a bank, such as Wachovia. The bank would then negotiate the check via the United States Interbank Clearing System or other method.

7.      Prior to February 2007, the Debtor cleared remittances through both Wachovia and Harris Bank, N.A. ("Harris"), but at that time, at Wachovia's urging, the Debtor agreed to transfer virtually all of the business the Debtor had been doing with Harris to Wachovia. As a

result, the Debtor had only one remaining account at Harris that contained approximately $1.6 million of funds belonging to the Debtor (the "Harris Funds").

8. On December 5, 2007, Wachovia, without cause or prior notice, notified the Debtor that Wachovia was immediately terminating its relationship with the Debtor.

9. As the Debtor was extremely reliant on Wachovia's services to operate, the Debtor experienced significant liquidity problems. Notwithstanding its liquidity problems, the Debtor paid Wachovia almost $40 million on December 6, 2007.

10. After these payments, Wachovia alleged that the Debtor still owed Wachovia $38 million.

11. On December 14, 2007, Wachovia initiated an action seeking emergency *ex parte* prejudgment attachment relief in the United States District Court for the Southern District of New York styled *Wachovia Bank, N.A. v. Casa de Cambio Majapara S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V.*, Case No. 07 Civ. 11230 (the "New York Action).

12. On December 14, 2007, simultaneously filed with the commencement of New York Action, Wachovia filed an action against the Debtor seeking emergency *ex parte* prejudgment attachment relief in the Circuit Court of Cook County, Illinois, Law Division styled *Wachovia Bank, N.A. v. Majapara Casa de Cambio S.A. de C.V. and Harris Bank, N.A.*, Case No. 07 L 13958 (the "Cook County Action").

13. On December 14, 2007, Wachovia obtained an order of attachment (the "Cook County Attachment") in the Cook County Action, causing the Harris Funds to be attached for the benefit of Wachovia. A copy of the Cook County Order of Attachment is attached hereto as Exhibit A. Upon information and belief, Wachovia has not yet received payment of any of the Harris Funds or other monies on account of the Cook County Attachment.

14. On December 20, 2007, Wachovia obtained an order of attachment (the "New York Attachment") in the New York Action, attaching accounts allegedly held by the Debtor at Citibank, N.A., JP Morgan Chase, N.A., Bayerische Hypo-und Vereinsbank, AG, Deutsche Bank and Standard Chartered Bank for the benefit of Wachovia. A copy of the New York Order of Attachment is attached hereto as Exhibit B.

## COUNT I

### (Avoidance of Transfer as Preferential Transfer Pursuant to 11 U.S.C. § 547(b))

15. The Debtor incorporates by reference the allegations set forth in Paragraphs 1 through 14 hereof, as if fully restated herein.

16. The Cook County Attachment was a transfer of an interest in the Debtor's property to or for the benefit of Wachovia under 11 U.S.C. §§ 101(54)(A) and 547(b).

17. Wachovia was a creditor of the Debtor at the time of the Cook County Attachment.

18. The Cook County Attachment was granted on account of antecedent debts owed by the Debtor to Wachovia prior to the date of the Cook County Attachment.

19. The Debtor is presumed to have been insolvent at the time of the Cook County Attachment pursuant to 11 U.S.C. § 547(f).

20. At the time of the Cook County Attachment, the sum of the Debtor's debts exceeded the sum of its property at a fair valuation.

21. The Cook County Attachment was granted within ninety days before the Petition Date.

22. The Cook County Attachment enabled Wachovia to receive more than it would have if, as of the date of the Cook County Attachment, the Debtor had commenced a case under

chapter 7 of the Bankruptcy Code, the Cook County Attachment had not been granted, and Wachovia received payment on account of any debt owed by the Debtor to Wachovia to the extent provided by the provisions of the Bankruptcy Code.

23.    By reason of the foregoing, the Cook County Attachment is avoidable pursuant to 11 U.S.C. § 547(b).

WHEREFORE, the Debtor requests that this Court enter judgment in favor of the Debtor and against Wachovia on Count I as follows: (i) declaring that the Cook County Attachment is an avoidable preferential transfer pursuant to 11 U.S.C. § 547(b); (ii) avoiding the Cook County Attachment and declaring any lien resulting from the Cook County Attachment invalid; and (iii) granting such other and further relief as the Court deems just and equitable.

## COUNT II

### (Avoidance of Transfer as Preferential Transfer Pursuant to 11 U.S.C. § 547(b))

24.    The Debtor incorporates by reference the allegations set forth in Paragraphs 1 through 23 hereof, as if fully restated herein.

25.    The New York Attachment was a transfer of an interest in the Debtor's property to or for the benefit of Wachovia under 11 U.S.C. §§ 101(54)(A) and 547(b).

26.    Wachovia was a creditor of the Debtor at the time of the New York Attachment.

27.    The New York Attachment was granted on account of antecedent debts owed by the Debtor prior to the date of the New York Attachment.

28.    The Debtor is presumed to have been insolvent at the time of the New York Attachment pursuant to 11 U.S.C. § 547(f).

29.    At the time of the New York Attachment, the sum of the Debtor's debts exceeded the sum of its property at a fair valuation.

{6591 CMP A0202395.DOC}

30.     The New York Attachment was granted within ninety days before the Petition Date.

31.     The New York Attachment enabled Wachovia to receive more than it would have if, as of the date of the New York Attachment, the Debtor had commenced a case under chapter 7 of the Bankruptcy Code, the New York Attachment had not been granted, and Wachovia received payment on account of any debt owed by the Debtor to Wachovia to the extent provided by the provisions of the Bankruptcy Code.

32.     By reason of the foregoing, the New York Attachment is avoidable pursuant to 11 U.S.C. § 547(b).

WHEREFORE, the Debtor requests that this Court enter judgment in favor of the Debtor and against Wachovia on Count II as follows: (i) declaring that the New York Attachment is an avoidable preferential transfer pursuant to 11 U.S.C. § 547(b); (ii) avoiding the New York Attachment and declaring any lien resulting from the New York Attachment invalid; and (iii) granting such other and further relief as the Court deems just and equitable.

## COUNT III

### (Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550)

33.     The Debtor incorporates by reference the allegations set forth in Paragraphs 1 through 32 hereof, as if fully restated herein.

34.     The value of any funds transferred to or for the benefit of Wachovia pursuant to the Cook County Attachment and the New York Attachment, to the extent they are avoided pursuant to 11 U.S.C. § 547 (collectively, the "Preferential Transfers"), may be recovered by the Debtor pursuant to 11 U.S.C. § 550.

WHEREFORE, the Debtor requests that this Court enter judgment in favor of the Debtor and against Wachovia on Count III as follows: (i) declaring that the Debtor may recover the Preferential Transfers, pursuant to 11 U.S.C. § 550; (ii) ordering Wachovia to pay to the Debtor the aggregate amount of the Preferential Transfers, plus all interest that has accrued since the date that the Debtor demanded return of the Preferential Transfers, plus costs and fees to the extent permitted by applicable law, and (iii) granting such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**Casa de Cambio Majapara S.A. de C.V.**

Dated: March 24, 2008

By:/s/ *Vipin R. Gandra*
    One of its proposed attorneys

Brian L. Shaw (#6216834)
Mark L. Radtke (#6275738)
Vipin R. Gandra (#6289540)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610

*Counsel for Casa De Cambio Majapara S.A.*
*de C.V.*

# EXHIBIT A

Order Attachment Returnable   (This form replaces CCM1 24, CCMD 24 and CCL 37)                                    (Rev. 12-01) CCC 0024

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| | |
|---|---|
| Wachovia Bank, National Association<br>_____ **Plaintiff** | No. __07 L 13958__ |
| vs. | |
| Majapara Casa De Cambio S.A. de C.V.<br>_____ **Defendant** | Amount Claimed $ _24,711,845.00_ |
| Harris N.A.<br>_____ **Garnishee*** | Return Date _January 11, 2008_<br>(December 18, 2007 as to<br>Garnishee Harris N.A.'s<br>interrogatory answers) |

### ORDER FOR ATTACHMENT AND SUMMONS

The Plaintiff _Wachovia Bank, National Association_ _____ having established by complaint and
affidavit a prima facie case that the Defendant _Majapara Casa De Cambio S.A. de C.V._ _____
is justly indebted to the Plaintiff _Wachovia Bank, National Association_ _____ in the amount of
_24,711,845_ _____ Dollars xxx _____ and Cents and that _(Defendant (1) is not a resident_
_of this State and (2) either (a) within the two years preceding the filing of Plaintiff's affidavit has fraudulently_
_concealed or disposed of its property so as to hinder or delay its creditors, or (continued on page 2)_
                                            (Here State the Grounds of Attachment Relied Upon in the Affidavit)
and the Plaintiff having given bond and security, according to law: IT IS ORDERED that the Sheriff of Cook County attach so
much of the estate, real or personal of the defendant as may be found in your county, as shall be of value sufficient to satisfy the
debt and costs, according to the affidavit, but in case any specific property of the defendant found in your county shall be described
herein, then you shall attach the described property only, and no other property, the said specified property to be so attached,
being described as follows:
_Any and all bank accounts or other property of any kind upon which Majapara Casa de Cambio S.A. de C.V. has an_
_interest that is held at, maintained by, or in the custody or possession of Harris N.A. (d/b/a, Harris Bank), including_
_but not limited to Account Number 2004919, up to a total aggregate amount of $12.5 million (US$)_ _____
and such estate attached in your possession to secure, or to provide that the same may be liable to further proceedings according to
law; and that you summon the defendant to either appear in person or through his/her attorney and cause an appearance and answer
to be filed in said cause in Room _801_ _____, _Richard J. Daley Center, Chicago_ _____, Illinois
                                                                              (Location)
on or before _January 11_ _____, _2008_ or at his/her option, to appear at any time prior thereto and move the
court to set a hearing on this Order for Attachment or affidavit, and that you also summon _Harris N.A._ _____ _____ _____
_____ _____ as garnishees*, requiring them to file with the clerk of the court at Room _801_ _____.
_Richard J. Daley Center, Chicago, Ilinois_ _____ at 9:30 A.M.
                                          (Location)
on _December 18_ _____, _2007_ , or before that time their answers in writing to the interrogatories, submitted.
                                          (continued on page 2)
Atty. No.: _43456_ _____ _____                           ENTER:
Name: _Barry Rosen, Reed Smith LLP_ _____
Atty. for: _Plaintiff_ _____
Address: _10 S. Wacker Dr., Suite 4000_ _____           _____        _____
City/State/Zip: _Chicago, IL 60606-7507_ _____            Judge                    Judge's No.
Telephone: _312-207-1000_ _____                              _735 ILCS 5-4-110._

*Strike out portions not applicable.

### NOTICE TO SHERIFF

Service upon the defendant shall be made as soon as possible after entry of this Order for Attachment upon the property described
herein, but in no event later than five days thereafter.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

WACHOVIA BANK,
NATIONAL ASSOCIATION.

        Plaintiff,

        v.

MAJAPARA CASA DE CAMBIO S.A. de C.V.,

        Defendant.

HARRIS N.A.,

        Garnishee.

Case No. 07 L 13958

## ORDER FOR ATTACHMENT AND SUMMONS (con't)

(b) is about fraudulently to conceal, assign, or otherwise dispose of his or her property or effects, so as to hinder or delay his or her creditors.

Harris N.A. shall serve counsel for Plaintiff with its interrogatory answer by hand delivery on or before December 18, 2007.

Service of this Order for Attachment and Summons along with the supporting papers via overnight mail and registered mail upon Majapara Casa De Cambio S.A. de C.V. at its office located at Grecia No. 64, Colonia San Alvaro, Mexico City, C.P. 02090, Mexico, to be deposited to the overnight carrier and in the mail on or before December 17, 2007, shall be deemed good and sufficient service thereof.

# EXHIBIT B

Scott S. McKessy (SM-5479)
Casey Laffey (CL-1483)
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450

Attorneys for Plaintiff Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                  :

WACHOVIA BANK, NATIONAL ASSOCIATION,    :    07 Civ. 11230 (BSJ)(RLE)

                 Plaintiff, ·             :

      - against -            :    **ORDER OF**

                                             :    **ATTACHMENT**

CASA DE CAMBIO MAJAPARA S.A. de C.V. a/k/a    :
MAJAPARA CASA DE CAMBIO S.A. de C.V.,    :

               Defendant.        :

                                             :
------------------------------------------------------------------X

       Plaintiff Wachovia Bank, National Association ("Wachovia") having moved, by

Order to Show Cause dated December 14, 2007, and Order to Show Cause dated

December 17, 2007, pursuant to Fed. R. Civ. P. 64, and those motions having come on to

be heard and considered by the Court,

       Now, upon the reading and filing of the Summons and Complaint dated

December 14, 2007, the Amended Summons and Amended Complaint dated December

17, 2007, the Declaration of Carlos A. Perez dated December 13, 2007, the Declaration

of Scott S. McKessy dated December 13, 2007, the Declaration of Carlos A. Perez dated

December 16, 2007, the Declaration of Scott S. McKessy dated December 17, 2007,

along with all exhibits annexed thereto, the accompanying Memorandum of Law dated

December 13, 2007, and the motion having come on to be heard on December 21, 2007, and due deliberation having been had, and

It appearing from the Amended Complaint and Declarations submitted by Wachovia that Wachovia has a cause of action for a money judgment against defendant Casa De Cambio Majapara S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V. ("Majapara") for $24,810,975.00 with interest from December 7, 2007, and that it is probable that Wachovia will succeed on the merits and recover that sum from Majapara exceeding all counterclaims of which Wachovia is aware, and it is further appearing that Wachovia is entitled to an order of attachment against the property of Majapara on the grounds that: (a) Majapara is a non-domiciliary foreign corporation not qualified to do business in the state under CPLR § 6201(1); and (b) Majapara intends to remove assets from Wachovia's reach with the intention of frustrating the enforcement of an eventual judgment in favor of Wachovia under CPLR § 6201(3); and that the amount to be secured by this order of attachment, including any interest, costs, and fees and expenses to be paid to the United States Marshal, or other appropriate Federal or State Law Enforcement Agent, totals $ *at least* 24,810,975 *[struck: to]*, and that Wachovia has furnished the undertaking required by law.

Now, on motion of Wachovia, it is hereby,

**ORDERED** that Wachovia's motions, dated December 14, 2007 and December 17, 2007, are granted, and it is further

**ORDERED** that Wachovia's undertaking is fixed in the sum of $1,000,000.00, which all or part may be paid to Majapara for costs and damages, including reasonable attorney's fees, that Majapara may sustain by reason of the attachment if Majapara

recovers judgment or it is finally decided that Wachovia was not entitled to an attachment

of Majapara's property, and the balance of the undertaking is conditioned upon

Wachovia's payment to the United States Marshal, or other appropriate Federal or State

Law Enforcement Agent, all of his/her allowable fees, and it is further

**ORDERED** that the United States Marshal, or other appropriate Federal or State *or by a licensed process server as retained by plaintiff's counsel*

Law Enforcement Agent shall levy within his/her jurisdiction, at any time before final

judgment, upon such property in which Majapara has an interest and upon such debts *at least*

owing to Majapara as will satisfy $ _24,810,975.00_ the amount of Wachovia's

demand, together with probable interest, costs, and the fees owed to the United States

Marshal, or other appropriate Federal or State Law Enforcement Agent; including but not

limited to, the monies being maintained and to be maintained at the following banks:

>Citibank, N.A.
>399 Park Avenue
>New York, NY 10043
>(account number 36254838)

>JP Morgan Chase Bank, N.A.
>270 Park Avenue
>New York, NY 10017
>(account number unknown)

>Bayerische Hypo- und Vereinsbank, AG
>150 East 42nd St.
>New York, NY 10017
>(account number unknown)

>Deutsche Bank
>60 Wall Street
>New York, NY 10005
>(account number unknown)

>Standard Chartered Bank
>One Madison Avenue
>New York, NY 10010
>(account number unknown)

and it is further,

but not less than

**ORDERED** that pending the levy and seizure of an amount equal to

$27,810,975. by the United States Marshal, or other appropriate Federal or State

Law Enforcement Agent, Majapara shall be and hereby is enjoined and restrained from

transferring, selling, pledging, assigning or otherwise disposing of any of its assets.

**IT IS FURTHER ORDERED THAT**, service of a copy of this Order via

overnight mail and registered mail upon Majapara at its office located at Grecia No. 64,

Colonia San Alvaro, Mexico City, C.P. 02090, Mexico, on or before December 21, 2007,

be deemed good and sufficient service thereof.

Dated: New York, New York
       December 2007

SO ORDERED:

United States District Judge

H250B

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

In re

CASA DE CAMBIO MAJAPARA S.A. DE C.V.

        Debtor.

Chapter 1

Bankruptcy Case No. 08 B 5230

Hon. Bruce W. Black

---

CASA DE CAMBIO MAJAPARA S.A. DE C.V.

        Plaintiff,

v.

WACHOVIA BANK, N.A.

        Defendant.

Adversary Proceeding. No. 08-00177

## ALIAS SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons with the clerk of the Bankruptcy Court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days of issuance.

| Address of Clerk | 219 South Dearborn Street, 7th Floor, Chicago, IL 60604 |
|---|---|

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney:

| Name and Address of Plaintiff's Attorney |
|---|
| Vipin R. Gandra<br>Shaw Gussis Fishman Glantz<br>  Wolfson & Towbin LLC<br>321 North Clark Street, Suite 800<br>Chicago, IL 60610 |

If you make a motion, your time to answer is governed by Federal Rule of Bankruptcy Procedure, 7012.

YOU ARE NOTIFIED that a status hearing has been set at the following time and place:

| Address | Dirksen Federal Building<br>219 South Dearborn Street<br>Chicago, IL 60604 | Room | 615 |
|---|---|---|---|
| | | Date and Time<br>April 24, 2008 at 9:30 a.m. | |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

MAR 2 7 2008

_____
*Date*

Kenneth S. Gardner
*Clerk of the Bankruptcy Court*

By: _____
*Deputy Clerk*

# SEAL COPY

[6591 SUM A02U2812.DOC]

## CERTIFICATE OF SERVICE

I, Vipin R. Gandra, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of this summons and a copy of the complaint was served on March 27, 2008 by:

☑ Mail service:  via certified U.S. Mail, postage fully pre-paid, addressed to:

Wachovia Corporation
301 South College Street Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288-0013
Attn: G. Kennedy Thompson

☑ Personal Service:  by leaving the process with defendant or with an officer or agent of defendant at:

Michael S. Leib
Pia N. Thompson
Stephen T. Bobo
Reed Smith, LLP
10 South Wacker Drive
Chicago, Illinois  60606

☐ Residence Service: By leaving the process with the following adult at:


☐ Publication: The defendant was served as follows: [Describe briefly]


☐ State Law:  The defendant was served pursuant to the laws of the State of

_____
as follows: [Describe briefly]


Under penalty of perjury, I declare that the foregoing is true and correct.

| March 27, 2008 | /s/ Vipin R. Gandra |
|---|---|
| *Date* | *Signature* |

Print Name

Vipin R. Gandra

Business Address

Shaw Gussis Fishman Glantz Wolfson & Towbin LLC
321 North Clark Street, Suite 800

| City | State | Zip |
|---|---|---|
| Chicago | Illinois | 60610 |

B250B

# UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| In re | Chapter 1 |
| CASA DE CAMBIO MAJAPARA S.A. DE C.V. | Bankruptcy Case No. 08 B 5230 |
| Debtor. | Hon. Bruce W. Black |
| CASA DE CAMBIO MAJAPARA S.A. DE C.V. | |
| Plaintiff, | |
| v. | Adversary Proceeding. No. 08-00177 |
| WACHOVIA BANK, N.A. | |
| Defendant. | |

### ALIAS SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons with the clerk of the Bankruptcy Court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days of issuance.

| Address of Clerk | 219 South Dearborn Street, 7th Floor, Chicago, IL 60604 |
|---|---|

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney:

| Name and Address of Plaintiff's Attorney |
|---|
| Vipin R. Gandra<br>Shaw Gussis Fishman Glantz<br>Wolfson & Towbin LLC<br>321 North Clark Street, Suite 800<br>Chicago, IL 60610 |

If you make a motion, your time to answer is governed by Federal Rule of Bankruptcy Procedure. 7012.

YOU ARE NOTIFIED that a status hearing has been set at the following time and place:

| Address | Dirksen Federal Building<br>219 South Dearborn Street<br>Chicago, IL 60604 | Room | 615 |
|---|---|---|---|
| | | Date and Time<br>April 24, 2008 at 9:30 a.m. | |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

### MAR 2 8 2008
Date

Kenneth S. Gardner
*Clerk of the Bankruptcy Court*

By: _____
*Deputy Clerk*

{6591 SUM A0202812.DOC}

## CERTIFICATE OF SERVICE

I, Mark L. Radtke, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of this summons and a copy of the complaint was served on March 28, 2008 by:

☑ Mail service:  via certified U.S. Mail, postage fully pre-paid, addressed to:

Wachovia Corporation
301 South College Street Suite 4000
One Wachovia Center
Charlotte, North Carolina 28288-0013
Attn: G. Kennedy Thompson

☑ Personal Service:  by leaving the process with defendant or with an officer or agent of defendant at:

Michael S. Leib
Pia N. Thompson
Stephen T. Bobo
Reed Smith, LLP
10 South Wacker Drive
Chicago, Illinois  60606

☐ Residence Service:  By leaving the process with the following adult at:


☐ Publication:  The defendant was served as follows:  [Describe briefly]


☐ State Law:  The defendant was served pursuant to the laws of the State of
_____
as follows:  [Describe briefly]

Under penalty of perjury, I declare that the foregoing is true and correct.

| | |
|---|---|
| March 28, 2008 | _____ |
| Date | Signature |

Print Name

Mark L. Radtke

Business Address

Shaw Gussis Fishman Glantz Wolfson & Towbin LLC
321 North Clark Street, Suite 800

| City | State | Zip |
|---|---|---|
| Chicago | Illinois | 60610 |

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Wachovia Bank, National Association ("Wachovia") for its answer, states as follows:

## PARTIES & JURISDICTION

1.    On March 5, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division thereby commencing the bankruptcy case, Case No. 08-05230 (the "Case").

## ANSWER:

Admitted.

2. The Debtor is a corporation organized under the laws of Mexico. The Debtor's principal remaining United States' assets are located in Chicago, Illinois.

**ANSWER:**

Wachovia admits the allegations of the first sentence of paragraph 2. Wachovia lacks

knowledge or information sufficient to form a belief concerning the truth of the remaining

allegations of paragraph 2.

3. Upon information and belief, Wachovia is a national banking association with its principal place of business in North Carolina and various offices in the United States and abroad, including in New York, Illinois and Mexico City.

**ANSWER:**

Admitted.

4. This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(F) and 1334(b), applicable rules of the Court and other applicable orders of the United States District Court of the Northern District of Illinois. If, for any reason, the Court determines that all or portions of the Complaint constitutes a non-core matter, the Debtor consents to the entry of final judgments and orders by the Bankruptcy Court.

**ANSWER:**

Wachovia admits the allegations of the first sentence of paragraph 4. Wachovia denies

the remaining allegations of paragraph 4.

5. The Case is a chapter 11 proceeding currently pending in this District. Thus, pursuant to 28 U.S.C. §§ 1408 and 1409, this District is the proper venue for this adversary proceeding.

**ANSWER:**

Wachovia admits the allegations of the first sentence of paragraph 5. Wachovia lacks

knowledge or information sufficient to form a belief concerning the truth of the remaining

allegations of paragraph 5. Wachovia further affirmatively states that it believes the Debtor's

chapter 11 proceeding was improperly filed in this District and, accordingly, moved to dismiss

the bankruptcy.

## BACKGROUND

6.     The Debtor has operated as a foreign exchange ("FX") bureau in Mexico since 1989. The Debtor engaged in FX transactions and the purchase and sale of items such as bill payment orders, checks and drafts in foreign currencies. For example, the Debtor would accept checks drawn on United States banks from its customers and provide cash to the customers on the same day and then would electronically transmit those checks to a bank, such as Wachovia. The bank would then negotiate the check via the United States Interbank Clearing System or other method.

**ANSWER:**

Wachovia lacks knowledge or information sufficient to form a belief concerning the truth

of the allegations of the first sentence of paragraph 6. Wachovia further states that it admits that

the Debtor engaged in foreign exchange (FX) transactions, but lacks knowledge or information

sufficient to form a belief concerning the truth of the remaining allegations of the second, third,

and fourth sentences of paragraph 6.

7.     Prior to February 2007, the Debtor cleared remittances through both Wachovia and Harris Bank, N.A. ("Harris"), but at that time, at Wachovia's urging, the Debtor agreed to transfer virtually all of the business the Debtor had been doing with Harris to Wachovia. As a result, the Debtor had only one remaining account at Harris that contained approximately $1.6 million of funds belonging to the Debtor (the "Harris Funds").

**ANSWER:**

Wachovia admits that the Debtor had an account at Harris, N.A. that contained

approximately $1.65 million as of December 14, 2007, but denies the remaining allegations of

paragraph 7.

8.     On December 5, 2007, Wachovia, without cause or prior notice, notified the Debtor that Wachovia was immediately terminating its relationship with the Debtor.

**ANSWER:**

Denied.

9.      As the Debtor was extremely reliant on Wachovia's services to operate, the Debtor experienced significant liquidity problems. Notwithstanding its liquidity problems, the Debtor paid Wachovia almost $40 million on December 6, 2007.

**ANSWER:**

Wachovia admits that, on December 6, 2007, pursuant to certain foreign exchange transactions, Wachovia delivered to the Debtor approximately $40 million worth of various currencies, including Euros, in exchange for which the Debtor delivered to Wachovia approximately $40 million. Wachovia further states that it lacks knowledge or information sufficient to form a belief concerning the truth of the allegation that the Debtor experienced significant liquidity problems on or about December 6, 2007. Wachovia further states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegation that the Debtor was extremely reliant on Wachovia's services to operate on or about December 6, 2007. Wachovia denies the remaining allegations of paragraph 9.

10.     After these payments, Wachovia alleged that the Debtor still owed Wachovia $38 million.

**ANSWER:**

Wachovia admits that, pursuant to a series of seven foreign exchange spot transactions the Debtor entered into with Wachovia on December 5, 2007, on December 7, 2007 Wachovia delivered an aggregate of € 26 million Euros to the Debtor, but the Debtor failed to deliver the corresponding $38,132,700 to Wachovia as agreed to and, therefore, as of December 7, 2007, the Debtor owed Wachovia $38,132,700. Wachovia denies the remaining allegations of paragraph 10 and specifically denies that any currency the Debtor delivered to Wachovia on December 6, 2007 relates in any way to the currency deliveries the Debtor was required to make to Wachovia on December 7, 2007.

- 4 -

11. On December 14, 2007, Wachovia initiated an action seeking emergency ex parte prejudgment attachment relief in the United States District Court for the Southern District of New York styled Wachovia Bank, NA. v. Casa de Cambio Majapara S.A. de C. V. a/k/a Majapara Casa de Cambio S.A. de C. V., Case No. 07 Civ. 11230 (the "New York Action).

**ANSWER:**

Wachovia admits that, on December 14, 2007, it initiated an action seeking emergency ex

parte prejudgment attachment relief in the United States District Court for the Southern District

of New York styled Wachovia Bank, National Association v. Majapara Casa de Cambio S.A. de

C.V., Case No. 07 Civ. 11230 (BSJ)(RLE) and that it filed an Amended Complaint on December

17, 2007 restyling the action Wachovia Ba,nk, National Association v. Casa de Cambio

Majapara S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V (the "New York Action").

Wachovia denies the remaining allegations of paragraph 11.

12. On December 14, 2007, simultaneously filed with the commencement of New York Action, Wachovia filed an action against the Debtor seeking emergency ex parte prejudgment attachment relief in the Circuit Court of Cook County, Illinois, Law Division styled Wachovia Bank, N.A. v. Majapara Casa de Cambio S.A. de C.V. and Harris Bank, N.A., Case No. 07 L 13958 (the "Cook County Action").

**ANSWER:**

Wachovia admits that, on December 14, 2007, it filed an action against the Debtor

seeking emergency ex parte prejudgment attachment relief in the Circuit Court of Cook County,

Illinois, Law Division styled Wachovia Bank, National Association v. Majapara Casa de Cambio

S.A. de C.V. (with Harris, N.A. named as a Garnishee), Case No. 07 L 13958 (the "Cook County

Action"), and that by Court order dated December 17, 2008 the caption was amended to read

Wachovia Bank, National Association v. Casa de Cambio Majapara S.A. de C.V. a.k.a. Majapara

Casa de Cambio S.A. de C.V. (with Harris, N.A. named as a Garnishee). Wachovia denies the

remaining allegations of paragraph 12.

13.    On December 14, 2007, Wachovia obtained an order of attachment (the "Cook County Attachment") in the Cook County Action, causing the Harris Funds to be attached for the benefit of Wachovia.  A copy of the Cook County Order of Attachment is attached hereto as Exhibit A.  Upon information and belief, Wachovia has not yet received payment of any of the Harris Funds or other monies on account of the Cook County Attachment.

**ANSWER:**

Wachovia admits that, on December 14, 2007, it obtained an order of attachment in the

Cook County Action, a copy of which is attached as Exhibit A to the Adversary Complaint.

Wachovia further states that the order of attachment speaks for itself, and Wachovia denies the

allegations of the first sentence of paragraph 13 to the extent they differ therefrom.  Wachovia

further states that it obtained a supplemental order of attachment on December 17, 2007 in the

Cook County Action, which stated that the Order of Attachment dated December 14, 2007 is

supplemented "to apply in addition to the property of Casa de Cambio Majapara S.A. de C.V."

Wachovia admits the third sentence of paragraph 13.

14.    On December 20, 2007, Wachovia obtained an order of attachment (the "New York Attachment") in the New York Action, attaching accounts allegedly held by the Debtor at Citibank, N.A., JP Morgan Chase, N.A., Bayerische Hypo-und Vereinsbank, AG, Deutsche Bank and Standard Chartered Bank for the benefit of Wachovia.  A copy of the New York Order of Attachment is attached hereto as Exhibit B.

**ANSWER:**

Wachovia admits that, on December 20, 2007, it obtained an order of attachment in the

New York Action, a copy of which is attached as Exhibit B to the Adversary Complaint.

Wachovia further states that the order of attachment speaks for itself, and Wachovia denies the

allegations of paragraph 14 to the extent they differ therefrom.

- 6 -

## COUNT I

### (Avoidance of Transfer as Preferential Transfer Pursuant to 11 U.S.C. § 547(b))

15. The Debtor incorporates by reference the allegations set forth in Paragraphs 1 through 14 hereof, as if fully restated herein.

**ANSWER:**

Wachovia repeats and realleges its responses to paragraphs 1 through 14 as if fully set

forth herein.

16. The Cook County Attachment was a transfer of an interest in the Debtor's property to or for the benefit of Wachovia under 11 U.S.C. §§ 101(54)(A) and 547(b).

**ANSWER:**

Wachovia admits that the Cook County Attachment was a transfer of an interest in the

Debtor's property as the term "transfer" is defined in 11 U.S.C. § 101(54)(A), but denies the

remaining allegations of paragraph 16.

17. Wachovia was a creditor of the Debtor at the time of the Cook County Attachment.

**ANSWER:**

Admitted.

18. The Cook County Attachment was granted on account of antecedent debts owed by the Debtor to Wachovia prior to the date of the Cook County Attachment.

**ANSWER:**

Admitted.

19. The Debtor is presumed to have been insolvent at the time of the Cook County Attachment pursuant to 11 U.S.C. § 547(f).

**ANSWER:**

Wachovia admits that, under the Bankruptcy Code, the Debtor is presumed to have been

insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

Wachovia denies the remaining allegations of paragraph 19 and specifically denies that 11

U.S.C. § 547 is applicable to this bankruptcy case.

      20.     At the time of the Cook County Attachment, the sum of the Debtor's debts exceeded the sum of its property at a fair valuation.

## ANSWER:

Wachovia lacks knowledge or information sufficient to form a belief concerning the truth

of the allegations of paragraph 20.

      21.     The Cook County Attachment was granted within ninety days before the Petition Date.

## ANSWER:

Admitted.

      22.     The Cook County Attachment enabled Wachovia to receive more than it would have if, as of the date of the Cook County Attachment, the Debtor had commenced a case under chapter 7 of the Bankruptcy Code, the Cook County Attachment had not been granted, and Wachovia received payment on account of any debt owed by the Debtor to Wachovia to the extent provided by the provisions of the Bankruptcy Code.

## ANSWER:

Denied.

      23.     By reason of the foregoing, the Cook County Attachment is avoidable pursuant to 11 U.S.C. § 547(b).

## ANSWER:

Denied.

## COUNT II
### (Avoidance of Transfer as Preferential Transfer Pursuant to 11 U.S.C. § 547(b))

24.     The Debtor incorporates by reference the allegations set forth in Paragraphs 1 through 23 hereof, as if fully restated herein.

**ANSWER:**

Wachovia repeats and realleges its responses to paragraphs 1 through 23 as if fully set

forth herein.

25.     The New York Attachment was a transfer of an interest in the Debtor's property to or for the benefit of Wachovia under 11 U.S.C. §§ 101(54)(A) and 547(b).

**ANSWER:**

Wachovia admits that the New York Attachment was a transfer of an interest in the

Debtor's property as the term "transfer" is defined in 11 U.S.C. § 101(54)(A), but denies the

remaining allegations of paragraph 25.

26.     Wachovia was a creditor of the Debtor at the time of the New York Attachment.

**ANSWER:**

Admitted.

27.     The New York Attachment was granted on account of antecedent debts owed by the Debtor prior to the date of the New York Attachment.

**ANSWER:**

Admitted.

28.     The Debtor is presumed to have been insolvent at the time of the New York Attachment pursuant to 11 U.S.C. § 547(f).

**ANSWER:**

Wachovia admits that, under the Bankruptcy Code, the Debtor is presumed to have been

insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

Wachovia denies the remaining allegations of paragraph 28 and specifically denies that 11

U.S.C. §547 is applicable to this bankruptcy case.

29.    At the time of the New York Attachment, the sum of the Debtor's debts exceeded the sum of its property at a fair valuation.

**ANSWER:**

Wachovia lacks knowledge or information sufficient to form a belief concerning the truth

of the allegations of paragraph 29.

30.    The New York Attachment was granted within ninety days before the Petition Date.

**ANSWER:**

Admitted.

31.    The New York Attachment enabled Wachovia to receive more than it would have if, as of the date of the New York Attachment, the Debtor had commenced a case under chapter 7 of the Bankruptcy Code, the New York Attachment had not been granted, and Wachovia received payment on account of any debt owed by the Debtor to Wachovia to the extent provided by the provisions of the Bankruptcy Code.

**ANSWER:**

Denied.

32.    By reason of the foregoing, the New York Attachment is avoidable pursuant to 11 U.S.C. § 547(b).

**ANSWER:**

Denied.

## COUNT III

### (Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550)

33.     The Debtor incorporates by reference the allegations set forth in Paragraphs 1 through 32 hereof, as if fully restated herein.

**ANSWER:**

Wachovia repeats and realleges its responses to paragraphs 1 through 32 as if fully set

forth herein.

34.     The value of any funds transferred to or for the benefit of Wachovia pursuant to the Cook County Attachment and the New York Attachment, to the extent they are avoided pursuant to 11 U.S.C. § 547 (collectively, the "Preferential Transfers"), may be recovered by the Debtor pursuant to 11 U.S.C. § 550.

**ANSWER:**

Denied.

### AFFIRMATIVE DEFENSE

### AFFIRMATIVE DEFENSE NUMBER 1 (Section 546(g))

Wachovia obtained the prejudgment attachments in the Cook County and New York

Actions as a result of the Debtor's failure to complete its end of a series of foreign exchange spot

transactions.  Because under 11 U.S.C. § 101(53B) the term "swap agreement" includes foreign

exchange spot transactions, and under 11 U.S.C. § 101(53C) the term "swap participant"

includes any entity that had an outstanding swap agreement with the Debtor at any time before

the bankruptcy filing, the prejudgment attachments were transfers made before the

commencement of the Chapter 11 case by or to (or for the benefit of) a swap participant or

financial participant, under or in connection with swap agreements.  Under 11 U.S.C. § 546(g),

therefore, the Debtor may not avoid these transfers.

- 11 -

Dated:  May 21, 2008    Respectfully submitted,

**WACHOVIA BANK, NATIONAL ASSOCIATION**

By:   /s/ *Pia N. Thompson*
     One of its attorneys
     Pia N. Thompson (ARDC No. 6225746)
     Michael S. Leib (ARDC No. 6243348)
     Reed Smith LLP
     10 South Wacker Drive, 40th Floor
     Chicago, IL  60606-7484
     Telephone: (312) 207-1000
     Facsimile: (312) 207-6400
     Email: pthompson@reedsmith.com

     and

     Edward J. Estrada
     Reed Smith LLP
     599 Lexington Avenue
     New York, NY  10022
     Telephone: (212) 521-5400
     Facsimile: (212) 521-5450
     Email: eestrada@reedsmith.com

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

Pia N. Thompson, an attorney, certifies that she caused a true copy of the foregoing Answer to be served upon all parties of record via ECF electronic service this 21st day of May 2008.

_/s/ Pia N. Thompson_

- 13 -

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

### DEFENDANT'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES

Defendant Wachovia Bank, National Association ("Wachovia") for its answer, states as follows:

### PARTIES & JURISDICTION

1.      On March 5, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division thereby commencing the bankruptcy case, Case No. 08-05230 (the "Case").

### ANSWER:

Admitted.

2.    The Debtor is a corporation organized under the laws of Mexico. The Debtor's principal remaining United States' assets are located in Chicago, Illinois.

**ANSWER:**

Wachovia admits the allegations of the first sentence of paragraph 2. Wachovia lacks

knowledge or information sufficient to form a belief concerning the truth of the remaining

allegations of paragraph 2.

3.    Upon information and belief, Wachovia is a national banking association with its principal place of business in North Carolina and various offices in the United States and abroad, including in New York, Illinois and Mexico City.

**ANSWER:**

Admitted.

4.    This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(F) and 1334(b), applicable rules of the Court and other applicable orders of the United States District Court of the Northern District of Illinois. If, for any reason, the Court determines that all or portions of the Complaint constitutes a non-core matter, the Debtor consents to the entry of final judgments and orders by the Bankruptcy Court.

**ANSWER:**

Wachovia admits the allegations of the first sentence of paragraph 4. Wachovia denies

the remaining allegations of paragraph 4.

5.    The Case is a chapter 11 proceeding currently pending in this District. Thus, pursuant to 28 U.S.C. §§ 1408 and 1409, this District is the proper venue for this adversary proceeding.

**ANSWER:**

Wachovia admits the allegations of the first sentence of paragraph 5. Wachovia lacks

knowledge or information sufficient to form a belief concerning the truth of the remaining

allegations of paragraph 5. Wachovia further affirmatively states that it believes the Debtor's

chapter 11 proceeding was improperly filed in this District and, accordingly, moved to dismiss

the bankruptcy.

## BACKGROUND

6.     The Debtor has operated as a foreign exchange ("FX") bureau in Mexico since 1989.  The Debtor engaged in FX transactions and the purchase and sale of items such as bill payment orders, checks and drafts in foreign currencies.  For example, the Debtor would accept checks drawn on United States banks from its customers and provide cash to the customers on the same day and then would electronically transmit those checks to a bank, such as Wachovia. The bank would then negotiate the check via the United States Interbank Clearing System or other method.

**ANSWER:**

Wachovia lacks knowledge or information sufficient to form a belief concerning the truth

of the allegations of the first sentence of paragraph 6.  Wachovia further states that it admits that

the Debtor engaged in foreign exchange (FX) transactions, but lacks knowledge or information

sufficient to form a belief concerning the truth of the remaining allegations of the second, third,

and fourth sentences of paragraph 6.

7.     Prior to February 2007, the Debtor cleared remittances through both Wachovia and Harris Bank, N.A. ("Harris"), but at that time, at Wachovia's urging, the Debtor agreed to transfer virtually all of the business the Debtor had been doing with Harris to Wachovia.  As a result, the Debtor had only one remaining account at Harris that contained approximately $1.6 million of funds belonging to the Debtor (the "Harris Funds").

**ANSWER:**

Wachovia admits that the Debtor had an account at Harris, N.A. that contained

approximately $1.65 million as of December 14, 2007, but denies the remaining allegations of

paragraph 7.

8.     On December 5, 2007, Wachovia, without cause or prior notice, notified the Debtor that Wachovia was immediately terminating its relationship with the Debtor.

**ANSWER:**

Denied.

- 3 -

9.      As the Debtor was extremely reliant on Wachovia's services to operate, the Debtor experienced significant liquidity problems. Notwithstanding its liquidity problems, the Debtor paid Wachovia almost $40 million on December 6, 2007.

**ANSWER:**

Wachovia admits that, on December 6, 2007, pursuant to certain foreign exchange

transactions, Wachovia delivered to the Debtor approximately $40 million worth of various

currencies, including Euros, in exchange for which the Debtor delivered to Wachovia

approximately $40 million. Wachovia further states that it lacks knowledge or information

sufficient to form a belief concerning the truth of the allegation that the Debtor experienced

significant liquidity problems on or about December 6, 2007. Wachovia further states that it

lacks knowledge or information sufficient to form a belief as to the truth of the allegation that the

Debtor was extremely reliant on Wachovia's services to operate on or about December 6, 2007.

Wachovia denies the remaining allegations of paragraph 9.

10.     After these payments, Wachovia alleged that the Debtor still owed Wachovia $38 million.

**ANSWER:**

Wachovia admits that, pursuant to a series of seven foreign exchange spot transactions

the Debtor entered into with Wachovia on December 5, 2007, on December 7, 2007 Wachovia

delivered an aggregate of € 26 million Euros to the Debtor, but the Debtor failed to deliver the

corresponding $38,132,700 to Wachovia as agreed to and, therefore, as of December 7, 2007, the

Debtor owed Wachovia $38,132,700. Wachovia denies the remaining allegations of paragraph

10 and specifically denies that any currency the Debtor delivered to Wachovia on December 6,

2007 relates in any way to the currency deliveries the Debtor was required to make to Wachovia

on December 7, 2007.

- 4 -

11.     On December 14, 2007, Wachovia initiated an action seeking emergency ex parte prejudgment attachment relief in the United States District Court for the Southern District of New York styled Wachovia Bank, NA. v. Casa de Cambio Majapara S.A. de C. V. a/k/a Majapara Casa de Cambio S.A. de C. V., Case No. 07 Civ. 11230 (the "New York Action).

**ANSWER:**

Wachovia admits that, on December 14, 2007, it initiated an action seeking emergency ex

parte prejudgment attachment relief in the United States District Court for the Southern District

of New York styled Wachovia Bank, National Association v. Majapara Casa de Cambio S.A. de

C.V., Case No. 07 Civ. 11230 (BSJ)(RLE) and that it filed an Amended Complaint on December

17, 2007 restyling the action Wachovia Bank, National Association v. Casa de Cambio Majapara

S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V (the "New York Action"). Wachovia

denies the remaining allegations of paragraph 11.

12.     On December 14, 2007, simultaneously filed with the commencement of New York Action, Wachovia filed an action against the Debtor seeking emergency ex parte prejudgment attachment relief in the Circuit Court of Cook County, Illinois, Law Division styled Wachovia Bank, N.A. v. Majapara Casa de Cambio S.A. de C.V. and Harris Bank, N.A., Case No. 07 L 13958 (the "Cook County Action").

**ANSWER:**

Wachovia admits that, on December 14, 2007, it filed an action against the Debtor

seeking emergency ex parte prejudgment attachment relief in the Circuit Court of Cook County,

Illinois, Law Division styled Wachovia Bank, National Association v. Majapara Casa de Cambio

S.A. de C.V. (with Harris, N.A. named as a Garnishee), Case No. 07 L 13958 (the "Cook County

Action"), and that by Court order dated December 17, 2008 the caption was amended to read

Wachovia Bank, National Association v. Casa de Cambio Majapara S.A. de C.V. a.k.a. Majapara

Casa de Cambio S.A. de C.V. (with Harris, N.A. named as a Garnishee). Wachovia denies the

remaining allegations of paragraph 12.

- 5 -

13.     On December 14, 2007, Wachovia obtained an order of attachment (the "Cook County Attachment") in the Cook County Action, causing the Harris Funds to be attached for the benefit of Wachovia.  A copy of the Cook County Order of Attachment is attached hereto as Exhibit A.  Upon information and belief, Wachovia has not yet received payment of any of the Harris Funds or other monies on account of the Cook County Attachment.

**ANSWER:**

Wachovia admits that, on December 14, 2007, it obtained an order of attachment in the

Cook County Action, a copy of which is attached as Exhibit A to the Adversary Complaint.

Wachovia further states that the order of attachment speaks for itself, and Wachovia denies the

allegations of the first sentence of paragraph 13 to the extent they differ therefrom.  Wachovia

further states that it obtained a supplemental order of attachment on December 17, 2007 in the

Cook County Action, which stated that the Order of Attachment dated December 14, 2007 is

supplemented "to apply in addition to the property of Casa de Cambio Majapara S.A. de C.V."

Wachovia admits the third sentence of paragraph 13.

14.     On December 20, 2007, Wachovia obtained an order of attachment (the "New York Attachment") in the New York Action, attaching accounts allegedly held by the Debtor at Citibank, N.A., JP Morgan Chase, N.A., Bayerische Hypo-und Vereinsbank, AG, Deutsche Bank and Standard Chartered Bank for the benefit of Wachovia.  A copy of the New York Order of Attachment is attached hereto as Exhibit B.

**ANSWER:**

Wachovia admits that, on December 20, 2007, it obtained an order of attachment in the

New York Action, a copy of which is attached as Exhibit B to the Adversary Complaint.

Wachovia further states that the order of attachment speaks for itself, and Wachovia denies the

allegations of paragraph 14 to the extent they differ therefrom.

- 6 -

## COUNT I

### (Avoidance of Transfer as Preferential Transfer Pursuant to 11 U.S.C. § 547(b))

15.     The Debtor incorporates by reference the allegations set forth in Paragraphs 1 through 14 hereof, as if fully restated herein.

**ANSWER:**

Wachovia repeats and realleges its responses to paragraphs 1 through 14 as if fully set

forth herein.

16.     The Cook County Attachment was a transfer of an interest in the Debtor's property to or for the benefit of Wachovia under 11 U.S.C. §§ 101(54)(A) and 547(b).

**ANSWER:**

Wachovia admits that the Cook County Attachment was a transfer of an interest in the

Debtor's property as the term "transfer" is defined in 11 U.S.C. § 101(54)(A), but denies the

remaining allegations of paragraph 16.

17.     Wachovia was a creditor of the Debtor at the time of the Cook County Attachment.

**ANSWER:**

Admitted.

18.     The Cook County Attachment was granted on account of antecedent debts owed by the Debtor to Wachovia prior to the date of the Cook County Attachment.

**ANSWER:**

Admitted.

19.     The Debtor is presumed to have been insolvent at the time of the Cook County Attachment pursuant to 11 U.S.C. § 547(f).

**ANSWER:**

Wachovia admits that, under the Bankruptcy Code, the Debtor is presumed to have been

insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

Wachovia denies the remaining allegations of paragraph 19 and specifically denies that 11

U.S.C. § 547 is applicable to this bankruptcy case.

      20.    At the time of the Cook County Attachment, the sum of the Debtor's debts exceeded the sum of its property at a fair valuation.

**ANSWER:**

Wachovia lacks knowledge or information sufficient to form a belief concerning the truth

of the allegations of paragraph 20.

      21.    The Cook County Attachment was granted within ninety days before the Petition Date.

**ANSWER:**

Admitted.

      22.    The Cook County Attachment enabled Wachovia to receive more than it would have if, as of the date of the Cook County Attachment, the Debtor had commenced a case under chapter 7 of the Bankruptcy Code, the Cook County Attachment had not been granted, and Wachovia received payment on account of any debt owed by the Debtor to Wachovia to the extent provided by the provisions of the Bankruptcy Code.

**ANSWER:**

Denied.

      23.    By reason of the foregoing, the Cook County Attachment is avoidable pursuant to 11 U.S.C. § 547(b).

**ANSWER:**

Denied.

**COUNT II**
**(Avoidance of Transfer as Preferential Transfer Pursuant to 11 U.S.C. § 547(b))**

24.     The Debtor incorporates by reference the allegations set forth in Paragraphs 1 through 23 hereof, as if fully restated herein.

**ANSWER:**

Wachovia repeats and realleges its responses to paragraphs 1 through 23 as if fully set forth herein.

25.     The New York Attachment was a transfer of an interest in the Debtor's property to or for the benefit of Wachovia under 11 U.S.C. §§ 101(54)(A) and 547(b).

**ANSWER:**

Wachovia admits that the New York Attachment was a transfer of an interest in the Debtor's property as the term "transfer" is defined in 11 U.S.C. § 101(54)(A), but denies the remaining allegations of paragraph 25.

26.     Wachovia was a creditor of the Debtor at the time of the New York Attachment.

**ANSWER:**

Admitted.

27.     The New York Attachment was granted on account of antecedent debts owed by the Debtor prior to the date of the New York Attachment.

**ANSWER:**

Admitted.

28.     The Debtor is presumed to have been insolvent at the time of the New York Attachment pursuant to 11 U.S.C. § 547(f).

**ANSWER:**

Wachovia admits that, under the Bankruptcy Code, the Debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

Wachovia denies the remaining allegations of paragraph 28 and specifically denies that 11

U.S.C. §547 is applicable to this bankruptcy case.

29.   At the time of the New York Attachment, the sum of the Debtor's debts exceeded the sum of its property at a fair valuation.

**ANSWER:**

Wachovia lacks knowledge or information sufficient to form a belief concerning the truth

of the allegations of paragraph 29.

30.   The New York Attachment was granted within ninety days before the Petition Date.

**ANSWER:**

Admitted.

31.   The New York Attachment enabled Wachovia to receive more than it would have if, as of the date of the New York Attachment, the Debtor had commenced a case under chapter 7 of the Bankruptcy Code, the New York Attachment had not been granted, and Wachovia received payment on account of any debt owed by the Debtor to Wachovia to the extent provided by the provisions of the Bankruptcy Code.

**ANSWER:**

Denied.

32.   By reason of the foregoing, the New York Attachment is avoidable pursuant to 11 U.S.C. § 547(b).

**ANSWER:**

Denied.

## COUNT III

### (Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550)

33.    The Debtor incorporates by reference the allegations set forth in Paragraphs 1 through 32 hereof, as if fully restated herein.

### ANSWER:

Wachovia repeats and realleges its responses to paragraphs 1 through 32 as if fully set

forth herein.

34.    The value of any funds transferred to or for the benefit of Wachovia pursuant to the Cook County Attachment and the New York Attachment, to the extent they are avoided pursuant to 11 U.S.C. § 547 (collectively, the "Preferential Transfers"), may be recovered by the Debtor pursuant to 11 U.S.C. § 550.

### ANSWER:

Denied.

## AFFIRMATIVE DEFENSE

### AFFIRMATIVE DEFENSE NUMBER 1 (Section 546(g))

Wachovia obtained the prejudgment attachments in the Cook County and New York

Actions as a result of the Debtor's failure to complete its end of a series of foreign exchange spot

transactions.  Because under 11 U.S.C. § 101(53B) the term "swap agreement" includes foreign

exchange spot transactions, and under 11 U.S.C. § 101(53C) the term "swap participant"

includes any entity that had an outstanding swap agreement with the Debtor at any time before

the bankruptcy filing, the prejudgment attachments were transfers made before the

commencement of the Chapter 11 case by or to (or for the benefit of) a swap participant or

financial participant, under or in connection with swap agreements.  Under 11 U.S.C. § 546(g),

therefore, the Debtor may not avoid these transfers.

- 11 -

WHEREFORE, Defendant Wachovia Bank, National Association respectfully prays for judgment in its favor and against Plaintiff Casa de Cambio Majapara S.A. de C.V. on all Counts of Majapara's Complaint, for its costs, and for such other and further relief as this Court deems just and proper.

Dated: May 23, 2008                Respectfully submitted,

                                   **WACHOVIA BANK, NATIONAL ASSOCIATION**

                                   By:  ___/s/*Pia N. Thompson*_____
                                        One of its attorneys
                                        Pia N. Thompson (ARDC No. 6225746)
                                        Michael S. Leib (ARDC No. 6243348)
                                        Reed Smith LLP
                                        10 South Wacker Drive, 40th Floor
                                        Chicago, IL 60606-7484
                                        Telephone:    (312) 207-1000
                                        Facsimile:    (312) 207-6400
                                        Email: pthompson@reedsmith.com

                                        and

                                        Edward J. Estrada
                                        Reed Smith LLP
                                        599 Lexington Avenue
                                        New York, NY 10022
                                        Telephone:    (212) 521-5400
                                        Facsimile:    (212) 521-5450
                                        Email: eestrada@reedsmith.com

- 12 -

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

CERTIFICATE OF SERVICE

Pia N. Thompson, an attorney, certifies that she caused a true copy of the foregoing Amended Answer to be served upon all parties of record via ECF electronic service this 23rd day of May 2008.


_____/s/ Pia N. Thompson_____

CHILIB-2180433.3

- 13 -

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, Rule 56 of the Federal Rules of Civil Procedure, and 11 U.S.C. § 546(g), and for the reasons set forth in Defendant's Memorandum of Law in Support of Motion for Summary Judgment filed contemporaneously herewith, Wachovia Bank, National Association ("Wachovia") moves this Court for an order granting summary judgment in favor of Wachovia on Plaintiff Casa de Cambio Majapara S.A. de C.V.'s (the "Debtor") Adversary Complaint and granting Wachovia such other and further relief as the Court deems just and proper.

WHEREFORE, Wachovia respectfully requests that this Court enter judgment in favor of Wachovia and against the Debtor, and that this Court grant Wachovia such other and further relief as the Court deems just and proper.

Dated:  May 23, 2008                    Respectfully submitted,

                                        **WACHOVIA BANK, NATIONAL ASSOCIATION**

                                        By:  ___/s/Pia N. Thompson_____
                                              One of its attorneys
                                              Pia N. Thompson (ARDC No. 6225746)
                                              Michael S. Leib (ARDC No. 6243348)
                                              Reed Smith LLP
                                              10 South Wacker Drive, 40th Floor
                                              Chicago, IL  60606-7484
                                              Telephone:    (312) 207-1000
                                              Facsimile:    (312) 207-6400
                                              Email: pthompson@reedsmith.com

                                              and

                                              Edward J. Estrada
                                              Reed Smith LLP
                                              599 Lexington Avenue
                                              New York, NY  10022
                                              Telephone:    (212) 521-5400
                                              Facsimile:    (212) 521-5450
                                              Email: eestrada@reedsmith.com

CHILIB-2181778.1

- 2 -

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

On December 5, 2007, the Debtor, Casa de Cambio Majapara S.A. de C.V., agreed to a series of seven foreign exchange spot transactions by which Wachovia Bank, National Association would send the Debtor € 26 million Euros in exchange for Wachovia delivering $38,132,700 to the Debtor. Each side was required to transmit the funds on December 7, 2007. Pursuant to these agreements, on December 7, 2007, Wachovia delivered the € 26 million Euros to the Debtor. The Debtor, however, never delivered the corresponding $38,132,700 to Wachovia. Because of this failure, in mid-December 2007, Wachovia filed suit in Illinois and New York, securing orders for prejudgment attachment against the Debtor's assets in those jurisdictions. The Debtor now comes before this Court, through an adversary proceeding, and requests that this Court declare both attachments avoidable preferences pursuant to 11 U.S.C.

§547(b). The Bankruptcy Code, however, expressly states that the Debtor may not avoid these attachments.

In 11 U.S.C. § 546(g), Congress expressly exempted from Section 547 avoidance any transfer made prior to the commencement of the bankruptcy to a "swap participant" in connection with any "swap agreement." In fact, Section 546(g) specifically states that the Debtor "may not avoid [such] a transfer." 11 U.S.C. §546(g). "Swap agreement" is defined under the Bankruptcy Code to include foreign exchange spot transactions. See 11 U.S.C. §101(53B). Because the prejudgment attachments are transfers to a swap participant in connection with swap agreements, the Debtor may not avoid the attachments.

The Court should grant summary judgment in favor of Wachovia.

## FACTS

On or about December 5, 2007, Majapara and Wachovia agreed to a series of seven foreign exchange spot transactions, all of which were to settle on December 7, 2007 (the "FX agreements"). (Wachovia's Rule 7056-1 Statement ¶ 7.) Pursuant to the FX agreements, Wachovia agreed to deliver an aggregate of € 26 million Euros to Majapara in exchange for Majapara delivering an aggregate of $38,132,700 to Wachovia. (Id. ¶ 8.) Because these were spot transactions, (see, e.g., FX agreement confirmations, identifying the transactions as "Spot Deals," attached as Exhibit 1 to Decl. of Andrew Gross), the transactions were required to settle within two business days. (Wachovia's Rule 7056-1 Statement ¶¶ 5-7.)

On December 7, 2007, as required under the parties' agreements, Wachovia delivered € 26 million Euros to Majapara. (Wachovia's Rule 7056-1 Statement ¶ 9.) Majapara, however, failed to deliver the agreed upon $38,132,700 to Wachovia as required under the FX agreements. (Id. ¶ 10.)

In an attempt to recover the amount owed to it under the FX agreements, on December 14, 2007, Wachovia filed an action against the Debtor in the United States District Court for the Southern District of New York styled Wachovia Bank, National Association v. Majapara Casa de Cambio S.A. de C.V., Case No. 07 Civ. 11230 (BSJ)(RLE) (the "New York Action"), and sought prejudgment attachment relief. (Wachovia's Rule 7056-1 Statement ¶ 11.) Wachovia filed an Amended Complaint on December 17, 2007 restyling the action Wachovia Bank, National Association v. Casa de Cambio Majapara S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V. (Id.) On December 20, 2007, Wachovia obtained an order of attachment in the New York Action. (Id. ¶ 12.)

In a further attempt to recover the amount owed to it under the FX agreements, on December 14, 2007, Wachovia also filed an action against the Debtor in the Circuit Court of Cook County, Illinois, Law Division styled Wachovia Bank, National Association v. Majapara Casa de Cambio S.A. de C.V. (with Harris, N.A. named as a Garnishee), Case No. 07 L 13958 (the "Cook County Action"), and sought prejudgment attachment relief. (Wachovia's Rule 7056-1 Statement ¶ 14.) By Court order dated December 17, 2008, the caption was amended to read Wachovia Bank, National Association v. Casa de Cambio Majapara S.A. de C.V. a.k.a. Majapara Casa de Cambio S.A. de C.V. (with Harris, N.A. named as a Garnishee). (Id.) On December 14, 2007, Wachovia obtained an order of attachment in the Cook County Action. (Id. ¶ 15.) On December 17, 2007, Wachovia obtained a supplemental order of attachment in the Cook County Action. (Id.) As a result, Wachovia was able to attach approximately $1.65 million in assets in a Harris, N.A. bank account owned by the Debtor. (Id. ¶ 16.)

On March 5, 2008, the Debtor filed for Chapter 11 protection in this Court. (See Ch. 11 Petition.) Subsequently, the Debtor brought this Adversary Proceeding seeking declarations that

- 3 -

the prejudgment attachments obtained in the New York and Cook County Actions are avoidable

preferential transfers pursuant to 11 U.S.C. § 547(b).

## ARGUMENT

The Debtor's Adversary Complaint is based on Section 547 of the Bankruptcy Code.

Thus, the Debtor can prevail only if the Debtor is able to avoid the transfers at issue pursuant to

Section 547.[1]  Section 546(g), however, specifically excludes transfers "under or in connection

with" foreign exchange spot transactions from the reach of Section 547.

According to Section 546(g):

> Notwithstanding sections . . . 547 . . . of this title, the trustee may not avoid a
> transfer, made by or to (or for the benefit of) a swap participant . . ., under or in
> connection with any swap agreement and that is made before commencement of
> the case . . ..

11 U.S.C. § 546(g) (emphasis added).  The Code defines "swap participant" as "an entity that, at

any time before the filing of the petition, has an outstanding swap agreement with the debtor."

11 U.S.C. § 101(53C).  In turn, the Code defines "swap agreement," in part, as "(i) any

agreement, including the terms and conditions incorporated by reference in such agreement,

which is -- . . . (II) a spot, same day-tomorrow, tomorrow-next, forward, or other foreign

exchange, precious metal, or other commodity agreement." 11 U.S.C. §101(53B)(A)(i)(II).[2]

Because the term "swap agreement" includes spot foreign exchange agreements, and

because the agreements between Wachovia and the Debtor were spot foreign exchange

---

[1] Count III of the Debtor's Adversary Complaint is based on Section 550 of the Code, but because relief
can only be granted under Section 550 if the Court also avoids a transfer under Section 547, the Debtor
cannot succeed on Count III unless it is able to avoid the transfers pursuant to Section 547.

[2] The definition of "swap agreement" is even broader than defined in Section 101(53B)(A)(i)(II) since it
also includes "any agreement or transaction that is similar to any other agreement or transaction referred
to in this paragraph and that – . . . (II) is a . . . spot transaction on one or more . . . currencies . . .."
11 U.S.C. § 101(53B)(A)(ii)(II).

- 4 -

agreements, Wachovia is a "spot participant." And because Wachovia is a "spot participant," the prejudgment attachments were transfers made before the commencement of the Chapter 11 case by or to (or for the benefit of) a swap participant under or in connection with a swap agreement. Thus, Section 546(g) applies and the Debtor "may not avoid" the prejudgment attachments. 11 U.S.C. § 546(g). As a result, even if the Debtor could prove the elements of Section 547 (which Wachovia does not concede), under the Bankruptcy Code, the Debtor cannot avoid Wachovia's prejudgment attachments.

## CONCLUSION

For the reasons stated above, Wachovia respectfully requests that the Court enter judgment in favor of Wachovia and against the Debtor on the Debtor's Adversary Proceeding, and grant Wachovia such other and further relief as the Court deems just and proper.

Dated:  May 23, 2008           Respectfully submitted,

**WACHOVIA BANK, NATIONAL ASSOCIATION**

By:    */s/Pia N. Thompson*
         One of its attorneys
         Pia N. Thompson (ARDC No. 6225746)
         Michael S. Leib (ARDC No. 6243348)
         Reed Smith LLP
         10 South Wacker Drive, 40th Floor
         Chicago, IL  60606-7484
         Telephone:   (312) 207-1000
         Facsimile:   (312) 207-6400
         Email: pthompson@reedsmith.com

         and

         Edward J. Estrada
         Reed Smith LLP
         599 Lexington Avenue
         New York, NY  10022
         Telephone:   (212) 521-5400
         Facsimile:   (212) 521-5450
         Email: eestrada@reedsmith.com

CHILIB-2181038.1

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DEFENDANT'S LOCAL RULE 7056-1 STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Wachovia Bank, National Association ("Wachovia"), pursuant to Local Rule

7056-1, respectfully submits the following statement of material undisputed facts in support of

its Motion for Summary Judgment:

### Parties & Jurisdiction

1.      Wachovia is a national banking association with its principal place of business in

North Carolina and various offices in the United States and abroad. (Adv. Compl. ¶ 3; Wach.'s

Am. Ans. ¶ 3.)

2.      The Debtor, Casa de Cambio Majapara S.A. de C.V. (the "Debtor"), is a

corporation organized under the laws of Mexico. (Adv. Compl. ¶ 2; Wach.'s Am. Ans. ¶ 2.)

3.      This Court has jurisdiction over this matter as a core proceeding pursuant to 28

U.S.C. §§ 157(b)(2)(F) and 1334(b), applicable rules of the Court and other applicable orders of

the United States District Court of the Northern District of Illinois. (Adv. Compl. ¶ 4; Wach.'s Am. Ans. ¶ 4.)

    4.    The Debtor has asserted that venue is proper in this jurisdiction pursuant to 28 U.S.C. §§ 1408 and 1409. (Adv. Compl. ¶ 5.) Since Wachovia is without knowledge as to the location of the Debtor's principal assets in the United States in the one-hundred-and-eighty-day period immediately preceding commencement of the bankruptcy, Wachovia lacks knowledge or information sufficient to form a belief concerning the truth of the venue allegation. (Wach.'s Am. Ans. ¶ 5.)

## Relationship Between the Parties

    5.    In general, a foreign exchange transaction is a transaction in which one party agrees to deliver an agreed amount of one currency to a second party in exchange for the second party agreeing to deliver an agreed amount of a different currency to the first party. (Decl. of Andrew Gross ("Gross Decl.") ¶ 3.)

    6.    A foreign exchange spot transaction is a foreign exchange transaction in which the transaction is required to settle within two business days. (Gross Decl. ¶ 4.)

    7.    On or about December 5, 2007, Majapara and Wachovia agreed to a series of seven foreign exchange spot transactions, all of which were to settle on December 7, 2007 (the "FX agreements"). (Debtor's NDIL Am. Ans. ¶¶ 12, 13, attached as Exhibit 7 to Decl. of Michael S. Leib ("Leib Decl."); Gross Decl ¶ 5; FX agreement confirmations, attached as Exhibit 1 to Gross Decl.)

    8.    Pursuant to the FX agreements, Wachovia agreed to deliver an aggregate of € 26 million Euros to the Debtor in exchange for the Debtor delivering an aggregate of $38,132,700 to

Wachovia. (Debtor's NDIL Am. Ans. ¶ 12, attached as Exhibit 7 to Leib Decl.; Gross Decl. ¶ 6; FX agreement confirmations, attached as Exhibit 1 to Gross Decl.)

     9.     Pursuant to the FX agreements, on December 7, 2007, Wachovia delivered € 26 million Euros to the Debtor. (Debtor's NDIL Am. Ans. ¶ 13, attached as Exhibit 7 to Leib Decl.; Gross Decl. ¶ 7.)

     10.     The Debtor, however, failed to deliver the agreed upon $38,132,700 to Wachovia on December 7, 2007 as required under the FX agreements. (Debtor's NDIL Am. Ans. ¶ 13, attached as Exhibit 7 to Leib Decl.; Gross Decl. ¶ 7.)

## The Prejudgment Orders of Attachment

     11.     In an attempt to recover the amount owed to it under the FX agreements, on December 14, 2007, Wachovia filed an action against the Debtor in the United States District Court for the Southern District of New York styled Wachovia Bank, National Association v. Majapara Casa de Cambio S.A. de C.V., Case No. 07 Civ. 11230 (BSJ)(RLE) (the "New York Action"), and sought prejudgment attachment relief. Wachovia filed an Amended Complaint on December 17, 2007 restyling the action Wachovia Bank, National Association v. Casa de Cambio Majapara S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V. (Adv. Compl. ¶ 11; Wach.'s Am. Ans. ¶ 11; Mem. of Law in Support of Plaintiff's Application, attached as Exhibit 1 to Leib Decl.; Am. Compl., attached as Exhibit 2 to Leib Decl.; Gross Decl. ¶ 8.)

     12.     On December 20, 2007, Wachovia obtained an order of attachment in the New York Action. (Adv. Compl. ¶ 14 and Ex. B; Wach.'s Am. Ans. ¶ 14.)

     13.     On March 20, 2008, Wachovia filed a Motion in the New York Action against Garnishee Citibank, N.A. alleging that, pre-petition, it violated the New York order of

- 3 -

attachment by allowing the Debtor to withdraw $2,604,438.87. (Debtor's Mot. for Rule to Show Cause ¶ 6; Motion for Judgment, attached as Exhibit 3 to Leib Decl.)

14. In an attempt to recover the amount owed to it under the FX agreements, on December 14, 2007, Wachovia filed an action against the Debtor in the Circuit Court of Cook County, Illinois, Law Division styled Wachovia Bank, National Association v. Majapara Casa de Cambio S.A. de C.V. (with Harris, N.A. named as a Garnishee), Case No. 07 L 13958 (the "Cook County Action"), and sought prejudgment attachment relief. By Court order dated December 17, 2008, the caption was amended to read Wachovia Bank, National Association v. Casa de Cambio Majapara S.A. de C.V. a.k.a. Majapara Casa de Cambio S.A. de C.V. (with Harris, N.A. named as a Garnishee). (Adv. Compl. ¶ 12; Wach.'s Am. Ans. ¶ 12; Emergency Mot., attached as Exhibit 4 to Leib Decl.; 12/17/08 Court Order, attached as Exhibit 5 to Leib Decl.; Gross Decl. ¶ 8.)

15. On December 14, 2007, Wachovia obtained an order of attachment in the Cook County Action. On December 17, 2007, Wachovia obtained a supplemental order of attachment in the Cook County Action. (Adv. Compl. ¶ 13 and Ex. A; 12/17/07 Supplemental Order, attached as Exhibit 6 to Leib Decl.)

16. Wachovia served the Cook County order of attachment on Harris, N.A., where the Debtor had an account containing approximately $1.65 million, and, as a result, approximately $1.65 million was attached. (Adv. Compl. ¶¶ 7, 13; Wach.'s Am. Ans. ¶¶ 7, 13.)

Dated:  May 23, 2008                    Respectfully submitted,

                                        **WACHOVIA BANK, NATIONAL ASSOCIATION**

                                        By:  __/s/*Pia N. Thompson*_____
                                                One of its attorneys
                                                Pia N. Thompson (ARDC No. 6225746)
                                                Michael S. Leib (ARDC No. 6243348)
                                                Reed Smith LLP
                                                10 South Wacker Drive, 40th Floor
                                                Chicago, IL  60606-7484
                                                Telephone:    (312) 207-1000
                                                Facsimile:    (312) 207-6400
                                                Email: pthompson@reedsmith.com

                                                and

                                                Edward J. Estrada
                                                Reed Smith LLP
                                                599 Lexington Avenue
                                                New York, NY  10022
                                                Telephone:    (212) 521-5400
                                                Facsimile:    (212) 521-5450
                                                Email: eestrada@reedsmith.com

CHILIB-2180857.1

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DECLARATION OF ANDREW GROSS

I, Andrew Gross, declare under penalty of perjury as follows:

1.    I have personal knowledge of the facts contained herein and submit this declaration, pursuant to 28 U.S.C. § 1746, in further support of Wachovia Bank, National Association's ("Wachovia") Motion for Summary Judgment.

2.    I am the Head of Global Foreign Exchange for Wachovia.  I have been involved with foreign exchange transactions, including foreign exchange spot transactions, for 23 years and am intimately familiar with how the industry transacts business.

3.    In general, a foreign exchange transaction is a transaction in which one party agrees to deliver an agreed amount of one currency to a second party in exchange for the second party agreeing to deliver an agreed amount of a different currency to the first party.

4.    A foreign exchange spot transaction is a foreign exchange transaction in which the transaction is required to settle within two business days.

5.      On or about December 5, 2007, Casa de Cambio Majapara S.A. de C.V. (the "Debtor") and Wachovia agreed to a series of seven foreign exchange spot transactions, all of which were to settle on December 7, 2007 (the "FX agreements").

6.      Pursuant to the FX agreements, Wachovia agreed to deliver an aggregate of € 26 million Euros to the Debtor in exchange for the Debtor delivering an aggregate of $38,132,700 to Wachovia. A copy of confirmations of each of the seven FX agreements is attached hereto as Exhibit 1.

7.      Pursuant to the FX agreements, on December 7, 2007, Wachovia delivered € 26 million Euros to the Debtor. The Debtor, however, failed to deliver the agreed upon $38,132,700 to Wachovia on December 7, 2007 as required under the FX agreements.

8.      In an attempt to recover the amount owed to it under the FX agreements, on December 14, 2007, Wachovia filed suit against the Debtor in both Illinois and New York and sought prejudgment attachment relief.

**FURTHER AFFIANT SAYETH NOT.**

I declare under penalty of perjury that foregoing is true and correct.

Executed on May 22, 2008

_____
Andrew Gross

2

# EXHIBIT 1



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Date:                    December 11, 2007

Wachovia confirms the following:Spot Deal

Deal Source:          EFOREX

| | |
|---|---|
| Deal Number: | 8347911 |
| Sequence Number: | 0 |
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 5,000,000.00 EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 7,332,500.00 USD |
| Rate: | 1.46650000 |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:    5,000,000.00    EUR
                      Account Name:   BAYERISCHE LANDESBK-MUNICH,
                                      GERMANY
                      Account Number:
                      Payment Method: By Outgoing Wire Payment
                      Pay To:         BAYERISCHE HYPO-UND VEREINSBANK AG
                                      MUNICH GERMANY
                                      MUNICH GERMANY
                      Account:        /DE10700202705803611035
                      For Account Of: MAJAPARA CASA DE CAMBIO SA DE CV
                      Intermediary Bank:
                      Sender to Receiver Information:



                      Detailed Information:
                                      BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:    7,332,500.00    USD
                      Account number: PHILNY
                      Payment Method: By Incoming International Payment
                      Pay to:         WACHOVIA BANK N.A.-NEW YORK

---

**Notify Wachovia Immediately If Not In Agreement:**

---

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.

Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0875
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Date:  December 11, 2007

Wachovia confirms the following Spot Deal

Deal Source:  EFOREX

| | |
|---|---|
| Deal Number: | 8347951 |
| Sequence Number: | 0 |
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 1,000,000.00 EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 1,466,500.00 USD |
| Rate: | 1.46650000 |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:

1,000,000.00
Account Name:

EUR
BAYERISCHE LANDESBK-MUNICH,
GERMANY

Account Number:
Payment Method:
Pay To:

By Outgoing Wire Payment
BAYERISCHE HYPO-UND VEREINSBANK AG
MUNICH GERMANY
MUNICH GERMANY

Account:
For Account Of:
Intermediary Bank:
Sender to Receiver Information:

/DE10700202705803611035
MAJAPARA CASA DE CAMBIO SA DE CV

Detailed Information:

BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:

1,466,500.00
Account number:
Payment Method:
Pay to:

USD
PHILNY
By Incoming International Payment
WACHOVIA BANK N.A.-NEW YORK

## Notify Wachovia Immediately If Not In Agreement:

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.

Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Date:                    December 12, 2007

Wachovia confirms the following:Spot Deal                    Deal Source:          EFOREX

| | |
|---|---|
| Deal Number: | 8348101 |
| Sequence Number: | 0 |
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 2,000,000.00          EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 2,934,400.00          USD |
| Rate: | 1.46720000 |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:        2,000,000.00         EUR
                          Account Name:        BAYERISCHE LANDESBK-MUNICH,
                                               GERMANY

                          Account Number:
                          Payment Method:      By Outgoing Wire Payment
                          Pay To:              BAYERISCHE HYPO-UND VEREINSBANK AG
                                               MUNICH GERMANY
                                               MUNICH GERMANY
                          Account:             /DE10700202705803611035
                          For Account Of:      MAJAPARA CASA DE CAMBIO SA DE CV
                          Intermediary Bank:
                          Sender to Receiver Information:


                          Detailed Information:
                                               BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:        2,934,400.00         USD
                          Account number:      PHILNY
                          Payment Method:      By Incoming International Payment
                          Pay to:              WACHOVIA BANK N.A.-NEW YORK

Notify Wachovia Immediately If Not In Agreement:

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A..
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Date: December 11, 2007

Wachovia confirms the following:Spot Deal

Deal Source: EFOREX

Deal Number: 8347764
Sequence Number: 0

Trade Date: December 05, 2007
Value Date: December 07, 2007

MAJAPARA CASA DE CAMBIO - MEXICO buys: 5,000,000.00 EUR
MAJAPARA CASA DE CAMBIO - MEXICO sells: 7,333,000.00 USD
Rate: 1.46660000

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers: 5,000,000.00 EUR
Account Name: BAYERISCHE LANDESBK-MUNICH, GERMANY
Account Number:
Payment Method: By Outgoing Wire Payment
Pay To: BAYERISCHE HYPO-UND VEREINSBANK AG
MUNICH GERMANY
MUNICH GERMANY
Account: /DE1070020270580361035
For Account Of: MAJAPARA CASA DE CAMBIO SA DE CV
Intermediary Bank:
Sender to Receiver Information:

Detailed Information:
BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives: 7,333,000.00 USD
Account number: PHILNY
Payment Method: By Incoming International Payment
Pay to: WACHOVIA BANK N.A.-NEW YORK

Notify Wachovia Immediately If Not In Agreement:

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO                                        Date:            December 11, 2007
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal                          Deal Source:               DIRECT

Deal Number:                                              8347811
Sequence Number:                                          0

Trade Date:                                               December 05, 2007
Value Date:                                               December 07, 2007

MAJAPARA CASA DE CAMBIO - MEXICO buys:                    5,000,000.00        EUR
MAJAPARA CASA DE CAMBIO - MEXICO sells:                   7,338,000.00        USD
Rate:                                                     1.46760000

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:        5,000,000.00           EUR
                          Account Name:          BAYERISCHE LANDESBK-MUNICH,
                                                 GERMANY

                          Account Number:
                          Payment Method:        By Outgoing Wire Payment
                          Pay To:                BAYERISCHE HYPO-UND VEREINSBANK AG
                                                 MUNICH GERMANY
                                                 MUNICH GERMANY
                          Account:               /DE10700202705803611035
                          For Account Of:        MAJAPARA CASA DE CAMBIO SA DE CV
                          Intermediary Bank:
                          Sender to Receiver Information:



                          Detailed Information:
                                                 BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:        7,338,000.00           USD
                          Account number:        PHILNY
                          Payment Method:        By Incoming International Payment
                          Pay to:                WACHOVIA BANK N.A.-NEW YORK

┌─────────────────────────────────────────────────────────────┐
│ Notify Wachovia Immediately If Not In Agreement:              │
└─────────────────────────────────────────────────────────────┘

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Date:      December 11, 2007

Wachovia confirms the following: Spot Deal      Deal Source:      EFOREX

Deal Number:      8347860
Sequence Number:      0

Trade Date:      December 05, 2007
Value Date:      December 07, 2007

MAJAPARA CASA DE CAMBIO - MEXICO buys:      3,000,000.00      EUR
MAJAPARA CASA DE CAMBIO - MEXICO sells:      4,398,300.00      USD
Rate:      1.46610000

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:      3,000,000.00      EUR
     Account Name:      BAYERISCHE LANDESBK-MUNICH, GERMANY

     Account Number:
     Payment Method:      By Outgoing Wire Payment
     Pay To:      BAYERISCHE HYPO-UND VEREINSBANK AG
         MUNICH GERMANY
         MUNICH GERMANY
     Account:      /DE10700202705803611035
     For Account Of:      MAJAPARA CASA DE CAMBIO SA DE CV
     Intermediary Bank:
     Sender to Receiver Information:

     Detailed Information:
     BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:      4,398,300.00      USD
     Account number:      PHILNY
     Payment Method:      By Incoming International Payment
     Pay to:      WACHOVIA BANK N.A.-NEW YORK

## Notify Wachovia Immediately If Not In Agreement:

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO                      Date:              December 12, 2007
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal                      Deal Source:              EFOREX

Deal Number:                                8347871
Sequence Number:                            0

Trade Date:                                 December 05, 2007
Value Date:                                 December 07, 2007

MAJAPARA CASA DE CAMBIO - MEXICO buys:      5,000,000.00      EUR
MAJAPARA CASA DE CAMBIO - MEXICO sells:     7,330,000.00      USD
Rate:                                       1.46600000

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:        5,000,000.00          EUR
                          Account Name:         BAYERISCHE LANDESBK-MUNICH,
                                                GERMANY
                          Account Number:
                          Payment Method:       By Outgoing Wire Payment
                          Pay To:               BAYERISCHE HYPO-UND VEREINSBANK AG
                                                MUNICH GERMANY
                                                MUNICH GERMANY
                          Account:              /DE10700202705803611035
                          For Account Of:       MAJAPARA CASA DE CAMBIO SA DE CV
                          Intermediary Bank:
                          Sender to Receiver Information:


                          Detailed Information:
                                                BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:        7,330,000.00          USD
                          Account number:       PHILNY
                          Payment Method:       By Incoming International Payment
                          Pay to:               WACHOVIA BANK N.A.-NEW YORK

---

Notify Wachovia Immediately If Not In Agreement:

---

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DECLARATION OF MICHAEL S. LEIB

I, Michael S. Leib, declare under penalty of perjury as follows:

1. I have personal knowledge of the facts contained herein and submit this declaration, pursuant to 28 U.S.C. § 1746, in further support of Wachovia Bank, National Association's ("Wachovia") Motion for Summary Judgment.

2. I am one of Wachovia Bank, National Association's ("Wachovia") outside counsel and I represent Wachovia in this matter.

3. On December 14, 2007, Wachovia filed an action in the United States District Court for the Southern District of New York styled Wachovia Bank, National Association v. Majapara Casa de Cambio S.A. de C.V., Case No. 07 Civ. 11230 (BSJ)(RLE) (the "New York Action"). Wachovia filed an Amended Complaint on December 17, 2007 restyling the action Wachovia Bank, National Association v. Casa de Cambio Majapara S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V.

4. Attached hereto as Exhibit 1 is a true and accurate copy of Wachovia's Memorandum of Law in Support of Plaintiff's Application for a Temporary Restraining Order and Pre-Judgment Order of Attachment filed on December 14, 2007 in the New York Action.

5. Attached hereto as Exhibit 2 is a true and accurate copy of Wachovia's Amended Complaint filed on December 17, 2007 in the New York Action.

6. Attached hereto as Exhibit 3 is a true and accurate copy of Wachovia's Memorandum of Law in Support of Plaintiff's Motion for Judgment Against Non-Party Garnishee Citibank, N.A. filed on March 20, 2007 in the New York Action.

7. On December 14, 2007, Wachovia filed an action in the Circuit Court of Cook County, Illinois, Law Division styled Wachovia Bank, National Association v. Majapara Casa de Cambio S.A. de C.V. (with Harris, N.A. named as a Garnishee), Case No. 07 L 13958 (the "Cook County Action"). By Court order dated December 17, 2008, the caption was amended to read Wachovia Bank, National Association v. Casa de Cambio Majapara S.A. de C.V. a.k.a. Majapara Casa de Cambio S.A. de C.V. (with Harris, N.A. named as a Garnishee).

8. Attached hereto as Exhibit 4 is a true and accurate copy of Wachovia's Emergency Motion for Issuance of Order of Attachment

9. Attached hereto as Exhibit 5 is a true and accurate copy of the December 17, 2008 Court Order amending the caption of the Cook County Action.

10. Attached hereto as Exhibit 6 is a true and accurate copy of the December 17, 2008 Supplemental Order of Attachment entered by the Court in the Cook County Action.

11. Attached hereto as Exhibit 7 is a true and accurate copy of the Debtor's Amended Answer and Counterclaim filed in the United States District Court for the Northern District of Illinois after the Debtor removed the Cook County Action.

2

**FURTHER AFFIANT SAYETH NOT.**

I declare under penalty of perjury that foregoing is true and correct.

Executed on May 23, 2008

Michael S. Leib

# EXHIBIT 1

Jones, J.

Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450

Attorneys for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

WACHOVIA BANK, National Association,          :
                                              :
                             Plaintiff,       :          Civil Action No. _07_ Civ. _11230_
                                              :
              - against -                      :
                                              :
MAJAPARA CASA DE CAMBIO S.A. de C.V.,         :
                                              :
                             Defendants.      :
-------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT
### OF PLAINTIFF'S APPLICATION FOR A TEMPORARY
### RESTRAINING ORDER AND PRE-JUDGMENT ORDER OF ATTACHMENT

**REED SMITH LLP**
599 Lexington Avenue, 29th Floor
New York, New York 10022
(212) 521-5400

*Attorneys for Plaintiff*
*Wachovia Bank, National Association*

## PRELIMINARY STATEMENT

Plaintiff Wachovia Bank, National Association ("Wachovia" or "Plaintiff") submits this Memorandum of Law, along with the accompanying Declaration of Carlos A. Perez, dated December 13, 2007 ("Perez Decl."), and Declaration of Scott S. McKessy, dated December 13, 2007 ("McKessy Decl."), in support of its instant application, brought by Order to Show Cause, pursuant to Fed. R. Civ. P. 64, for a temporary restraining order and a pre-judgment order of attachment as to the assets of, and debts owed to, defendant Majapara Casa De Cambio S.A. de C.V. ("Majapara" or "Defendant").

Wachovia is a national bank. One of the services it afforded to its clients was a platform for engaging in foreign exchange spot transactions. Majapara is located in Mexico and engaged in the business of retail and wholesale foreign exchange. In foreign exchange spot transactions, entities agree to multi-million dollar currency exchanges that are to be settled on one or two days notice. As a result, the cornerstone of these transactions is trust. An entity engaging in foreign exchange spot transactions that fails to settle a transaction becomes untrustworthy, meaning two things: (1) that that entity is in dire financial straits; and (2) that that entity will never again engage in such transactions with any substantial institution.

Here, we have just that situation -- but made even worse by Majapara's subsequent conduct. On December 5, 2007, Majapara entered into foreign exchange contracts with Wachovia with the total value of all currency being exchanged exceeding $75 million (US$). The bulk of the transactions consisted of Wachovia delivering to Majapara approximately 26 million Euros in exchange for Majapara delivering to Wachovia approximately $38 million US Dollars. On December 7th, the parties were to have delivered their respective currencies to each other: **Wachovia did;** *Majapara did not.* Not only did Majapara renege on the foreign exchange contracts, it also decided to abscond with the more than 30 million Euros Wachovia transferred to it, and used those funds to payoff other obligations and make impermissible loans. Further, Majapara is a non-domiciliary with little known assets here in the United States, and has represented to Wachovia that it is now illiquid, cannot pay its debts as they come due, and has

threatened that Wachovia will not recover any money from Majapara if Wachovia enforces its rights against Majapara. This direct threat to frustrate recovery of any judgment only confirms that Majapara intends to take steps to secrete its assets from Wachovia's reach.

Consequently, the instant application for an award of a pre-judgment attachment and temporary restraints is desperately needed and should be granted for each of the following reasons:

- Attachment is proper under CPLR § 6201(1) as Majapara is a non-domiciliary foreign corporation not qualified to do business in the state;

- Attachment is proper under CPLR § 6201(3) as Majapara intends to remove assets from Wachovia's reach with the intention of frustrating the enforcement of an eventual judgment in favor of Wachovia; and

- Wachovia is more than likely to succeed on the merits of its claim for $24,711,845.00, while Majapara has no counterclaims against Wachovia.

## STATEMENT OF FACTS

The Court is respectfully referred to the accompanying Declaration of Carlos A. Perez, dated December 13, 2007, and the Complaint filed in this action, for a full and complete rendition of the applicable facts.

## ARGUMENT

## POINT I

## PLAINTIFF IS ENTITLED TO AN ORDER
## AWARDING PRE-JUDGMENT ATTACHMENT

Pursuant to Fed. R. Civ. P. 64, "at the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Consequently, this Court will look to New York State law governing the issuance of pre-judgment attachments. Thornapple Assocs., Inc. v. Sahagen, 2007 WL 747861, at *2 (S.D.N.Y. Mar. 12, 2007). Under New York law, orders of attachment are governed by Article 62 of New York's Civil Practice

Law and Rules ("CPLR").  CPLR § 6201 provides, in applicable part, that an order of attachment

may be granted under one of several statutorily enumerated circumstances including when:

> (1)    the defendant is a nondomiciliary residing without the state, or is a foreign
> corporation not qualified to do business in the state; or
>
> * * * *
>
> (3)    the defendant, with intent to defraud his creditors or frustrate the
> enforcement of a judgment that might be rendered in plaintiff's favor, has
> assigned, disposed of, encumbered or secreted property, or removed it from the
> state or is about to do any of these actions . . . .

Additionally, a plaintiff seeking a pre-judgment attachment must demonstrate: (1) that it

has one or more valid causes of action; (2) that it is probable that plaintiff will succeed on the

merits; and (3) that the amount demanded from the defendant exceeds all counterclaims known

to the plaintiff.  CPLR § 6212(a); Thornapple Assocs., 2007 WL 747861, at *2.  As set forth

below, Wachovia has demonstrated each of these elements entitling it to an order of attachment.

A.    **Wachovia is Entitled to an Order of Attachment Under CPLR § 6201(1)**

First, Wachovia is entitled to an order of attachment under CPLR § 6201(1).  As noted

above, a plaintiff is entitled to an order of attachment under CPLR § 6201(1) upon a showing

that "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not

qualified to do business in the state." CPLR §§ 6201(1).  Here, we have both: Majapara is a

Mexican entity (non-domiciliary) and is a foreign corporation not authorized to do business in

New York.  See Perez Decl. ¶ 5; Complaint ¶ 6.

Accordingly, CPLR § 6201(1) is satisfied two ways.  See, e.g., Thornapple Assocs., 2007

WL 747861, at *3 (holding that plaintiff satisfied CPLR § 6201(1) by demonstrating that

defendant was a Delaware company not registered to do business in New York); OSRecovery,

Inc. v. One Groupe Int'l, Inc., 305 F.Supp.2d 340, 348 (S.D.N.Y. 2004) ("The record before the

Court establishes that all of the corporate One Groupe Defendants are foreign corporations not

qualified to do business in New York . . . and that plaintiffs are likely to prevail against them.

They therefore are entitled to an order of attachment with respect to any assets of those

defendants in the State of New York."); Olbi USA, Inc. v. Agapov, 283 A.D.2d 227, 724
N.Y.S.2d 839, 840 (1st Dep't 2001) (reversing vacatur of order of attachment and holding that
plaintiff satisfied CPLR § 6201(1) by showing that defendant was a non-domiciliary and plaintiff
had a likelihood of success on the merits).

Some courts, however, although not required by the statute itself, have required a plaintiff
seeking an attachment under CPLR § 6201(1) against a foreign corporation or foreign individual
who is otherwise subject to personal jurisdiction in New York, to show that the defendant's
"financial position and conduct pose a significant risk of the enforcement of a future judgment."
Thornapple Assocs., 2007 WL 747861, at *5 (citing Ames v. Clifford, 863 F.Supp. 175, 177
(S.D.N.Y. 1994)).

Wachovia has satisfied this additional element too. As set forth in the Perez Decl.,
Majapara has conceded that it is now illiquid and has specifically threatened to make any
judgment obtained in court uncollectible. Moreover, Majapara's primary business is/was foreign
exchange transactions: based upon it becoming "less than trustworthy," it has effectively put
itself "out of business." Further, Majapara has conceded that it has used the $38,000,000 that it
failed to remit to Wachovia to improperly fund its other obligations and make impermissible
loans. Perez Decl. ¶¶ 13-21; Complaint ¶¶ 11-13. This conduct is not permitted and raises
serious questions about Majapara's integrity and intentions on keeping any of its assets in the
United States. Perez Decl. ¶ 4. Therefore, until Majapara's New York assets are attached, there
is more than a substantial risk that they will be transferred out of the jurisdiction, or country for
that matter, potentially preventing Wachovia from enforcing a judgment obtained in this action.

**B.     Wachovia is Entitled to an Order of Attachment Under CPLR § 6201(3)**

In addition, even if Majapara was a domiciliary of New York or authorized to do business
in the state -- neither of which is the case -- plaintiff would still be entitled to an order of
attachment under CPLR § 6201(3). In order to prevail under CPLR § 6201(3), a plaintiff must
demonstrate: (1) that the defendant has, or is about to conceal his or her property; and (2) that
defendant has acted or will act with the intent to defraud his or her creditors or to frustrate the

enforcement of a judgment for the plaintiff.  Capital Ventures Int'l v. Republic of Argentina, 443
F.3d 214, 219 (2d Cir. 2006); Societe Generale Alsacienne De Banque, Zurich v. Flemingdon
Development Corp., 118 A.D.2d 769, 772, 500 N.Y.S.2d 278, 281 (2d Dep't 1986).

As noted above, Majapara has demonstrated an overall intent to frustrate Wachovia's
efforts to collect a judgment in New York.  Majapara has conceded that it is illiquid, has failed to
settle its currency exchange transactions with Wachovia, and has refused to transfer the
remaining $24,711,845.00 owed to Wachovia, actions which will effectively prevent Majapara
from ever engaging in foreign exchange spot transactions again.  Perez Decl. ¶¶ 14-21;
Complaint ¶¶ 11-13.  Finally, Majapara concedes that it used Wachovia's currency to improperly
fund its other obligations and to make impermissible loans.  Perez Decl. ¶¶ 17-18.  Majapara's
actions, taken together, suggest a clear intention to transfer its remaining assets outside the
jurisdiction in order to keep true to its promise to frustrate any collection efforts by Wachovia.

Consequently, Wachovia is entitled to an order of pre-judgment attachment to prevent
Majapara from further frustrating its attempts to enforce a judgment in this action.  See, e.g.,
Arzu v. Arzu, 190 A.D.2d 87, 92, 597 N.Y.S.2d 322, 325 (1st Dep't 1993) (holding attachment
warranted "[i]n light of [defendant]'s patently incredible and almost entirely undocumented
explanation as to what happened to hundreds of thousands of dollars belonging to plaintiff . . .
."); Mineola Ford Sales Ltd. v. Rapp, 242 A.D.2d 371, 371–72, 661 N.Y.S.2d 281, 282 (2d Dep't
1997) (affirming order of attachment upon showing of, inter alia, diversion of funds rightfully
belonging to plaintiff).

## C.    Wachovia is Likely to Succeed on the Merits

In addition, Plaintiff will likely succeed on the merits of its claims.  As set forth in the
Perez Decl. and Complaint, on or about December 5, 2007, Majapara agreed to a series of seven
foreign exchange spot transactions worth over $38,000,000 with Wachovia, all of which were to
be settled on December 7, 2007.  Perez Decl. ¶ 13; Complaint ¶ 11.

Majapara, never delivered the money it promised and, instead, withheld over $38,000,000
in currency owed to Wachovia.  Perez Decl. ¶ 14; Complaint ¶¶ 12, 19.  To date, Majapara has

failed to return the money rightfully belonging to Wachovia, but, instead, has improperly used Wachovia's funds to payoff its other obligations and to make impermissible loans to other entities. Accordingly, Wachovia has demonstrated a more than likelihood of success on the merits of its claims. See, e.g., Tampimex Oil Ltd. v. Latina Trading Corp., 558 F. Supp. 1201, 1203-04 (S.D.N.Y. 1983); Russian-Brazilian Holdings, Inc. v. Saraev, 197 A.D.2d 391, 391–92 602 N.Y.S.2d 352, 353 (1st Dep't 1993).

D.    **Wachovia Is Seeking Over $24,000,000.00 in Damages, While Defendant Has No Counterclaims**

Finally, the amount that Wachovia demands in the Complaint clearly exceeds any potential counterclaims to be asserted by Majapara. As set forth in the Complaint, Wachovia has suffered over $24,000,000.00 in damages, while Majapara has not expressed any intent to assert -- nor can it assert -- any viable counterclaims in this action. Under these circumstances, the final requirement of CPLR Article 62 is satisfied. See, e.g., Capital Ventures Int'l, 443 F.3d at 219 ("There was no evidence of any counterclaims against CVI, much less any that would exceed the $ 111 million demanded from Argentina.").

### POINT II

**A TEMPORARY RESTRAINING ORDER MUST BE ENTERED TO PRESERVE THE STATUS QUO PENDING DETERMINATION OF PLAINTIFF'S MOTION**

A temporary restraining order is required to preserve the status quo pending determination of Wachovia's motion for an order of attachment. As noted above, Majapara has conceded that it is illiquid, has already attempted to remove certain funds from its Wachovia accounts, and its actions have effectively caused itself to go out of business. Unless immediately restrained pending a determination of Wachovia's motion, Majapara is likely to attempt to remove its remaining assets from the jurisdiction, potentially rendering a judgment in this action ineffectual. Under these circumstances, courts have determined that temporary restrains prior to any determination on the application for attachment are appropriate. See, e.g., Experience Hendrix, LLC v. Chalpin, 461 F. Supp. 2d 165, 174 (S.D.N.Y. 2006); Sierra USA

Communications, Inc. v. Int'l Telephone & Satellite, Corp., 14 Misc.3d 528, 530, 824 N.Y.S.2d 560, 561 (Sup. Ct. N.Y. Co. 2006); New York Janitorial Service, Inc. v. Easthampton Dewitt Corp., 100 Misc. 2d 814, 816, 420 N.Y.S.2d 100, 101–02 (Sup. Ct. Onondaga Co. 1979).

## CONCLUSION

For the foregoing reasons and those set forth in the accompanying Perez Decl., McKessy Decl., and the Complaint, Wachovia's motion for a temporary restraining order and order of attachment should be granted in its entirety, along with such other and further relief as the Court deems just, proper, and equitable.

Dated:    New York, New York
           December 14, 2007

                REED SMITH LLP

                By: _____
                    Scott S. McKessy
                    Casey D. Laffey
                599 Lexington Avenue
                New York, New York 10022
                Tel. (212) 521-5400
                Fax. (212) 521-5450

                *Attorneys for Plaintiff*
                *Wachovia Bank, National Association*

# EXHIBIT 2

Scott S. McKessy (SM-5479)
Casey Laffey (CL-1483)
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450

# ORIGINAL

Attorneys for Plaintiff Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

WACHOVIA BANK, NATIONAL ASSOCIATION,     :    07 Civ. 11230 (BSJ)(RLE)

         Plaintiff,    :

   - against -    :    **AMENDED COMPLAINT**

CASA DE CAMBIO MAJAPARA S.A. de C.V a/k/a    :
MAJAPARA CASA DE CAMBIO S.A. de C.V.,    :

         Defendant.    :

----------------------------------------------------------------------X

       Plaintiff, Wachovia Bank, National Association ("Wachovia"), by its attorneys, Reed

Smith LLP, as and for its complaint against the defendant Case de Cambio Majapara S.A. de

C.V. a/k/a Majapara Casa de Cambio S.A. de C.V. ("Majapara"), alleges as follows:

### PRELIMINARY STATEMENT

       1.      This action arises from Majapara's misappropriation of over $38 million (US$) of

Wachovia's money relating to a series of foreign exchange spot transactions between the parties.

Foreign exchange spot transactions, due to their frequency, the speed at which the transactions

are agreed and closed, and the manner in which funds are simultaneously exchanged, are

founded upon trust. Majapara, however, abused that trust -- a trust that was established through

years of currency trading with Wachovia -- to plunder more than $38 Million from Wachovia.

And this is not a mere renege on a multi-million dollar transaction wherein Majapara returned

Wachovia's property when it realized it could not complete the foreign currency exchange.

Subsequent conversations with Majapara make apparent that it never intended to honor its commitments but, instead, had decided to wrongfully keep Wachovia's money and abscond with it. In these after-the-fact conversations, Majapara admitted to Wachovia that it was illiquid, that it had engaged in illicit activities in relation to its foreign exchange transactions and threatened that, if Wachovia took any steps to enforce its rights, Wachovia's judgment would be uncollectible. Through this action, Wachovia seeks a judgment against Majapara, in an amount not less than $24,711,845.00, plus prejudgment interest.

## VENUE/JURISDICTION

2.      This Court has personal jurisdiction over Majapara pursuant to CPLR §§ 301 and 302(a) as Majapara has been transacting business in this State since 2000, the transactions being sued upon herein occurred in the State of New York, and defendant breached the parties' agreement here in New York by failing to wire the required funds, as agreed, to Wachovia's New York account. Defendant has also contractually agreed to be sued in this jurisdiction.

3.      Venue in this district is proper under 28 U.S.C. § 1391(a).

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action involves a controversy that exceeds $75,000, exclusive of interests and costs, and involves a citizen of a State and a citizen of a foreign state.

## PARTIES

5.      Wachovia is a national banking association, organized under the laws of the United States, with its principal place of business in Charlotte, North Carolina. Wachovia maintains offices in New York.

6.      Upon information and belief, Majapara is a Mexican corporation with its principal place of business in Mexico City, Mexico.

2

## FACTS COMMON TO ALL COUNTS

### The Majapara Relationship With Wachovia

7.      In the late 1990's, Majapara and First Union National Bank ("First Union"), a predecessor to Wachovia, agreed to enter into foreign exchange transactions together. In these transactions, Majapara would agree to purchase from First Union a certain amount of one currency in exchange for Majapara selling to First Union a certain amount of another currency at the applicable exchange rate.

8.      In order to facilitate Majapara and First Union entering into these currency exchange transactions, on or about April 6, 2000, Majapara and First Union entered into a First Union Online FX Subscription Agreement (the "FX Subscription Agreement"), a copy of which is attached hereto as Exhibit A. Pursuant to the FX Subscription Agreement, Majapara was permitted to execute foreign exchange transactions electronically with First Union through First Union's foreign exchange website. This, however, was not the exclusive method for the parties to enter into these foreign exchange spot transactions. This FX Subscription Agreement is governed by New York law. See Exhibit A, ¶ 6.

9.      Effective April 1, 2002, Wachovia merged into and under the charter of First Union with the resulting title of Wachovia Bank, National Association. As a result of the merger, First Union changed its name to Wachovia Bank, National Association.

10.      In some of the foreign exchange transactions between Majapara and Wachovia, Wachovia would deliver currency to Majapara on the same day that Majapara transferred another currency into a Majapara account held at Wachovia's New York Branch ("Majapara NY Account"). Wachovia would then debit the currency from the Majapara NY Account. The authorization for this procedure was documented in a December 10, 2003 letter (in Spanish)

3

from Majapara to Wachovia Bank, a copy of which is attached as Exhibit B, which reads (as translated into English): "In relation to the transactions done with yourselves through Online FX; we authorize you to debit and credit our account number NY2000192304201 held with yourselves." In or about March 2006, Majapara signed a Debit and Netting Agreement that gave Wachovia the same authority to credit and debit the same Majapara NY Account held at Wachovia's New York Branch. A copy of this document is attached as Exhibit C.

### The Foreign Exchange Transactions At Issue

11.    On or about December 5, 2007, Majapara and Wachovia agreed to a series of seven (7) transactions, all of which were to settle on December 7, 2007, whereby Wachovia would deliver an aggregate 26 million Euros to Majapara and Majapara would deliver an aggregate $38,132,700 to Wachovia. In a departure from the process described in paragraph 10 above, on these transactions, Majapara agreed to transfer dollars directly to a Wachovia account located in New York. Six (6) of the transactions were executed on Wachovia's foreign exchange internet website. One (1) of the transactions was executed over the telephone. Copies of the confirmations for these transactions are attached hereto as Exhibit D.

12.    Pursuant to these seven (7) foreign exchange agreements, on December 7, 2007, Wachovia delivered 26 million Euros to Majapara. Majapara failed to deliver the agreed upon $38,132,700.00 to Wachovia, as required, on December 7, 2007.

13.    On or about December 11, 2007, the General Director of Majapara admitted that Majapara had been obligated to provide the agreed upon currency to Wachovia.

14.    Wachovia was able to secure $13,420,155, which was in Majapara's accounts at Wachovia, but has not been able to recover the remaining amount Wachovia is owed. Some of the amount recovered represents conditional credit that may be subject to reduction by reason of

return of the items (in this case, checks) for which this credit was given (see Paragraph 15 below).

15.    Majapara also maintains five (5) U.S. dollar accounts at Wachovia. As to each of these accounts, Wachovia has contingent residual exposure to cover returned items in the federal check clearing program. Majapara is obligated to reimburse Wachovia for these amounts, but has now stated it is unable to and will not meet its financial obligations. This liability has averaged $3.3 million per month for the last several months.

16.    By opening an account at Wachovia, Majapara agreed to Wachovia's Terms & Conditions for Global Financial Institutions, which, under its terms, is governed by and construed in accordance with the laws of New York and pursuant to which, Majapara agreed to submit to the jurisdiction of the courts located in Manhattan, New York.

## COUNT I

### (Breach of Contract)

17.    Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

18.    As set forth above, Wachovia entered into a series of currency exchange agreements with Majapara.

19.    Majapara breached those agreements by failing to deliver the currency as agreed upon by the parties.

20.    Wachovia has fulfilled its obligations under the agreements.

21.    As a result of Majapara's breaches, Wachovia has suffered damage in the amount of not less than $24,711,845.00, plus interest.

## COUNT II

### (Promissory Estoppel – Alternate Count)

22.     Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

23.     In the event it is found that no oral or written contract existed between Majapara and Wachovia in relation to the seven (7) foreign exchange spot transactions at issue here, equity requires Majapara to pay Wachovia not less than $24,711,845.00 in return for accepting currency from Wachovia.

24.     Majapara promised to deliver certain currency to Wachovia in return for Wachovia delivering certain currency to Majapara.

25.     In reliance on Majapara's agreement to deliver certain currency to Wachovia, Wachovia delivered approximately $38 million worth of currency to Majapara.

26.     Wachovia has requested the funds from Majapara.

27.     To date Majapara has not provided the required currency to Wachovia.

28.     Wachovia, however, has been able to obtain certain Majapara funds and offset the amount owed by $13,420,155.00 (subject to reduction for the reasons set forth in Paragraph 14 of the recitals above).

29.     Wachovia has no adequate remedy at law.

30.     As a result, Majapara has been unjustly enriched to the detriment of Wachovia.

## COUNT III

### (Unjust Enrichment – Alternate Count)

31.     Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

32.     In the event it is found that no oral or written contract existed between Majapara and Wachovia in relation to the seven (7) foreign exchange transactions at issue here, equity

6

would still require Majapara to pay Wachovia an amount not less than $24,711,845.00 in return for accepting currency from Wachovia.

33. Majapara promised to deliver certain currency to Wachovia in return for Wachovia delivering certain currency to Majapara.

34. In reliance on Majapara's agreement to deliver certain currency to Wachovia, Wachovia delivered approximately $38 million worth of currency to Majapara.

35. Majapara did not deliver any currency to Wachovia.

36. Wachovia, however, has been able to obtain certain Majapara funds and offset the amount owed by $13,420,155.00 (subject to reduction for the reasons set forth in Paragraph 14 of the recitals above).

37. Wachovia requested that Majapara deliver the currency it is owed.

38. To date, Majapara has neither delivered the required currency to Wachovia, nor returned return the currency Wachovia sent to it.

39. Majapara has unjustly retained this benefit to the detriment of Wachovia.

40. Majapara's retention of this benefit violates fundamental principles of justice, equity and good conscience.

41. Wachovia has no adequate remedy at law.

## COUNT IV

### (Fraud)

42. Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

43. As set forth above, on or about December 5, 2007 Majapara and Wachovia entered into a series of seven (7) currency exchange transactions.

7

44.    Pursuant to the parties' agreement, in exchange for the receipt of 26 million Euros from Wachovia, Majapara agreed to deliver $38,132,700 to Wachovia.

45.    Upon information and belief, at the time Majapara entered into the December 5, 2007 agreement it knew it was illiquid and insolvent and incapable of performing its obligations under the parties' agreement.

46.    Notwithstanding its knowledge, Majapara represented to Wachovia that it would deliver $38,132,700.00 (US$) to Wachovia to settle the transactions. Upon information and belief, at the time of the transaction, Majapara knew it would not deliver the required currency and was acting under a present intent to deceive Wachovia and abscond with its funds. Its representations to Wachovia were false and materially misleading.

47.    Majapara's fraudulent intent was confirmed in conversations Wachovia subsequently had with representatives of Majapara.

48.    For example, on or about December 13, 2007, Carlos A. Perez, a Managing Director of Wachovia, spoke with Jorge Ortiz, the Chairman and CEO of Majapara by telephone, and Mr. Ortiz acknowledged that Majapara, prior to settlement of the transactions, knew that it was experiencing "a liquidity crisis."

49.    When Mr. Perez confronted Mr. Ortiz concerning the transaction and the illegality of Majapara's actions, Mr. Ortiz responded, "I recognize that I have done something that is not permitted."

50.    Overall, due to Majapara's "liquidity crisis" and other impermissible activities relating to its currency transactions, Majapara did not have sufficient funds to complete the exchange with Wachovia. Majapara nonetheless accepted Wachovia's funds, knowing that it would be incapable of repaying the funds to Wachovia.

8

51.     Majapara then claimed to have used some or all of the Wachovia funds to engage in impermissible lending transactions and otherwise dissipated the assets received from Wachovia, all the while failing to fulfill its immediate obligations to transfer over $38 million to Wachovia.

52.     Wachovia entered into the transactions and delivered 26 million Euros to Majapara in reasonable reliance upon Majapara's representations that it was going to deliver the requisite currency.

53.     As a result of Majapara's fraud, Wachovia has been damaged in an amount to be determined at trial, but not less than $24,711,845.00.

## COUNT V

### (Breach of Contract/Anticipatory Breach)

54.     Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

55.     As set forth above, Majapara also maintains five (5) US dollar accounts at Wachovia. Under these accounts, Wachovia has contingent residual exposure to cover returned items in the federal check clearing program -- this contingent liability is a continuing concern. In this regard, Wachovia is entitled to immediate reimbursement from Majapara for the amounts Wachovia is required to pay out.

56.     Over the last several months, this liability has averaged $3.3 million per month.

57.     So far this month, Wachovia has already had to cover certain residual liabilities for which Majapara, in breach of its agreements with Wachovia, has not reimbursed Wachovia. As a result, Majapara breached the parties' agreement and is indebted to Wachovia.

58.     Additionally, Majapara has already stated to Wachovia that it is illiquid and unable to satisfy its obligations owed to Wachovia. Accordingly, Majapara has anticipatorily

9

breached its agreements with Wachovia by stating it will not be immediately reimbursing Wachovia for these obligations now or when they come due.

59. Wachovia has performed all of its obligations under its agreements with Majapara.

60. Consequently, Wachovia has been damaged by Majapara's breach of the parties' agreement and will continue to be damaged by Majapara's anticipatory breach of the parties' agreement in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment as follows:

(i) On the First, Second, Third, and Fourth Causes of Action, monetary damages in an amount to be determined at trial, but not less than $24,711,845.00, plus prejudgment interest;

(ii) On the Fifth Cause of Action, monetary damages in an amount to be determined at trial, plus prejudgment interest;

(iii) An award of costs, expenses and attorneys fees attendant to this action; and

(iii) Such other further and different relief as this Court deems just and proper.

Dated: New York, New York
December 17, 2007

REED SMITH LLP

By: _____
Scott S. McKessy (SM-5479)
Casey Laffey (CL-1483)
599 Lexington Avenue
New York, NY 10022
(212) 521-5400

*Attorneys for Plaintiff*
*Wachovia Bank, National Association*

10

# Exhibit

# A



# FIRST UNION ONLINE FX SUBSCRIPTION AGREEMENT

This First Union Online FX Subscription Agreement ("*Agreement*") sets forth the terms and conditions on which the party identified on the signature page hereof as the Subscriber ("*Subscriber*") may execute foreign exchange transactions with First Union National Bank ("*FUNB*") over the Internet ("*Online Transactions*") through FUNB's foreign exchange website currently operating at http://www.firstunion.com/capitalmarkets/fx ("*FX Website*"). This Agreement is not intended to preclude the parties from entering into foreign exchange transactions with each other in any other manner. Subject to the terms and conditions of this Agreement, Subscriber and FUNB agree as follows:

## 1.  Internet Access

In order for Subscriber to communicate with FUNB through the FX Website, Subscriber shall be responsible for (i) arranging its own access to the Internet through such providers of telephonic, wireless, and/or Internet access services as it deems necessary or desirable, and (ii) all costs and expenses associated with such services, including connection charges.  FUNB shall not be responsible for any acts or omissions of any of such Subscriber's service providers in the course of transmitting, receiving, handling or storing communications between Subscriber and FUNB or otherwise.

## 2.  FX Website Access

(a) In order for Subscriber to communicate with FUNB through the FX Website, one or more of Subscriber's officers or employees designated by Subscriber (each, a "*User*") will be issued a unique digital certificate ("*Digital Certificate*") to be stored on the web browser of a personal computer intended to be used by the User to carryout his/her functions for Subscriber, together with a User Identification number ("*ID*") and a unique personal password ("*Password*"). Each Digital Certificate is unique to the User, and if a User wishes to use more than one computer or browser to access the FX Website, the User must request an additional Digital Certificate for each such computer or browser. FUNB reserves the right to limit the number of Digital Certificates issued to Subscriber and its Users. Subscriber agrees that, before any User is provided with any Digital Certificate, that User will have (i) requested from the First Union National Bank Certificate Authority ("*FunbCA*"), and completed the process necessary to receive, a Digital Certificate (including the use of "shared secrets" with FUNB and any other security measures which the FunbCA may require to validate the User's identity) and (ii) accepted the terms and conditions of the Digital Certificate Documents. "*Digital Certificate Documents*" means the First Union National Bank Certificate Authority Subscriber Agreement ("FunbCA Subscriber Agreement"), which is presented to and agreed to by User during the online Digital Certificate application process, and each document that the FunbCA Subscriber Agreement incorporates by reference. The Digital Certificate Documents will govern each Digital Certificate and its use and be binding upon the Subscriber and that User in his/her individual capacity, and for that purpose the term "Subscriber" in the FunbCA Subscriber Agreement shall be deemed to refer to each of the Subscriber and the User, respectively. This Agreement is the "Master Agreement" referred to in the FunbCA Subscriber Agreement. Nothing in this Agreement is intended to supersede, modify, limit, or restrict anything contained in the Digital Certificate Documents, and in the event of any inconsistency between the provisions of this Agreement relating to the Digital Certificate and the provisions of the Digital Certificate Documents, the FunbCA Subscriber Agreement will prevail. The rights and obligations of Subscriber and FUNB under this Agreement and the Online Transactions (or any other transactions between the parties) are not conditioned on either party's compliance with anything contained in the Digital Certificate Documents.

(b) Subscriber acknowledges that, after a User has received a Digital Certificate, Password and ID from the FunbCA, anyone who uses the Digital Certificate belonging to that User together with that User's Password and ID will be able to access and use the FX Website on behalf of Subscriber as contemplated by this Agreement. Accordingly, Subscriber shall not allow anyone to use a Digital Certificate, Password or ID belonging to a User other than the User who has received the same from the FunbCA. Subscriber hereby authorizes FUNB to deliver a temporary password to each User for the initial login to the FX Website for the purposes of applying for a Digital Certificate and to establish a permanent Password and ID. The Subscriber shall inform FUNB immediately when a User is no longer authorized to use the FX Website. Subscriber shall be solely responsible for controlling, and preventing any unauthorized use of, each Digital Certificate, Password and ID, and Subscriber shall be liable for any and all Online Transactions and account debits, credits and transfers resulting from, or occurring in response to, any electronic transmission, instruction, signal, entry or other communication to FUNB through the FX Website made using any Digital Certificate, Password and ID, whether or not it was authorized by Subscriber, was initiated by a User or resulted from an error in entering any information or command, and all such communications shall be deemed to have been sent by Subscriber for purposes of this Agreement.

(c) FUNB reserves the right, at any time and from time to time, for any reason or no reason, and without notice, to upgrade, modify, suspend, discontinue, or terminate the FX Website or to revoke any Digital Certificate, Password or ID, or to deny Subscriber and its Users access to the FX Website or any part thereof, and the respective rights and obligations of Subscriber and FUNB under the Online Transactions (or any other transactions between the parties) shall not be impaired or otherwise affected by such action.  In addition, FUNB may require Subscriber to replace or erase any Digital Certificate or change any Password or ID at any time.

1


### 3. Procedures for Entering into Online Transactions

(a) To initiate any Online Transaction with FUNB through the FX Website, Subscriber must make certain entries regarding the financial particulars of the proposed Online Transaction on the appropriate screen displays of the FX Website in accordance with instructions provided in FUNB's "Online FX User's Guide", including currency codes, currency amounts, and the side of the currency exchange Subscriber is taking. It shall be the responsibility of Subscriber that each User will have received, read and understood the Online FX User's Guide prior to that User using the FX Website. FUNB reserves the right to revise or replace the Online FX User's Guide without Subscriber's consent by delivering to Subscriber a copy of the revision or replacement.

(b) When the requisite entries have been made to initiate an Online Transaction, then the FX Website will display an exchange rate for the proposed Online Transaction ("*Exchange Rate*"), subject to a time-out function. Subscriber may accept or reject the Exchange Rate by making the appropriate entry on the FX Website before it is timed-out, or otherwise reject the Exchange Rate by allowing it to be timed-out. By entering its acceptance of the Exchange Rate before it is timed-out, Subscriber will be deemed to have made an offer to FUNB for the proposed Online Transaction at that Exchange Rate. Upon FUNB's issuance through the FX Website of a deal confirmation number for that Online Transaction, FUNB will be deemed to have accepted such offer and a contract for such Online Transaction shall be deemed to have been entered into by Subscriber and FUNB. If FUNB does not issue a confirmation number for the proposed Online Transaction through the FX Website, Subscriber's offer to enter into the proposed Online Transaction shall be deemed rejected and no contract for the proposed Online Transaction will have been formed. The FX Website Records shall be conclusive and binding on the parties with respect to the foregoing. "*FX Website Records*" means the books and records of FUNB (in electronic form or otherwise) as they relate to the FX Website, including any stored on or generated by any computer system, hardware or software or any other system, facility or service on which the FX Website directly or indirectly operates ("*Operating System*"), whether such Operating System is owned by FUNB or by any independent contractor or supplier engaged by FUNB (or an affiliate of FUNB) in order for the FX Website to operate ("*System Supplier*").

(c) Once a confirmation number for an Online Transaction has been issued by FUNB through the FX Website, Subscriber may not (i) withdraw, cancel, or amend its offer for that Online Transaction, or (ii) without the prior written consent of FUNB, amend the terms of that Online Transaction. Subscriber acknowledges that a confirmation number may be issued instantly when an Exchange Rate has been accepted, and that Online Transactions bind it as principal for its own account.

(d) Exchange Rates quoted to Subscriber may be different from those which FUNB may quote to any of its other customers, and no representation or warranty is made that any Exchange Rate is the best price available to Subscriber. FUNB reserves the right at any time, without notice, to not quote an Exchange Rate to Subscriber, or to not issue a confirmation number, for any proposed Online Transaction for any reason or no reason.

### 4. Terms and Conditions of Online Transactions

(a) The terms and conditions of each Online Transaction entered into by FUNB and Subscriber shall be evidenced by this Agreement and the FX Website Records. In addition, if Subscriber and FUNB are parties to any agreement governing any foreign exchange transactions (including any ISDA Master Agreement published by the International Swaps and Derivatives Association, Inc.), then this Agreement shall be supplemental to that agreement, and the Online Transactions shall be subject to its terms and conditions (except when they are contrary to the provisions hereof, this Agreement will govern, and for that purpose any procedures for executing or confirming transactions specified in that other agreement shall be disregarded with respect to the Online Transactions).

(b) Each Online Transaction involves the Subscriber's purchase from FUNB of one currency ("*Bought Currency*") in exchange for Subscriber's sale to FUNB of another currency ("*Sold Currency*") at the applicable exchange rate. For each Online Transaction, Subscriber shall deliver to FUNB the required amount of Sold Currency on the date the parties enter into that Online Transaction regardless of the value date specified for that Online Transaction. Upon FUNB's receipt of the required amount of Sold Currency, FUNB shall deliver to Subscriber the required amount of Bought Currency on the value date of that Online Transaction. For each Online Transaction, the delivery of any currency to either party shall be made to a reasonably acceptable bank account as such party shall have specified in delivery instructions for that Online Transaction either (i) on the FX Website, or (ii) if not so specified, then by written notice.

(c) If the delivery of any Bought Currency or Sold Currency cannot be made because the value date of the relevant Online Transaction is not a day on which banks in the relevant place of receipt settle foreign exchange in the relevant currency, the value date thereof shall be the next following day on which such settlement can be made. In addition, whenever the same currency is due by both parties on the same day under two or more foreign exchange transactions (whether or not any is an Online Transaction), then the delivery obligations of the parties on that day in that currency for those foreign exchange transactions will be discharged automatically, and if one party's delivery obligation in that currency would have been greater, replaced by an obligation of such party to deliver the difference to the other party.

2

(d) Subscriber acknowledges that currency exchange rates are highly volatile and impossible to predict, that the value of a currency relative to another currency can rise and fall substantially over short periods, that Subscriber understands those risks and the consequences of entering into the Online Transactions through the FX Website (whether financial, accounting, tax, legal, or otherwise) based upon its own evaluation of the Online Transactions or upon the advice of its professional advisors, that neither FUNB nor any of its affiliates is acting as an agent, broker, advisor or fiduciary of, or a joint venturer with, Subscriber in any respect in connection with the Online Transactions or the FX Website, regardless of whether FUNB acts as an advisor or fiduciary to Subscriber on other matters or provides Subscriber from time to time with market information, views or recommendations.

### 5. Confidentiality & Restriction on Use

(a) Subscriber acknowledges that the FX Website, the Operating System and all programs, files, data or other information stored, contained, or operating at, in or through, the FX Website or Operating System are the exclusive property of FUNB or a System Supplier, that other foreign exchange customers of FUNB will be using the FX Website to conduct their own transactions with FUNB, and that Subscriber agrees for the respective benefits of FUNB and each System Supplier that neither Subscriber nor any User will (i) access or use the FX Website or the Operating System for any purpose other than as a facility through which Online Transactions may be conducted; (ii) alter or interfere with the FX Website, the Operating System or any of the programs, files, data or other information stored, contained, or operating at, in or through, the FX Website or the Operating System; (iii) sell any information obtained from or through the FX Website or the Operating System, including any Exchange Rate; (iv) use any such information for any purpose other than to consider, evaluate, propose, enter into, review or otherwise conduct Online Transactions, or (v) disclose any such information to any third party, except Subscriber may make any such disclosure (1) to Associated Persons, (2) as required by law, or (3) pursuant to any legal or regulatory process, action or proceeding, whether Subscriber is responding thereto or has initiated the same to protect its interests or enforce its rights. "Associated Persons" means the affiliates, directors, officers, employees, agents, advisors, auditors, attorneys, and regulators of Subscriber and those of its affiliates.

(b) Subscriber further acknowledges and agrees that any Operating System owned by a System Supplier may capture any or all data generated by any electronic transmission, instruction, signal, entry or other communications to FUNB through the FX Website, that therefore such System Supplier will have access to information concerning Subscriber's Online Transactions and its FX Website activities, and that such System Supplier is authorized to disclose any or all data captured by the Operating System provided it does so without disclosing the names of FUNB's customers.

### 6. General Terms

This Agreement shall be binding upon and inure to the exclusive benefit of the parties hereto and their respective successors and permitted assigns, shall be governed by the law (and not the law of conflicts) of the State of New York, may be amended only by written agreement of the parties, and, except as otherwise provided herein, is the entire agreement and understanding of the parties as to its subject matter. Rights and remedies hereunder are cumulative and not exclusive of any available either by law or under any other written agreement between the parties; any failure or delay in exercising any right or remedy is not a waiver thereof; a single or partial exercise of any right or remedy will not preclude any further exercise thereof; and any purported transfer of rights or obligations under this Agreement without the other party's written consent is void.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date hereof. This Agreement is dated as of
APRIL 6, 2000

FIRST UNION NATIONAL BANK

By: _Alicia Rodriguez_

Name: Alicia Rodriguez
Title: Assistant Vice President

SUBSCRIBER:
CASA DE CAMBIO MAJAPARA SA. CV.
[NAME OF PARTY]

By: _____

Name:
Title:

5

# Exhibit

# B



México D.F. A 10 DE DICIEMBRE DEL 2003.

## WACHOVIA BANK

### AT'N: WALLY

EN RELACION A LAS OPERACIONES QUE PACTAMOS CON USTEDES TRAVES DEL ONLINE-FX; LES AUTORIZAMOS A CARGAR Y ABONAR NUESTRA CUENTA EN USD NUMERO NY2000192304201 QUE MANTENEMOS CON USTEDES .

AGRADECEMOS SU ATENCION.

CASA DE CAMBIO MAJAPARA SA DE CV

# Exhibit
# C

## Debit and Netting Authorization

This Debit and Netting Authorization applies to all Exchange Transactions between the undersigned ("Customer") and Wachovia Bank, N. A. ("Wachovia") and is effective upon the execution and delivery hereof by the undersigned Customer.

"Exchange Transactions" are any of the following transactions (present or future) between Customer and Wachovia (whether denominated in U.S. dollars or any other currency): interest rate swap transactions; interest rate option transactions (including any interest rate caps, collars or floors); spot or forward foreign exchange transactions; currency swap transactions; currency and interest rate swap transactions; cross-currency interest rate swap transactions; currency option transactions; any similar transactions, whether the settlement thereof is by an exchange of currencies, a payment in one currency (U.S. dollars or another currency), or otherwise; and any transactions which are either combinations of, or options on or relating to, any of the foregoing.

Account Debits & Credits. Customer hereby authorizes Wachovia to credit and debit each of the bank account(s) identified on the next page hereof or on additional pages attached hereto (each, an "Account") in the name of Customer for the purpose of: (1) crediting amounts due Customer from Wachovia under Exchange Transactions, and (2) paying amounts due Wachovia from Customer under Exchange Transactions. Customer agrees to review all such debits and credits made by Wachovia as reflected on Customer's monthly account statements and to promptly notify Wachovia in writing if Customer believes any error has been made in debiting or crediting an Account, or in failing to debit or credit an Account. In the case of any error, Wachovia shall, promptly after receiving such notice, correct such error by debiting or crediting an Account, as appropriate, in an amount equal to the difference between the amount, if any, incorrectly debited or credited and the correct amount to have been debited or credited. For any such debits, this authorization:

(i) is a right granted to, and not an obligation or duty imposed upon or undertaken by, Wachovia (except to credit amounts debited or credited in error), and it shall continue to be Customer's responsibility to meet all of its payment obligations to Wachovia under Exchange Products as and when the same shall become due, either by having sufficient funds in the time available in its accounts for debiting by Wachovia to cover such obligations or by making payments directly to Wachovia to cover such obligations as and when they become due, in either case without Wachovia being under any obligation whatsoever to notify Customer of any insufficiency of funds in any of Customer's accounts; and

(ii) shall continue in effect until such time as Wachovia receives written notice from Customer of termination of such debit authorization, provided that for any debits made prior to Wachovia's receipt of such notice, such authorizations and agreements shall survive such termination, provided further that if at any time Wachovia credits an Account in error, Wachovia shall continue to have the right to debit an Account for the amount credited in error.

Settlement Netting. In order to reduce the payment and settlement risks associated with multiple transactions, Customer agrees that if amounts due in the same currency (whether U.S. dollars or another currency) would be due by both parties in respect of the same payment or settlement date under two or more Exchange Transactions, Wachovia is authorized at any time and from time to time to net those amounts with the effect that the payment or settlement obligations of Customer and Wachovia in that currency will be discharged automatically for those Exchange Transactions, and if one party's payment or settlement obligation in that currency would have been greater, replaced by an obligation of such party to pay or deliver the difference to the other party on the relevant payment or settlement date. This netting authorization shall remain in effect for so long as any Exchange Transactions are outstanding and may not be amended or rescinded except with Wachovia's written consent.

Authorized and agreed:

Customer:    CASA DE CAMBIO MAJAPARA SA DE CV
             (Print Full Name of Corporation, Partnership/Limited Liability Company/Individual)

By:          _____        (Affix Seal Here)
             (Signature)

             Name of person signing:  CARLOS ORTIZ MUÑOZ
                                       (Print or type name)

             Title or position:  DIRECTOR DE OPERACIONES
                                  (Print or type title)

Date:        Wednesday 08th 2006

(ACCOUNT(S) ARE IDENTIFIED ON NEXT PAGE OR ON ADDITIONAL PAGES)

DEC-11-2007 16:09 FROM:                                    TO:97043830575          P.6/13

03-09-06   02:18pm   From-Wachovia Bank, N.A.        704-374-2872   T-515  P.006/006  F-980

## Debit and Netting Authorization (continued)

Account(s) authorized to be debited and credited by Wachovia for Exchange Transactions:

| | |
|---|---|
| Name of Bank: | WACHOVIA BANK |
| Bank Account Number: | 2000192304201 |
| 9 Digit ABA Routing Number: | 026005092 |
| Name on Bank Account: | CASA DE CAMBIO MAJAPARA SA DE CV |
| Signatures: | (All owners of account must sign) |

| | |
|---|---|
| Name of Bank: | |
| Bank Account Number: | |
| 9 Digit ABA Routing Number: | |
| Name on Bank Account: | |
| Signatures: | (All owners of account must sign) |

| | |
|---|---|
| Name of Bank: | |
| Bank Account Number: | |
| 9 Digit ABA Routing Number: | |
| Name on Bank Account: | |
| Signatures: | (All owners of account must sign) |

| | |
|---|---|
| Name of Bank: | |
| Bank Account Number: | |
| 9 Digit ABA Routing Number: | |
| Name on Bank Account: | |
| Signatures: | (All owners of account must sign) |

(IF ADDITIONAL ACCOUNT(S), ATTACH ADDITIONAL PAGES USING SAME FORMAT)

PAGE 6/6 * RCVD AT 3/9/2006 1:28:32 PM [Eastern Standard Time] * SVR:CLTFAXB604/12 * DNIS:7150082 * CSID:704 374 2872 * DURATION (mm-ss):01-48

# Exhibit D



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO                    Date:          December 11, 2007
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal                Deal Source:          EFOREX

| | | | |
|---|---|---|---|
| Deal Number: | | 8348101 | |
| Sequence Number: | | 0 | |
| Trade Date: | | December 05, 2007 | |
| Value Date: | | December 07, 2007 | |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | | 2,000,000.00 | EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | | 2,934,400.00 | USD |
| Rate: | | 1.46720000 | |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:      2,000,000.00          EUR
                        Account Name:         BAYERISCHE LANDESBK-MUNICH,
                                              GERMANY
                        Account Number:
                        Payment Method:       By Outgoing Wire Payment
                        Pay To:               BAYERISCHE HYPO-UND VEREINSBANK AG
                                              MUNICH GERMANY
                                              MUNICH GERMANY
                        Account:              /DE10700202705803611035
                        For Account Of:       MAJAPARA CASA DE CAMBIO SA DE CV
                        Intermediary Bank:
                        Sender to Receiver Information:


                        Detailed Information:
                                              BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:      2,934,400.00          USD
                        Account number:       PHILNY
                        Payment Method:       By Incoming International Payment
                        Pay to:               WACHOVIA BANK N.A.-NEW YORK

---

┌─────────────────────────────────────────────────────────────┐
│ Notify Wachovia Immediately If Not In Agreement:              │
└─────────────────────────────────────────────────────────────┘

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO                                    Date:          December 11, 2007
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11620

Wachovia confirms the following:Spot Deal                    Deal Source:              EFOREX

   Deal Number:                              8347911
   Sequence Number:                          0

   Trade Date:                               December 05, 2007
   Value Date:                               December 07, 2007

   MAJAPARA CASA DE CAMBIO - MEXICO buys:    5,000,000.00           EUR
   MAJAPARA CASA DE CAMBIO - MEXICO sells:   7,332,500.00           USD
   Rate:                                     1.46650000

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:     5,000,000.00          EUR
                       Account Name:         BAYERISCHE LANDESBK-MUNICH,
                                             GERMANY

                       Account Number:
                       Payment Method:       By Outgoing Wire Payment
                       Pay To:               BAYERISCHE HYPO-UND VEREINSBANK AG
                                             MUNICH GERMANY
                                             MUNICH GERMANY
                       Account:              /DE10700202705803611035
                       For Account Of:       MAJAPARA CASA DE CAMBIO SA DE CV
                       Intermediary Bank:
                       Sender to Receiver Information:


                       Detailed Information:
                                             BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:     7,332,500.00          USD
                       Account number:       PHILNY
                       Payment Method:       By Incoming International Payment
                       Pay to:               WACHOVIA BANK N.A.-NEW YORK

┌─────────────────────────────────────────────────────────────┐
│ Notify Wachovia Immediately If Not In Agreement:              │
└─────────────────────────────────────────────────────────────┘

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

Date:                     December 11, 2007

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal          Deal Source:          EFOREX

| | |
|---|---|
| Deal Number: | 8347951 |
| Sequence Number: | 0 |
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |

| | | |
|---|---|---|
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 1,000,000.00 | EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 1,466,500.00 | USD |
| Rate: | 1.46650000 | |

Wachovia confirms the settlement Instructions for the above referenced transaction as follows:

Wachovia Delivers:    1,000,000.00          EUR
                      Account Name:         BAYERISCHE LANDESBK-MUNICH,
                                            GERMANY

                      Account Number:
                      Payment Method:       By Outgoing Wire Payment
                      Pay To:               BAYERISCHE HYPO-UND VEREINSBANK AG
                                            MUNICH GERMANY
                                            MUNICH GERMANY
                      Account:              /DE10700202705803611035
                      For Account Of:       MAJAPARA CASA DE CAMBIO SA DE CV
                      Intermediary Bank:
                      Sender to Receiver Information:


                      Detailed Information:
                                            BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:    1,466,500.00          USD
                      Account number:       PHILNY
                      Payment Method:       By Incoming International Payment
                      Pay to:               WACHOVIA BANK N.A.-NEW YORK

┌─────────────────────────────────────────────────────────────┐
│ Notify Wachovia Immediately If Not In Agreement:              │
└─────────────────────────────────────────────────────────────┘

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



**WACHOVIA**

Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO                    Date:            December 12, 2007
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal                    Deal Source:          **EFOREX**

    Deal Number:                                        8348101
    Sequence Number:                                    0

    Trade Date:                                         December 05, 2007
    Value Date:                                         December 07, 2007

    MAJAPARA CASA DE CAMBIO - MEXICO buys:              2,000,000.00          EUR
    MAJAPARA CASA DE CAMBIO - MEXICO sells:             2,934,400.00          USD
    Rate:                                               1.46720000

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:      2,000,000.00        EUR
                        Account Name:       BAYERISCHE LANDESBK-MUNICH,
                                            GERMANY
                        Account Number:
                        Payment Method:     By Outgoing Wire Payment
                        Pay To:             BAYERISCHE HYPO-UND VEREINSBANK AG
                                            MUNICH GERMANY
                                            MUNICH GERMANY
                        Account:            /DE10700202705803611035
                        For Account Of:     MAJAPARA CASA DE CAMBIO SA DE CV
                        Intermediary Bank:
                        Sender to Receiver Information:


                        Detailed Information:
                                            BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:      2,934,400.00        USD
                        Account number:     PHILNY
                        Payment Method:     By Incoming International Payment
                        Pay to:             WACHOVIA BANK N.A.-NEW YORK

---
| **Notify Wachovia Immediately If Not In Agreement:** |
---

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.

 **WACHOVIA**

Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1625 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 669-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Date:  December 11, 2007

Wachovia confirms the following: Spot Deal  Deal Source:  **EFOREX**

| | |
|---|---|
| Deal Number: | 8347764 |
| Sequence Number: | 0 |
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 5,000,000.00   EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 7,333,000.00   USD |
| Rate: | 1.46660000 |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:  5,000,000.00  EUR
Account Name:  BAYERISCHE LANDESBK-MUNICH,
GERMANY

Account Number:
Payment Method:  By Outgoing Wire Payment
Pay To:  BAYERISCHE HYPO-UND VEREINSBANK AG
MUNICH GERMANY
MUNICH GERMANY
Account:  /DE10700202705803611035
For Account Of:  MAJAPARA CASA DE CAMBIO SA DE CV
Intermediary Bank:
Sender to Receiver Information:

Detailed Information:
BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:  7,333,000.00  USD
Account number:  PHILNY
Payment Method:  By Incoming International Payment
Pay to:  WACHOVIA BANK N.A.-NEW YORK

**Notify Wachovia Immediately If Not In Agreement:**

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



**WACHOVIA**

Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

Date:                    December 11, 2007

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal          Deal Source:          DIRECT

| | |
|---|---|
| Deal Number: | 8347811 |
| Sequence Number: | 0 |
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 5,000,000.00     EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 7,338,000.00     USD |
| Rate: | 1.46760000 |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

| | | |
|---|---|---|
| Wachovia Delivers: | 5,000,000.00 | EUR |
| | Account Name: | BAYERISCHE LANDESBK-MUNICH, GERMANY |
| | Account Number: | |
| | Payment Method: | By Outgoing Wire Payment |
| | Pay To: | BAYERISCHE HYPO-UND VEREINSBANK AG MUNICH GERMANY MUNICH GERMANY |
| | Account: | /DE10700202705803611035 |
| | For Account Of: | MAJAPARA CASA DE CAMBIO SA DE CV |
| | Intermediary Bank: | |
| | Sender to Receiver Information: | |

| | | |
|---|---|---|
| | Detailed Information: | BO CASA DE CAMBIO MAJAPARA SA DE CV |
| Wachovia Receives: | 7,338,000.00 | USD |
| | Account number: | PHILNY |
| | Payment Method: | By Incoming International Payment |
| | Pay to: | WACHOVIA BANK N.A.-NEW YORK |

---

**Notify Wachovia Immediately If Not In Agreement:**

---

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

Date: December 11, 2007

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal        Deal Source:        EFOREX

| | |
|---|---|
| Deal Number: | 8347860 |
| Sequence Number: | 0 |
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 3,000,000.00 EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 4,398,300.00 USD |
| Rate: | 1.46610000 |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:        3,000,000.00        EUR
                          Account Name:        BAYERISCHE LANDESBK-MUNICH,
                                               GERMANY
                          Account Number:
                          Payment Method:      By Outgoing Wire Payment
                          Pay To:              BAYERISCHE HYPO-UND VEREINSBANK AG
                                               MUNICH GERMANY
                                               MUNICH GERMANY
                          Account:             /DE10700202705803611036
                          For Account Of:      MAJAPARA CASA DE CAMBIO SA DE CV
                          Intermediary Bank:
                          Sender to Receiver Information:

                          Detailed Information:
                                               BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:        4,398,300.00         USD
                          Account number:      PHILNY
                          Payment Method:      By Incoming International Payment
                          Pay to:              WACHOVIA BANK N.A.-NEW YORK

## Notify Wachovia Immediately If Not In Agreement:

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Date:                          December 12, 2007

Wachovia confirms the following:Spot Deal          Deal Source:          EFOREX

| | |
|---|---|
| Deal Number: | 8348032 |
| Sequence Number: | 0 |
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 9,775.17          USD |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 11,000.00          CHF |
| Rate: | 1.12530000 |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:          9,775.17          USD
                            Account Name:
                            Account Number:
                            Payment Method:
                            Pay To:


                            Account:
                            For Account Of:
                          · Intermediary Bank:
                            Sender to Receiver Information:




                            Detailed Information:


Wachovia Receives:          11,000.00          CHF
                            Account number:
                            Payment Method:
                            Pay to:                Wachovia Bank, N.A.

---

| Notify Wachovia Immediately If Not In Agreement: |
|---|

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.

 **WACHOVIA**

Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

Date:            December 12, 2007

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal          Deal Source:          REUTERS

| | |
|---|---|
| Deal Number: | 2598310 |
| Sequence Number: | 0 |
| Trade Date: | December 06, 2007 |
| Value Date: | December 07, 2007 |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 103,124.86          USD |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 116,000.00          CHF |
| Rate: | 1.12485000 |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:          103,124.86          USD
                            Account Name:
                            Account Number:
                            Payment Method:
                            Pay To:

                            Account:
                            For Account Of:
                            Intermediary Bank:
                            Sender to Receiver Information:

                            Detailed Information:

Wachovia Receives:          116,000.00          CHF
                            Account number:
                            Payment Method:
                            Pay to:          Wachovia Bank, N.A.

---

## Notify Wachovia Immediately If Not In Agreement:

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX
Date:       December 12, 2007

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal       Deal Source:       EFOREX

| | |
|---|---|
| Deal Number: | 8347914 |
| Sequence Number: | 0 |
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 7,000.00    CHF |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 6,218.90    USD |
| Rate: | 1.12560000 |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:     7,000.00      CHF
                        Account Name:
                        Account Number:
                        Payment Method:
                        Pay To:

                        Account:
                        For Account Of:
                        Intermediary Bank:
                        Sender to Receiver Information:

                        Detailed Information:

Wachovia Receives:    6,218.90      USD
                        Account number:
                        Payment Method:
                        Pay to:            Wachovia Bank, N.A.

---

## Notify Wachovia Immediately If Not In Agreement:

---

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.

# EXHIBIT 3

ROSNER NOCERA & RAGONE, LLP
110 Wall Street, 23rd Floor
New York, New York 10005
(212) 635-2244
Special Counsel for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WACHOVIA BANK, NATIONAL ASSOCIATION    07 Civ. 11230 (BSJ) (RLE)

Plaintiff,

-against-

CASA DE CAMBIO MAJAPARA S.A. de C.V.
a/k/a MAJAPARA CASA DE CAMBIO S.A.
de C.V.,

Defendant.
-----------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR JUDGMENT AGAINST
NON-PARTY GARNISHEE CITIBANK, N.A.**


**Of Counsel:**
    John A. Nocera
    Peter A. Ragone
    John P. Foudy

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted by plaintiff Wachovia Bank, National Association (hereinafter "Wachovia" or "plaintiff") in support of its instant motion for an Order pursuant to Fed.R.Civ.P. 64 and New York's CPLR § 6214(d) for judgment against non-party garnishee Citibank, N.A., ("Citibank") due to Citibank's failure to comply with an Order of Attachment entered in this action and for Citibank's wrongful release of property subject to the Order of Attachment.

## STATEMENT OF FACTS

The Court is respectfully referred to the accompanying affidavit of Wachovia by Carlos A. Perez, sworn to the 19th day of March, 2008, along with the exhibits to the above for a full rendition of the facts necessary for the adjudication of this motion

A summary of the pertinent facts is as follows:

On December 14, 2007, Wachovia commenced this case to recover a money judgment against defendant Majapara Casa De Cambio S.A. de C.V. ("Majapara") in the amount of $24,810,975, plus interest from December 7, 2007.

At the commencement of this case, Wachovia moved this Court by order to show cause for an Order of Attachment against the property of Majapara and debts owed to Majapara pursuant to N.Y. CPLR § 6201(1) and 6201(3), applicable herein pursuant to Fed.R.Civ.P. 64.[1]

---

[1] On December 14, 2007, this Court entered a Temporary Restraining Order ("TRO") against Majapara, which was amended by Order entered December 17, 2007. The TRO only applied to restrain Majapara, not garnishees such as Citibank. While no claim herein is made against Citibank relating to the TRO, copies of the TRO and Decemeber 17, 2007 Order were also served on Citibank on those dates.

2

On December 20, 2007, this Court granted Wachovia's Order to Show Cause, and an Order of Attachment was entered in favor of Wachovia against the assets of Majapara in the amount of $24,810,975. (Exhibit "3").

On December 21, 2007, the Order of Attachment was duly served and levied by personal service upon Citibank at 9:55 a.m. at 399 Park Avenue, New York, NY, by a licensed private process server employed by Wachovia's counsel. The Order of Attachment expressly provided that the Order could be served by a "licensed process server as retained by plaintiff's counsel". (See, Affidavit of Service, Exhibit "4").

As described below, on the day that the Order of Attachment was served on Citibank, Citibank acknowledged that funds totalling at least $1,843,715.44 were then on deposit in Majapara's account No. 36254838 at Citibank (the "Majapara Account"). The Majapara Account was specifically identified in the Order of Attachment.

Also on December 21, 2007 at 12:25 p.m., Wachovia's counsel served its First Set of Interrogatories on the third-party garnishee, Citibank ("Interrogatories").

By letter dated January 4, 2008, Citibank responded to the Interrogatories. (Exhibit "7"). Citibank's response included a list showing the daily balances in the Majapara Account for each day from December 14, 2007 to January 2, 2008. On December 21, 2007, the day the Order of Attachment was levied and served on Citibank, the Citibank Interrogatory Response reflected a "daily adjusted available balance" of $1,843,715.44 in the Majapara account. Following December 21, 2007, Citibank allowed the balance in the Majapara Account to decline periodically via

3

transfers out of the Majapara Account, until only $2,453.39 remained in the Majapara

Account on January 4, 2008.

Citibank also provided Wachovia with a "transfer activity report" which

provided a listing of the debit and credit transactions in the Majapara Account from

December 22, 2007 through December 31, 2007. (Exhibit "8"). A listing of credits

(transfers in or deposits) to the Majapara Account on such dates is as follows:

Balance in Majapara Account on 12/21 through
12/23/07 per Citibank, NA's 1/4/08 Answers to
Interrogatories:

$1,843,715.44

Subsequent credits per 12/03/07 thru 12/31/07
"Transfer Activity" report:

| | |
|---|---|
| 12/22/2007 | |
| 12/23/2007 | |
| 12/24/2007 | $561,778.36 |
| 12/25/2007 | |
| 12/26/2007 | $11,500.90 |
| 12/27/2007 | $116,156.87 |
| 12/28/2007 | $9,859.49 |
| 12/29/2007 | $31,940.50 |
| 12/30/2007 | |
| 12/31/2007 | $31,940.50 |
| | $763,176.62 |
| Total: | $2,606,892.06 |

1/4/08 Account Balance ($2,453.39)

Amount Released by Citibank: $2,604,438.87

Based upon Citibank's own answers to Wachovia's Interrogatories, funds

totalling $2,604,438.87 were released, paid, or transferred out of the Majapara Account

after service and levy of the Order of Attachment, until a balance of only $2,453.39

4

remained on deposit in such account as of January 4, 2008. Wachovia therefore has been damaged and seeks judgment against Citibank for the "daily adjusted available balance" of $1,843,718.44 on deposit in the Majapara Account on December 21, 2007, plus the $763,176.62 in aggregate credits to the Majapara Account from December 24, 2007 through December 31, 2007, less the $2,453.39 balance reported as of January 4, 2008, or $2,604,438.87.

No relief is sought herein against Majapara, which filed on March 5, 2008, a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Illinois, under docket No. 08-05230.

By this motion, Wachovia only seeks judgment against non-party garnishee Citibank for Citibank's own and separate liability as a garnishee due to Citibank's failure, prior to the Majapara bankruptcy, to restrain and honor the Order of Attachment as to those funds which were on deposit and came into the Majapara between December 21 and December 31, 2007. Wachovia presently seeks no relief against the $2,453.39 which Citibank represented as the January 4, 2008 balance in the Majapara Account. As set forth in Point II, infra, the automatic stay of Majapara's bankruptcy does not extend to or prevent Wachovia's application herein against Citibank.

5

### POINT I
### WACHOVIA IS ENTITLED TO
### JUDGMENT AGAINST NON-PARTY GARNISHEE
### CITIBANK, N.A. AS A MATTER OF LAW

This motion is brought in order to secure judgment against non-party garnishee

Citibank for its wrongful release of funds in the Majapara Account which were subject

to the Order of Attachment issued in this case.

a.    **Wachovia's Remedy Under Federal Procedure Is Via A Motion To Enter Judgment Against Citibank As Garnishee.**

Fed.R.Civ.P. ("FRCP") 64, as amended effective December 1, 2007,

provides as follows:

> Rule 64. Seizing a Person or Property
>
> **(a) Remedies Under State Law — In General.**
>
> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

Pursuant to FRCP 64, this Court entered an Order of Attachment in favor of

Wachovia pursuant to Article 62 of New York's Civil Practice Law and Rules (CPLR).

The Order of Attachment was then duly levied by personal service upon garnishee

Citibank in the manner provided in the Order.

Following levy and service of the Order of Attachment, however, Citibank failed

to honor the Order of Attachment by allowing funds totaling $2,604,438.87 to be

released, paid or transferred out of the Majapara Account.

6

With respect to Wachovia's remedy against non-party garnishee Citibank, CPLR

6214(d) provides, in pertinent part, as follows:

> Where property or debts have been levied upon by service
> of an order of attachment, the plaintiff may commence a
> special proceeding against the garnishee served with the
> order to compel the payment, delivery or transfer to the
> sheriff of such property or debts, or to secure a judgment
> against the garnishee. Notice of petition shall also be served
> upon the parties to the action and the sheriff. A garnishee
> may interpose any defense or counterclaim which he might
> have interposed against the defendant if sued by him. The
> court may permit any adverse claimant to intervene in the
> proceeding and may determine his rights in accordance with
> section 6221.

(emphasis added).

This application is properly brought by notice of motion rather than by a special

proceeding. While attachment in the federal courts is available in the manner provided

by New York law, procedure in this case is governed by the Federal Rules of Civil

Procedure.

> The Federal Rules do not contemplate a separate proceeding
> against garnishees... The purpose of the [CPLR Section 6214]
> special proceeding is to give the garnishee notice and to allow
> him to interpose any defense or counterclaim which he might
> have interposed against the defendant if sued by him. CPLR § 6214(d).
> In federal courts actions such as the turnover funds are accomplished
> by notice of motion. Where plaintiff/movant notices the garnishee
> in addition to the attorney for the defendant, the garnishee has
> the notice and opportunity to raise defenses and counterclaims
> that CPLR § 6214(d) provides for him. Thus the federal motion
> practice, procedurally and substantively, take the place of the
> special proceeding."

Foreign Exchange Trade Associates, Inc. v. Oncetur, S.A., 591 F.Supp. 1496, I501 (SDNY

7

1984) (emphasis added). See also, New England Merchants Nat. Bank v. Iran Power

Generation and Transmission Co., 495 F.Supp. 73 77 (SDNY 1980) ( holding that "Rule

64 expressly provides that the Federal Rules of Civil Procedure shall govern the

commencement of the action").

**b.     Citibank is liable to Wachovia for the Property of Majapara Held at Citibank at the Time the Order of Attachment was Served and Levied Upon Garnishee Citibank.**

Pursuant to CPLR § 6214, applicable herein under FRCP 64, once an Order of

Attachment is granted, a plaintiff, such as Wachovia, can enforce same by "levy upon

personal property by service of the order" (CPLR § 6214). Specifically, CPLR 6214(a)

provides that

> (a) Method of levy, The sheriff shall levy upon any interest of the defendant in personal property, or upon any debt owed to the defendant, by serving a copy of the order of attachment upon the garnishee, or upon the defendant if property to be levied upon is in the defendant's possession or custody, in the same manner as a summons...

(emphasis added).

Once an Order of Attachment has been served, CPLR § 6214(b) provides that

"the garnishee is forbidden to make or suffer any sale, assignment or transfer of,

interference with any such property, or pay over or otherwise dispose of any such

debt...". Accordingly, once Citibank was served with the Order of Attachment, it could

not allow any transfer or withdrawal of funds from the Majapara Account.

Prior to filing this motion, Citibank had voiced some concern to Wachovia that

the Order of Attachment was not served by the Sheriff, as is usually done in state court

proceedings. Rather, pursuant to the express terms of this Order of Attachment, service

was made by a licensed process server retained by Wachovia's counsel, since this Court

specifically ordered and allowed that service could be made by a licensed process

server, rather than by a Sheriff or U.S. Marshal. (Exhibit "3"). In this regard, FRCP 64

provides that while a state attachment remedy may be utilized, "a federal statute

governs to the extent it applies."

The United States District Court for the Eastern District of New York considered

this issue in Heritage House Frame and Moulding Co. Inc. v. Boyce Highlands

Furniture Co., Inc, 88 F.R.D. 172 (EDNY 1988), where the Court observed that the

Federal Rules of Civil Procedure concerning service take precedence over state court

rules, and upheld an order directing that a specific individual "or his designee" act as a

process server. In that regard, the Court ruled as follows:

> Finally, it is clear that FRCP 4(c) is not affected by the strictures
> of state law. Thus, service must be made by a United States
> Marshal, his deputy or some specially appointed person. United
> States for Use of Tanos v. St. Paul Mercury Ins. Co., 361 F.2d 838
> (5th Cir.), cert. denied , 385 U.S. 971, 87 S.Ct. 510, 17 L.Ed.2d 435 (1966).
> Here an order was signed by a clerk of the United States District
> Court and it provided for a Mr. Cook, or his designee, to act as
> process server.

Heritage House Frame and Moulding Co., Inc. v. Boyce Highlands Furniture Co., Inc.,

supra, 88. F.R.D. at 174.

Likewise, in this case, the Court provided in the Order of Attachment that a

"licensed process server" could be employed by Wachovia's counsel to effect service of

9

the Order of Attachment. Wachovia's counsel employed such a licensed process server

to effect levy and service of the Order of Attachment, and service and levy of the Order

of Attachment was therefore properly effectuated on December 21, 2007. (Exhibit "4").

Prior to an amendment effective December 1, 2007, FRCP § 64 had provided that

"all remedies are available... under the circumstances and in the manner provided by

the law of the State in which the district court is held." (emphasis added). The

December 1, 2007 amendment deleted the reference to "in the manner provided" by

state law. This change in FRCP 64 reinforces the principle that federal procedural rules

prevail. However, even under the former wording of FRCP § 64, the Federal Rules of

Civil Procedure have been deemed to govern, as held by the U.S. District Court for the

Southern District of New York, in relevant part, as follows:

> "under Rule 64 the provisions of New York's attachment statute control...
> However, the question remains whether each and every provision of the
> attachment statute, particularly those of a procedural nature, must be
> applied in a federal action, I think not"

New England Merchants National Bank v. Iran Power Generation and Transmission,

495 F. Supp 73 at 75 (SDNY 1980) (emphasis added). Similarly, in New England v. Iran

Power, supra, the Southern District held that the time requirements of CPLR § 6213 for

the service of the summons were procedural in nature and therefore inapplicable in a

federal court action, as federal procedural rules took precedence.

Service and levy of the Order of Attachment on Citibank was properly made

under FRCP 4(c)(2), in the same manner as summons. CPLR § 6214 provides that an

Order of Attachment is to be served in the same "manner as a summons". FRCP § 64,

10

which supplies the state attachment remedy, does not specify the manner in which it is to be issued or served. The applicable federal statute is FRCP 4 (c)(2), which governs service of a summons and provides, in pertinent part, as follows:

> Service may be effected by any person who is not a party and who is at least 18 years of age. At the request of the plaintiff, however, the Court may direct that service be effected by a United States marshal, deputy United States marshal, or other person or officer specifically appointed by the court for that purpose.

(emphasis added)

Accordingly, since non-party garnishee Citibank, N.A. was properly served with the Order of Attachment by a licensed process server retained by plaintiff's counsel, as expressly directed and allowed by the Court for such purpose, the service of the Order of Attachment on December 21, 2007 was valid and effective.

c. **Citibank is Liable to Wachovia for the Amount of Funds it Allowed to be Released and Transferred out of the Majapara Account After Service of the Order of Attachment.**

Citibank was served with the Order of Attachment by personal delivery at approximately 9:55 a.m. on December 21, 2007. The Transfer Activity Report provided by Citibank nevertheless indicates continued credit and debit activity in the Majapara Account during the balance of that day, and thereafter, without any restraint whatsoever being placed by Citibank as the Majapara Account. (Exhibits "7" and "8").

In addition, the Transfer Activity Report provided by Citibank, (Exhibit "8") indicates that, in addition to the $1,843,715.44 on deposit on December 21, 2007, an

11

additional $763,176.82 in credits were transferred into the Majapara Account after December 21, 2007 through January 4, 2008. All of those funds, totalling $2,604,438.87 (save only the $2,453.39 remaining in the Majapara Account as of January 4, 2008) were allowed by Citibank to be transferred out of the Majapara Account, after service and levy of the Order of Attachment on Citibank.

In that regard, CPLR § 6214(b) specifically provides that "All property in which the defendant is known or believed to have in interest then in <u>and thereafter coming into the possession</u> or custody of such a person. . . shall be subject to the levy". (emphasis added)

Accordingly, it is clear that, at a minimum, $2,606,892.06 ($1,843,715.44 plus $763,176.82) in funds were in the Majapara Account at Citibank, upon and after the service and levy of the Order of Attachment. However, Citibank's responses to Interrogatories indicate that only $2,453.39 remained in the Majapara Account as of January 4, 2008. Thus, $2,604,438.67 in Majapara funds were wrongfully released by garnishee Citibank.

Citibank's liability as garnishee for the funds it released after service of the Order of Attachment is well established under New York law. The Appellate Division, First Department, held in <u>River Seafoods v. JP Morgan Chase Bank</u>, 19 A.D.3d 120, 796 N.Y.S.2d 71 (1st Dept. 2005), that a garnishee bank was liable for funds transferred into, and out of, a judgment debtor's account after service of a restraining notice. <u>See also</u>, <u>Nardone v. Long Island Trust Co.</u>, 40 A.D.2d 697, 336 N.Y.S.2d 325 (2nd Dept. 1972)

12

(garnishee bank held liable for permitting judgment debtor to write checks against bank account subject to a restraining notice); <u>Mazzuka v. Bank of North America</u>, 53 Misc. 2d 1053, 280 N.Y.S.2d 495 (NY Cty. Civ. 1967) (garnishee bank liable upon violation of restraining notice); <u>Salles v. Chase Manhattan Bank</u>, 300 A.D.2d 226, 754 N.Y.S.2d 276 (1st Dept. 2002).

In the case of <u>Navalmar v. Welspun Gujarat Stahl Rohren</u>, 485 F.Supp. 2d 399 (SDNY 2007) the Court ruled that: "A levy is effective to attach property of a defendant in the possession of the garnishee at the moment of levy and the report thereof by the garnishee. If, between a levy and the garnishee's report, the defendant's property has moved from the garnishee's possession, because of prior instructions to the garnishee or otherwise, <u>the garnishee becomes exposed to personal liability</u>"). (emphasis added).

It is respectfully submitted that Citibank's clear violation of the Order of Attachment renders it liable to Wachovia for damages pursuant to CPLR § 6214 (d), in the amount of the funds wrongfully released, paid, or transferred out of the Majapara Account following service of the Order of Attachment.

**POINT II**
**WACHOVIA'S APPLICATION FOR RELIEF IS**
**NOT STAYED BY MAJAPARA'S BANKRUPTCY**

This application is made to secure judgment only against non-party garnishee Citibank. Citibank has independent liability to Wachovia due to the wrongful release, payment or transfer of funds out of the Majapara Account following service of the Order of Attachment. The automatic stay arising from the March 5, 2008 bankruptcy

13

filing of defendant Majapara does not stay Wachovia's application, since no property of the bankruptcy estate is involved and no relief is sought as against defendant Majaparaa.

a. **The Order of Attachment was Entered and Levied and the Funds in the Majapara Account Were Transferred Prior to Majapara's Bankruptcy Filing.**

Defendant Majapara filed for Chapter 11 protection on March 5, 2008. This action was commenced on December 14, 2007. The Order of Attachment was entered on December 20, 2007, and service and levy of the Order of Attachment was made upon non-party garnishee Citibank on December 21, 2007.

Citibank allowed the wrongful transfer of $2,604,438.67 in funds from the Majapara Account between December 21, 2007 and January 4, 2008, leaving only $2,453.39 remaining on deposit at Citibank. See, Citibank's Interrogatory response (Ex. "7"). Wachovia as an attachment creditor does not waive its claim to the $2,453.39 remaining in the Majapara Account, but presently seeks no relief as against such funds.

As held in the matter of In re Sowers, 164 B.R. 256 (Bkrtcy. E.D.Va., 1994), the "only time the [creditors] demanded payment from the debtor was through a pre-petition garnishment. Pre-petition collection activities do not violate 11 U.S.C. § 362's automatic stay". Accordingly, the Bankruptcy Court in In re Sowers held that when the creditors "shifted their focus post-petition to [the garnishee due to] its failure to honor the pre-petition garnishment summons. Attempting to collect money which was supposed to be garnished from an employee is not an action against the employee but is

14

instead an action against the employer-garnishee." Id at 259. See also, In re Gray, 97 B.R.

930 (Bankr.N.D.Ill.1989) (holding that a creditor's post-petition collection efforts against

a debtor's employer resulting from that employer's failure to respond to garnishment

proceedings did not violate the automatic stay); In re Waltjen, 150 B.R. 419, 426

(Bankr.N.D.Ill.1993) (holding that "an action against an employer for its failure to

comply with the garnishment procedures will not be an action against the debtor or his

estate when the creditor is solely going after the assets of the non-debtor employer").

**b.**  **New York's Attachment Statute Provides for Independent Liability Against an Attachment Garnishee, and Therefore no Relief is Sought Against Majapara or its Estate.**

CPLR § 6214, expressly provides for the independent liability of a garnishee for

failure to honor an Order of Attachment as follows:

> (d) Proceeding to compel payment or delivery. Where property or debts have been levied upon by service of an order of attachment, the plaintiff may commence a special proceeding against the garnishee served with the order to compel the payment, delivery or transfer to the sheriff of such property or debts, or to secure a judgment against the garnishee. Notice of petition shall also be served upon the parties to the action and the sheriff. A garnishee may interpose any defense or counterclaim which he might have interposed against the defendant if sued by him. The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 6221.

(emphasis added).

Wachovia's instant motion constitutes a proceeding against non-party garnishee

Citibank, pursuant to CPLR 6214(d) (applicable herein pursuant to FRCP 64).

15

While "the scope of the automatic stay is broad, <u>Maritime Electric Co. v. United</u> <u>Jersey Bank</u>, 959 F.2d 1194, 1204 (3rd Cir.1991), nevertheless the clear language of Subsection 1 of § 362(a) indicates that it stays only proceedings against the debtor. [citations omitted] if estate property is not involved, the automatic stay generally protects only the debtor and not co-debtors, sureties, <u>garnishees subject to personal</u> <u>liability for breach of duty</u>, principals, officers, related corporations, and alleged alter egos." <u>McDaniel v. Park Place Care Center, Inc.</u>, 918 S.W.2d 820 at 824 (Mo.App. W.D. 1996) (<u>citing</u>, 8A C.J.S. Bankruptcy § 68(a) (1988). (emphasis added).

This issue was addressed squarely by the court in <u>Kenosha Hosp. & Medical</u> <u>Center v. Garcia</u>, 265 Wis.2d 900, 667 N.W.2d 851 (WI App 2003), which held:

> "[i]n other words, what effect, if any, does the automatic stay of Title 11 of the United States Bankruptcy Code have upon Kenosha Hospital's ability to pursue Richter for failing to respond to the garnishment notice? Because no property of Garcia's bankruptcy estate was implicated by the proceedings under WIS. STAT. § 812.41 against Richter, there is no violation of the automatic stay and the circuit court was within its jurisdiction to enter judgment against Richter".

<u>See also</u>, <u>In re Waltjen</u>, 150 B.R. 419, 426 (Bankr.N.D.Ill.1993) (action versus garnishee for failure to comply with garnishment procedures is not an action against the debtor or his estate) <u>In re Gray</u>, 97 B.R. 930, 936-37 (Bankr.N.D.Ill.1989) (enforcement of default judgment against the garnishee does not violate the automatic stay). <u>In re Sowers</u>, 164 B.R. 256, 259 (Bankr.E.D.Va.1994) (ruling that a creditor's attempt to satisfy the judgment against the employer/garnishee was not a violation of the automatic stay because "[i]t was this corporate liability which the [judgment creditors] were trying to

16

collect after the debtor's petition was filed" and not the debt owed by the debtor);

United States v. Allen Bros. of Homer, Inc., 36 B.R. 920, 922-23 (M.D.La.1984) (holding

that the United States, in state employee's bankruptcy case, was not precluded by

automatic stay from proceeding against the State of Louisiana which, as

employer/garnishee of debtor, failed to withhold amounts from wage payments as

required by garnishment proceedings, as garnishment action was against neither debtor

nor his estate).

Broome v. Citibank, N.A., 166 Misc.2d. 283, 632 N.Y.S.2d 410 (N.Y.City Civ.Ct.

1995) is also on point. In Broome, a judgment creditor sued a judgment debtor's bank,

after the bank had released funds in the judgment debtor's account, despite being

served with a restraining notice. The bank's release of funds occurred after the

judgment debtor had filed for bankruptcy. The Civil Court held that the automatic

bankruptcy stay, invoked by the judgment debtor's bankruptcy filing, did not affect the

garnishee's liability for failure to honor the restraining notice. Thus the Court ruled that

the bank had acted improperly in releasing funds, and the bank was liable to the

judgment creditor for violating the restraining notice. Id. at 144.

Citibank's independent liability to Wachovia as garnishee for its wrongful

release, payment or transfer of funds from and out of the Majapara Account is not

precluded by the automatic stay resulting from the Majapara bankruptcy proceeding.

Accordingly, Wachovia submits that its application for judgment against Citibank for

its failure to honor the Order of Attachment should be granted in all respects.

17

## CONCLUSION

On the basis of the authorities cited above, plaintiff Wachovia Bank, National Association respectfully requests that its instant motion to secure judgment against non-party garnishee Citibank for the sum of $2,604,438.87 be granted in all respects, together with such other and further relief as this Court deems just and proper.

Dated:  New York, New York
       March 20, 2008

                         Respectfully submitted,

                         ROSNER NOCERA & RAGONE, LLP
                         Special Counsel for Plaintiff,
                         Wachovia Bank, National Association


                  By:   \S\ Peter A. Ragone
                        John A. Nocera (JAN 3399)
                        Peter A. Ragone (PAR 6714)
                        John P. Foudy (JPF-7322)
                        110 Wall Street, 23rd Floor
                        New York, New York 10005
                        (212) 635-2244

eb:cambio.memorandum
03/08

18

# EXHIBIT 4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

WACHOVIA BANK,                              )
NATIONAL ASSOCIATION,                       )
                                            )
            Plaintiff,                      )
                                            )          Case No.
      v.                                    )
                                            )
MAJAPARA CASA DE CAMBIO S.A. de C.V.,       )
                                            )
            Defendant,                      )
                                            )
HARRIS N.A.,                                )
                                            )
            Garnishee.                      )

## PLAINTIFF'S EMERGENCY MOTION FOR ISSUANCE OF ORDER OF ATTACHMENT

Plaintiff Wachovia Bank, N.A. ("Wachovia"), through its attorneys, Reed Smith, LLC, and pursuant to 735 ILCS 5/4-101 *et seq.* of the Code of Civil Procedure hereby requests that this Court immediately grant Wachovia's motion for issuance of an Order of Attachment in accordance with §4-110 of the Attachment Act, directed to and seizing any and all property and accounts in the name of or for the benefit of defendant Majapara Casa De Cambio S.A. de C.V. ("Defendant") held at or in the possession, custody or control of the named garnishee herein, Harris Bank, located at 111 West Monroe, Chicago, Illinois, including but not limited to Bank Account Number 2004919. In support thereof, Wachovia states as follows.

## I.    FACTUAL BACKGROUND TO ISSUANCE OF ORDER OF ATTACHMENT.

This case involves the Defendant, Majapara Casa De Cambio S.A. de C.V. ("Majapara" or "Plaintiff"), a Mexican company, having taken from Wachovia over $38,000,000.00 worth of Euros in a series of foreign exchange transactions and failing to return the corresponding amount of U.S. Dollars. Defendant agreed with Wachovia on

Wednesday, December 5, 2007 to send Wachovia $38,132,700 (US$) in return for 26 million Euros. Yet on the agreed upon settlement date, December 7, 2007, Defendant received the 26 million Euros from Wachovia knowing it would not pay Wachovia the corresponding $38,132,700. Defendant has not provided Wachovia with the promised $38,132,700 (US$), nor has it returned the 26 million Euros Wachovia provided Defendant, thereby prompting the need for extraordinary relief in the form of a prejudgment attachment to protect Wachovia from further potential catastrophic loss.

Commencing in the late 1990's or early 2000's, Wachovia, and its predecessor, entered into a series of foreign exchange agreements with Defendant, a resident of the country of Mexico. (*See* Affidavit in Support of Attachment, filed concurrently herewith).[1] In these transactions, Defendant would agree to purchase from Wachovia (or its predecessor) a certain amount of one currency in exchange for Defendant selling to Wachovia an equivalent amount of another currently, at the applicable exchange rate then in effect.[2]

To facilitate the foreign exchange agreement process, Defendant and Wachovia, or its predecessor, entered into a written contract pursuant to which Defendant was permitted to execute foreign exchange transactions with Wachovia's predecessor over the Internet. By custom in the foreign exchange industry, these transactions are agreed to and close quickly and, as such, the foreign exchange industry is built on trust. If a party in a foreign exchange transaction fails to honor its contractual obligation in terms of delivering the promised currency by the settlement date, that party is deemed untrustworthy.

---

[1] The Facts recited in this Motion are supported by Wachovia's Affidavit, filed pursuant to §4-105 of the Attachment Act.

[2] Defendant is a non-Illinois resident. Nothing in the Illinois Secretary of State' records reflect that Defendant is currently licensed or authorized to conduct business in Illinois; nor do those records reflect that Defendant has currently procured a certificate of authority to conduct business in this State.

On or about December 5, 2007, Defendant entered into seven such foreign exchange transactions with Wachovia, which, when combined, were worth over $38 million United States dollars. All seven foreign exchange transactions were to have settled by December 7, 2007. Six of those transactions were executed through Wachovia's foreign exchange internet website. The one remaining transaction was executed over the telephone. As required by the seven foreign exchange transactions, on December 7, 2007--the scheduled settlement date— Wachovia sent Defendant 26 million Euros. Despite having entered into the transactions with Wachovia just two earlier, on December 5, 2007, Defendant never delivered the corresponding agreed upon $38,132,700 (US$) to Wachovia, as required, on December 7, 2007. After certain setoffs are applied in Defendant's favor, Wachovia has suffered a loss of $24,711,845.

Defendant's intentional act in accepting over $38 million worth of Euros with no intention of delivering the corresponding dollars shows their fraudulent conduct. But Wachovia has learned additional facts that lead it to believe Defendant is intentionally concealing or disposing of its assets or is about to do so. First, on or about December 7, 2007--the settlement date for the foreign exchange transactions at issue—Defendant requested that Wachovia enter into *further* cash transactions. Defendant made this request despite the fact that, by this point in time (December 7th), Defendant already knew it was *not* going to settle the outstanding foreign exchange transactions with Wachovia worth over $38 million. Second, on or about December 11, 2007, Majapara tried (unsuccessfully) to transfer over $9 million out of its Wachovia account. Finally, on or about December 13, 2007, a representatives of Wachovia spoke with Jorge Ortiz, the Chairman and CEO of Defendant. Mr. Perez told these representatives that Defendant took Wachovia's 26 million Euros and lent

it to other people even though, under Mexican law, a Casa de Cambio does not have a right to lend money. When Mr. Ortiz was told that what Defendant had done was not legal, Mr. Ortiz told the Wachovia representatives that Majapara was not liquid and he would need two months to repay Wachovia. He also told the representatives that if Wachovia took action to assert its legal rights, Wachovia would not recover anything. In addition, after Majapara failed to pay its obligation to Wachovia, Defendant attempted to drain its remaining assets in its Wachovia depository account, transferring them to Citibank, N.A.

For the past several years, and to Wachovia's knowledge, Defendant has regularly utilized the banking facilities of Harris Bank, located at 111 West Monroe Street, Chicago, Illinois ("Harris Bank"), for the purpose of furthering its foreign exchange business in this country. To Wachovia's knowledge, Defendant currently maintains one or more banking account at the Harris Bank in Chicago. At least one Bank Account at Harris Bank exists in Defendant's name under Account Number 2004919, thereby making this case ripe for the issuance of an order of attachment directed against Defendant and all its property now being held at Harris Bank. On information and belief, Defendant also engages in substantial and continuous business in Chicago.

II. **THE ELEMENTS FOR ISSUANCE OF AN ORDER OF ATTACHMENT ARE PRESENT, WARRANTING AN ATTACHMENT BE ISSUED ON DEFENDANT'S PROPERTY AT HARRIS BANK.**

Wachovia requests that this Court enter an emergency order of attachment under the applicable provisions of the Attachment Act (735 ILCS 5/4-101 *et seq.*) directed to Defendant and any and all banking accounts or other property of any kind or nature kept or maintained at Harris Bank, in Chicago. In particular, that this Court enter an order of attachment directed to Defendant and Harris Bank, Account Number 2004919, or any other accounts or property maintained thereat by Defendant. *See also*, §4-126 of Attachment Act (attachment of debtor's property held by others). Wachovia has satisfied each of the requisite elements for issuance of such an Order.

There are, essentially, two central components that need be satisfied before the Court is empowered to issue an order of Attachment: (1) "cause" under §4-101 of the Act must be shown by demonstrating the existence of one of the nine statutory factors, and (2) the creditor need post a bond in the amount set forth in §4-107 (or, §4-108, if the value of the property being seized is ascertained at the time). Wachovia has satisfied both prongs, warranting the issuance of the Order against Defendant and Harris Bank.

A. **The Presence of "Cause" Under §4-101(1) Supports An Attachment Order Because Defendant Indisputably Is Not An Illinois Resident.**

Several overriding principles support entry of an Attachment Order. *First,* attachment is the legal process by which the court seizes and holds the property of the defendant debtor until the rights of the parties are ultimately determined in the creditor's principal suit. *See, Peter Fischer Import Motors, Inc. v. Buckley,* 121 Ill. App. 3d 906, 910, 460 N.E.2d 346, 349 (1st Dist. 1984); *Old Kent Bank v. Stoller,* 254 Ill. App. 3d 1085, 1092, 627 N.E.2d 265,

- 5 -

273 (1st Dist. 1993); *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1026, 793 N.E.2d 900, 905 (1st Dist. 2003). Attachment may be directed at either the defendant's property "or his property in the possession of a third party." *Peter Fischer Imports*, 121 Ill. App. 3d at 910, 460 N.E.2d at 349. Attachment is a mechanism instituted "before judgment on the merits of the principal claim of the plaintiff creditor." *Id.* Thus, attachment lies to seize property of the debtor in the possession of a third party, garnishee. In such a situation,

> "...**the plaintiff attempts to hold the defendant's property in the possession of a third party pending the disposition of the plaintiff's principal claim against the defendant.** Such a proceeding is actually a pre-judgment proceeding in attachment, where the defendant's property which is attached is in the possession of a third party."

(*Peter Fischer Imports*, 121 Ill. App. 3d at 910, 460 N.E.2d at 345.)[3]

*Second*, the Attachment Act specifically provides that the Act shall be construed in a "*liberal* manner for the detection of fraud." *See* §4-102. "The statute was one intended to prevent fraud and must be liberally construed, and the courts should give it a reasonable construction in order to attain that end." *Dodge v Yates*, 21 Ill. App. 547, 1886 WL 5713, at *3 (2d Dist. 1886). Recent caselaw confirms this approach. *See*, *Old Kent Bank*, 254 Ill. App. 3d at 1097, 627 N.E.2d at 272 ("...section 4-102 of the Act requires a court to construe the attachment statute 'in the most liberal manner for the detection of fraud.'"). That liberal construction animating the Act bolsters supporting the issuance of the Order, since Wachovia claims, in part, that the actions of Defendant were fraudulent in misappropriation of Wachovia's monies.

---

[3] All emphasis is added unless otherwise noted.

*Third,* since the Attachment Act clearly empowers the Court to seize the property of the debtor (the Defendant, herein) in the possession of a third party (here, Harris Bank), the next issue is whether Wachovia has satisfied the underlying grounds for issuance of an Attachment Order. The Act unambiguously provides it has. Section 4-101 of the Act lists the nine specific grounds needed for issuance of an Attachment Order, only one of which, though, need be satisfied to show the requisite "cause". *See, Old Kent Bank,* 254 Ill. App. 3d at 1094, 627 N.E.2d at 270 ("We first consider whether *any* of the provisions of section 4-101 of the Act were satisfied.") Section 4-101(1) provides Wachovia with such a statutory ground and states as follows:

"Where the debtor is not a resident of this State."

Here, the Defendant-debtor falls within the meaning of §4-101(1) of the Act, as it is *not* an Illinois resident. Instead, Defendant is a resident of and is located in Mexico City, Mexico. Defendant does not qualify as an Illinois "resident" since the Illinois Secretary of State records do not reflect it being currently authorized to do business in Illinois or having a current certificate of authority as a foreign corporation.

Two other statutory grounds support issuance of the Order of Attachment. Section 4-101(7), (8) states as follows:

"7.  Where the debtor has, within 2 years prior to the filing of such affidavit, fraudulently concealed or disposed of his or her property so as to hinder or delay his or her creditors."

"8.  Where the debtor is about fraudulently to conceal, assign, or otherwise dispose of his or her property or effects, so as to hinder or delay his or her creditors."

Here, the Affidavit submitted by Wachovia attests that, after Defendant had received Wachovia's Euros, Defendant improperly used that same money for purposes of alleviating the Defendant's alleged "liquidity crisis," rather than ensuring that Wachovia be paid in corresponding currency, as was required under the parties' foreign exchange agreements. The Affidavit specifically points out Defendant's intent to frustrate and hinder Wachovia from collecting any of its millions of dollars owed to it by Defendant if Wachovia elects to enforce its rights with respect to the transactions at issue. As noted by one Illinois appellate court: "The proper inquiry under the [Attachment] statute is whether [defendant's] actions were made with the intent to hinder or delay plaintiff." *Amcore Bank, N,A., Rock River Valley v. Hahnaman-Albrecht, Inc.*, 305 Ill. App. 3d 63, 710 N.E.2d 435, 438 (2d Dist. 1999). The submitted Affidavits clearly confirm this to have been the case given Defendant's improper disposition of its assets in an effort to frustrate Wachovia from receiving its entitled payment, Defendant's acknowledgement that it used Wachovia's Euros to make illegal loans, Defendant's statement that it is illiquid, and Defendant's attempt to take over $9 million out of its Wachovia account.

Nor is there any question that the *type of claim* to be asserted by Wachovia in its principal lawsuit against Defendant falls within the express language of §4-101. That provision empowers the court to issue an Order of Attachment when "a creditor ha[s] a money claim, whether liquidated or unliquidated, in contract or tort...." Wachovia has alleged such a claim in its Affidavit. Wachovia asserts that it has a claim against Defendant for money based in contract on either a liquidated or unliquidated amount.

Wachovia, therefore, has satisfied both key prongs under §4-101 for showing "cause" to issue an Order. Wachovia has shown that (a) Defendant is not an Illinois resident for

purposes of §4-101(1), and (b) its underlying claim to be asserted in the principal complaint sounds in "contract" for a "liquidated or unliquidated" amount. Given these twin facts, Wachovia has satisfied the requisite "cause" under §4-101 for issuance of an Order of Attachment. Indeed, Illinois courts have upheld the issuance of an order of attachment under §4-101 of the Act based, among other grounds, upon finding that a claim for monies due under a promissory note (the contract claim for a liquidated amount), when coupled with the debtor's non-Illinois residency (§4-101(1)). *See Old Kent Bank*, 254 Ill. App. 3d at 1094-1097, 627 N.E.2d at 270-272.

**B.    Wachovia Has Satisfied The Bond Requirement Under Section 4-107 Of The Attachment Act.**

The second key component that need be satisfied for issuance of an Order of Attachment is the posting of the requisite bond under §4-107 (or, potentially, under §4-108 if the circumstances warrant.) Wachovia stands ready, willing and able to duly satisfy that requirement.

**III.    CONCLUSION**

For all of the foregoing reasons, Plaintiff, Wachovia Bank, N.A., prays that this Court grant its Emergency Motion For Issuance of Order of Attachment, and enter an Order of Attachment directed against Defendant Majapara Casa De Cambio S.A. de C.V., and Harris Bank in Chicago, as more particularly described in the concurrently filed Affidavit.

- 9 -

Dated: December 14, 2007

Respectfully submitted,
*WACHOVIA BANK, N.A.*
Plaintiff,

By: _____
One of Its Attorneys

Barry S. Rosen
Michael D. Richman
Michael S. Leib
REED SMITH
10 S. Wacker Drive
Chicago, IL 60606

Attorneys for Plaintiff

CHILIB-2126850.2

- 10 -

# EXHIBIT 5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| WACHOVIA BANK,<br>NATIONAL ASSOCIATION,<br><br>   *Plaintiff,*<br><br>   v.<br><br>MAJAPARA CASA DE CAMBIO S.A. de C.V.,<br>a Mexican corporation,<br><br>   *Defendant,*<br><br>HARRIS N.A., an Illinois corporation,<br><br>   *Garnishee.* | )<br>)<br>)<br>)<br>)  Case No. 07L13958<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

Plaintiff having appeared before this Court on its Emergency Motion for Leave to Amend, *Instanter*, and the Court being fully advised in the premises, **IT IS HEREBY ORDERED**:

1. Plaintiff's Emergency Motion for Leave to Amend, *Instanter*, is GRANTED;

2. The identity of the corporate defendant in these proceedings shall be amended for all purposes to be "Casa de Cambio Majapara S.A. de C.V. a.k.a. Majapara Casa de Cambio S.A. de C.V., and the caption of the case shall be amended accordingly.

Dated: December 17, 2007

ENTER: _____
           **Judge**

Barry S. Rosen
Michael D. Richman
Michael S. Leib
REED SMITH, LLP
10 S. Wacker Drive
Chicago, Illinois  60606-7507
(312) 207-1000
Firm I.D. # 43456

# EXHIBIT 6

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| WACHOVIA BANK, NATIONAL ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 2007L13958 |
| v. | ) |
| | ) |
| CASA DE CAMBIO MAJAPARA S.A. de C.V., | ) |
| a.k.a. Majapara Casa de Cambio S.A. de C.V., | ) |
| and JOM CORPORATION OF ILLINOIS | ) |
| | ) |
| Defendant, | ) |
| | ) |
| Harris N.A., a National Association, | ) |
| | ) |
| Garnishee. | ) |

## SUPPLEMENTAL ORDER FOR ATTACHMENT AND SUMMONS

Plaintiff's Motion for Leave to Amend having been granted, and the identity of the corporate Defendant Casa De Cambio Majapara S.A. de C.V. having been amended for all purposes to be "Casa De Cambio Majapara S.A. de C.V. a.k.a. Majapara Casa de Cambio S.A. de C.V." and the Court being fully advised in the premises:

**IT IS HEREBY ORDERED** that the Order for Attachment entered against the property of Majapara Casa De Cambio S.A. de C.V. in case number 07 L 13958 on December 14, 2007 ("Order for Attachment") IS HEREBY SUPPLEMENTED to apply in addition to the property of Casa de Cambio Majapara S.A. de C.V.

Dated: December 17, 2007

ENTER:
Judge

Barry S. Rosen
Michael D. Richman
Michael S. Leib
REED SMITH, LLP
10 S. Wacker Drive
Chicago, Illinois 60606-7507
(312) 207-1000
Firm I.D. # 43456

ENTERED
JUDGE ... WHITE - 0241
DEC 17 2007
CLERK OF THE CIRCUIT COURT
BROWN
OF THE CIRCUIT COURT
COUNTY, IL

I hereby certify that the document to which this certification is affixed is a true copy.

DEC 26 2007

Date
Deputy
Clerk of the Circuit Court
of Cook County, IL

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WACHOVIA BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08 CV 170 |
| v. | ) | |
| | ) | Honorable Amy J. St. Eve |
| | ) | |
| CASA de CAMBIO | ) | **AMENDED** |
| MAJAPARA S.A. de C.V., | ) | **ANSWER and COUNTERCLAIMS** |
| a/k/a MAJAPARA CASA | ) | |
| de CAMBIO S.A. de C.V. and | ) | |
| JOM CORPORATION OF | ) | |
| ILLINOIS, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| Harris N.A., a National Association, | ) | |
| | ) | |
| Garnishee. | ) | |

Defendant Casa de Cambio Majapara S.A. de C.V. ("Majapara"), by its attorneys

Sperling & Slater, P.C., for its amended answer and counterclaims to the Complaint filed by

Plaintiff, Wachovia Bank, N.A. ("Wachovia"), states as follows:

## PRELIMINARY STATEMENT

1.    This action arise from Majapara's misappropriation of over $38 million (US$) of
Wachovia's money relating to a series of foreign exchange spot transactions
between the parties. Foreign exchange spot transactions, due to their frequency,
the speed at which the transactions are agreed and closed, and the manner in
which funds are simultaneously exchanged, are founded upon trust. Majapara,
however, abused that trust – a trust that was established through years of currency
trading with Wachovia – to plunder more than $38 Million from Wachovia.

**Response:**    As a result of Wachovia's unwarranted and wrongful actions, Majapara's entire

business has been destroyed and over 600 Majapara employees are out of work.

1

After having done business with Majapara for over ten years, Wachovia, without cause and without advance notice, terminated all operating credit facilities extended to Majapara.

Less than ten days after this termination, Wachovia filed two lawsuits against Majapara seeking *ex parte* prejudgment attachments and an injunction. Wachovia knew that in such *ex parte* proceedings the Courts would necessarily have to trust Wachovia to make full and fair disclosure of all facts material to the Courts because – of course – Majapara would not be there. Wachovia took this opportunity, instead, to withhold material facts from the Court, assuring that the Courts would grant Wachovia the injunction and attachments that it sought.

Although Wachovia claimed that Majapara had not paid it $38 million that it owed for certain foreign exchange transactions, Wachovia did not disclose to the Courts the reason Majapara could not pay -- because Wachovia had terminated Majapara's operating facilities without cause and without notice. Wachovia did not disclose to the Courts that just months earlier it had induced Majapara to move business Majapara was doing with Harris Bank to Wachovia. Wachovia did not disclose to the Courts information showing that the withdrawals of funds by Majapara from its Wachovia account – withdrawals that Wachovia claimed were intended to frustrate any attempts by Wachovia to collect its debt – were, in fact, done in the ordinary course of Majapara's business.

Wachovia breached its contractual duties to Majapara, tortiously interfered with Majapara's relations with other banks, and then wrongfully obtained an injunction and attachments from two Courts. Wachovia's actions not only violate the law, but also fundamental principles of justice, equity, and good conscience. For the substantial losses Majapara has suffered at the hands of Wachovia, Majapara seeks redress including an award of compensatory damages, and punitive damages which are definitely warranted in this case.

2

Majapara denies the remaining allegations of this paragraph.

2.      Majapara's action was not a mere renege on a multi-million dollar transaction wherein Majapara returned Wachovia's property when it realized it could not complete the foreign currency exchange. Subsequent conversations with Majapara make apparent that it never intended to honor its commitments but, instead, had decided to wrongfully keep Wachovia's money and abscond with it. In these after-the-fact conversations, Majapara admitted to Wachovia that it was illiquid, that it had engaged in illicit activities in relation to its foreign exchange transactions and threatened that, if Wachovia took any steps to enforce its rights, Wachovia's judgment would be uncollectible. Through this action for breach of contract, promissory estoppel, unjust enrichment, fraud, and alter ego liability, Wachovia seeks a judgment against Majapara and JOM Corporation of Illinois (as alter ego of Majapara) for $24,711, 845.00 (the amount of Wachovia's loss less offsets currently obtained), plus prejudgment interest and costs.

**Response:**    See response to paragraph 1.

## PARTIES AND JURISDICTION

3.      Wachovia is a national banking association, with its principal place of business in Charlotte, North Carolina. Wachovia has offices in Illinois.

**Response:**    Admitted. Wachovia also maintains offices in many other locations, including Miami, New York, and Mexico City.

4.      Upon information and belief, Majapara is a Mexican corporation with its principal place of business in Mexico City, Mexico. Upon information and belief, Defendant Majapara utilizes a bank account at a Chicago branch of Harris N.A. to transact business and it transacts business in Illinois on a continuous and systematic basis. Further, upon information and belief, Defendant Majapara transacts business on a continuous and systematic basis through an alter ego, Defendant JOM Corporation of Illinois ("JOM"), which is or was an Illinois corporation with its principal place of business at 3506 W. 26th Street in Chicago, Illinois.

**Response:** Majapara admits that it is a Mexican business with offices throughout Mexico. Majapara's main office is located in Mexico City. In all other respects, Majapara denies the allegations of this paragraph. JOM Corporation of Illinois ("JOM Illinois") ceased to exist on or about December 29, 2006.

3

5.    Upon information and belief, JOM voluntarily dissolved on or about December 29, 2006, but still transacts business. Upon information and belief, JOM transacts business as Majapara.

**Response:** Majapara admits that JOM Illinois ceased to exist on or about December 29, 2006 when it voluntarily dissolved and was merged into JOM Corporation. In all other respects, Majapara denies the allegations of this paragraph.

6.    Upon information and belief, Garnishee Harris N.A. ("Harris Bank") is an Illinois national banking association with its principal place of business in Chicago, Illinois.

**Response:** Because Majapara has insufficient knowledge or information to form a belief as to the truth of this allegation, Majapara denies the allegations of this paragraph.

7.    Jurisdiction is appropriate in this case pursuant to 735 ILCS 5/2-209.

**Response:** Denied.

8.    Venue is appropriate in this case pursuant to 735 ILCS 5/2-101 because Defendant JOM is an Illinois corporation who, upon information and belief, has or had its principal place of business in Cook County and part of the transactions herein arose in Cook County.

**Response:** Denied.

## FACTS COMMON TO ALL COUNTS

### The Majapara Relationship With Wachovia

9.    In the late 1990's Majapara and First Union National Bank ("First Union"), a predecessor to Wachovia, agreed to enter into foreign exchange transactions together. In these transactions, Majapara would agree to purchase from First Union a certain amount of one currency in exchange for Majapara selling to First Union a certain amount of another currency at the applicable exchange rate.

**Response:** For over ten years, Majapara has been doing business with Wachovia and its predecessor, First Union. As part of that business relationship, Majapara had credit available through overdraft privileges, the ability to submit unlimited remittances to Wachovia for

4

processing among others (collectively the "operating facilities"). These operating facilities had existed for many years.

Majapara denies the remaining allegations of this paragraph.

10. In order to facilitate Majapara and First Union entering into these currency exchange transactions, on or about April 6, 2000, Majapara and First Union entered into a First Union Online FX Subscription Agreement (the "FX Subscription Agreement"), a copy of which is attached hereto as Exhibit A. Pursuant to the FX Subscription Agreement, Majapara was permitted to execute foreign exchange transactions electronically with First Union through First Union's foreign exchange website. This, however, was not the exclusive method for the parties to enter into these foreign exchange spot transactions.

**Response:** After years of doing business with First Union, First Union developed an online website through which FX transactions could be placed. In order to use its new website, First Union asked Majapara to sign the First Union Online FX Subscription Agreement ("Online FX Agreement"). The Online FX Agreement does not purport to set terms relating to FX transactions beyond online transactions. Those terms were what they had always been between Majapara and First Union. By its own terms, the Online FX Agreement limited its application to the use of the First Union website to place FX transaction orders. While the Online FX Agreement provides that First Union reserves the right without notice to modify, suspend, discontinue, or terminate the FX website or revoke any customer's access, it expressly states that the parties' rights and obligations concerning online and other transactions shall not be impaired or otherwise affected by such actions.

Majapara denies the remaining allegations of this paragraph.

11. Effective April 1, 2002, Wachovia merged into and under the charter of First Union with the resulting title of Wachovia Bank, National Association. As a result of the merge, First Union changed its name to Wachovia Bank, National Association. As a result of the merger, the FX Subscription Agreement was assigned to Plaintiff Wachovia.

5

**Response:** Because Majapara is without sufficient knowledge or information to form a belief as

the truth of the allegations in this paragraph, Majapara denies those allegations.

<u>The Foreign Exchange Transactions At Issue</u>

12. On or about December 5, 2007, Majapara and Wachovia agreed to a series of seven (7) transactions, all of which were to settle on December 7, 2007, whereby Wachovia would deliver an aggregate 26 million Euros to Majapara and Majapara would deliver in aggregate $38,132,700 to Wachovia. These transactions required Majapara to transfer dollars directly to a Wachovia account located in New York. Six (6) of the transactions were executed on Wachovia's foreign exchange internet website. One (1) of the transactions was executed over the telephone. Copies of the confirmations for these transactions are attached hereto as Exhibit B.

**Response:** Majapara admits the allegations of the first sentence of paragraph 12. Majapara

denies the remaining allegations of this paragraph.

13. Pursuant to these seven (7) foreign exchange agreement, on December 7, 2007, Wachovia delivered 26 million Euros to Majapara. Majapara failed to deliver the agreed upon $38,132,700.00 to Wachovia, as required, on December 7, 2007.

**Response:** Majapara placed FX transaction orders on December 5, 2007. Wachovia delivered

26 million Euros to Majapara. Because of Wachovia's breach of its contract with Majapara,

Wachovia prevented Majapara from being able to make its payment to Wachovia on December

7. Majapara denies the remaining allegations of this paragraph.

14. On or about December 13, 2007, the General Director of Majapara admitted that Majapara had been obligated to provide the agreed upon currency to Wachovia.

**Response:** Denied.

15. Despite its failure to pay Wachovia for the over $38 million worth of Euros that Wachovia sent to Majapara, Majapara tried to place additional trades with Wachovia on December 7, 2007, knowing that it could not cover additional trades or its existing obligation to deliver the dollars. Wachovia was able to stop such additional trades from being executed.

**Response:** Denied.

6

16. Moreover on December 11, 2007, after refusing to pay Wachovia over $38 million for the exchange, Majapara sought to drain an account held at Wachovia by attempting to transfer over $9 million out of the account.

Response: Denied.

17. By opening an account at Wachovia, Majapara agreed to Wachovia's Terms & Conditions for Global Financial Institutions, which, under its terms, grants Wachovia setoff rights. See Terms and Conditions attached hereto as Exhibit C. Through its setoff rights, Wachovia was able to secure $13, 420, 155, which came into Majapara's accounts at Wachovia, but has not been able to recover the remaining amount Wachovia is owed. Some of the amount recovered represents conditional credit that may be subject to reduction by reason of return of the items (in this case, checks) for which this credit was given (see next Paragraph).

Response: Majapara states that the Wachovia Terms and Conditions do not purport to cover FX transactions. Answering further, Majapara admits that Wachovia seized approximately $13.4 million that was in Majapara's accounts at Wachovia, but denies that Wachovia had any right to "secure" those funds or to "recover" any amounts purportedly "owed." Majapara denies the remaining allegations of this paragraph.

18. Majapara also maintains five (5) U.S. dollar accounts with Wachovia. As to each of these accounts, Wachovia has contingent residual exposure to cover returned items in the federal check clearing program. Majapara is obligated to reimburse Wachovia for these amounts, but has now stated it is unable to and will not meet its financial obligations. This liability has averaged $3.3 million per month for the last several months.

Response: Majapara admits that it maintained five accounts with Wachovia. Majapara denies the remaining allegations of this paragraph.

**JOM Is The Alter Ego of Majapara**

19. JOM is or was an Illinois corporation which, upon information and belief, had its principal place of business in Chicago, Illinois.

Response: Denied. JOM Corporation of Illinois ("JOM Illinois") transacted business in Illinois until it was dissolved on or about December 29, 2006. That dissolution took place long before

any of the events which are the subject of Wachovia's lawsuits. JOM Illinois was merged into

JOM Corporation, a Texas corporation with its principal place of business in California.

> 20. Illinois Secretary of State records show that JOM was voluntarily dissolved on or about December 29, 2006. A copy of the Secretary of State records is attached hereto as Exhibit D.

**Response:** JOM Illinois transacted business in Illinois until it was dissolved on or about

December 29, 2006. Majapara denies the remaining allegations of this paragraph.

> 21. Upon information and belief, JOM and Majapara have common officers and/or directors.

**Response:** Denied. JOM Illinois no longer exists, so it no longer has any officers or directors.

> 22. Upon information and belief, "JOM" stands for "Jorge Ortiz Munos," who is Majapara's Chairman and CEO.

**Response:** Majapara admits that Jorge Ortiz is Majapara's Chairman and CEO. J-O-M are

Mr. Ortiz's initials. Majapara denies the remaining allegations of this paragraph.

> 23. Upon information and belief, JOM and Majapara have one or more common owners and/or JOM is a subsidiary of Majapara.

**Response:** Majapara admits that Jorge Ortiz is a shareholder of Majapara and also a

shareholder of JOM Corporation. Majapara denies the remaining allegations of this paragraph.

> 24. According to the Illinois Secretary of State records, JOM used the Assumed Name of "Majapara-Chicago."

**Response:** Majapara admits that JOM Illinois would from time to time use the trade name of

Majapara in its business because of its value in the marketplace. JOM Illinois did this with

Majapara's permission. JOM Illinois did not hold itself out as Majapara.

> 25. Although JOM was dissolved approximately a year ago, upon information and belief, it is still engaging in business.

**Response:** Denied.

26. In fact, in October and November 2007, JOM (a dissolved corporation according to Illinois Secretary of State records) transferred $5,615,666 from its Harris Bank account (entitled, upon information and belief, "JOM Corp of Illinois DBA Majapara-Chicago) directly to a Majapara account at Wachovia.

**Response:**  Denied. After JOM Illinois was merged into JOM Corporation, Harris Bank and others were notified and the proper filings were made with the Illinois Secretary of State. After the merger, JOM Corporation commenced using the Harris Bank account that had been opened by and previously used by JOM Illinois.

Harris Bank did not update its internal records to reflect that the account now was owned by JOM Corporation. JOM Corporation used the account at Harris Bank for its own business transactions with a number of different counterparties, including Majapara. JOM Corporation had a business relationship with Majapara whereby Majapara would provide certain services to JOM Corporation and JOM Corporation would pay for those services. In providing those services, JOM Corporation was authorized to use the name of Majapara or "MAS" because it was a valuable trade name. Although JOM Corporation did not do business as Majapara, it did use the trade name of Majapara.

27. Documentation reflecting one such recent transfer from JOM to Majapara is attached at Exhibit E.

**Response:**  Denied. JOM Corporation routinely paid transaction fees to Majapara for payment for money transfers remitted through Majapara paymasters. JOM Corporation also routinely purchased pesos from Majapara, among others.

28. Upon information and belief, JOM is an alter ego of Majapara and JOM's assets, accordingly, can be utilized to satisfy Majapara's debts to Wachovia.

**Response:**  Denied.

9

## COUNT I
### (Breach of Contract)

29. Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 28.

**Response:** Majapara incorporates its responses to paragraphs 1 through 28 above. .

30. As set forth above, Wachovia entered into a series of currency exchange agreements with Majapara.

**Response:** On each business day for many years, Majapara would enter into millions of dollars of FX transactions with Wachovia. Each of those individual transactions took place in the context of the overall contractual relationship between Wachovia and Majapara. That contractual relationship is evidenced by the course of dealing between the parties over many years and the custom and practice in the foreign exchange business. On the basis of that contractual relationship, Majapara reasonably believed that should Wachovia decide to terminate Majapara's operating facilities, Wachovia would provide reasonable notice so that Majapara would have time to move its business to another bank. Wachovia breached its contractual duty to Majapara by terminating Majapara's operating facilities without cause and without providing Majapara any advance notice whatsoever. Wachovia's breach caused significant disruption to Majapara's business because Majapara was left with no advance notice during which it could arrange for a substitute bank for its business. Except as so stated, Majapara denies the allegations contained in this paragraph.

31. Majapara breached those agreements by failing to deliver the currency as agreed upon by the parties.

**Response:** Denied.

32. Wachovia has fulfilled its obligations under the agreements.

**Response:** Denied.

33. As a result of Majapara's breaches, Wachovia has suffered damage in the amount of not less than $24,711,845.00, plus interest, plus the amount of any contingent residual exposure as set forth in Paragraph 18 above.

**Response:** Denied.

## COUNT II
### (Promissory Estoppel – Alternate Count)

34. Plaintiff realleges and reincorporates the allegations in Paragraph 1 through 28.

**Response:** Majapara incorporates its responses to paragraphs 1 through 28 above.

35. In the event it is found that no oral or written contract exist between Majapara and Wachovia in relation to the seven (7) foreign exchange spot transactions at issue here, equity intervenes, creating the necessary consideration to support an agreement requires Majapara to pay Wachovia not less than $24,711,845.00 in return for accepting currency from Wachovia.

**Response:** Denied.

36. Majapara promised to deliver certain currency to Wachovia in return for Wachovia delivering certain currency to Majapara.

**Response:** On December 5, when Majapara placed the orders for the FX transactions, Majapara had every intention and expectation that these transactions would take place just as they had for more than ten years. Wachovia would provide Majapara with one currency and Majapara would provide Wachovia with the other one or two days later. Wachovia's later improper cancellation of Majapara's operating facilities however, frustrated Majapara's intention and expectation. Majapara denies all other allegations in this paragraph.

37. In reliance to Majapara's agreement to deliver certain currency to Wachovia, Wachovia delivered approximately $38 million worth of currency to Majapara.

**Response:**    Majapara admits that Wachovia delivered approximately $38 million worth of currency to Majapara, but denies that Wachovia did so in reliance upon Majpara's agreement to deliver certain currency to Wachovia. Majapara denies all other allegations of this paragraph.

38. Wachovia has requested the funds from Majapara.

**Response:** Wachovia demanded that the funds be paid in full immediately. By virtue of its own actions, Wachovia had no right to demand payment from Majapara on December 7.

39. To date Majapara has not provided the required currency to Wachovia.

**Response:** Majapara has not paid because Wachovia breached its agreement with Majapara and took actions that frustrated Majapara's ability to pay. Majapara denies the allegations contained in this paragraph.

40. Wachovia, however, has been able to obtain certain Majapara funds and offset the amount owed by $13,420,155.00 (subject to reduction for the reasons set forth in Paragraph 14 of the recitals above).

**Response:** Majapara admits that Wachovia seized approximately $13.4 million that was in Majapara's accounts at Wachovia, but denies that Wachovia had any right to "obtain" these funds, or to "offset" any remaining amount purportedly "owed." Majapara denies the remaining allegations of this paragraph.

41. Wachovia has no adequate remedy at law.

**Response:** Denied.

42. As a result, Majapara has been unjustly enriched to the detriment of Wachovia.

**Response:** Denied.

### COUNT III
### (Unjust Enrichment – Alternate Count)

43. Plaintiff realleges and reincorporate the allegations in Paragraphs 1 through 28.

**Response:** Majapara incorporates its responses to paragraphs 1 through 28 above.

44. In the event it is found that no oral or written contracts existed between Majapara and Wachovia in relation to the seven (7) foreign exchange transactions at issue here, equity would still require Majapara to pay Wachovia an amount not less than $24,711,845.00 in return for accepting currency from Wachovia.

12

Response: Denied.

> 45. Majapara promised to deliver certain currency to Wachovia in return for Wachovia delivering certain currency to Majapara.

Response: On December 5, when Majapara placed the orders for the FX transactions, Majapara had every intention and expectation that these transactions would take place just as they had for more than ten years: Wachovia would provide Majapara with one currency, and Majapara would provide Wachovia with the other one or two days later. Wachovia's improper cancellation of Majapara's operating facilities later that same day, however, frustrated Majapara's intention and expectation. Accordingly, Majapara denies the allegations contained in this paragraph.

> 46. In reliance on Majapara's agreement to deliver certain currency to Wachovia, Wachovia delivered approximately $38 million worth of currency to Majapara.

Response: Denied.

> 47. Majapara did not deliver any currency to Wachovia.

Response: Majapara has not paid because of Wachovia's breach of its agreement with Majapara, and the actions taken by Wachovia that frustrated Majapara's ability to pay. Accordingly, Majapara denies the allegations contained in this paragraph.

> 48. Wachovia, however, has been able to obtain certain Majapara funds and offset the amount owed by $13,420,155.00 (subject to reduction for the reasons set forth in Paragraph 14 of the recitals above).

Response: Majapara admits that Wachovia seized approximately $13.4 million that was in Majapara's account at Wachovia, but denies that Wachovia had any right to "obtain" these funds, or to "offset" any remaining amount purportedly "owed". Accordingly, Majapara denies the allegations contained in this paragraph.

> 49. Wachovia requested that Majapara deliver the currency it is owed.

13

**Response:** Wachovia demanded that the funds be paid in full immediately. By virtue of its own actions, Wachovia had no right to demand payment from Majapara on December 7. Accordingly, Majapara denies the allegations contained in this paragraph.

> 50. To date, Majapara has neither delivered the required currency to Wachovia, nor returned return the currency Wachovia sent to it.

**Response:** Denied.

> 51. Majapara has unjustly retained this benefit to the detriment of Wachovia.

**Response:** Denied.

> 52. Majapara's retention of this benefit violates fundamental principles of justice, equity and good conscience.

**Response:** Denied.

> 53. Wachovia has no adequate remedy at law.

**Response:** Denied.

**COUNT IV**
**(Fraud)**

> 54. Plaintiff realleges and reincorporates the allegations in Paragraph 1 through 28.

**Response:** Majapara incorporates its responses to paragraphs 1 through 28 above.

> 55. As set forth above, on or about December 5, 2007 Majapara and Wachovia entered into series of seven (7) currency exchange transactions.

**Response:** Majapara placed orders for FX transactions on December 5, 2007 in reliance upon its longstanding contractual relationship and course of dealing with Wachovia. Wachovia accepted those orders knowing that later that day Wachovia was going to terminate Majapara's operating facilities. Except as so stated, Majapara denies the allegations contained in this paragraph.

> 56. Pursuant to the parties' agreements, in exchange for the receipt of 26 million Euros from Wachovia, Majapara agreed to deliver $38,132,700.00 to Wachovia.

14

**Response:** Majapara placed orders for FX transactions on December 5, 2007 in reliance upon its longstanding contractual relationship and course of dealing with Wachovia. Wachovia accepted those orders knowing that later that day Wachovia was going to terminate Majapara's operating facilities. Except as so stated, Majapara denies the allegations contained in this paragraph.

    57. Upon information and belief, at the time Majapara entered into the December 5, 2007 agreement it knew it was illiquid and insolvent and incapable of performing its obligations under the parties' agreement.

**Response:** Majapara placed orders for FX transactions on December 5, 2007 in reliance upon its longstanding contractual relationship and course of dealing with Wachovia. Wachovia accepted those orders knowing that later that day Wachovia was going to terminate Majapara's operating facilities. Thus, at the time Majapara placed its December 5 orders with Wachovia, Majapara had no knowledge that Wachovia would later terminate its operating facilities. Except as so stated, Majapara denies the allegations contained in this paragraph.

    58. Notwithstanding its knowledge, Majapara represented to Wachovia that it would deliver $38,132,700.00 (US$) to Wachovia to settle the transactions. Upon information and belief, at the time of the transaction, Majapara knew it would not deliver the required currency and was acting under a present intent to deceive Wachovia and abscond with its funds. Its representations to Wachovia were false and materially misleading. In forwarding the funds to Majapara, Wachovia had the right to rely on Majapara's representation

**Response:** Denied.

    59. Majapara's fraudulent intent was confirmed in conversations Wachovia subsequently had with representatives of Majapara.

**Response:** Denied.

    60. For example, on or about December 13, 2007, Carlos A. Perez, a Managing Director of Wachovia, spoke with Jorge Ortiz, the Chairman and CEO of Majapara by telephone, and Mr. Ortiz acknowledged that Majapara, prior to settlement of the transactions, knew that it was experiencing "a liquidity crisis." Mr. Ortiz stated that

Majapara had received Wachovia's Euros and lent the money to third parties. When Mr. Perez confronted Mr. Ortiz concerning the transaction and the illegality of Majapara's actions, as a Casa de Cambio, under Mexican law Majapara is not permitted to make loans, Mr. Ortiz responded, "I recognize that I have done something that is not permitted."

**Response:** Denied.

61. Due to Majapara's "liquidity crisis" and other impermissible activities relating to its currency transactions, Majapara did not have sufficient funds to complete the exchange with Wachovia. Majapara nonetheless accepted Wachovia's funds, knowing that it would be incapable of repaying the funds to Wachovia.

**Response:** Denied.

62. Majapara then claimed to have used some or all of the Wachovia funds to engage in impermissible lending transactions and otherwise dissipated the assets received from Wachovia, all the while failing to fulfill its immediate obligations to transfer over $38 million to Wachovia.

**Response:** Denied.

63. Wachovia entered into the transactions and delivered 26 million Euros to Majapara in reasonable reliance upon Majapara's representations that it was going to deliver the requisite currency.

**Response:** Denied.

64. As a result of Majapara's fraud, Wachovia has been damaged in an amount to be determined at trial, but not less than $24,711,845.00.

**Response:** Denied.

## COUNT V
### (Breach of Contract/Anticipatory Breach)

65. Plaintiff realleges and reincorporates the allegations in Paragraph 1 through 28.

**Response:** Majapara incorporates its responses to paragraphs 1 through 28 above.

66. As set forth above, Majapara also maintains five (5) US dollar accounts at Wachovia. Under these accounts, Wachovia has contingent residual exposure to cover returned items in the federal check clearing program – this contingent liability is continuing

16

concern. In this regard, Wachovia is entitled to immediate reimbursement from Majapara for the amounts Wachovia is required to pay out.

**Response:** Majapara admits that it maintained five accounts with Wachovia, but denies the remaining allegations contained in this paragraph.

67. Over the last several months, this liability has averaged $3.3 million per month.

**Response:** Because Majapara has no knowledge or information upon which to admit or deny this allegation, Majapara must deny it.

68. So far this month, Wachovia has already had to cover certain residual liabilities for which Majapara, in breach of its agreements with Wachovia, has not reimbursed Wachovia. As a result, Majapara breached the parities' agreement and is indebted to Wachovia.

**Response:** Because Majapara has no information upon which to admit or deny the allegations of this paragraph, Majapara must deny them.

69. Additionally, Majapara has already stated to Wachovia that it is illiquid and unable to satisfy its obligations owed to Wachovia. Accordingly, Majapara has anticipatorily breached its agreement with Wachovia by stating it will not be immediately reimbursing Wachovia for these obligations now or when they come due.

**Response:** Denied.

70. Wachovia has performed all of its obligations under its agreements with Majapara.

**Response:** Denied.

71. Consequently, Wachovia has been damaged by Majapara's breach of the parties' agreement and will continue to be damaged by Majapara's anticipatory breach of the parties' agreement in an amount to be determined at trial.

**Response:** Denied.

## COUNT VI
### (Alter Ego Liability Against JOM)

72. Plaintiff realleges and reincorporates the allegations in Paragraph 1 through 28.

**Response:**    Majapara incorporates its responses to paragraphs 1 through 28 above.

> 73. Upon information and belief, there is such a unity of interest and ownership between Majapara and JOM that the separate corporate personalities should not longer be recognized.

**Response:**    Denied.

> 74. Adherence to the fiction of separate corporate existence would sanction fraud or promote injustice upon creditors, such as Wachovia.

**Response:**    Denied.

> 75. Upon information and belief, JOM is the alter ego of Majapara.

**Response:**    Denied.

> 76. As the alter ego of Majapara, JOM is liable for Wachovia for Majapara's liability to Wachovia under this Complaint.

**Response:**    Denied.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

### First Defense

Majapara incorporates by reference its Counterclaims in this matter. By reason of the matters set forth therein and the wrongs Wachovia has committed against Majapara -- including Wachovia's breach of its contractual duties, obtaining a wrongful injunction and wrongful attachments -- Wachovia is due no recovery here and its Complaint should be dismissed.

### Second Defense

Wachovia's claims against Majapara are barred in whole or in part by the doctrine of estoppel. Wachovia induced Majapara to give it most of Majapara's business by, among other things, the extension of the operating facilities from which Wachovia earned substantial fees over many years. Wachovia is estopped from claiming damages because (a) it was Wachovia's

18

termination of Majapara's operating facilities without cause and without notice that caused Majapara to be unable to pay Wachovia on December 7, and (b) it was Wachovia's false accusations of fraud and theft (in order to obtain attachments and an injunction) that destroyed Majapara's business.

## Third Defense

Wachovia's claims against Majapara are barred in whole or in part by the doctrine of unclean hands. Wachovia induced Majapara to give it most of Majapara's business by, among other things, the extension of the operating facilities from which Wachovia earned substantial fees. Wachovia's termination of Majapara's operating facilities without cause and without notice caused Majapara to be unable to pay Wachovia on December 7, and Wachovia's false accusations of fraud and theft (in order to obtain attachments and an injunction) that destroyed Majapara's business.

## Fourth Defense

Wachovia's claims against Majapara are barred in whole or in part by Wachovia's failure to mitigate its damages. As a result of Wachovia's false accusations of fraud and theft, Majapara's business was destroyed, causing Majapara to be unable to pay Wachovia for the outstanding FX transactions.

## Fifth Defense

Wachovia's claims against Majapara are barred in whole or in part by the doctrine of duress. Wachovia induced Majapara to give it most of Majapara's business, among other things, the extension of the operating facilities from which Wachovia earned substantial fees. Wachovia knew that Majapara was dependent on these operating facilities. Wachovia's termination of Majapara's operating facilities - without cause and without notice - left Majapara unable to pay

19

Wachovia on December 7, and Wachovia's false accusations of fraud and theft in order to obtain attachments and an injunction caused Majapara's business to be destroyed.

### Sixth Defense

Wachovia's claims against Majapara are barred in whole or in part because this Court lacks personal jurisdiction over Majapara.

### Seventh Defense

Wachovia's claims against Majapara are barred due to insufficiency of process.

Majapara hereby reserves the right to amend this Answer and Counterclaims to include additional defenses as they become known to Majapara.

### COUNTERCLAIMS

### Introduction and Nature of the Case

1.    As a result of Wachovia's unwarranted and wrongful actions, Majapara's entire business has been destroyed and over 600 Majapara employees are out of work.

2.    After having done business with Majapara for over ten years, Wachovia, without cause and without advance notice, terminated all operating credit facilities extended to Majapara.

3.    Less than ten days after this termination, Wachovia filed two lawsuits against Majapara seeking *ex parte* prejudgment attachments and an injunction. Wachovia knew that in such *ex parte* proceedings the Courts would necessarily have to trust Wachovia to make full and fair disclosure of all facts material to the Courts because – of course – Majapara would not be there. Wachovia took this opportunity, instead, to withhold material facts from the Court, assuring that the Courts would grant Wachovia the injunction and attachments that it sought.

4.  Although Wachovia claimed that Majapara had not paid it $38 million that it owed for certain foreign exchange transactions, Wachovia did not disclose to the Courts the reason Majapara could not pay – because Wachovia had terminated Majapara's operating facilities without cause and without notice.  Wachovia did not disclose to the Courts that just months earlier it had induced Majapara to move business Majapara was doing with Harris Bank to Wachovia.  Wachovia did not disclose to the Courts information showing that the withdrawals of funds by Majapara from its Wachovia account – withdrawals that Wachovia claimed were intended to frustrate any attempts by Wachovia to collect its debt – were, in fact, done in the ordinary course of Majapara's business.

5.  Wachovia breached its contractual duties to Majapara, tortiously interfered with Majapara's relations with other banks, and then wrongfully obtained an injunction and attachments from two Courts.  Wachovia's actions not only violate the law, but also fundamental principles of justice, equity, and good conscience.  For the substantial losses Majapara has suffered at the hands of Wachovia, Majapara seeks redress including an award of compensatory damages, and punitive damages which are definitely warranted in this case.

**Parties, Jurisdiction, and Venue**

6.  Counterplaintiff Majapara began operations as foreign exchange bureau (casa de cambio) in 1989 and had grown by December 2007 to have over 600 employees and offices throughout Mexico.  Majapara has no offices outside of Mexico.  Its principal place of business is in Mexico City, Mexico.

7.  Upon information and belief, Counterdefendant Wachovia is a national banking association with its principal place of business in North Carolina and various offices in the U.S. and abroad, including New York, Illinois, and Mexico City.

21

8. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, and 12 U.S.C.
§ 632, in that this is a suit (i) of a civil nature at common law or in equity to which Wachovia,
which is organized under the laws of the United States, is a party; and (ii) arising out of
transactions involving international or foreign banking, or out of other international or foreign
financial operations, and as such is deemed to arise under the laws of the United States. This
Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, in that this is a civil
action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest
and costs, and is between a citizen of a State and a citizen or subject of a foreign state. This
Court also has pendent jurisdiction over these counterclaims.

**General Allegations**

9. Majapara has operated as a foreign exchange bureau (casa de cambio) in Mexico
since 1989. Majapara's business grew from a 17 person office to over 600 employees by
December 2007.

10. Majapara is subject to the regulation of the Mexican banking authorities. In
accordance with Mexican law, Majapara engaged in FX transactions and the purchase and sale of
items like bill payment orders, checks, and drafts in foreign currencies. Pursuant to Mexican
law, Majapara was authorized to enter into transactions for the purchase and sale of these items
that would settle up to two days later. Thus, Majapara would accept checks drawn on U.S. banks
from its customers and provide cash to the customers the same day. Then Majapara would
electronically transmit those checks to Wachovia. Wachovia would credit Majapara's account
for those checks on the same day. Wachovia would then negotiate the check via the US
Interbank Clearing System or other method.

22

11. Majapara has endeavored to operate the highest quality business operations possible. As such, in 2004 Majapara voluntarily subjected itself and its anti-money laundering processes to the scrutiny of outside auditors in order to obtain ISO 9001 certification. Majapara had an independent accreditation organization conduct an audit of those processes for effectiveness and conformance to the rigorous standards of ISO 9001:2000. As a result of this audit, Majapara obtained the ISO 9001 certification.

**Majapara's Course of Dealing with Wachovia**

12. Majapara had a longstanding business relationship with Wachovia going back more than ten years. In addition to Wachovia's longstanding practice of providing a day or two of float to Majapara in connection with FX transactions, Wachovia also provided Majapara with operating lines of credit, overdraft privileges, and the ability to process unlimited remittances. These "operating facilities" had been in place for many years.

13. While these operating facilities were not memorialized in writing, Wachovia knew that Majapara was dependent upon them and that terminating them without notice would be damaging to Majapara's business.

14. In February 2007, Wachovia induced Majapara to transfer to Wachovia certain business that it had previously been doing with Harris Bank. At that time, Majapara cleared remittances through Harris Bank as well as Wachovia. Wachovia sought to earn the fees that Majapara had previously been paying to Harris Bank for its clearing services. Thus, Wachovia sought a meeting with Majapara in Mexico City at which Wachovia representatives requested that Majapara transfer the Harris Bank clearing business to Wachovia. Majapara agreed. Over the next few months, Majapara transferred to Wachovia virtually all of the business it had been doing with Harris Bank.

23

15.     Majapara would never have agreed to Wachovia's request if it believed that Wachovia could give Majapara absolutely no advance notice that it was terminating Majapara's operating facilities. Majapara reasonably believed that Wachovia was obligated to provide such notice by their longstanding course of dealing.

**Wachovia's Reaction to Bad Publicity**

16.     Some time later, Wachovia was the subject of embarrassing press reports that it had been doing business with certain businesses engaged in laundering the proceeds of the illegal drug trade. A November 15, 2007 Forbes article, entitled "Banking on Drugs," reported that a Wachovia customer, Casa de Cambio Puebla ("Puebla") was linked to a business jet carrying tons of cocaine that crashed in September in Mexico. Puebla also was linked to the purchase of another plane carrying tons of cocaine that was seized by Mexican officials a year earlier. Puebla is not related in any way to Majapara.

17.     Upon information and belief, Wachovia decided to cease doing business with businesses outside the U.S. as a reaction to embarrassing press reports of Wachovia's dealings with Puebla.

**Wachovia Terminates Majapara Without Cause and Without Notice**

18.     Late in the day on December 5, 2007, Majapara was visited by Carlos Perez and Juanita Gomez of Wachovia who hand delivered a letter informing Majapara that Wachovia's operating facilities were terminated. These operating facilities were being terminated without cause. As the letter from Carlos Perez stated:

> [a]s part of the ongoing review and re-evaluation of our long-term global strategy, Wachovia Bank, National Association ("Wachovia") has determined to cease providing correspondent banking services to exchange companies outside the United States. . . . Wachovia and I wish to thank you for your loyalty during our business relationship and wish you continued commercial success.

24

(attached hereto as Exhibit A) The letter then informed Majapara that "your existing credit lines with Wachovia have been cancelled. Any current outstanding utilized credit will remain in place until it has come to maturity." In case there was any doubt, Mr. Perez made it clear — Majapara's operating facilities were terminated effective immediately. Majapara pleaded with Mr. Perez to continue its operating facilities for a short time in order to give Majapara time to arrange for a substitute bank, but he refused.

**After Termination, Majapara Scrambles to Deal With**
**Dire Situation, Yet Pays Almost $40 Million to Wachovia**

19.     In an effort to deal with this situation, Majapara began contacting other banks seeking a substitute for the operating facilities that Wachovia had just terminated. Majapara also approached other foreign exchange bureaus seeking to negotiate operating alliances or the sale of lines of Majapara's business.

20.     Not surprisingly, Majapara rapidly began experiencing liquidity problems that continued to worsen over the next few days. Despite the fact that Wachovia had caused Majapara's liquidity problems, Majapara paid to Wachovia almost $40 million to settle FX transactions the day after receiving this devastating news.

21.     Despite its best efforts, Majapara lacked sufficient funds to be able to settle the approximately $38 million in FX transactions that Wachovia had entered into with Majapara on December 5 — before Wachovia delivered its devastating news. At the time Majapara entered into those transactions, Majapara had no idea that Wachovia was going to terminate its operating facilities later that day. At the time Wachovia accepted Majapara's orders for these transactions, however, Wachovia would have known this.

22.     Over the next few days, Majapara continued trying to line up a substitute for Wachovia. Banks that Majapara approached required time to obtain information about Majapara

in order to present the information to the bank credit committees and otherwise obtain necessary approvals. Majapara contacted other Mexican foreign exchange bureaus in an effort to enter into operating alliances or to sell them certain lines of business.

23.     On December 13, Majapara's CEO, Jorge Ortiz Muñoz telephoned Wachovia's Carlos Perez to again ask him to continue Majapara's operating facilities until the company could make substitute arrangements. Mr. Ortiz informed Mr. Perez that Majapara was doing everything possible to pay Wachovia, but that Majapara was having difficulty dealing with the abrupt cancellation of its longstanding operating facilities. Mr. Ortiz informed Mr. Perez that reasonable notice would have enabled Majapara to replace Wachovia's operating facilities with another bank. Finally, Mr. Ortiz offered to provide Wachovia with security for the debt. Mr. Perez did not agree. Mr. Ortiz summarized his conversation with Mr. Perez in a December 13 letter that he sent to Mr. Perez. (attached hereto as Exhibit B)

**Wachovia's Misrepresentations to the Courts**

24.     The next day, December 14, Wachovia filed an action in the U.S. District Court for the Southern District of New York ("New York District Court") seeking emergency *ex parte* prejudgment relief including an attachment of Majapara's bank accounts and an injunction. Wachovia simultaneously filed an action in Circuit Court of Cook County, Illinois ("Illinois state court") seeking an *ex parte* attachment (attached as Exhibit C).

25.     In order to obtain relief from the New York District Court, Wachovia submitted a complaint (attached as Exhibit D), memorandum of law (attached as Exhibit E), and sworn declarations of Wachovia's Carlos Perez and attorney Scott McKessy (attached as Exhibit F and G, respectively). On the basis of those submissions, the Court entered the December 14 Order to Show Cause, which included an injunction against Majapara. (attached as Exhibit H)

26.  In the Declaration of Mr. McKessy filed by Wachovia with the Court, Mr.
McKessy stated under oath that expedited *ex parte* relief was being sought "because of the
likelihood that, if notified of the instant application before hand, defendant Majapara Casa De
Cambio S.A. de C.V. ("Majapara") will dissipate or transfer assets which are the subject of this
application." Mr. McKessy also stated under oath that Majapara had "absconded with over $38
million" of Wachovia's funds and had made a "threat" to make itself judgment proof and
frustrate any attempt by Wachovia to collect.

27.  Mr. McKessy's declaration failed to disclose to the Court that Wachovia had
without cause and without notice terminated Majapara operating facilities. His declaration failed
to disclose the almost $40 million that Majapara paid to Wachovia on December 6 – the day after
Majapara's operating facilities were terminated. These are material facts of which Mr. McKessy
knew or reasonably should have ascertained before filing Wachovia's request for emergency
relief and should have disclosed these facts to the Court in his declaration.

28.  In the Declaration of Mr. Perez that Wachovia filed with the Court, Mr. Perez
stated under oath that Majapara had reneged on its transactions and "absconded with Wachovia's
money." Mr. Perez stated under oath that Majapara knew of its liquidity crisis before the closing
of the December 5 FX transactions. Mr. Perez stated that Majapara had "engaged in illegal loans
in relation to its foreign exchange transactions." Finally, Mr. Perez stated that "based upon [his
December 13] conversation [with Mr. Ortiz], it is my belief that Majapara engaged in fraud…."

29.  Mr. Perez's declaration failed to disclose to the Court the reason Majapara had not
been able to pay Wachovia on time – that Wachovia *caused* Majapara's liquidity crisis by
terminating its operating facilities without cause and without advance notice *after* Majapara had
placed the December 5 FX transactions. Mr. Perez's declaration failed to disclose to the Court

27

that the day after getting this devastating news, Majapara paid to Wachovia almost $40 million. These are material facts of which Mr. Perez knew or reasonably should have known and should have disclosed to the Court in his declaration.

30.    After years of doing business with Majapara, Mr. Perez knew or reasonably should have known that Majapara was not engaged in any illegality. Since Wachovia had been providing millions of dollars of credit to Majapara for years, it is difficult to believe that Wachovia did not know Majapara's business.

31.    Wachovia's memorandum of law, upon which the Court expressly relied in entering its December 14 Order to Show Cause, misrepresented to the Court that Majapara had "caused itself" to go out of business. Wachovia knew that it had terminated Majapara's operating facilities on December 5 without cause and without any advance notice. Wachovia knew that months earlier it had induced Majapara to move even more of its business to Wachovia. As a result, Wachovia knew or reasonably should have known that this statement simply was not true.

32.    Wachovia's memorandum of law contains additional materially misleading statements ostensibly made in order to induce the Court to enter the temporary restraining order it sought. In its memorandum of law, Wachovia represented to the Court that Majapara had "already attempted to remove certain funds from its Wachovia accounts." Wachovia knew or should have known that any transfers of funds into or out of Majapara's accounts were done in the ordinary course of Majapara's business. Nevertheless, Wachovia made false and materially misleading statements to the Court in order to lead the Court to believe that Majapara was attempting to move assets beyond Wachovia's reach. Moreover, Wachovia knew that it was not

28

entitled to a TRO or preliminary injunction because an inability to collect a money judgment does not satisfy the requisite of irreparable harm.

33.    Wachovia's complaint is rife with misrepresentations and fails to disclose the material facts set forth above. In the complaint, Wachovia accuses Majapara of fraud because **"at the time Majapara entered into the December 5, 2007 agreement, it knew it was illiquid and insolvent and incapable of performing its obligations under the parties' agreement."** (emphasis added) Wachovia could not have believed this to be true when it knew that the genesis of Majapara's liquidity crisis was Wachovia's termination of Majapara's operating facilities. Therefore, Wachovia knew or reasonably should have known at the time it made this statement that it was not true.

34.    Thus Wachovia induced the Court to enter the Order to Show Cause providing that "Majapara, shall be and hereby is enjoined and restrained from transferring, selling, pledging, assigning or otherwise disposing of any of its assets." (attached hereto as Exhibit H) The Order to Show Cause was based solely upon representations that Wachovia made to the Court.

35.    The Order of Attachment entered by the Court on December 20 was based upon the same materially false and misleading representations made by Wachovia to the Court in support of the Order to Show Cause and was entered without adequate notice to Majapara. (attached hereto as Exhibit I)

36.    Wachovia made substantially the same false and misleading representations to the Illinois state court in order to induce it to grant an order of attachment. (attached hereto as Exhibit J)

29

**Wachovia Disseminates Orders**
**Obtained Through Misrepresentations to Courts**

37.     After Wachovia induced the New York District Court and the Illinois state court to enter Orders against Majapara that Wachovia knew or reasonably should have known were based upon false statements, Wachovia then embarked upon a course of disseminating those Orders to others. Wachovia disseminated the New York District Court's Orders and the Orders of the Illinois state court along with other materials to banks including Harris Bank, Citibank, JP Morgan Chase, Deutsche Bank, Standard Chartered, Bayerische Hypo- und Vereins Bank AG, Wells Fargo, and the Royal Bank of Canada. Because Wachovia obtained these Orders on the basis of sworn declarations and other statements that it knew or reasonably should have known were false and misleading, Wachovia knew that it was not entitled to the Orders. Thus, Wachovia was not privileged to disseminate these Orders to the banks nor was the dissemination of the Orders done in furtherance of Wachovia's legitimate interests in pursuing its interests in litigation. Wachovia's dissemination of these Orders was wrongful and the severe damage such dissemination caused to Majapara's reputation and ability to continue as a foreign exchange bureau was in no way justified.

38.     Upon information and belief, Wachovia repeated the misleading statements in the documents filed with the Court to other foreign exchange bureaus and banks in Mexico in order to interfere with Majapara's efforts to obtain alternative financing, to interfere with Majapara's efforts to enter into operating alliances with other foreign exchange businesses, and/or to interfere with Majapara's efforts to sell certain lines of business. Wachovia's interference was malicious, unlawful, and not undertaken for any legitimate purpose or to advance any legitimate interest of Wachovia. As a result of Wachovia's interference, banks and foreign exchange bureaus with whom Majapara had been negotiating abandoned all discussions with Majapara.

30

39.    Upon information and belief, shortly after filing its cases, Wachovia made substantially the same false and misleading statements made in the documents filed with the Courts to banking regulators in Mexico, in order to induce the regulators to take action against Majapara.

40.    Shortly after Wachovia initiated the New York District Court action and the Illinois state court action, the affidavit of Carlos Perez was published on an internet website. On February 13, 2008 another website reported facts from documents filed with the Court on February 11. Upon information and belief, Wachovia has excessively and impermissibly published these court filings. Upon information and belief Wachovia or others acting on its behalf have made substantially the same false and misleading statements made in the documents filed with the Court to the media in order to induce the media to publish such statements.

## COUNT I
### Breach of Contract

41.    Majapara incorporates paragraphs 1 through 40 above as if fully set forth herein.

42.    As set forth above, for many years Wachovia and Majapara had a contractual relationship whereby Wachovia provided operating facilities to Majapara.    That contractual relationship is evidenced by the course of dealing between the parties over many years.

43.    Wachovia owed Majapara a contractual duty to provide Majapara with reasonable notice that Wachovia was terminating its operating facilities so that Majapara would have time to make substitute arrangements.

44.    Wachovia breached its contractual duty to Majapara by terminating the operating facilities without cause and without providing Majapara any advance notice whatsoever.

45.    Majapara suffered significant damages as a result of Wachovia's breach.

WHEREFORE, Majapara respectfully requests that this Court:

31

a.     enter judgment in its favor;

b.     award Majapara compensatory, including interest as allowed by law;

c.     award Majapara its costs and fees as allowed by law; and

d.     award Majapara such other and further relief as the Court may deem just and proper.

## COUNT II
### Wrongful Injunction

46.     Majapara incorporates paragraphs 1 through 45 above as if fully set forth herein.

47.     On December 17, 2007, Wachovia obtained injunctive relief against JOM Corporation of Illinois from the Illinois state court. On December 14 and 20, 2007, Wachovia obtained injunctive relief against Majapara from the New York District Court. Because Wachovia obtained these injunctions by making false and misleading statements to the Courts, and Majapara was not provided with an opportunity to be heard on December 20, 2007, it was never entitled to such injunctive relief.

48.     Wachovia knowingly or recklessly made false and misleading statements to the Courts, including the following:

- Majapara engaged in fraud because "at the time Majapara entered into the December 5, 2007 agreement, it knew it was illiquid and insolvent and incapable of performing its obligations under the parties' agreement;"

- Majapara engaged in fraud because it did not intend to repay Wachovia for the December 5 FX transactions;

- Majapara engaged in fraud because Majapara was engaged in illegal and illicit lending activities in violation of Mexican law;

- Majapara had tried to move funds from the account it had with Wachovia as part of an effort to place its assets beyond the reach of Wachovia in order to frustrate Wachovia's ability to collect on any judgment.

32

49.    Wachovia knew or reasonably should have known that these statements were false and materially misleading because Wachovia knew facts to the contrary, including the following:

- Wachovia caused Majapara's liquidity crisis by terminating Majapara's operating facilities *after* Majapara had placed the December 5 FX transactions;

- Despite its abrupt termination by Wachovia, Majapara still paid Wachovia almost $40 million the very next day to settle FX transactions;

- Majapara was unable to settle the remaining $38 million of FX transactions because of Wachovia's abrupt termination of Majapara's operating facilities;

- The purported "lending" that Majapara engaged in was authorized by Mexican law, and Wachovia knew it because it was Wachovia who processed the millions of dollars of remittances for Majapara every day.

50.    Thus, Wachovia knew or reasonably should have known that the statements made in paragraph 48 above were materially false and misleading.

51.    Wachovia failed to give appropriate notice to Majapara of the hearing and return date for Wachovia's Order to Show Cause, which unbeknownst to Majapara, was heard by the Court on Thursday, December 20, 2007 at 3:30 PM.

52.    Wachovia made the false and misleading statements in paragraph 48 above in order to induce the Courts to grant Wachovia *ex parte* prejudgment relief, including attachment of Majapara's bank accounts and an injunction.  The Illinois state court and the New York District Court expressly relied upon Wachovia's false and misleading statements in deciding to enter orders granting prejudgment relief.

53.    Wachovia falsely represented to the Courts that it would suffer irreparable injury if the injunctions sought were not granted despite knowing that its claims for purely money damages was insufficient to satisfy this requirement.

33

54. As a result, Wachovia knew or reasonably should have known that it was not entitled to the injunctive relief it obtained from the Illinois state court and the New York District Court.

55. As a result, Majapara suffered severe damages.

WHEREFORE, Majapara respectfully requests that this Court:

a. enter judgment in its favor;

b. award Majapara compensatory and punitive damages, including interest as allowed by law;

c. award Majapara its costs and fees as allowed by law; and

d. award Majapara such other and further relief as the Court may deem just and proper.

## COUNT III
### Wrongful Attachment

56. Majapara incorporates paragraphs 1 through 55 above as if fully set forth herein.

57. Because Wachovia obtained these attachment orders by making false and misleading statements to the Illinois state court and the New York District Court, it was never entitled to such relief. On December 14, Wachovia obtained an order of attachment from the Illinois state court. On December 20, 2007, Wachovia obtained an Order of Attachment from the New York District Court. As set forth in Count II above, Wachovia knowingly or recklessly made false and misleading statements to the Illinois state court and the New York District Court.

58. Wachovia knew or reasonably should have known that these statements were false and materially misleading because Wachovia knew facts to the contrary, including those facts set forth in paragraph 49.

34

59. Thus, Wachovia knew or reasonably should have known that the statements made in paragraph 48 above were materially false and misleading.

60. Wachovia made the false and misleading statements in paragraph 48 above in order to induce the Illinois state court and the New York District Court to grant Wachovia *ex parte* prejudgment relief, including attachment of Majapara's bank accounts. The Illinois state court and the New York District Court expressly relied upon Wachovia's false and misleading statements in deciding to enter orders granting prejudgment relief.

61. As a result, Majapara suffered damages.

WHEREFORE, Majapara respectfully requests that this Court:

a. enter judgment in its favor;

b. award Majapara compensatory and punitive damages, including interest as allowed by law;

c. award Majapara its costs and fees as allowed by law; and

d. award Majapara such other and further relief as the Court may deem just and proper.

## COUNT IV
### Tortious Interference with Contract

62. Majapara incorporates paragraphs 1 through 61 above as if fully set forth herein.

63. Wachovia knew that although Majapara had most of its business with Wachovia, it also had relationships and contracts with other banks and financial institutions. Moreover, Wachovia knew that Majapara had relationships and contracts with its customers in Mexico.

64. On information and belief, Wachovia maliciously and for improper purposes

35

made accusations that Majapara was engaged in fraud and theft. On information and belief Wachovia made those false accusations to banks including Harris Bank, Citibank, JP Morgan Chase, Deutsche Bank, Standard Chartered, Bayerische Hypo- und Vereinsbank AG, Wells Fargo, and the Royal Bank of Canada. On information and belief, Wachovia maliciously and for improper purposes made these false and misleading statements to customers of Majapara.

65.    As a result of Wachovia's wrongful interference, Majapara's relationship with its customers and with banks with which it did business has been damaged.

WHEREFORE, Majapara respectfully requests that this Court:

a.       enter judgment in its favor;

b.       award Majapara compensatory and punitive damages, including interest as allowed by law;

c.       award Majapara its costs and fees as allowed by law; and

d.       award Majapara such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Majapara hereby demands trial by jury for all claims so triable as of right.

Dated: February 27, 2008

Respectfully submitted,
Casa de Cambio Majapara S.A. de C. V.

_____/s/ Celiza P. Bragança_____
One of Its Attorneys

Celiza P. Bragança
Thomas D. Brooks
Sperling & Slater, P.C.
55 W. Monroe
Suite 3200
Chicago, IL 60603
(312) 641-3200
(312) 641-6492 (fax)

## CERTIFICATE OF SERVICE

I, Céliza P. Bragança, an attorney, hereby certify that a true and correct copy of the foregoing **Amended Answer and Counterclaims** has been served upon:

Barry S. Rosen
Michael D. Richman
Michael S. Leib
REED SMITH, LLP
10 S. Wacker Drive
Chicago, Illinois 60606-7507

By electronic case filing this 27th day of February, 2008.

/s/ Celiza P. Bragança

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, Casa de Cambio Majapara S.A. de C.V. ("Majapara" or the "Debtor"), submits

its response in opposition (this "Response") to Defendant, Wachovia Bank, National

Association's ("Wachovia"), motion for summary judgment (the "Motion") and memorandum of

law in support thereof.

**INTRODUCTION**

Wachovia cannot establish that the Prejudgment Attachments are transfers in connection

with swap agreements, and the Motion must be denied. The Prejudgment Attachments are not

the type of transactions that Congress intended to protect when it enacted section 546(g).

Because the Prejudgment Attachments (by their nature) were ordered in a proceedings in which

the courts determined, among other things, that the Debtor had or was going to fraudulently

transfer or transfer out of the country assets that might otherwise be available to satisfy any

{6591 RESP A0208564.DOC}

judgment that Wachovia might obtain in that action, the Prejudgment Attachments are transfers

pursuant to that determination and have nothing to do with the nature of the underlying cause of

action that Wachovia asserted against Majapara. Indeed, the sole purpose of a prejudgment

attachment is to secure an eventual judgment that may or may not ultimately be entered. Thus,

even if the underlying cause of action involves a swap agreement, the prejudgment attachment

itself does not coincide with the swap agreement but is made in connection with an entirely

different determination (i.e., that the debtor is a foreign entity and has or intends to fraudulently

transfer its assets beyond the reach of its creditors). For the same reasons, they are not made to

or for the benefit of Wachovia in its capacity as a swap participant. The Prejudgment

Attachments are accordingly outside the scope of the safe harbor provided by section 546(g), and

the Motion should be denied.

## ARGUMENT

### A.     Legal Standard

Summary judgment is appropriate when the movant establishes that there is no genuine

issue of material fact and it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a),

as made applicable by Fed. R. Bankr. P. 7056. As the movant, Wachovia must establish that

there is no genuine issue of material fact concerning each element of its affirmative defense. *Cf.*

*Havoco of America, Ltd. v. Freeman, Atkins, and Coleman, Ltd.*, 58 F.3d 303, 306 (7th Cir.1995)

(on summary judgment motion, defendant has burden of establishing affirmative defense of

collateral estoppel). The failure to prove a single element of its affirmative defense as a matter

of law warrants a denial of the Motion. In this case, Wachovia cannot establish that the

Prejudgment Attachments were made under or in connection with a swap agreement, or to or for

the benefit of Wachovia in its capacity as a swap participant, and the Motion should accordingly
be denied.

## B. The Prejudgment Attachments Are Not Protected Transfers Under Section 546(g).

Wachovia does not dispute that the Prejudgment Attachments are transfers within the
meaning of sections 101(54) and 547 of the Bankruptcy Code, nor could it. *In re Interbulk, Ltd.*,
240 B.R. 195, 201-02 (Bankr. S.D.N.Y. 1999) (holding that an attachment is a transfer).[1] Nor
can Wachovia allege that the Prejudgment Attachments are transfers made under a swap
agreement. *Id.* Because all of the other elements of section 546(g) are similarly undisputed, this
Court must decide only whether the Prejudgment Attachments are (i) transfers "in connection
with" any swap agreement and (ii) made to or for the benefit of Wachovia as a swap participant,
within the meaning of section 546(g). They are not.

Without deciding the issue, the *Interbulk* court cast doubt on the application of the
current version of the section 546(g) safe harbor to an attachment. 240 B.R. at 202 ("[A]t best,
the Attachment is a transfer 'in connection with' a swap agreement."). The *Interbulk* court held
that "the Attachment cannot be viewed as a transfer both 'under' and 'in connection with' a swap
agreement." *Id.* Because of the version of section 546(g) then in effect, the court was able to
conclude that the attachment was subject to avoidance as a preferential transfer merely because it
could not be characterized as a transfer *under* a swap agreement. *Id.* Although the court's
decision was easy in light of the version of the statute then in effect, the court nonetheless
questioned the idea that an attachment was fairly viewed as a transfer *in connection with* a swap
agreement. *Id.* Indeed, the court did so while acknowledging both the proposed amendment to
use the disjunctive term "or" in section 546(g), as it is now written, and the likelihood that

---

[1] The attachment in *Interbulk* involved an account receivable of the debtor. 240 B.R. at 198.

Congress originally intended that a transfer under *or* in connection with a swap agreement be protected even though the prior version used the term "and." *Id.* at 202 n.10.

As the *Interbulk* court suggested, an attachment is not the type of transfer that is fairly characterized as a transfer in connection with a swap agreement. An attachment does not fall under the section 546(g) safe harbor because the protection of prejudgment attachments does not further any legislative purpose and a prejudgment attachment is actually a transfer made in connection with an entirely different determination that focuses entirely on the debtor and the debtor's assets and not on the nature of the underlying cause of action. For the same reasons, they are not transfers made to or for the benefit of swap participant.

### 1.   Section 546(g) Was Not Designed to Protect Attachments.

Here, the Prejudgment Attachments are not the type of transfers that section 546(g) is intended to protect. In order to understand the purpose of section 546(g), which was first added to the Bankruptcy Code in 1990, the Court must consider the legislative history. Congress explained the purpose and summarized the background of section 546(g) and related changes to the Bankruptcy Code as follows:

> The purpose of H.R. 4612 is to ensure that the swap and forward contract financial markets are not destabilized by uncertainties regarding the treatment of their financial instruments under the Bankruptcy Code. The bill provides the same exemption from the Bankruptcy Code's automatic stay and trustee avoidance provisions to interest rate and foreign currency rate swap agreements that current law provides to other similar types of financial agreements, including repurchase agreements, securities contracts, commodities contracts, and forward contracts.... [C]oncerns regarding volatility in the swap agreement markets resulting from the uncertainty over their treatment in the Bankruptcy Code have increased.

H.R.Rep. No. 101-484, P.L. 101-311, *reprinted in*, 1990 U.S.C.C.A.N. 223, 1990 WL 92537 (May 14, 1990).

With respect to foreign currency swap transactions, the House Report for the 1990

amendments further explains the nature of swap agreements and the need to include special

provisions in the Bankruptcy Code as follows:

> The two parties to a swap agreement typically enter into a number of such
> agreements, occurring over a period of 1 to 12 years. Fluctuations in the rate of
> return can be expected to occur in both directions in the course of an agreement,
> or over the course of multiple agreements which are incorporated into a single
> master agreement. At the end of the swap agreement term, or upon default, the
> total of the periodic fluctuations, measured at specified periods during the term,
> are calculated, the amounts the first party owes to the second are set off against
> the amounts the second party owes the first, and the net sum owing from one
> party to the other is "netted out."

> The setoff process, which is at the center of the swap agreement, may be skewed
> if one of the parties has filed for bankruptcy. Under the "avoidance" provisions in
> current bankruptcy law, if a swap agreement was in effect at the time one of the
> parties filed a bankruptcy petition, the *fund transfer* from the debtor to the other
> party might be "avoidable" by the trustee, while the transfer from the other party
> to the debtor would not be. Concerns have been raised that under current
> bankruptcy law, termination and setoff of a swap agreement would be
> automatically stayed when one of the parties files a bankruptcy petition,
> whereupon the trustee, after indefinitely postponing termination of the swap
> agreement, could refuse setoff and unfairly "cherry pick" only the portions of the
> agreement advantageous to the debtor, while rejecting the portions unfavorable to
> the debtor.

*Id.* (emphasis added). The remarks offered in both the House and Senate are in accord. *See* 136

Cong. R. H 2282 (May 15, 1990) (statement of Rep. Brooks); 136 Cong. R. S S7335 (daily ed.

June 6, 1990) (statement of Sen. DeConcini). Thus, as the *Interbulk* court noted, section 546(g)

was enacted to avoid unrest and disruption of financial markets fueled by seeking to avoid only

the transactions that in hindsight turned out to be unfavorable to the debtor. 240 B.R. at 202

n.10. In other words, Congress sought to ease concerns in the financial markets and to protect

ordinary transactions involving financial instruments from the nuances of the Bankruptcy Code.

Congress's reference to the term "fund transfer" in explaining its concerns regarding

potential avoidance actions is telling. Congress implemented these provisions in order to shield

the market from volatility that might ensue if settled transactions were subsequently subject to attack. H.R.Rep. No. 101-484, P.L. 101-311. *Cf. In re Enron Corp.*, 325 B.R. 671, 684 (Bankr. S.D.N.Y. 2005) (goal of section 546(e) is to preserve stability of settled transactions). It therefore sought to preserve the finality of completed financial transactions that have an effect on the financial markets. It did not seek to protect conditional transfers such as prejudgment attachments that are merely held in abeyance pending the result of litigation that could take years to resolve. Clearly, the protection of involuntary, conditional transfers like prejudgment attachments was not contemplated by Congress in light of its discussion of preserving the finality of funds transfers and avoiding market volatility because of the ability of financial markets to change significantly in a matter of days, or even hours. *See* H.R.Rep. No. 101-484, P.L. 101-311.

Indeed, section 546(g) was not enacted to protect parties that file lawsuits against insolvent debtors and obtain *ex parte* prejudgment attachment of a debtor's assets in order to better its position in the priority scheme to the detriment of the debtor's other unsecured creditors. If Congress had intended to provide claims under swap agreements with a higher priority than other unsecured creditors, it would have done so under section 507(a) of the Bankruptcy Code. It did not. As set forth above, the legislative history is clear that section 546(g) is not a provision that seeks to eliminate the ordinary business risk of engaging in swap agreements with an insolvent entity. *Id.* Instead, it seeks to ensure that the provisions of the Bankruptcy Code will not unduly increase the ordinary business risk that such transactions inherently entail. *Id.*

In this case, the Debtor entered into spot transactions with Wachovia on December 5, 2007 that, much like any other daily currency spot transactions between the parties, were to settle

6

two days later on December 7, 2007. (Plaintiff's Rule 7056-2 Response to Defendant's Statement of Material Facts ("Pl. Resp.") ¶ 18). Unlike any other day, however, later in the day on December 5, 2007, Wachovia terminated the correspondent banking services it had provided to the Debtors, including operating lines of credit, overdraft privileges and the ability to process unlimited remittances. (*Id.* ¶ 19.) The Debtor immediately experienced significant liquidity problems and attempted to secure alternative financial arrangements. (*Id.* ¶ 20.) The Debtor nonetheless paid Wachovia roughly $80 million on December 5 and 6, 2007 under or in connection with spot transactions from December 3 and 4, 2007. (*Id.* ¶ 21.)

Unlike the concerns that Congress attempted to address through section 546(g) of the Bankruptcy Code, the Debtor is not attempting to cherry pick transfers that were made to settle its obligations under the swap agreements in an effort to improve its setoff rights or otherwise benefit by avoiding a series of unfavorable swaps while retaining the benefits of favorable ones. Moreover, the Debtor is not seeking to recover as preferential transfers any of the funds paid to Wachovia on December 5 and 6, 2007 or the approximately $14 million of new funds seized by Wachovia as they were deposited into the Debtor's operating accounts with Wachovia between December 5, 2007 and December 14, 2007. Instead, the Debtor is merely seeking to avoid the *ex parte* Prejudgment Attachments that Wachovia obtained by wrongfully alleging that the Debtor engaged in fraud and was likely to dispose of the assets before any judgment could be obtained. The Debtor is seeking to avoid the Prejudgment Attachments so that the funds Wachovia attached as a potential judgment creditor are shared equally with any other unsecured creditor on account of any allowed claim it may have against the Debtor and its estate.

2.    **The Prejudgment Attachments Were Not Made "In Connection With" Swap Agreements or to Wachovia as a Swap Participant.**

The Prejudgment Attachments were not made in connection with a swap agreement. They were also not made to or for the benefit of Wachovia in its capacity as a swap participant. They were made in connection with Wachovia's *ex parte* and false statements to two different courts to the effect that the Debtor had and/or was going to fraudulently conceal or transfer assets in order to hinder or delay its creditors. They were also made because the Debtor is a foreign corporation in order to prevent certain assets from being transferred to Mexico and out of the reach of Wachovia as a potential judgment creditor. Indeed, although the possible success of the underlying causes of action play a role, the nature of the underlying causes of action do not factor into the determination of whether a prejudgment attachment is appropriate.

In the New York Action, aside from the location of the Debtor's business, Wachovia argued in favor of prejudgment attachment on the grounds that "until Majapara's New York assets are attached, there is more than a substantial risk that they will be transferred out of the jurisdiction, or country for that matter, potentially preventing Wachovia from enforcing a judgment obtained in this action." (Wachovia's Memorandum of Law in Support of Its Application for a Temporary Restraining Order and Pre-Judgment Order of Attachment (the "New York Mot.") at 4, attached as Exhibit 1 to Leib Decl.) Wachovia also argued that "Majapara's actions, taken together, suggest a clear intention to transfer its remaining assets outside the jurisdiction in order to keep true to its promise to frustrate any collection efforts by Wachovia."[2] (*Id.* at 5.) In the Cook County Action, Wachovia similarly argued in favor of prejudgment attachment on the grounds that the Debtor intended "to frustrate and hinder Wachovia from collecting any of its millions of dollars owed to it by Defendant if Wachovia

---

[2] This assertion is ironic in light of Wachovia's subsequent insistence in this Case that Wachovia's assets should be administered in Mexico, not the United States.

elects to enforce its rights with respect to the transactions at issue." (Wachovia's Emergency

Motion for Issuance of Order of Attachment (the "Cook County Mot.") at 8, attached as Exhibit

4 to Leib Decl.)

In support of its arguments for prejudgment attachment in the New York and Cook

County Actions, Wachovia relied on statements of the Debtor's alleged fraud it knew, or at a

minimum should have known, to be false including:

- "Defendant's intentional act in accepting over \$38 million worth of Euros with no intention of delivering the corresponding dollars shows their fraudulent conduct." (*Id.* at 3; New York Mot. at 5.)

- On December 7, 2007, the Debtor requested that "Wachovia enter into *further* cash transactions," despite knowing it could not settle the outstanding foreign transaction with Wachovia. (Cook County Mot. at 3.)

- Majapara had tried to move funds from the account it had with Wachovia as part of an effort to place its assets beyond the reach of Wachovia in order to frustrate Wachovia's ability to collect on any judgment. (*Id.*)

- Majapara engaged in fraud because it was engaged in illegal and illicit lending activities in violation of Mexican law. (*Id.* at 3-4.; New York Mot. at 4.)

The Prejudgment Attachments both expressly state the Debtor's alleged fraudulent

conduct as grounds for the entry of the orders. (Adv. Compl., Exhibits A and B.)

Although Wachovia alleged facts to ensure the court would grant its request for the

Prejudgment Attachments, it omitted material facts. Even though Wachovia knew that the

Debtor could not settle certain of the spot transactions with Wachovia because of Wachovia's

abrupt termination of the parties' corresponding banking relationship, (Pl. Resp. ¶¶ 19-20)

Wachovia failed to disclose those pertinent facts. (*See generally* New York Mot.; Cook County

Mot.) Wachovia similarly failed to disclose that the alleged fraudulent withdrawals were

withdrawals in the ordinary course of the Debtor's business. (Pl. Resp. ¶ 20. *See generally* New

York Mot.; Cook County Mot.) In addition, Wachovia failed to inform the court that the Debtor

had requested that Wachovia allow the Debtor a grace period during which it would temporarily continue foreign exchange transactions in order to provide the Debtor with time to transition its business to a new correspondent bank, and not to abscond with additional funds as Wachovia alleges. (Pl. Resp. ¶ 20.) Perhaps most indicative of Wachovia's intent to mislead the courts, Wachovia failed to inform the courts that the Debtor had paid Wachovia approximately \$80 million in the two-day period preceding the date on which the Debtor allegedly absconded with funds in an attempt to defraud Wachovia.[3]  (*Id.* ¶ 21.) In short, Wachovia was less than forthright with the courts. As a result, Wachovia convinced the courts that the Debtor was a substantial risk warranting prejudgment attachment of the Debtors' assets, which is why the transfers occurred.

As such, and contrary to Wachovia's assertions, the Prejudgment Attachments were not made in settlement of any swap agreement. The underlying claims in the New York Action and Cook County Action involved five distinct causes of action, including fraud, and not just breach of any swap agreement. (*Id.* ¶¶ 11, 14.). As such, the Prejudgment Attachments were transfers in order to conditionally secure Wachovia's potential judgment creditor status, arising from any judgments that might be entered on any number of causes of action asserted in Wachovia's complaints. The Prejudgment Attachments were also conditional transfers of interests in the Debtor's property pursuant to the courts' orders because of the Debtor's status as a foreign business and Wachovia's *ex parte* contentions that the Debtor engaged in fraudulent conduct and was likely to transfer its assets in order to delay its creditors. *See supra.* They were not, however, made in connection with any swap agreement. Nor were they made for Wachovia's benefit as a swap participant. Therefore, the Prejudgment Attachments are not protected under

---

[3] Wachovia obviously omitted this fact, because the court would recognize that a party that is attempting to fraudulently transfer or conceal assets from a creditor, as Wachovia contended, would not have just paid millions of dollars to that creditor.

10

section 546(g) and are subject to avoidance under section 547. This court should accordingly

deny the Motion.

## CONCLUSION

Wachovia has not established as a matter of law that its prejudgment attachments are

transfers in connection with swap agreements and, therefore, this Court must deny Wachovia's

request for judgment in its favor.

Respectfully submitted,

Dated: June 9, 2008

CASA DE CAMBIO MAJAPARA S.A.
DE C.V.

By:/s/ *Mark L. Radtke*
    One of its attorneys

Brian L. Shaw (#6216834)
Mark L. Radtke (#6275738)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151 telephone
(312) 980-3888 facsimile

*Counsel for Casa de Cambio Majapara S.A.*
*de C.V.*

## CERTIFICATE OF SERVICE

Mark L. Radtke certifies that service of the foregoing **Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and Memorandum of Law in Support Thereof** was accomplished through the Electronic Notice for Registrants on the attached CM/ECF service list upon the following persons in the manner so indicated on this 9th day of June, 2008

/s/ Mark L. Radtke

## SERVICE LIST

VIA CM/ECF

- Brian Shaw -- bshaw100@shawgussis.com
- Mark Radtke -- mradtke@shawgussis.com
- Janice A Alwin   jalwin@shawgussis.com
- Vipin R Gandra  vgandra@shawgussis.com
- Andrew L. Wool – Andrew.wool@kattenlaw.com
- William T. Neary – USTPRegion11.ES.ECF@usdoj.gov
- Pia Thompson – pthompson@reedsmith.com
- Kimberly Bacher – Kimberly.bacher@goldbergkohn.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**PLAINTIFF'S LOCAL RULE 7056-2 RESPONSE TO DEFENDANT'S**
**STATEMENT OF MATERIAL FACTS AND PLAINTIFF'S**
**STATEMENT OF ADDITIONAL MATERIAL FACTS**

Plaintiff, Casa de Cambio Majapara S.A. de C.V. ("Plaintiff" or the "Debtor"), states as

follows for its Local Rule 7056-2 response to Wachovia Bank, National Association's

("Defendant") Local Rule 7056-1 Statement of Material Facts in Support of Its Motion for

Summary Judgment:

**RESPONSE**

**Parties and Jurisdiction**

1. Wachovia is a national banking association with its principal place of business in
North Carolina and various offices in the United States and abroad. (Adv. Compl. ¶ 3; Wach.'s
Am. Ans. ¶ 3.)

**Answer:** Plaintiff admits the allegations of this paragraph.

2. The Debtor, Casa de Cambio Majapara S.A. de C.V. (the "Debtor"), is a
corporation organized under the laws of Mexico. (Adv. Compl. ¶ 2; Wach.'s Am. Ans. ¶ 2.)

1     {6591 RESP A0208410.DOC}

**Answer:** Plaintiff admits the allegations of this paragraph.

3. This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(F) and 1334(b), applicable rules of the Court and other applicable orders of the United States District Court of the Northern District of Illinois. (Adv. Compl. ¶ 4; Wach.'s Am. Ans. ¶ 4.)

**Answer:** Plaintiff admits the allegations of this paragraph.

4. The Debtor has asserted that venue is proper in this jurisdiction pursuant to 28 U.S.C. §§ 1408 and 1409. (Adv. Compl. ¶ 5.) Since Wachovia is without knowledge as to the location of the Debtor's principal assets in the United States in the one-hundred-and-eighty-day period immediately preceding commencement of the bankruptcy, Wachovia lacks knowledge or information sufficient to form a belief concerning the truth of the venue allegation. (Wach.'s Am. Ans. ¶ 5.)

**Answer:** Plaintiff admits that has asserted that venue is proper in this jurisdiction pursuant to

28 U.S.C. §§ 1408 and 1409. (Adv. Compl. ¶ 5.)

## Relationship Between the Parties

5. In general, a foreign exchange transaction is a transaction in which one party agrees to deliver an agreed amount of one currency to a second party in exchange for the second party agreeing to deliver an agreed amount of a different currency to the first party. (Decl. of Andrew Gross ("Gross Decl.") ¶ 3.)

**Answer:** Plaintiff admits the allegations of this paragraph.

6. A foreign exchange spot transaction is a foreign exchange transaction in which the transaction is required to settle within two business days. (Gross Decl. ¶ 4.)

**Answer:** Plaintiff admits the allegations of this paragraph.

7. On or about December 5, 2007, Majapara and Wachovia agreed to a series of seven foreign exchange spot transactions, all of which were to settle on December 7, 2007 (the "FX agreements"). (Debtor's NDIL Am. Ans. ¶¶ 12, 13, attached as Exhibit 7 to Decl. of Michael S. Leib ("Leib Decl."); Gross Decl ¶ 5; FX agreement confirmations, attached as Exhibit 1 to Gross Decl.)

**Answer:** Plaintiff admits the allegations of this paragraph.

8. Pursuant to the FX agreements, Wachovia agreed to deliver an aggregate of € 26 million Euros to the Debtor in exchange for the Debtor delivering an aggregate of $38,132,700 to

Wachovia. (Debtor's NDIL Am. Ans. ¶ 12, attached as Exhibit 7 to Leib Decl.; Gross Decl. ¶ 6; FX agreement confirmations, attached as Exhibit 1 to Gross Decl.)

**Answer:** Plaintiff admits the allegations of this paragraph.

9. Pursuant to the FX agreements, on December 7, 2007, Wachovia delivered € 26 million Euros to the Debtor. (Debtor's NDIL Am. Ans. ¶ 13, attached as Exhibit 7 to Leib Decl.; Gross Decl. ¶ 7.)

**Answer:** Plaintiff admits the allegations of this paragraph.

10. The Debtor, however, failed to deliver the agreed upon $38,132,700 to Wachovia on December 7, 2007 as required under the FX agreements. (Debtor's NDIL Am. Ans. ¶ 13, attached as Exhibit 7 to Leib Decl.; Gross Decl. ¶ 7.)

**Answer:** Plaintiff admits that because of Wachovia's breach of its contract with Majapara,

Wachovia prevented Majapara from being able to deliver $38,132,700 to Wachovia on

December 7, 2007. (Declaration of Luis Echeverria ("Echeverria Decl."), a copy of which is

attached hereto, at ¶¶ 8-11.)

## The Prejudgment Orders of Attachment

11. In an attempt to recover the amount owed to it under the FX agreements, on December 14, 2007, Wachovia filed an action against the Debtor in the United States District Court for the Southern District of New York styled Wachovia Bank, National Association v. Majapara Casa de Cambio S.A. de C.V., Case No. 07 Civ. 11230 (BSJ)(RLE) (the "New York Action"), and sought prejudgment attachment relief. Wachovia filed an Amended Complaint on December 17, 2007 restyling the action Wachovia Bank, National Association v. Casa de Cambio Majapara S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V. (Adv. Compl. ¶ 11; Wach.'s Am. Ans. ¶ 11; Mem. of Law in Support of Plaintiff's Application, attached as Exhibit 1 to Leib Decl.; Am. Compl., attached as Exhibit 2 to Leib Decl.; Gross Decl. ¶ 8.)

**Answer:** Plaintiff admits that (i) on December 14, 2007, Wachovia filed an action against the

Debtor in the United States District Court for the Southern District of New York styled

Wachovia Bank, National Association v. Majapara Casa de Cambio S.A. de C.V., Case No. 07

Civ. 11230 (BSJ)(RLE) (the "New York Action"); (ii) Wachovia sought prejudgment attachment

relief; and (iii) Wachovia filed an Amended Complaint on December 17, 2007 restyling the

action Wachovia Bank, National Association v. Casa de Cambio Majapara S.A. de C.V. a/k/a

Majapara Casa de Cambio S.A. de C.V. Plaintiff denies the remaining allegations, because

Wachovia's Amended Complaint asserts causes of action for breach of contract, promissory

estoppel, unjust enrichment, fraud and anticipatory breach, and the prejudgment Order of

Attachment (the "New York Attachment") was entered on an *ex parte* basis in the New York

Action on the false premise that "Wachovia will succeed on the merits and recover that sum from

Majapara exceeding all counterclaims of which Wachovia is aware, and it is further appearing

that Wachovia is entitled to an order of attachment against the property of Majapara on the

grounds that: (a) Majapara is a non-domiciliary foreign corporation not qualified to do business

in the state under CPLR § 6201(1); and (b) Majapara intends to remove assets from Wachovia's

reach with the intention of frustrating the enforcement of an eventual judgment in favor of

Wachovia under CPLR § 6201(3)...." (Am. Compl., attached as Exhibit 2 to Leib Decl.; Ex. B.

to Adv. Compl.; Debtor's NDIL Am. Ans. and Counterclaims, attached as Exhibit 7 to Leib

Decl.)

    12.    On December 20, 2007, Wachovia obtained an order of attachment in the New
York Action. (Adv. Compl. ¶ 14 and Ex. B; Wach.'s Am. Ans. ¶ 14.)

**Answer:**    Plaintiff admits the allegations of this paragraph.

    13.    On March 20, 2008, Wachovia filed a Motion in the New York Action against
Garnishee Citibank, N.A. alleging that, pre-petition, it violated the New York order of
attachment by allowing the Debtor to withdraw $2,604,438.87. (Debtor's Mot. for Rule to Show
Cause ¶ 6; Motion for Judgment, attached as Exhibit 3 to Leib Decl.)

**Answer:**    Plaintiff admits the allegations of this paragraph but denies that (i) the New York

order of attachment was legally obtained, (ii) Garnishee Citibank, N.A. violated the New York

order of attachment and (iii) Wachovia is entitled to recover any of the alleged $2,604,438.87

from Citibank, N.A. (Debtor's NDIL Am. Ans. and Counterclaims, attached as Exhibit 7 to Leib

Decl.)

14.    In an attempt to recover the amount owed to it under the FX agreements, on December 14, 2007, Wachovia filed an action against the Debtor in the Circuit Court of Cook County, Illinois, Law Division styled Wachovia Bank, National Association v. Majapara Casa de Cambio S.A. de C.V. (with Harris, N.A. named as a Garnishee), Case No. 07 L 13958 (the "Cook County Action"), and sought prejudgment attachment relief. By Court order dated December 17, 2008, the caption was amended to read Wachovia Bank, National Association v. Casa de Cambio Majapara S.A. de C.V. a.k.a. Majapara Casa de Cambio S.A. de C.V. (with Harris, N.A. named as a Garnishee). (Adv. Compl. ¶ 12; Wach.'s Am. Ans. ¶ 12; Emergency Mot., attached as Exhibit 4 to Leib Decl.; 12/17/08 Court Order, attached as Exhibit 5 to Leib Decl.; Gross Decl. ¶ 8.)

**Answer:**    Plantiff admits that (i) on December 14, 2007, Wachovia filed an action against the

Debtor in the Circuit Court of Cook County, Illinois, Law Division styled Wachovia Bank,

National Association v. Majapara Casa de Cambio S.A. de C.V. (with Harris, N.A. named as a

Garnishee), Case No. 07 L 13958 (the "Cook County Action"); (ii) Wachovia sought

prejudgment attachment relief; and (iii) by Court order dated December 17, 2008, the caption

was amended to read Wachovia Bank, National Association v. Casa de Cambio Majapara S.A.

de C.V. a.k.a. Majapara Casa de Cambio S.A. de C.V. (with Harris, N.A. named as a Garnishee).

Plaintiff denies the remaining allegations because Wachovia's Amended Complaint asserts

causes of action for breach of contract, promissory estoppel, unjust enrichment, fraud and

anticipatory breach, and the prejudgment Order for Attachment and Summons (the "Cook

County Attachment" and, together with the New York Attachment, the "Prejudgment

Attachments") was entered on an *ex parte* basis in the Cook County Action on the false premise

that the Debtor "(1) is not a resident of [Illinois] and (2) either (a) within the two years preceding

the filing of [Wachovia's] affidavit has fraudulently concealed or disposed of its property so as

to hinder or delay its creditors, or (b) is about fraudulently to conceal, assign, or otherwise

dispose of his or her property or effects, so as to hinder or delay his or her creditors." (Am.

Compl., attached as Exhibit 2 to Leib Decl.; Ex. A. to Adv. Compl.; Debtor's NDIL Am. Ans.

and Counterclaims, attached as Exhibit 7 to Leib Decl.)

15.    On December 14, 2007, Wachovia obtained an order of attachment in the Cook County Action. On December 17, 2007, Wachovia obtained a supplemental order of attachment in the Cook County Action. (Adv. Compl. ¶ 13 and Ex. A; 12/17/07 Supplemental Order, attached as Exhibit 6 to Leib Decl.)

**Answer:**    Plaintiff admits the allegations of this paragraph.

16.    Wachovia served the Cook County order of attachment on Harris, N.A., where the Debtor had an account containing approximately $1.65 million, and, as a result, approximately $1.65 million was attached. (Adv. Compl. ¶¶ 7, 13; Wach.'s Am. Ans. ¶¶ 7, 13.)

**Answer:**    Plaintiff admits that it had an account at Harris Bank, N.A., containing approximately

$1.65 million and that Wachovia attached the funds in that account by obtaining an order of

attachment. Plaintiff denies the remaining allegations of this paragraph 16 including, but not

limited to, the allegation regarding service, as they are not supported by the cited evidence.

## STATEMENT OF ADDITIONAL MATERIAL FACTS

17.    For more than a year preceding the Petition Date, the Debtor maintained at least

one account at Harris Bank, N.A. in Chicago, Illinois and the aggregate balance of such accounts

typically exceeded $1.0 million. (Echeverria Decl. ¶¶ 6-7.)

18.    On December 5, 2007, in the ordinary course of its daily operations, the Debtor

entered into spot transactions with Wachovia that were to settle two days later on December 7,

2007. (Echeverria Decl. ¶¶ 3, 9.)

19.    To the Debtor's surprise, on December 5, 2007, Wachovia terminated the

correspondent banking services it had provided to the Debtors, including operating lines of

credit, overdraft privileges and the ability to process unlimited remittances. (Echeverria Decl. ¶¶

3-5, 8.)

20.    The Debtor immediately experienced significant liquidity problems and attempted

to secure alternative financial arrangements, including arrangements with Wachovia, while

continuing its efforts to operate in the ordinary course of business. (Echeverria Decl. ¶¶ 10-13.)

21. In the ordinary course of its business, on December 5, 2007 and December 6, 2007, the Debtor paid Wachovia roughly $80 million under or in connection with spot transactions entered into on December 3, 2007 and December 4, 2007. (Echeverria Decl. ¶ 12.)

Respectfully submitted,

Dated: June 9, 2008

CASA DE CAMBIO MAJAPARA S.A. DE C.V.

By:/s/ *Mark L. Radtke*
One of its attorneys

Brian L. Shaw (#6216834)
Mark L. Radtke (#6275738)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151 telephone
(312) 980-3888 facsimile

*Counsel for Casa de Cambio Majapara S.A.
de C.V.*

## CERTIFICATE OF SERVICE

Mark L. Radtke certifies that service of the foregoing **Plaintiff's Local Rule 7056-2 Response to Defendant's Statement of Material Facts and Plaintiff's Statement of Additional Material Facts** was accomplished through the Electronic Notice for Registrants on the attached CM/ECF service list upon the following persons in the manner so indicated on this 9th day of June, 2008

/s/ Mark L. Radtke

## SERVICE LIST

VIA CM/ECF

- Brian Shaw – bshaw100@shawgussis.com
- Mark Radtke – mradtke@shawgussis.com
- Janice A Alwin  jalwin@shawgussis.com
- Vipin R Gandra  vgandra@shawgussis.com
- Andrew L. Wool – Andrew.wool@kattenlaw.com
- William T. Neary – USTPRegion11.ES.ECF@usdoj.gov
- Pia Thompson – pthompson@reedsmith.com
- Kimberly Bacher – Kimberly.bacher@goldbergkohn.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) |  |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) |  |
|  | ) |  |
|  | ) |  |
| CASA DE CAMBIO MAJAPARA | ) |  |
| S.A. DE C.V. | ) |  |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) |  |
|  | ) |  |
| WACHOVIA BANK, N.A. | ) |  |
|  | ) |  |
| Defendant | ) |  |
|  | ) |  |

## DECLARATION OF LUIS V. ECHEVERRIA

Luis V. Echeverria, pursuant to 28 U.S.C. § 1746, hereby deposes and states, under penalty of perjury, as follows:

1.     I am the foreign representative of Casa de Cambio Majapara S.A. de C.V. (the "Debtor") in the above-captioned chapter 11 case (the "Case"). My appointment and retention was approved by this Court on April 2, 2008 pursuant to this Court's Order Approving Debtor's Employment of Luis V. Echeverria as Debtor's Foreign Representative. In that capacity, I am authorized to submit this affidavit in support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and Memorandum of Law in Support Thereof (the "Response").

2.     Due to my previous business relationship with the Debtor, along with my retention as the Debtor's consultant and appointment as its foreign representative in the Case, I am familiar with the circumstances precipitating the Debtor's financial troubles and the Debtor's

{6591 AFF A0208715.DOC}

efforts to deal with its problems. Based on my professional experience, I also have knowledge of financial and banking processes and regulations in the United States and Mexico. I therefore have personal knowledge of the facts and circumstances discussed herein.

3.  The Debtor began to operate as a foreign exchange ("FX") bureau in 1989 and, by December 2007, had over 600 employees and offices throughout Mexico. On a daily basis, the Debtor engaged in FX transactions and the purchase and sale of items such as bill payment orders, checks and drafts in foreign currencies.

4.  The Debtor would accept checks drawn on United States' banks in U.S. dollars and provide Mexican pesos to its customers on the same day. These checks would often come from U.S. affiliates of Mexican companies. The Debtor would then electronically transmit those checks to a bank, such as Wachovia Bank, N.A. ("Wachovia"), and the bank would negotiate the check via the United States Interbank Clearing System or other method.

5.  In addition to FX transactions, Wachovia provided the Debtor with operating lines of credit, overdraft privileges and the ability to process unlimited remittances. The aggregate amount of these credit facilities provided the Debtor with largely unsecured credit well in excess of $100 million on any given day.

6.  Prior to February 2007, the Debtor cleared remittances through both Wachovia and Harris Bank, N.A. ("Harris"). In February 2007, Wachovia requested that all FX and remittances business be transferred from other banks to Wachovia in consideration for the large operating facility Wachovia provided to the Debtor. At that time, and at Wachovia's urging, the Debtor agreed to transfer virtually all of the business it had been doing with Harris and other banks to Wachovia.

7.     The Debtor, however, still maintained at least one account with Harris in Chicago, Illinois. From February 2007 through May 2008, the aggregate balance of the Debtor's account(s) at Harris typically exceeded $1.0 million and represented a substantial portion of the Debtor's assets in the United States. As of the Debtor's petition date, aside from various accounts receivable, the balance of roughly $1.65 million (the "Harris Funds") in the Debtor's Harris account was the Debtor's only sizeable asset in the United States.

8.     On December 5, 2007, Wachovia, without cause or prior notice, notified the Debtor that Wachovia was immediately terminating its relationship with the Debtor. At that time, the Debtor had been doing business with Wachovia for over 10 years. The Debtor had no reason to suspect Wachovia would terminate the parties' longstanding business relationship. Wachovia informed the Debtor that Wachovia had decided to cease all correspondent banking services to exchange companies outside the United States.

9.     Earlier that day, and before learning of Wachovia's decision to terminate its relationship with the Debtor, in the ordinary course of its business, the Debtor entered into spot transactions with Wachovia that were expected to settle two days later, on December 7, 2007.

10.    Despite the Debtor's subsequent request that Wachovia allow the Debtor a grace period during which it would temporarily continue FX transactions in order to provide the Debtor with time to transition its business to a new correspondent bank, Wachovia would not cooperate.

11.    The Debtor was extremely reliant on Wachovia's operating facilities. When Wachovia terminated those facilities, the Debtor immediately experienced significant liquidity problems and attempted to secure alternative financial arrangements. The Debtor could not

obtain alternative financing overnight as the banks the Debtor approached required time to secure necessary approvals. Nor could the Debtor arrange for a capital infusion overnight.

12. Nonetheless, the Debtor attempted to continue its operations for some time in the ordinary course of business. Accordingly, between December 5, 2007 and December 14, 2007, the Debtor collected receivables, paid creditors and otherwise attempted to keep its business operating while it attempted to obtain additional financing or capital. In fact, the Debtor paid Wachovia nearly $80 million on December 5, 2007 and December 6, 2007 in connection with spot transactions entered into on December 3, 2007 and December 4, 2007.

13. Many of the receivables collected by the Debtor between December 5, 2007 and December 14, 2007 were deposited into accounts at Wachovia, and the Debtor attempted to use those funds in the ordinary course of its business. Wachovia, however, seized approximately $14 million of new funds deposited into the Debtor's operating accounts with Wachovia between December 5, 2007 and December 14, 2007. Since December 14, 2007, we believe that Wachovia has continued to seize all funds deposited into the Debtor's accounts at Wachovia, as those accounts have not been closed and may continue to receive deposits in the ordinary course of business. The Debtor has not received current statements for those accounts.

I state under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 9, 2008

_____
Luis V. Echeverria

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

<u>**NOTICE OF MOTION TO STRIKE**</u>

PLEASE TAKE NOTICE that on **Tuesday, July 1, 2008, at 11:00 a.m.**, the undersigned shall appear before the Honorable Bruce W. Black, United States Bankruptcy Judge (or any judge who may be sitting in his stead), Courtroom 615, 219 South Dearborn Street, Chicago, Illinois, and shall then and there present the **DEFENDANT'S MOTION TO STRIKE DECLARATION OF LUIS V. ECHEVERRIA AND PARAGRAPHS 17-21 OF PLAINTIFF'S LOCAL RULE 7056-2 STATEMENT OF ADDITIONAL MATERIAL FACTS**, a copy of which is hereby served upon you. This notice of motion will be amended as necessary so that this motion will be heard at the same time as those matters that were originally scheduled for hearing on June 26, 2008 at 10:30 a.m. in the event that July 1 is not that date.

Dated: June 23, 2008          Respectfully submitted,

**WACHOVIA BANK, NATIONAL ASSOCIATION**

By:  _/s/Pia N. Thompson_
          One of its attorneys

          Pia N. Thompson (ARDC No. 6225746)
          Reed Smith LLP
          10 South Wacker Drive, 40th Floor
          Chicago, IL 60606-7484
          Telephone:    (312) 207-1000
          Facsimile:    (312) 207-6400
                    Email: pthompson@reedsmith.com

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

Pia N. Thompson, an attorney, certifies that she caused a true copy of the foregoing NOTICE OF MOTION, **DEFENDANT'S MOTION TO STRIKE DECLARATION OF LUIS V. ECHEVERRIA AND PARAGRAPHS 17-21 OF PLAINTIFF'S LOCAL RULE 7056-2 STATEMENT OF ADDITIONAL MATERIAL FACTS** to be served upon

> Brian L. Shaw
> Mark Radtke
> Shaw Gussis Fishman Glantz
> Wolfson & Towbin LLC
> 321 N. Clark Street, Suite 800
> Chicago, Illinois 60610
> bshaw@shawgussis.com
> mradtke@shawfussis.com

via ECF electronic service and email this 23rd day of June 2008.

_/s/ Pia N. Thompson_

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## <u>ORDER</u>

This matter coming to be heard on Wachovia Bank, National Association's **MOTION TO STRIKE DECLARATION OF LUIS V. ECHEVERRIA AND PARAGRAPHS 17-21 OF PLAINTIFF'S LOCAL RULE 7056-2 STATEMENT OF ADDITIONAL MATERIAL FACTS**, due notice having been given and the Court being fully advised in the premises,

IT IS HEREBY ORDERED THAT:

1. The Motion is granted.

2. Paragraphs 17-21 of Defendant's Local Rule 7056-2 Statement are stricken.

3. Mr. Echeverria's declaration dated June 9, 2008 is stricken.

Date: _____     Enter: _____
                              United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**DEFENDANT'S MOTION TO STRIKE DECLARATION OF LUIS V. ECHEVERRIA**
**AND PARAGRAPHS 17-21 OF PLAINTIFF'S LOCAL RULE 7056-2**
**STATEMENT OF ADDITIONAL MATERIAL FACTS**

Defendant Wachovia Bank, National Association ("Wachovia"), pursuant to Federal Rule

of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56(e), hereby moves to strike

the June 9, 2008 Declaration of Luis V. Echeverria and Paragraphs 17-21 of Plaintiff's Local

Rule 7056-2 Statement of Additional Material Facts. In Support, Wachovia states as follows:

**INTRODUCTION**

In response to Wachovia's Motion for Summary Judgment, the Debtor, Casa de Cambio

Majapara S.A. de C.V. (the "Debtor"), filed a Declaration by Luis V. Echeverria that contains

allegations that are not relevant to the Summary Judgment Motion and that are hearsay. Under

Federal Rule of Civil Procedure 56(e)(1), an affidavit opposing summary judgment "must set out

facts that would be admissible in evidence" and "must be made on personal knowledge." Here,

as the Court is aware, Mr. Echeverria was not employed by the Debtor or retained as a consultant

until after this bankruptcy was filed on March 5, 2008. Mr. Echeverria, however, attempts to testify to facts that are not only irrelevant to the Motion, but that are based on events that predate March 5, 2008. As such, Mr. Echeverria's affidavit is not based on personal knowledge and should be stricken, as should those paragraphs of the Debtor's Rule 7056-2 Statement based on Mr. Echeverria's affidavit.

## I.   Mr. Echeverria's Affidavit Should Be Stricken As Irrelevant And Not Based On Personal Knowledge

### A.   Mr. Echeverria's Affidavit Contains No Relevant Facts

In his Declaration, Mr. Echeverria attempts to testify to facts that are not relevant to the Motion for Summary Judgment. The Motion for Summary Judgment deals only with whether or not the prejudgment attachments Wachovia obtained in New York and Illinois courts are subject to the safe harbor in 11 U.S.C. § 546(g). Nevertheless, Mr. Echeverria attempts here to plead allegations related to the Debtor's counterclaims filed in the New York and Illinois proceedings, allegations that have nothing to do with whether Section 546(g) applies.

For example, Mr. Echeverria alleges that "[i]n February 2007, Wachovia requested that all FX and remittances business be transferred from other banks to Wachovia in consideration for the large operating facility Wachovia provided to the Debtor." (Echeverria Decl. ¶ 6.) While Wachovia has already challenged this allegation through the April 30, 2008 Declaration of Ariel Marin (paragraphs 13 and 14) filed with Wachovia's reply to the Motion to Dismiss, it is an issue that is irrelevant to whether Section 546(g) applies. Similarly, Mr. Echeverria's discussion of the Debtor's allegations regarding the ending of the relationship between Wachovia and Majapara are similarly issues more properly raised as part of the Debtor's counterclaims and have absolutely nothing to do with the Motion for Summary Judgment.

The Debtor's goal here is clear – make scurrilous allegations against Wachovia that divert the Court from the real issues in the Motion for Summary Judgment. Wachovia, however, declines to respond to these irrelevant allegations here and will do so when the issues are before the Court, as it did in the Declarations of Ariel Marin, Andrew Gross, and Carlos Perez, all of which are attached as Exhibit A to Wachovia's Reply to Its Motion to Dismiss (Docket No. 117 in main bankruptcy case). The only issue for the Court to decide here is whether the prejudgment attachments were "transfers" made "in connection with" a swap agreement. If they were, they are not avoidable.

The Court should strike Mr. Echeverria's affidavit.

**B.    Mr. Echeverria's Affidavit Should Also Be Stricken Because Mr. Echeverria Has No Direct Knowledge Of The Alleged Facts To Which He Testifies**

Under Federal Rule of Civil Procedure 56(e)(1), an affidavit filed in response to a summary judgment motion "must be made on personal knowledge." Mr. Echeverria's affidavit fails grossly in this regard.

As this Court is aware, Mr. Echeverria is the President and CEO of JOM Corp. and is not an employee of the Debtor. (See March 17, 2008 Verif. Statement of Luis V. Echeverria Pursuant to Fed. R. Bankr. P. 2014(a), attached as Exhibit A to docket number 12 in the main bankruptcy case.) In fact, Mr. Echeverria's consulting role with the company did not begin until after this bankruptcy was filed on March 5, 2008. (Id. ¶ 5.) And while Wachovia has alleged in the New York and Illinois actions that JOM Corp. of Illinois, to which JOM Corp. has stated it is the successor in interest, is an alter ego of the Debtor, the Debtor has denied the allegation.

Yet Mr. Echeverria's entire affidavit is based on events that occurred prior to March 5, 2008. He claims to have personal knowledge "[d]ue to [his] previous business relationship with the Debtor, along with [his] retention as the Debtor's consultant and appointment as its foreign

- 3 -

representative in the Case." But all that establishes is that he is aware of the allegations to which he testifies based on hearsay, not personal knowledge. For example, Mr. Echeverria does not disclose how he knows that "[i]n February 2007, Wachovia requested that all FX and remittances business be transferred from other banks to Wachovia." (Echeverria Decl. ¶ 6.) Was he a participant in those meetings? Or was he told this by people employed by the Debtor? The latter seems the more likely (and, in fact, Wachovia representatives would testify that Mr. Echeverria was not in any meetings between Wachovia and the Debtor in February 2007). Because Mr. Echeverria has not sufficiently alleged exactly how he has "personal knowledge" of the allegations he makes in his affidavit, his affidavit should be stricken. See, e.g., Simmons v. Contel/GTE Corp., No. 93 C 20019, 1995 WL 30612, at *2 (N.D. Ill. Jan. 25, 1995) (striking affidavit that is "lacking in any relevant facts of which [the witness] has personal knowledge") (citation omitted).

**II. The Court Should Strike Paragraphs 17-21 Of The Debtor's Statement Of Additional Material Facts, As They Are Irrelevant And Not Based On Competent Evidence**

For the reasons stated in Section I.A. above, Paragraphs 17-21 of the Debtor's Statement of Additional Material Facts should be stricken as irrelevant. Further, because these additional statements are based solely on the Declaration of Mr. Echeverria, and because the Court should strike Mr. Echeverria's Declaration as requested in Section I above, these statements are not based on any competent evidence in the record and should be stricken. See Simmons, 1995 WL 30612, at *3 (striking statement of material facts "because it fails to identify the specific parts of the record supporting any denials.")

Paragraph 17 should also be stricken as hearsay. Mr. Echeverria is not competent to testify as to the aggregate balance of the Debtor's Harris accounts for the year preceding the bankruptcy filing and Mr. Echeverria does not support this allegation with any bank records.

- 4 -

Paragraph 18 should also be stricken as hearsay and because it asserts a legal conclusion ("in the ordinary course of its daily operations"). <u>See</u> <u>Simmons</u>, 1995 WL 30612, at *3 (striking certain paragraphs of an affidavit because "those paragraphs contain no factual averments, but rather, mere legal arguments.")

Paragraph 19 should also be stricken as hearsay. Mr. Echeverria is not competent to testify to the events of December 5, 2007 and certainly cannot testify as to the Debtor's state of mind on December 5, 2007 ("[t]o the Debtor's surprise").

Paragraphs 20 and 21 should also be stricken as hearsay and because they assert legal conclusions ("in the ordinary course of business").

## CONCLUSION

For the reasons stated above, Wachovia requests that the Court strike the June 9, 2008 Declaration of Luis v. Echeverria and Paragraphs 17-21 of Plaintiff's Local Rule 7056-2 Statement of Additional Material Facts, and grant Wachovia such further relief as the Court deems just and proper.

Dated: June 23, 2008                    Respectfully submitted,

**WACHOVIA BANK, NATIONAL ASSOCIATION**

By:   */s/Pia N. Thompson*
        One of its attorneys
        Pia N. Thompson (ARDC No. 6225746)
        Michael S. Leib (ARDC No. 6243348)
        Reed Smith LLP
        10 South Wacker Drive, 40th Floor
        Chicago, IL 60606-7484
        Telephone:     (312) 207-1000
        Facsimile:     (312) 207-6400
        Email: pthompson@reedsmith.com

        and

        Edward J. Estrada
        Reed Smith LLP
        599 Lexington Avenue
        New York, NY 10022
        Telephone:     (212) 521-5400
        Facsimile:     (212) 521-5450
        Email: eestrada@reedsmith.com

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DEFENDANT'S LOCAL RULE 7056-1 RESPONSE TO
## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

Defendant Wachovia Bank, National Association ("Wachovia"), pursuant to Local Rule

7056-1(C), respectfully submits the following response to Plaintiff Casa de Cambio Majapara

S.A. de C.V.'s ("Majapara") Statement of Additional Material Facts:

### RESPONSE

17.     For more than a year preceding the Petition Date, the Debtor maintained at least
one account at Harris Bank, N.A. in Chicago, Illinois and the aggregate balance of such accounts
typically exceeded $1.0 million. (Echeverria Decl. ¶¶ 6-7.)

**Answer:**     For the reasons more fully stated in Wachovia's Motion to Strike, which

Wachovia incorporates herein by reference, Wachovia objects to this Paragraph as the

allegations are irrelevant, not based on competent evidence, and hearsay.

18.     On December 5, 2007, in the ordinary course of its daily operations, the Debtor
entered into spot transactions with Wachovia that were to settle two days later on December 7,
2007. (Echeverria Decl. ¶¶ 3, 9.)

**Answer:**    For the reasons more fully stated in Wachovia's Motion to Strike, which

Wachovia incorporates herein by reference, Wachovia objects to this Paragraph as the

allegations are irrelevant, not based on competent evidence, hearsay, and asserts a legal

conclusion. To the extent an answer is required, Wachovia admits that, on December 5, 2007,

the Debtor entered into spot transactions with Wachovia that were to settle two days later on

December 7, 2007.

19.    To the Debtor's surprise, on December 5, 2007, Wachovia terminated the
correspondent banking services it had provided to the Debtors, including operating lines of
credit, overdraft privileges and the ability to process unlimited remittances. (Echeverria Decl. ¶¶
3-5, 8.)

**Answer:**    For the reasons more fully stated in Wachovia's Motion to Strike, which

Wachovia incorporates herein by reference, Wachovia objects to this Paragraph as the

allegations are irrelevant, not based on competent evidence, and hearsay. To the extent an

answer is required, Wachovia denies the allegations of Paragraph 19 and states as follows:

Wachovia did not terminate all correspondent banking services it had with Majapara on

December 5, 2007. In December 2007, Wachovia decided to cease providing correspondent

banking services to exchange companies outside the United States. On December 5, 2007,

Wachovia informed Majapara that Wachovia had decided to cease doing business with

Majapara, but Wachovia provided Majapara time to transition its business elsewhere. While on

December 5, 2007, Wachovia did terminate an intra-day overdraft facility in connection with

Majapara's checking account and eliminated certain internal risk exposures associated with

transacting business with Majapara, Majapara was still able to enter into FX transactions,

effectuate wire transfers through Wachovia, and submit unlimited remittances to Wachovia for

processing. (See Feb. 11, 2008 Decl. of Andrew Gross ¶¶ 6, 7, 10; Feb. 11, 2008 Decl. of Carlos

Perez ¶¶ 10-13; April 30, 2008 Decl. of Ariel Marin ¶¶ 8-12) (the Gross, Perez and Marin

declarations are attached as Exhibit A to Wachovia's Reply to Motion to Dismiss (Docket No.

117 in the main bankruptcy proceeding).)

     20.     The Debtor immediately experienced significant liquidity problems and attempted to secure alternative financial arrangements, including arrangement with Wachovia, while continuing its efforts to operate in the ordinary course of business. (Echeverria Decl. ¶¶ 10-13.)

**Answer:**     For the reasons more fully stated in Wachovia's Motion to Strike, which

Wachovia incorporates herein by reference, Wachovia objects to this Paragraph as the

allegations are irrelevant, not based on competent evidence, hearsay, and asserts a legal

conclusion.

     21.     In the ordinary course of its business, on December 5, 2007 and December 6, 2007, the Debtor paid Wachovia roughly $80 million under or in connection with spot transactions entered into on December 3, 2007 and December 4, 2007. (Echeverria Decl. ¶12.)

**Answer:**     For the reasons more fully stated in Wachovia's Motion to Strike, which

Wachovia incorporates herein by reference, Wachovia objects to this Paragraph as the

allegations are irrelevant, not based on competent evidence, hearsay, and asserts a legal

conclusion.

Dated: June 23, 2008                Respectfully submitted,

                                    **WACHOVIA BANK, NATIONAL ASSOCIATION**

                                    By:   /s/*Pia N. Thompson*
                                          One of its attorneys
                                          Pia N. Thompson (ARDC No. 6225746)
                                          Michael S. Leib (ARDC No. 6243348)
                                          Reed Smith LLP
                                          10 South Wacker Drive, 40th Floor
                                          Chicago, IL  60606-7484
                                          Telephone:    (312) 207-1000
                                          Facsimile:    (312) 207-6400
                                          Email: pthompson@reedsmith.com

                                          and

                                          Edward J. Estrada
                                          Reed Smith LLP
                                          599 Lexington Avenue
                                          New York, NY  10022
                                          Telephone:    (212) 521-5400
                                          Facsimile:    (212) 521-5450
                                          Email: eestrada@reedsmith.com

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

CERTIFICATE OF SERVICE

Pia N. Thompson, an attorney, certifies that she caused a true copy of the foregoing **DEFENDANT'S LOCAL RULE 7056-1 RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS** to be served upon

> Brian L. Shaw
> Mark Radtke
> Shaw Gussis Fishman Glantz
>     Wolfson & Towbin LLC
> 321 N. Clark Street, Suite 800
> Chicago, Illinois 60610
> bshaw@shawgussis.com
> mradtke@shawfussis.com

via ECF electronic service and email this 23rd day of June 2008.

_____  /s/ Pia N. Thompson _____

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Section 546(g) of the Bankruptcy Code is broad in its sweep, taking any "transfer" made to a "swap participant" "in connection with" a swap agreement outside the reach of the Debtor's avoidance powers. In its Response, the Debtor concedes that the foreign exchange spot transactions at issue in the New York and Illinois litigations were "swap agreements" and that Wachovia is a "swap participant," but argues that the attachments were not obtained "in connection with" a swap agreement." This argument, however, is not only disingenuous, but it is contradicted by the Debtor's own allegations.

In the Debtor's Adversary Complaint, the Debtor alleges that both the New York and Illinois attachments were "granted *on account of*" the debts the Debtor owed Wachovia under the foreign exchange spot transactions. In fact, the Debtor has to make this allegation as it is an element of its preference claim under Section 547(b). Yet, somehow, the Debtor would like this

Court to believe that the attachments were "transfers" made "on account of" the foreign exchange spot transactions, but not "in connection with" the foreign exchange spot transactions. This distinction is specious.

The Debtor cannot avoid the reach of Section 546(g) by torture of the English language. The text of the statute is clear and unambiguous and its plain meaning should be applied. The Court should grant summary judgment in favor of Wachovia.

## ARGUMENT

In its initial Memorandum, Wachovia pointed out the following: The Debtor can prevail only if it is able to avoid the transfers at issue under Section 547. Section 546(g), however, specifically excludes transfers "under or in connection with" foreign exchange spot transactions from the reach of Section 547. According to Section 546(g):

> Notwithstanding sections . . . 547 . . . of this title, the trustee may not avoid a transfer, made by or to (or for the benefit of) a swap participant . . ., under or in connection with any swap agreement and that is made before commencement of the case, . . .

11 U.S.C. § 546(g) (emphasis added). By definition, under the Bankruptcy Code, a foreign exchange spot transaction is a "swap agreement." Therefore, the prejudgment attachments Wachovia obtained in courts in New York and Illinois after the Debtor failed to pay the over $38 million it owed Wachovia under these swap agreements were transfers made to (or for the benefit of) a swap participant in connection with a swap agreement. Thus, Section 546(g) applies and the Debtor "may not avoid" the prejudgment attachments.

In its Response, the Debtor does not challenge that Wachovia is a "swap participant" and that the series of foreign exchange spot transactions Wachovia and the Debtor entered into on December 5, 2007 were "swap agreements." Instead, the Debtor argues that Wachovia has not established that the prejudgment attachments were made "under or in connection with any swap

- 2 -

agreement" or that they were made "to (or for the benefit of) a swap participant." In support of this position, the Debtor makes two arguments: (1) because the nature of the underlying causes of action "do not factor into the determination of whether a prejudgment attachment is appropriate," they were not transfers made in connection with any swap agreement or to a swap participant; and (2) the legislative history from a prior version of the statute supports the position that Section 546(g) was not designed to protect Wachovia's attachments. These arguments have no merit.

## A.  The Debtor Admits That The Prejudgment Attachments Were Made In Connection With The Foreign Exchange Spot Transactions

The Debtor argues that, because the prejudgment attachments were transfers to conditionally secure Wachovia's potential judgment creditor status, the transfers were not made in connection with any swap agreement or to or for the benefit of a swap participant. (Resp., at 8-11.)[1] According to the Debtor, the attachments were not granted because of the Debtor's failure to pay under the foreign exchange spot transactions, but because "Wachovia convinced the courts that the Debtor was a substantial risk warranting prejudgment attachment of the Debtors' assets." (Id, at 10.) The Debtor's argument, however, makes no sense and actually conflicts with the Debtor's own Adversary Complaint.

---

[1] In this Section of its Response, the Debtor includes numerous allegations that Wachovia made "false statements" to the Illinois and New York courts in obtaining the attachments, that it "omitted material facts," that it "failed to disclose . . . pertinent facts," and that it "relied on statements of the Debtor's alleged fraud it knew, or at a minimum should have known, to be false." (Resp., at 8-9.) These allegations are completely irrelevant to the Motion for Summary Judgment. The Summary Judgment Motion asks only whether the safe harbor of Section 546(g) applies. In contrast, the Debtor's allegations are related to the Debtor's counterclaims filed in the New York and Illinois actions, not the issues related to the Summary Judgment Motion. Further, all of these allegations are either asserted without support or are based completely on the Declaration of Luis V. Echeverria, which, as discussed in Wachovia's Motion to Strike filed contemporaneously herewith, should be stricken in light of the fact that Mr. Echeverria has no direct knowledge of the alleged facts to which he testifies. Wachovia denies any wrongdoing before the Illinois and New York courts in obtaining the attachments, but declines to respond to these scurrilous allegations here in light of their non-relevance. In the event the Court wishes to understand Wachovia's position as to some of these allegations, Wachovia refers the Court to the Declarations of Ariel Marin, Andrew Gross, and Carlos Perez, all of which are attached as Exhibit A to Wachovia's Reply to Its Motion To Dismiss (Docket No. 117 in main bankruptcy case).

First, there can be no question that the prejudgment attachments, which the Debtor claims are transfers, were made to Wachovia, who even the Debtor concedes is a "swap participant." As such, the transfers were made "to (or for the benefit of) a swap participant." 11 U.S.C. § 546(g).

Second, both the Illinois and New York Attachments were obtained based in large part on Wachovia making out a *prima facie* case that the Debtor owed it approximately $24 million under the foreign exchange spot transactions. For example, in the New York Court, Wachovia's Memorandum of Law in Support of Plaintiff's Application for a Temporary Restraining Order and Pre-Judgment Order of Attachment included a section in which Wachovia argued that it was likely to succeed on the merits of its claims against the Debtor. (See May 23, 2008 Leib Decl. ("Leib Decl."), Exh. 1 at 5-6.) Based on the evidence presented, the New York Court found that Wachovia was entitled to the attachment based, in part, on the evidence it had submitted showing "that Wachovia has a cause of action for a money judgment against [the Debtor] for $24,810,975.00 with interest from December 7, 2007, *and that it is probable that Wachovia will succeed on the merits* and recover that sum from Majapara." (Adv. Compl., Exh. B) (emphasis added); see also New York's Civil Practice Law and Rules § 6212 ("On a motion for an order of attachment . . . the plaintiff shall show, by affidavit or other written evidence . . . that there is a cause of action, that it is probable that the plaintiff will succeed on the merits . . ..") Similarly, the Illinois Court found that Wachovia was entitled to the attachment, in part, based on the fact that Wachovia had established "*a prima facie case* that [the Debtor] is justly indebted to the Plaintiff Wachovia Bank, National Association in the amount of 24,711,845 Dollars." (Adv. Compl., Exh. A (emphasis added); Leib Decl., Exh. 4); see also 735 ILCS 5/4-104 ("A plaintiff seeking the entry of an order for attachment shall file with the court an affidavit based upon the

- 4 -

personal knowledge of the affiant and showing . . . facts establishing the cause of action against the defendant"). Thus, the Debtor cannot argue in good faith that the attachments were not obtained "in connection with" a swap agreement, even if Wachovia also had to prove other factors such as the Debtor's foreign status in order to secure the attachments.

In fact, in its own Adversary Complaint, <u>the Debtor admits that the attachments were made in connection with the foreign exchange spot transactions</u>. In Count I of the Debtor's Adversary Complaint, the Debtor alleges that, "[t]he Cook County Attachment was granted *on account of antecedent debts owed by the Debtor to Wachovia* prior to the date of the Cook County Attachment." (Adv. Compl. ¶ 18) (emphasis added.) The Debtor makes the same allegation with regard to the New York Attachment in Count II. (<u>Id</u>. ¶ 27.) Of course, the antecedent debt referred to in those paragraphs is the money the Debtor owes Wachovia under the foreign exchange spot transactions. Thus, the Debtor has admitted in its own Complaint that the transfers were granted on account of (*i.e.*, in connection with) the swap agreements. In fact, the Debtor has to make this admission in order to satisfy all of the elements of Section 547(b), one of which is that the transfer was made "on account of an antecedent debt." 11 U.S.C. § 547(b)(2). If the prejudgment attachments were not made in connection with the antecedent debt owed to it by the Debtor under the swap agreements, the attachments would be transfers, but they would not be transfers avoidable under Section 547(b) and the Debtor's Adversary Complaint would fail.

The Debtor's argument cannot survive under the facts of the case and the Debtor's own admissions. The prejudgment attachments were made to a swap participant (Wachovia), in connection with swap agreements (the foreign exchange spot transactions) and, therefore, the Section 546(g) safe-harbor applies.

- 5 -

**B.    The Plain Meaning Of Section 546(g) Prevents Majapara From Avoiding Wachovia's Prejudgment Attachments**

For its second argument, the Debtor claims that legislative history shows that Section 546(g) was not designed to protect Wachovia's attachments.  The Debtor's reliance, however, on legislative history, and especially the legislative history it cites, is misplaced for a number of reasons.

As an initial matter, if the meaning of Section 546(g) is clear on its face, the Court may not look to legislative history.  See Ratzlaf v. United States, 510 U.S. 135, 147, 114 S.Ct. 655, 662 (1994) (The Supreme Court stated that it "do[es] not resort to legislative history to cloud a statutory text that is clear," even if the Court finds there are "contrary indications in the statute's legislative history"); In re Venture Mortgage Fund, L.P., 282 F.3d 185, 188 (2d Cir. 2002) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms.  Legislative history and other tools of interpretation may be relied upon only if the terms of the statue are ambiguous.") (citation omitted).  And, in fact, the two terms of Section 546(g) that the Debtor claims Wachovia has not satisfied are clear on their face.

The Debtor argues that Wachovia has not satisfied that each attachment was a "transfer, made by or to (or for the benefit of) a swap participant."  11 U.S.C. § 546(g).  This term, however, is about as clear on its face as a term can be and, therefore, resort to legislative history is unwarranted.  In fact, in its Adversary Complaint and Response, the Debtor admits that Wachovia satisfies this term.  In Paragraph 16 of its Adversary Complaint, the Debtor states that "[t]he Cook County Attachment was a transfer of an interest in the Debtor's property to or for the benefit of Wachovia."  (Adv. Compl. ¶ 16) (emphasis added.)  The Debtor makes the same allegation with regard to the New York Attachment.  (Id. ¶ 25.)  Further, in its Response, the

- 6 -

Debtor concedes that Wachovia is a "swap participant." (See Resp., at 7 (admitting that the spot transactions were "swap agreements," thereby conceding that Wachovia is a "swap participant")) (See 11 U.S.C. § 101(53C), defining a "swap participant" as "an entity that, at any time before the filing of the petition, has an outstanding swap agreement with the debtor.") Thus, by the plain meaning of the text and by the Debtor's own admissions, the attachments were transfers made to or for the benefit of a swap participant.

As for the requirement that the transfer also be made "under or in connection with any swap agreement," the meaning of that term is also clear on its face and legislative history may not be relied upon. In fact, in In re Interbulk, Ltd., the only case Wachovia has found that has interpreted this term (and a case the Debtor cites prominently in its Response), the Court held that "Section 546(g) is clear and unambiguous." 240 B.R. 195, 202 (Bankr. S.D.N.Y. 1999). The Court went on to hold that:

> A natural reading of "under" would suggest that a transfer will be under a swap agreement when it is accomplished according to the method prescribed in the agreement itself. A natural reading of "in connection with" suggests a broader meaning similar to "related to."

Id. While the prejudgment attachments were not made "according to the method prescribed in the agreement itself," they are "related to" the swap agreements because they were obtained as a result of the Debtor's failure to pay the more than $38 million owed under the swap agreements after Wachovia had transferred €26 million Euros to the Debtor. See Section A above. Wachovia has satisfied this portion of, and in fact all of, Section 546(g) based on the plain meaning of that statute.

But even if the Court were to consider the legislative history of Section 546(g), the legislative history the Debtor cites is not particularly helpful in understanding the meaning of the current version of Section 546(g). In its Response, the Debtor cites to the legislative history of

- 7 -

the 1990 version of Section 546(g). (See Resp., at 4-5.) But in 2005, Congress made a significant change to Section 546(g). Before 2005, Section 546(g) read:

> Notwithstanding sections . . . 547 . . . of this title, the trustee may not avoid a transfer *under a swap agreement*, made by or to a swap participant, *in connection with a swap agreement* and that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(g) (version in effect prior to 2005 amendment) (emphasis added) (a copy is attached hereto as Exhibit A). Thus, under the pre-2005 version of the statute, in order for a transfer to come under its scope, the transfer had to be made both "under a swap agreement" **and** "in connection with" a swap agreement. See Interbulk, 240 B.R. at 202 ("The phrases "under," "by or to a swap participant," "in connection with" and "before the commencement of the case" are conjunctive phrases, so each element must be met for a transfer to be unavoidable as a swap.")

In 2005, however, Section 546(g) was changed from requiring a transfer to be both "under a swap agreement" and "in connection with a swap agreement" to requiring only that the transfer be "under **or** in connection with any swap agreement." 11 U.S.C. § 546(g) (emphasis added). This broadened the reach of the statute significantly and, thus, the legislative history from the 1990 amendments to the Bankruptcy Code is not particularly instructive here.

The significance of the change to the 1990 version of Section 546(g) can be seen by examining In re Interbulk, Ltd., 240 B.R. 195 (Bankr. S.D.N.Y. 1999). In that case, Interbulk owed Louis Dreyfus Corporation over $306,000 under two forward freight agreements. To secure payment, Dreyfus obtained an order of attachment in Paris over a debt a third party owed Interbulk and then sought to enforce the attachment in the English Courts. Soon thereafter, Interbulk filed a Chapter 11 case, as well as an adversary proceeding against Dreyfus seeking a declaration that the attachment was a preference. Dreyfus moved for summary judgment

- 8 -

asserting that the forward freight agreements were swap agreements and that Section 546(g) applied. The court agreed that that the forward freight agreements were swap agreements, but held that the attachment was not obtained "according to the method prescribed in the [forward freight] agreement itself," and, therefore, was not obtained "under" a swap agreement. The Court left open the door for a finding that the attachment was obtained "in connection with a swap agreement," stating that "at best, the Attachment is a transfer 'in connection with' a swap agreement." But since the then-applicable version of the statute required that the transfer be both "under" and "in connection with" a swap agreement," the court found that Section 546(g) did not apply.[2]

It is with the knowledge of the Interbulk decision that Congress amended Section 546(g) in 2005 to require only that a transfer be either "under" or "in connection with" a swap agreement. See United States v. Alvarez-Hernandez, 478 F.3d 1060, 1065 (9th Cir. 2007) ("We also 'presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation'") (citation omitted); accord Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 184-85, 108 S.Ct. 1704, 1711-12 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts") (citation omitted). In fact, numerous commentators have noted that the amendment to Section 546(g) was aimed at specifically overruling the Interbulk decision to allow attachments, such as the one in this case, to be covered under Section 546(g). For example, an Associate Professor at Columbia Law School noted:

---

[2] The Debtor's argument that "the *Interbulk* court cast doubt on the application of the current version of the section 546(g) safe harbor to an attachment" is misplaced. The Interbulk court held that, since an attachment is not made "under" a swap agreement, an attachment could not receive protection under the old version of Section 546(g), which required that the transfer be both "under" and "in connection with" a swap agreement. By stating that, "at best, the Attachment is a transfer 'in connection with' a swap agreement," (Interbulk, 240 B.R. at 202), the court clearly left open the door to a finding that an attachment is "in connection with" a swap agreement, while at the same time stating that it did not need to rule on the issue to resolve the case at hand.

- 9 -

> Another amendment makes clear that the financial-contract safe harbors extend to pre-petition attachment of or foreclosure on debtor property by a swap counterparty. BAPCPA [Bankruptcy Abuse Prevention and Consumer Protection Act of 2005] § 907(e)(1) (to be codified at 11 U.S.C. § 546(g)). Previous case law had reached the opposite conclusion. See, e.g., In re Interbulk, 240 B.R. 195, 201-03 (Bankr. S.D.N.Y. 1999).

Edward R. Morrison and Joerg Riegel, Financial Contracts and the New Bankruptcy Code: Insulating Markets From Bankrupt Debtors and Bankruptcy Judges, 13 Am Bankr. Inst. L. Rev. 641, 650 n.61 (2005) (relevant portion attached hereto as Exhibit B). Another commentator wrote:

> One of BAPCPA's changes to 11 U.S.C. § 546(g) appears designed to alter the result in In re Interbulk, Ltd., 240 B.R. 195 (Bankr. S.D.N.Y. 1999). . . . Thus, "under" and "in connection with" are now alternative criteria, and the Interbulk creditor would have prevailed if the current version of the statute had been in effect.

David B. Young, Preference and Fraudulent Transfers, 905 PLI/Comm 749, 967 (April-May 2008) (relevant portion attached hereto as Exhibit C). As with the attachment in Interbulk, the change in the law in 2005 protects Wachovia's attachments.

In fact, a significant problem with the Debtor's position is that, if the Debtor's interpretation is correct, the 2005 amendment would have no meaning. According to the Debtor, only "settled" or "completed" transactions from the Debtor to another party are subject to protection under Section 546(g). (Resp., at 5-6.) However, as noted above, the Interbulk court stated that a settled transaction made according to the method prescribed in the swap agreement is a transfer made "under" a swap agreement. See Interbulk, 240 B.R. at 202. If Congress wanted only transfers made "under' a swap agreement to be covered, no change in Section 546(g) was needed. But Congress did change "under" and "in connection with" to "under or in connection with," thus covering those transfers made not only "under," but also "in connection with," a swap agreement. See id. (noting that "in connection with" suggests a broader meaning

than "under"). Because the Debtor's interpretation of Section 546(g) would render Congress's amendment meaningless, it must be wrong. In fact, the United States Supreme Court has held that, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." Stone v. INS, 514 U.S. 386, 397, 115 S.Ct. 1537, 1545 (1995) (citations omitted).

Furthermore, the Debtor's argument that, "[i]f Congress had intended to provide claims under swap agreements with a higher priority than other unsecured creditors, it would have done so under section 507(a) of the Bankruptcy Code," (Resp., at 6), is likewise misplaced. Congress expressly decided that "transfers" "under or in connection with any swap agreement" should be and are protected from avoidance actions and the Debtor does not dispute this fact. While it is true that Congress did not provide priority under Section 507 to that portion of a swap participant's claim that exceeds the amount of any protected "transfers," here the Debtor alleges that Wachovia's attachments are "transfers." As such, whatever treatment Congress gave the remainder of Wachovia's claim (Wachovia is not seeking priority treatment over that portion of its approximately $24 million claim that is not subject to the attachments) is irrelevant to the issues raised in the Adversary Proceeding.

Finally, while the Debtor attempts to claim that Congress "did not seek to protect conditional transfers such as prejudgment attachments," (Resp., at 6), the Debtor is trying to have its cake and eat it too. In its Adversary Complaint, it asserts that both attachments were "transfer[s] of an interest in the Debtor's property to or for the benefit of Wachovia under 11 U.S.C. §§ 101(54)(A) and 547(b)." (Adv. Compl. ¶¶ 16, 25.) Section 101(54)(A) defines the term "transfer" as "(A) the creation of a lien." In other words, the Debtor alleges that the prejudgment attachments were liens and, therefore, "transfers." If the prejudgment attachments

are, as alleged, "transfers" under Sections 101(54)(A) and 547(b), then they are "transfers" under Section 546(g).[3] Thus, the only question under Section 546(g) is whether these transfers were made "in connection with any swap agreement," which, as discussed above, they were.

## CONCLUSION

For the reasons stated above, as well as for the reasons stated in Wachovia's Motion for Summary Judgment, Memorandum of Law in Support of Motion for Summary Judgment and the Declarations submitted by Wachovia, Wachovia respectfully requests that the Court enter judgment in favor of Wachovia and against the Debtor on the Debtor's Adversary Proceeding, and grant Wachovia such other and further relief as the Court deems just and proper.

Dated:  June 23, 2008                    Respectfully submitted,

                                       WACHOVIA BANK, NATIONAL ASSOCIATION
                                       By:    /s/Pia N. Thompson
                                          One of its attorneys
                                          Pia N. Thompson (ARDC No. 6225746)
                                          Michael S. Leib (ARDC No. 6243348)
                                          Reed Smith LLP
                                          10 South Wacker Drive, 40th Floor
                                          Chicago, IL  60606-7484
                                          Telephone:    (312) 207-1000
                                          Facsimile:    (312) 207-6400
                                          Email: pthompson@reedsmith.com

                                          and

                                          Edward J. Estrada
                                          Reed Smith LLP
                                          599 Lexington Avenue
                                          New York, NY  10022
                                          Telephone:    (212) 521-5400
                                          Facsimile:    (212) 521-5450
                                          Email: eestrada@reedsmith.com

---

[3] In fact, in the catch-all provision within the Bankruptcy Code definition of "transfer" makes clear that conditional transfers are "transfers." See 11 U.S.C. §101(54)(D) ("The term 'transfer' means – (D) each mode, direct or indirect, absolute *or conditional*, voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property) (emphasis added).

# EXHIBIT A

Westlaw.

11 USCA § 546                                                                                      Page 1
11 U.S.C.A. § 546

UNITED STATES CODE ANNOTATED
TITLE 11. BANKRUPTCY
**CHAPTER 5--CREDITORS, THE DEBTOR, AND THE ESTATE**
SUBCHAPTER III--THE ESTATE
§ 546. Limitations on avoiding powers

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after
the earlier of--

(1) the later of--

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302
of this title if such appointment or such election occurs before the expiration of the period specified in sub-
paragraph (A); or

(2) the time the case is closed or dismissed.

(b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any gener-
ally applicable law that--

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such
property before the date of perfection; or

(B) provides for the maintenance or continuation of perfection of an interest in property to be effective against
an entity that acquires rights in such property before the date on which action is taken to effect such mainten-
ance or continuation.

(2) If--

(A) a law described in paragraph (1) requires seizure of such property or commencement of an action to ac-
complish such perfection, or maintenance or continuation of perfection of an interest in property; and

(B) such property has not been seized or such an action has not been commenced before the date of the filing
of the petition;

such interest in such property shall be perfected, or perfection of such interest shall be maintained or continued,
by giving notice within the time fixed by such law for such seizure or such commencement.

(c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a),
545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold
goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has re-
ceived such goods while insolvent, but--

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

goods--

(A) before 10 days after receipt of such goods by the debtor; or

(B) if such 10-day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court--

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.

(d) In the case of a seller who is a producer of grain sold to a grain storage facility, owned or operated by the debtor, in the ordinary course of such seller's business (as such terms are defined in section 557 of this title) or in the case of a United States fisherman who has caught fish sold to a fish processing facility owned or operated by the debtor in the ordinary course of such fisherman's business, the rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common law right of such producer or fisherman to reclaim such grain or fish if the debtor has received such grain or fish while insolvent, but--

(1) such producer or fisherman may not reclaim any grain or fish unless such producer or fisherman demands, in writing, reclamation of such grain or fish before ten days after receipt thereof by the debtor; and

(2) the court may deny reclamation to such a producer or fisherman with a right of reclamation that has made such a demand only if the court secures such claim by a lien.

(e) Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to a commodity broker, forward contract merchant, stockbroker, financial institution, or securities clearing agency, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

(f) Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 741 or 761 of this title, or settlement payment, as defined in section 741 of this title, made by or to a repo participant, in connection with a repurchase agreement and that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

(g) [FN1] Notwithstanding sections 544, 545, 547, 548(a)(1)(B) and 548(b) of this title, the trustee may not avoid a transfer under a swap agreement, made by or to a swap participant, in connection with a swap agreement and that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

(g) [FN1] Notwithstanding the rights and powers of a trustee under sections 544(a), 545, 547, 549, and 553, if the court determines on a motion by the trustee made not later than 120 days after the date of the order for relief in a case under chapter 11 of this title and after notice and a hearing, that a return is in the best interests of the estate, the debtor, with the consent of a creditor, may return goods shipped to the debtor by the creditor before the commencement of the case, and the creditor may offset the purchase price of such goods against any claim of the creditor against the debtor that arose before the commencement of the case.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT B

13 AMBKRILR 641                                                                      Page 1
13 Am. Bankr. Inst. L. Rev. 641
(Cite as: 13 Am. Bankr. Inst. L. Rev. 641)

C

American Bankruptcy Institute Law Review
Winter 2005

Beneath the Surface of BAPCPA

Article

*641 FINANCIAL CONTRACTS AND THE NEW BANKRUPTCY CODE: INSULATING MARKETS FROM
BANKRUPT DEBTORS AND BANKRUPTCY JUDGES

Edward R. Morrison [FNa1]

Joerg Riegel [FNd1]

Copyright © 2005 by the American Bankruptcy Institute; Edward R. Morrison, Joerg Riegel

INTRODUCTION

The reforms of 2005 yield important but subtle changes in the Bankruptcy Code's treatment of financial contracts. They might appear only to eliminate longstanding uncertainty surrounding the protections available to financial contract counterparties, especially counterparties to repurchase transactions and other derivatives contracts. But the ambit of the reforms is much broader. The expanded definitions--especially the definition of "swap agreement"--are now so broad that nearly *every* derivative contract is subject to the Code's protection. Instead of protecting particular counterparties to particular transactions, the Code now protects any counterparty to any derivatives contract. Entire markets have been insulated from the costs of a bankruptcy filing by a financial contract counterparty. Equally important, the amendments limit judicial discretion to assess the economic substance of financial transactions, even those that resemble ordinary loans or that retire a debtor's outstanding debt or equity. The reforms of 2005 direct judges to apply a formalistic inquiry based on industry custom: a financial transaction is a "swap," "repurchase transaction," or other protected transaction if it is treated as such in the relevant financial market. The transaction's loan-like features or its effect on outstanding obligations of the debtor are irrelevant, unless they affect the transaction's characterization in financial markets. Absent fraud, form trumps substance--a desirable outcome, we argue, in light of the impossibility of drawing coherent lines between combinations of ordinary financial contracts and loans, dividends, or debt repurchases.

Financial contracts have long received special treatment under the Bankruptcy Code. Core provisions--the automatic stay, [FN1] limitations on preferential [FN2] and fraudulent transfers, [FN3] and nullification of ipso facto clauses [FN4]--have limited application to most parties to swaps, forwards, securities contracts, and other types of financial products. When a debtor becomes insolvent or enters bankruptcy, *642 counterparties are free to terminate agreements, liquidate positions, and set off claims against margin or other collateral posted by the debtor. [FN5] Parties to some contracts (such as forwards) enjoyed these rights as early as the original 1978 Code. [FN6] Parties to other contracts had to wait for amendments in the early 1980s, in 1990, [FN7] or, most recently, in Title IX of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("Act" or "Reform Act"). [FN8]

13 AMBKRILR 641                                                                    Page 6
13 Am. Bankr. Inst. L. Rev. 641
(Cite as: 13 Am. Bankr. Inst. L. Rev. 641)

Based on these and other amendments, [FN61] it would seem that the Reform Act merely builds upon the Code's existing tripartite structure for financial contracts--*651 the scope of protected contracts is enlarged, the number of protected parties is increased, and the range of protected contractual rights is broadened. This impression, we believe, is somewhat misleading. For a large proportion of financial contracts, the tripartite structure has been dismantled.

This is the product of massive changes to the definition of "swap agreement." Old section 101(53B) defined it as a swap involving currencies, interest rates, commodities, or "any other similar agreement," including "any combination of" or "master agreement for" such agreements. [FN62] The newly amended definition covers these transactions as well as options, forwards, and futures involving the same subject matter. [FN63] Additionally, a "swap agreement" now includes swaps, options, forwards, and futures on debt [FN64] or equity [FN65] and various other derivative products, such as credit swaps, [FN66] total return swaps, [FN67] and weather options. [FN68] And there is the familiar opening clause, [FN69] making clear that nearly all "similar" agreements are covered as well. [FN70]

These amendments do much more than simply expand the list of protected swaps. They expand it to include virtually *every contract traded* in derivatives markets, including particular contracts--options, [FN71] forwards, [FN72] and certain futures [FN73]--that are given more limited protection elsewhere in the Code. [FN74] It is difficult to imagine a derivative that would not be encompassed by section 101(53B). Equally important, these amendments also extend the Code's protections *652 to *every counterparty* to a derivatives contract because the definition of "swap participant" remains unchanged. It continues to encompass *any* entity that "at any time before the filing of the petition, has an outstanding swap agreement with the debtor." [FN75] As a result, the amendments to "swap agreement," move the Code from protecting particular parties (to forwards and commodity contracts) to protecting entire derivatives markets.

This shift in the Code effectively eliminates the concept of *protected parties* with respect to forwards and commodity contracts. Any counterparty to these contracts is a "swap participant" and therefore protected. [FN76] This conclusion creates no tension with the various provisions--362(b)(6), 546(e), and 556--that permit only certain parties to forward and commodity contracts to enjoy the Code's safe harbors. These provisions protect particular parties, but they do not rule out safe harbors for other counterparties under other provisions of the Code. Indeed, courts have long recognized significant overlap in the Code's definitions, [FN77] and Congress was fully aware that the new definition of "swap agreement" would cover all forwards. [FN78] Indeed, legislative history indicates that Congress was aware that all of the Code's definitions overlap considerably. [FN79]

## II. WHAT ARE THE BOUNDARIES OF THE NEW CODE?

A principal goal of the Act, then, is to expand dramatically the range of protected financial contracts. Entire derivatives markets are now protected. The Act achieves this goal primarily through definitions that are simply long lists of *653 financial products observed (now or in the future) in financial markets. The virtue of this formalistic approach is that it leaves little doubt about the Code's boundaries: any transaction that bears the formal markings of a swap, repo, forward, commodity contract, or securities contract is protected. It is largely unnecessary for judges to analyze the economics of particular transactions.

But the Act's simplicity comes with a price: as it extends the range of protected contracts, it may encompass transactions lying on the boundary between financial contracts and ordinary loans. Many financial contracts have a credit component; one party temporarily extends credit to the other. Sometimes, this component is even

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

13 AMBKRILR 641                                                         Page 17
13 Am. Bankr. Inst. L. Rev. 641
(Cite as: 13 Am. Bankr. Inst. L. Rev. 641)

BAPCPA §§ 907(b)(1), (3) (to be codified at 11 U.S.C § 101(22). (26)).

[FN59]. BAPCPA § 907(b)(2) (to be codified at 11 U.S.C. § 101(22A)).

[FN60]. Interestingly, the term "financial participant" has also been added to sections 362(b)(17) and 546(g), which offer safe harbors for pre-petition transfers and in-bankruptcy setoffs by "a swap participant *or financial participant*." BAPCPA § 907(d)(1)(c), (e)(1)(c) (to be codified at 11 U.S.C. §§ 362(b)(17), 546(g)) (emphasis added). Why add "financial participant" when the definition of "swap participant" already encompasses any entity that "has an outstanding swap agreement with the debtor?" The legislative materials explain that the addition was thought helpful in ensuring protection for clearing organizations (a type of "financial participant" listed in BAPCPA §907(b)(2) (to be codified at 11 U.S.C § 101(22A)(B)), which may receive or deliver payments under a swap agreement even though it is not formally a party to the agreement. *See* H.R. REP. NO. 109-31, *supra* note 14, at 131.

[FN61]. Several other changes are notable. One makes clear that a swap counterparty can set off its own obligations to the debtor against any collateral securing the swap agreement, including collateral pledged by the debtor but held by the debtor itself (*e.g.*, receivables) or by third parties (*e.g.*, resold securities). BAPCPA § 907(d)(1)(C) (to be codified at 11 U.S.C. § 362(b)(17)); H.R. REP. NO. 109-31, *supra* note 14, at 132. Another amendment makes clear that the financial-contract safe harbors extend to pre-petition attachment of or foreclosure on debtor property by a swap counterparty. BAPCPA § 907(e)(1) (to be codified at 11 U.S.C. § 546(g)). Previous case law had reached the opposite conclusion. *See, e.g., In re* Interbulk, 240 B.R. 195, 201-03 (Bankr. S.D.N.Y. 1999). Other amendments replace terms such as "liquidation" and "termination" with the phrase "liquidation, termination, or acceleration" in various sections, thereby clarifying the range of contractual rights exempt from the prohibition on ipso facto clauses. *See, e.g.*, BAPCPA § 907(g)(2), (h)(2), (i)(2), (j)(2) (to be codified at 11 U.S.C. §§ 555, 556, 559, 560). Finally, the Reform Act adds a new damages calculation provision. *Id.* § 910 (to be codified at 11 U.S.C. § 562).

[FN62]. 11 U.S.C. § 101(53B) (2000).

[FN63]. BAPCPA § 907(a)(1)(E) (to be codified at 11 U.S.C § 101(53B)(A)(i)(1)-(III) ).

[FN64]. *Id.* § 907(a)(1)(E) (to be codified at 11 U.S.C § 101(53B)(A)(i)(V) ).

[FN65]. *Id.* § 907(a)(1)(E) (to be codified at 11 U.S.C § 101(53B)(A)(i)(IV) ).

[FN66]. *Id.* § 907(a)(1)(E) (to be codified at 11 U.S.C § 101(53B)(A)(i)(VI) ).

[FN67]. *Id.*

[FN68]. *Id.* § 907(a)(1)(E) (to be codified at 11 U.S.C. § 101(53B)(A)(i)(VIII) ).

[FN69]. BAPCPA § 907(a)(1)(E) (to be codified at 11 U.S.C. § 101(53B)(A)(ii) ).

[FN70]. We say "nearly all" because the opening clause applies to "forward, swap, future, or option" agreements that (I) have been, are now, or become "subject of recurrent trading in the swap markets" and (II) are written on "one or more rates, currencies, commodities, equity securities, ... debt securities ..., quantitative measures associated with an occurrence ..., or economic or financial indices ...." *Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Practising Law Institute
Commercial Law and Practice Course Handbook Series
PLI Order No. 14441
April-May, 2008

30th Annual Current Developments in Bankruptcy & Reorganization

*749 PREFERENCES AND FRAUDULENT TRANSFERS

David B. Young
McGinnis, Lochridge & Kilgore, L.L.P.

Copyright (c) 2008 Practising Law Institute

Copyright (c) 2008 David B. Young All Rights Reserved

## *751BIOGRAPHICAL INFORMATION

### David B. Young

McGinnis, Lochridge & Kilgore, L.L.P.

600 Congress Avenue, Suite 2100

Austin, TX 78701

phone: (512) 495-6070

dyoung@mcginnislaw.com

www.mcginnislaw.com

DAVID B. YOUNG is Of Counsel in the Austin offices of McGinnis, Lochridge & Kilgore, L.L.P., where he practices in the fields of bankruptcy and commercial law. Prior to attending law school, he earned a B. Phil. from Oxford University and a Ph.D. from Columbia University and was a professor of history at Central Missouri State University. He received his J.D. from the University of Missouri-Kansas City (UMKC) and has practiced law in Missouri, Kansas, and Texas. He is a frequent author and speaker at state and national conferences and has twice received the Outstanding CLE Article Award from the College of the State Bar of Texas. His writings have been cited frequently by state and federal courts throughout the country.

## *753BIOGRAPHICAL INFORMATION

Name: David B. Young
Position or Title: Of Counsel

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*967 One of BAPCPA's changes to 11 U.S.C. § 546(g) appears designed to alter the result in *In re Interbulk, Ltd.,* 240 B.R. 195 (Bankr. S.D.N.Y. 1999). In that case, Judge Tina Brozman determined that forward freight agreements between the debtor and a creditor were indeed swap agreements, but that the transaction in question was not protected by Section 546(g). The contracts in question called for a final settlement payment to be made based on the difference between the contract rate and the average rate of the Baltic Freight Index for the relevant period. The debtor owed the creditor money under the forward freight agreements but had failed to pay. The creditor had obtained an order in a French court attaching a debt that a third party owed to the debtor. This attachment was otherwise avoidable as a preference under 11 U.S.C. § 547(b). The issue was whether the transfer was shielded by 11 U.S.C. § 546(g).

Judge Brozman held that 11 U.S.C. § 546(g) did not apply, although several of the criteria of the statute were satisfied. The forward freight agreements were swap agreements, and the creditor was a swap participant. The transfer had thus been made "by or to a swap participant," "in connection with a swap agreement," and "before the commencement of the case." Prior to BAPCPA, however, 11 U.S.C. § 546(g) also required that the transfer must have been made "under a swap agreement." The plain and natural reading of this phrase was that the transfer must have been made according to some means prescribed in the agreement itself. The attachment of a debt in a French court did not meet this criterion. Thus, because the transfer had not been made "under a swap agreement," it was not protected by 11 U.S.C. § 546(g). Section 907 of BAPCPA changed this analysis. Section 546(g) has been altered so that the statute protects a "transfer, made by or to ... a swap participant or financial participant *under or in connection with* any swap agreement ...." (emphasis added). Thus, "under" and "in connection with" are now alternative criteria, and the *Interbulk* creditor would have prevailed if the current version of the statute had been in effect.

Other statutes also protect swap transactions. 11 U.S.C. § 548(d)(2)(D) provides that a swap participant or financial participant who receives a transfer under or in connection with a swap agreement takes for value to the extent of the transfer. *See National Gas Distributors,* 369 B.R. at 884. This provision is thus analogous to 11 U.S.C. §§ 548(d)(2)(B), 548(d)(2)(C), which are discussed above. 11 U.S.C. § 560 protects the right of a swap participant or financial participant to net out, offset, liquidate, *968 terminate, or accelerate a swap agreement notwithstanding the debtor's bankruptcy, while 11 U.S.C. § 553(b)(1), as amended by BAPCPA, prevents the bankruptcy estate from avoiding a prepetition setoff covered by Section 560. Section 553 was not amended by FNIA. 11 U.S.C. § 362(b)(17), amended by BAPCPA and FNIA, exempts a financial participant's or swap participant's exercise of any right to offset, net out, liquidate, accelerate, terminate, or enforce any transfer obligation under or in connection with one or more swap agreements from the operation of the automatic stay. *Cf. Enron,* 306 B.R. at 465 (holding that Section 362(b)(17) did not apply to protect a counterparty's state court action seeking a declaratory judgment that there had never been a valid swap agreement in the first instance, and that relief from the stay would not be granted). 11 U.S.C. § 362(o), added by BAPCPA, prohibits any court or administrative agency from enjoining or staying any action within the scope of Section 362(b)(17).

### D. Protection for Master Netting Agreements: 11 U.S.C. § 546(J)

BAPCPA added still another form of protection from the avoiding powers for certain types of financial contracts. Prior to 2005, it was unclear whether or to what extent 11 U.S.C. §§ 546(e), 546(f), and 546(g) protected netting or setoff across or between different types of financial products or contracts, even if the parties had an agreement that allowed such a step. Rhett G. Campbell, *Financial Markets Contracts and BAPCPA,* 79 AM. BANKR. L.J. 697 (2005); *see also In re RCM Global Long Term Capital Appreciation Fund, Ltd.,* 200 B.R. 514 (Bankr. S.D.N.Y. 1996). Section 907 of BAPCPA created a new 11 U.S.C. § 546(j) that was designed to ensure that cross-product close-out, termination, and setoff pursuant to a master agreement would not be avoidable except for actual fraud. *See* H.R. Rep. No. 31, 109th Cong., 1st Sess., pt. 1, 131-32 (2005).

Modeled on Sections 546(e), 546(f), and 546(g), Section 546(j) took effect for cases filed on or after October 17, 2005. Section 546(j) was further amended by FNIA in 2006. With FNIA's changes shown in bold italics, Section 546(j) provides:

Notwithstanding sections 544, 545, 547, 548(a)(1)(B) and 548(b), the trustee may not avoid a transfer made by or to *(or for the benefit of)* a master netting agreement participant under or in connection with any master netting

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| ———————————————— | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

Pia N. Thompson, an attorney, certifies that she caused a true copy of the foregoing DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT to be served upon

> Brian L. Shaw
> Mark Radtke
> Shaw Gussis Fishman Glantz
>     Wolfson & Towbin LLC
> 321 N. Clark Street, Suite 800
> Chicago, Illinois 60610
> bshaw@shawgussis.com
> mradtke@shawfussis.com

via ECF electronic service and email this 23rd day of June 2008.

_____     /s/ Pia N. Thompson_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 08 B 05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Judge Bruce W. Black |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA | ) | Adv. No. 08 A 00177 |
| S.A. DE C.V. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### Memorandum Opinion

This adversary proceeding is before the court on the defendant's motion for summary judgment. The plaintiff, Casa de Cambio Majapara S.V. de C.V. ("Majapara" or "the Debtor") seeks to avoid and recover, pursuant to sections 547 and 550 of the Bankruptcy Code,[1] transfers made for the benefit of the defendant, Wachovia Bank, N.A. ("Wachovia"). The legal issue presented is whether prejudgment attachments Wachovia obtained in New York and Illinois are subject to the safe harbor in section 546(g). For the reasons set forth below, the court concludes that Wachovia's prejudgment attachments are protected by the safe harbor in section 546(g). Accordingly, the defendant's motion will be granted.

---

[1] 11 U.S.C. §§ 101 *ff.* Any reference to "section" or "Code" is a reference to the Bankruptcy Code unless another reference is stated.

## Jurisdictional Statement

The court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## Background

The Debtor and Wachovia agreed to a series of seven foreign exchange spot transactions (the "FX agreements")[2] on December 5, 2007, under which Wachovia agreed to deliver a total of 26 million Euros to the Debtor in exchange for $38,132,700 from the Debtor. The FX agreements were to settle on December 7, 2007. That date Wachovia delivered 26 million Euros to the Debtor, but the Debtor failed to deliver $38,132,700 to Wachovia.

On December 14, 2007, Wachovia filed an action against the Debtor in the United States District Court for the Southern District of New York (the "New York Action"), seeking prejudgment relief. On the same date, Wachovia sought similar relief against the Debtor in the Circuit Court of Cook County, Illinois (the "Illinois Action"). On December 14, 2007, Wachovia obtained an order of attachment in the Illinois action (Harris bank as garnishee), and on December 20, 2007, Wachovia obtained an order of attachment in the New York Action (Citibank as garnishee).

The Debtor filed for Chapter 11 bankruptcy on March 5, 2008. The Debtor filed its adversary complaint against Wachovia on March 24, 2008, requesting that the court declare both

---

[2] The parties agree that a foreign exchange transaction is a transaction in which one party agrees to deliver an agreed amount of one currency to a second party in exchange for the second party agreeing to deliver an agreed amount of a different currency to the first party. They further agree that a foreign exchange spot agreement is a foreign exchange transaction which by its terms will settle within two business days.

orders for prejudgment attachment avoidable preferences pursuant to section 547(b). Wachovia answered the complaint, asserted an affirmative defense based on section 546(g), and filed the present motion for summary judgment on that basis. Wachovia seeks summary judgment on the complaint under Rule 7056 of the Federal Rules of Bankruptcy, Rule 56 of the Federal Rules of Civil Procedure, and section 546(g), claiming that the prejudgment attachments are transfers to a swap participant in connection with swap agreements, thus not avoidable under section 547(b). The Debtor maintains that the prejudgment attachments were not "in connection with" the swap agreement and that section 546(g) is inapplicable because the prejudgment attachments are not the type of transfers contemplated by the safe harbor provided by section 546(g).

## Discussion

The legal issue before this court is whether the prejudgment attachments Wachovia obtained in New York and Illinois are subject to the safe harbor provision in section 546(g). Section 546(g) states that the Debtor "may not avoid a transfer, made by or to (or for the benefit of) a swap participant or financial participant, under or in connection with any swap agreement and that is made before the commencement of the case." If Wachovia's attachments are within the safe harbor, then the attachments are outside the Debtor's avoidance powers, the motion for summary judgment must be granted, and judgment entered against the plaintiff. On the other hand, if the attachments are not protected by the safe harbor provisions of section 546(g), the Debtor can proceed with this avoidance action.

There are no genuine issues of material fact. The parties agree that the FX agreements are "swap agreements" as defined in section 101(53B) and that both the plaintiff and defendant are "swap participants" as defined in section 101(53C).

To prevail on its motion, Wachovia must show that the prejudgment attachments were (1) transfers, (2) made by or to (or for the benefit of) a swap participant, (3) under or in connection with any swap agreement, and (4) made before the commencement of the case. Section 546(g). The second and fourth elements of section 546(g) are not in dispute. For the reasons stated below, the court concludes that the other two elements have been shown and that the defendant is entitled to judgment as a matter of law.

This case presents an issue of first impression. No cases have addressed this specific issue, and only one case provides slight guidance. The plaintiff cites *In re Interbulk, Ltd.*, 240 B.R. 195 (Bankr. S.D.N.Y. 1999) to support its argument that Wachovia's prejudgment attachments are not "under or in connection with" a swap agreement, as required under the provisions of section 546(g). However, that case offers little support for the plaintiff's argument and in many ways undermines its position. In *Interbulk*, the court held that an attachment was not subject to section 546(g) because it was not obtained "according to the method prescribed in the agreement itself," and therefore, was not obtained "under" a swap agreement. *Id.* at 202. The court did not even consider whether the attachment was "in connection with a swap agreement" because at the time of the *Interbulk* case section 546(g) required that a transfer be both "under" *and* "in connection with a swap agreement." In considering the plain meaning of "under" and "in connection with," the court held that a transfer is "under" a swap agreement "when it is accomplished according to the method prescribed by the agreement itself." *Id.* As for "in connection with," the court stated the phrase "suggests a broader meaning similar to 'related to'." *Id.* The *Interbulk* court held that the attachment in that case was not subject to section 546(g)'s safe harbor because it concluded that the attachment was not a transfer "under"

- 4 -

the swap agreement. The court did not need to consider whether the attachment was a transfer "in connection with" the swap agreement.

Since the *Interbulk* opinion was issued, section 546(g) has been substantially amended. The section now has a broader application because it only requires that the transfer be "under **or** in connection with any swap agreement" rather than under a swap agreement **and** in connection with a swap agreement. Section 546(g) (emphasis added). *Interbulk* offers little support for the plaintiff's argument applied to the present language of section 546(g) because the reach of the statute was broadened when Congress decided to make transfers "under" *or* "in connection with" a swap agreement subject to the safe harbor provision. This intention is clear in light of the fact that Congress changed "under **and** in connection with" to "under **or** in connection with," not only retaining the phrase "in connection with," but making it disjunctive to "under." Unlike the *Interbulk* case, this court's analysis cannot end simply because the prejudgment attachments were not "under" the swap agreement.[3] Instead, this court must also determine whether the prejudgment attachments were "in connection with a swap agreement."

The Debtor argues that even under the more inclusive language in the current statute the prejudgment attachments are not "in connection with a swap agreement." Rather, the Debtor asserts, "[t]hey were made in connection with Wachovia's *ex parte* and false statements to two different courts to the effect that the Debtor had and/or was going to fraudulently conceal or transfer assets in order to hinder or delay its creditors." (Plaintiff's Response in Opposition at 8).

The fallacy in the Debtor's position is that it is premised on the idea that attachments could only be "in connection with" one subject- either the swap agreements or the accusations by Wachovia of potential wrongdoing by the Debtor. To the contrary, this court concludes that the

---

[3] The parties and the court accept the analysis of *Interbulk*: "A natural reading of 'under' would suggest that a transfer will be under a swap agreement when it is accomplished according to the method prescribed in the agreement itself." *Interbulk*, at 202.

prejudgment attachments were made "in connection with" both the swap agreements, which

furnish the ultimate basis for the Debtor's liability to Wachovia, and the allegations justifying the

prejudgment attachment remedy.

The Debtor's argument also fails because both the New York and Illinois attachments

were based at least in part on the merits of the case. *See* Illinois Order for Attachment and

Summons dated December 14, 2007 ("The Plaintiff...established by affidavit a prima facie

case") and New York Order of Attachment dated December 20, 2007 ("it is probable that

Wachovia will succeed on the merits and recover that sum from Majapara"). Moreover, even if

the attachments were not obtained based on the merits of the case, they would still be "in

connection with" the swap agreement because the actions taken by Wachovia stem from the

failure of those transactions. This court concludes that the prejudgment attachments were

substantially related to the swap agreement and therefore were "in connection with" the swap

agreement.

The Debtor also argues that the prejudgment attachments were "not made to or for the

benefit of Wachovia **in its capacity as a swap participant**." (Plaintiff's Response in Opposition

at 8) (emphasis added). This argument fails because it adds a requirement- "in its capacity as"-

that does not appear in the statute. Section 546(g) is addressed to transfers "to a swap

participant" without qualifiers of any kind.

The remaining issue raised by the Debtor is whether a prejudgment attachment is a

"transfer" for purpose of section 546(g). Although the Debtor concedes that a post-judgment

attachment would be considered a transfer for purposes of section 546(g), it argues that a

prejudgment attachment is "not the type of transfer that is fairly characterized as a transfer in

connection with a swap agreement." (Plaintiff's Response in Opposition at 4). Most of this

- 6 -

argument centers around legislative intent and the purposes for enactment of section 546(g). The argument fails because this court will not consider the legislative history behind section 546(g) because that statute is clear and unambiguous. *Cf. Interbulk* at 202.

The Bankruptcy Code defines the term "transfer" very broadly in section 101(54). Specifically, section 101(54)(D)(ii) states that the term "transfer" means "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with (i) property; or (ii) an interest in property." The definition makes no distinction between prejudgment and post-judgment transfers. Here, Wachovia obtained its prejudgment attachments subject to the final adjudication of the case. This court concludes that such conditional transfers fall under the broad definition of transfer in the Bankruptcy Code.

Even more significantly, the Debtor conceded that Wachovia's prejudgment attachments constitute "transfers" when it filed the adversary complaint. The complaint was filed pursuant to section 547(b) which permits avoidance of certain "transfer[s]." The Debtor's argument here is inconsistent with its previous filings and fails regardless of this court's conclusion on the issue. Even if the court agreed with the Debtor and concluded that the prejudgment attachments were not "transfers," the defendant would still prevail because without a transfer the Debtor has no cause of action pursuant to section 547(b). The court, however, disagrees with the Debtor and concludes that the broad definition of transfer in the Bankruptcy Code includes the prejudgment attachments obtained in New York and Illinois.

## Conclusion

The plain language section 546(g) states that the Debtor "may not avoid a transfer, made by or to (or for the benefit of) a swap participant or financial participant, under or in connection

- 7 -

with any swap agreement and that is made before the commencement of the case." The term "transfer" is broadly defined in section 101(54) and includes prejudgment attachments. Here, there is no dispute over the fact that Majapara and Wachovia entered into a series of foreign exchange spot transactions and that these transactions are swap agreements. There is also no dispute that the actions taken by Wachovia stem from the failure of those transactions. Although there may have been additional causes of actions in Wachovia's attachment complaints, such as breach of contract and fraud, the fact is that the Wachovia obtained the attachments in connection with its swap agreements with Majapara. Therefore, Wachovia's pre-bankruptcy actions were transfers made to a swap participant in connection with a swap agreement and are outside the Debtor's avoidance powers. For these reasons, the defendant's motion is GRANTED. Judgment will be entered in favor of the defendant on all counts. This Memorandum Opinion will constitute findings of fact and conclusions of law. A separate judgment will be entered.

DATED: July 9, 2008                          ENTERED:

                                             _Bruce W. Black_
                                             Bruce W. Black
                                             Bankruptcy Judge

- 8 -

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | **Case No.  08 B 05230** |
| **CASA DE CAMBIO MAJAPARA** | ) | |
| **S.A. DE C.V.,** | ) | **Judge Bruce W. Black** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **CASA DE CAMBIO MAJAPARA** | ) | Adv. No. 08 A 00177 |
| **S.A. DE C.V.** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **WACHOVIA BANK, N.A.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SUMMARY JUDGMENT

For the reasons stated in a Memorandum Opinion issued this date, the defendant's motion

for summary judgment is GRANTED, and JUDGMENT is ENTERED in favor of the defendant,

Wachovia Bank, N.A., and against the plaintiff, Casa de Cambio Majapara S.A. de C.V.

The clerk is requested to close this adversary proceeding.


DATED: July 9, 2008                    ENTERED:


                                       Bruce W. Black
                                       Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

### ORDER

This matter coming to be heard on Wachovia Bank, National Association's **MOTION TO STRIKE DECLARATION OF LUIS V. ECHEVERRIA AND PARAGRAPHS 17-21 OF PLAINTIFF'S LOCAL RULE 7056-2 STATEMENT OF ADDITIONAL MATERIAL FACTS**, due notice having been given and the Court being fully advised in the premises,

IT IS HEREBY ORDERED THAT:

1.   The Motion is granted.

2.   Paragraphs 17-21 of Defendant's Local Rule 7056-2 Statement are stricken.

3.   Mr. Echeverria's declaration dated June 9, 2008 is stricken.

Date: 7/9/2008          Enter: _Bruce W. Black_

United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## NOTICE OF APPEAL

Plaintiff, Casa de Cambio Majapara S.A. de C.V., appeals under 28 U.S.C. § 158(a) from

the (i) Summary Judgment and associated Memorandum Opinion of the Honorable Bruce W.

Black, Bankruptcy Judge, granting Wachovia Bank, N.A.'s Motion for Summary Judgment

entered in this proceeding on July 9, 2008 [Dkt. # 31 (opinion) and 32 (judgment)] and (ii) Order

of the Honorable Bruce W. Black, Bankruptcy Judge, granting Wachovia Bank, N.A.'s Motion

to Strike Declaration of Luis V. Echeverria and Paragraphs 17-21 of Plaintiff's Local Rule 7056-

2 Statement of Material Facts entered in this proceeding on July 14, 2008 [Dkt. # 34]. Copies of

the Summary Judgment and Memorandum Opinion are attached hereto as Exhibit A and

incorporated by reference. A copy of the Order is attached hereto as Exhibit B and incorporated

by reference. The names of all parties to the order appealed from and the names, addresses and

telephone numbers of their respective attorneys are as follows:

{6591 NTC A0211727.DOC}

**Appellant:**

Casa de Cambio Majapara S.A. de C.V.

**Counsel for Casa de Cambio Majapara:**

Brian L. Shaw
Mark L. Radtke
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL 60610
Phone: (312) 541-0151
Fax:   (312) 980-3888
bshaw100@shawgussis.com
mradtke@shawgussis.com

**Appellee:**

Wachovia Bank, N.A.

**Counsel for Wachovia Bank:**

Pia N. Thompson
Michael S. Leib
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7484
Phone: (312) 207-1000
Fax:   (312) 207-6400
pthompson@reedsmith.com
mleib@reedsmith.com

Edward J. Estrada
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 521-5400
Fax:   (212) 521-5450
eestrada@reedsmith.com

Respectfully submitted,

Casa de Cambio Majapara, S.A. de C.V.

Dated: July 18, 2008

By:  /s/ Mark L. Radtke
      One of its attorneys

Brian L. Shaw (#6216834)
Mark L. Radtke (#6275738)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151  telephone
(312) 980-3888  facsimile

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 08 B 05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Judge Bruce W. Black |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA | ) | Adv. No. 08 A 00177 |
| S.A. DE C.V. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SUMMARY JUDGMENT

For the reasons stated in a Memorandum Opinion issued this date, the defendant's motion

for summary judgment is GRANTED, and JUDGMENT is ENTERED in favor of the defendant,

Wachovia Bank, N.A., and against the plaintiff, Casa de Cambio Majapara S.A. de C.V.

The clerk is requested to close this adversary proceeding.

DATED: July 9, 2008                    ENTERED:

                                       *[signature]* Bruce W. Black

                                       Bruce W. Black
                                       Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No.  08 B 05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Judge Bruce W. Black |
| | ) | |
| Debtor. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA | ) | Adv. No. 08 A 00177 |
| S.A. DE C.V. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## Memorandum Opinion

This adversary proceeding is before the court on the defendant's motion for summary

judgment.  The plaintiff, Casa de Cambio Majapara S.V. de C.V. ("Majapara" or "the Debtor")

seeks to avoid and recover, pursuant to sections 547 and 550 of the Bankruptcy Code,[1] transfers

made for the benefit of the defendant, Wachovia Bank, N.A. ("Wachovia").  The legal issue

presented is whether prejudgment attachments Wachovia obtained in New York and Illinois are

subject to the safe harbor in section 546(g).  For the reasons set forth below, the court concludes

that Wachovia's prejudgment attachments are protected by the safe harbor in section 546(g).

Accordingly, the defendant's motion will be granted.

_____

[1] 11 U.S.C. §§ 101 *ff.* Any reference to "section" or "Code" is a reference to the Bankruptcy Code unless another
reference is stated.

## Jurisdictional Statement

The court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## Background

The Debtor and Wachovia agreed to a series of seven foreign exchange spot transactions (the "FX agreements")[2] on December 5, 2007, under which Wachovia agreed to deliver a total of 26 million Euros to the Debtor in exchange for $38,132,700 from the Debtor. The FX agreements were to settle on December 7, 2007. That date Wachovia delivered 26 million Euros to the Debtor, but the Debtor failed to deliver $38,132,700 to Wachovia.

On December 14, 2007, Wachovia filed an action against the Debtor in the United States District Court for the Southern District of New York (the "New York Action"), seeking prejudgment relief. On the same date, Wachovia sought similar relief against the Debtor in the Circuit Court of Cook County, Illinois (the "Illinois Action"). On December 14, 2007, Wachovia obtained an order of attachment in the Illinois action (Harris bank as garnishee), and on December 20, 2007, Wachovia obtained an order of attachment in the New York Action (Citibank as garnishee).

The Debtor filed for Chapter 11 bankruptcy on March 5, 2008. The Debtor filed its adversary complaint against Wachovia on March 24, 2008, requesting that the court declare both

---

[2] The parties agree that a foreign exchange transaction is a transaction in which one party agrees to deliver an agreed amount of one currency to a second party in exchange for the second party agreeing to deliver an agreed amount of a different currency to the first party. They further agree that a foreign exchange spot agreement is a foreign exchange transaction which by its terms will settle within two business days.

orders for prejudgment attachment avoidable preferences pursuant to section 547(b). Wachovia answered the complaint, asserted an affirmative defense based on section 546(g), and filed the present motion for summary judgment on that basis. Wachovia seeks summary judgment on the complaint under Rule 7056 of the Federal Rules of Bankruptcy, Rule 56 of the Federal Rules of Civil Procedure, and section 546(g), claiming that the prejudgment attachments are transfers to a swap participant in connection with swap agreements, thus not avoidable under section 547(b). The Debtor maintains that the prejudgment attachments were not "in connection with" the swap agreement and that section 546(g) is inapplicable because the prejudgment attachments are not the type of transfers contemplated by the safe harbor provided by section 546(g).

### Discussion

The legal issue before this court is whether the prejudgment attachments Wachovia obtained in New York and Illinois are subject to the safe harbor provision in section 546(g). Section 546(g) states that the Debtor "may not avoid a transfer, made by or to (or for the benefit of) a swap participant or financial participant, under or in connection with any swap agreement and that is made before the commencement of the case." If Wachovia's attachments are within the safe harbor, then the attachments are outside the Debtor's avoidance powers, the motion for summary judgment must be granted, and judgment entered against the plaintiff. On the other hand, if the attachments are not protected by the safe harbor provisions of section 546(g), the Debtor can proceed with this avoidance action.

There are no genuine issues of material fact. The parties agree that the FX agreements are "swap agreements" as defined in section 101(53B) and that both the plaintiff and defendant are "swap participants" as defined in section 101(53C).

- 3 -

To prevail on its motion, Wachovia must show that the prejudgment attachments were (1) transfers, (2) made by or to (or for the benefit of) a swap participant, (3) under or in connection with any swap agreement, and (4) made before the commencement of the case. Section 546(g). The second and fourth elements of section 546(g) are not in dispute. For the reasons stated below, the court concludes that the other two elements have been shown and that the defendant is entitled to judgment as a matter of law.

This case presents an issue of first impression. No cases have addressed this specific issue, and only one case provides slight guidance. The plaintiff cites *In re Interbulk, Ltd.*, 240 B.R. 195 (Bankr. S.D.N.Y. 1999) to support its argument that Wachovia's prejudgment attachments are not "under or in connection with" a swap agreement, as required under the provisions of section 546(g). However, that case offers little support for the plaintiff's argument and in many ways undermines its position. In *Interbulk*, the court held that an attachment was not subject to section 546(g) because it was not obtained "according to the method prescribed in the agreement itself," and therefore, was not obtained "under" a swap agreement. *Id.* at 202. The court did not even consider whether the attachment was "in connection with a swap agreement" because at the time of the *Interbulk* case section 546(g) required that a transfer be both "under" *and* "in connection with a swap agreement." In considering the plain meaning of "under" and "in connection with," the court held that a transfer is "under" a swap agreement "when it is accomplished according to the method prescribed by the agreement itself." *Id.* As for "in connection with," the court stated the phrase "suggests a broader meaning similar to 'related to'." *Id.* The *Interbulk* court held that the attachment in that case was not subject to section 546(g)'s safe harbor because it concluded that the attachment was not a transfer "under"

- 4 -

the swap agreement. The court did not need to consider whether the attachment was a transfer "in connection with" the swap agreement.

Since the *Interbulk* opinion was issued, section 546(g) has been substantially amended. The section now has a broader application because it only requires that the transfer be "under **or** in connection with any swap agreement" rather than under a swap agreement **and** in connection with a swap agreement. Section 546(g) (emphasis added). *Interbulk* offers little support for the plaintiff's argument applied to the present language of section 546(g) because the reach of the statute was broadened when Congress decided to make transfers "under" *or* "in connection with" a swap agreement subject to the safe harbor provision. This intention is clear in light of the fact that Congress changed "under **and** in connection with" to "under **or** in connection with," not only retaining the phrase "in connection with," but making it disjunctive to "under." Unlike the *Interbulk* case, this court's analysis cannot end simply because the prejudgment attachments were not "under" the swap agreement.[3] Instead, this court must also determine whether the prejudgment attachments were "in connection with a swap agreement."

The Debtor argues that even under the more inclusive language in the current statute the prejudgment attachments are not "in connection with a swap agreement." Rather, the Debtor asserts, "[t]hey were made in connection with Wachovia's *ex parte* and false statements to two different courts to the effect that the Debtor had and/or was going to fraudulently conceal or transfer assets in order to hinder or delay its creditors." (Plaintiff's Response in Opposition at 8).

The fallacy in the Debtor's position is that it is premised on the idea that attachments could only be "in connection with" one subject- either the swap agreements or the accusations by Wachovia of potential wrongdoing by the Debtor. To the contrary, this court concludes that the

---

[3] The parties and the court accept the analysis of *Interbulk*: "A natural reading of 'under' would suggest that a transfer will be under a swap agreement when it is accomplished according to the method prescribed in the agreement itself." *Interbulk*, at 202.

prejudgment attachments were made "in connection with" both the swap agreements, which furnish the ultimate basis for the Debtor's liability to Wachovia, and the allegations justifying the prejudgment attachment remedy.

The Debtor's argument also fails because both the New York and Illinois attachments were based at least in part on the merits of the case. *See* Illinois Order for Attachment and Summons dated December 14, 2007 ("The Plaintiff...established by affidavit a prima facie case") and New York Order of Attachment dated December 20, 2007 ("it is probable that Wachovia will succeed on the merits and recover that sum from Majapara"). Moreover, even if the attachments were not obtained based on the merits of the case, they would still be "in connection with" the swap agreement because the actions taken by Wachovia stem from the failure of those transactions. This court concludes that the prejudgment attachments were substantially related to the swap agreement and therefore were "in connection with" the swap agreement.

The Debtor also argues that the prejudgment attachments were "not made to or for the benefit of Wachovia **in its capacity as a swap participant**." (Plaintiff's Response in Opposition at 8) (emphasis added). This argument fails because it adds a requirement- "in its capacity as"- that does not appear in the statute. Section 546(g) is addressed to transfers "to a swap participant" without qualifiers of any kind.

The remaining issue raised by the Debtor is whether a prejudgment attachment is a "transfer" for purpose of section 546(g). Although the Debtor concedes that a post-judgment attachment would be considered a transfer for purposes of section 546(g), it argues that a prejudgment attachment is "not the type of transfer that is fairly characterized as a transfer in connection with a swap agreement." (Plaintiff's Response in Opposition at 4). Most of this

argument centers around legislative intent and the purposes for enactment of section 546(g). The argument fails because this court will not consider the legislative history behind section 546(g) because that statute is clear and unambiguous. *Cf. Interbulk* at 202.

The Bankruptcy Code defines the term "transfer" very broadly in section 101(54). Specifically, section 101(54)(D)(ii) states that the term "transfer" means "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with (i) property; or (ii) an interest in property." The definition makes no distinction between prejudgment and post-judgment transfers. Here, Wachovia obtained its prejudgment attachments subject to the final adjudication of the case. This court concludes that such conditional transfers fall under the broad definition of transfer in the Bankruptcy Code.

Even more significantly, the Debtor conceded that Wachovia's prejudgment attachments constitute "transfers" when it filed the adversary complaint. The complaint was filed pursuant to section 547(b) which permits avoidance of certain "transfer[s]." The Debtor's argument here is inconsistent with its previous filings and fails regardless of this court's conclusion on the issue. Even if the court agreed with the Debtor and concluded that the prejudgment attachments were not "transfers," the defendant would still prevail because without a transfer the Debtor has no cause of action pursuant to section 547(b). The court, however, disagrees with the Debtor and concludes that the broad definition of transfer in the Bankruptcy Code includes the prejudgment attachments obtained in New York and Illinois.

### Conclusion

The plain language section 546(g) states that the Debtor "may not avoid a transfer, made by or to (or for the benefit of) a swap participant or financial participant, under or in connection

- 7 -

with any swap agreement and that is made before the commencement of the case." The term "transfer" is broadly defined in section 101(54) and includes prejudgment attachments. Here, there is no dispute over the fact that Majapara and Wachovia entered into a series of foreign exchange spot transactions and that these transactions are swap agreements. There is also no dispute that the actions taken by Wachovia stem from the failure of those transactions. Although there may have been additional causes of actions in Wachovia's attachment complaints, such as breach of contract and fraud, the fact is that the Wachovia obtained the attachments in connection with its swap agreements with Majapara. Therefore, Wachovia's pre-bankruptcy actions were transfers made to a swap participant in connection with a swap agreement and are outside the Debtor's avoidance powers. For these reasons, the defendant's motion is GRANTED. Judgment will be entered in favor of the defendant on all counts. This Memorandum Opinion will constitute findings of fact and conclusions of law. A separate judgment will be entered.

DATED: July 9, 2008                    ENTERED:

                                       *Bruce W. Black*
                                       Bruce W. Black
                                       Bankruptcy Judge

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-05230 |
| CASA DE CAMBIO MAJAPARA | ) | |
| S.A. DE C.V., | ) | Hon. Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE | ) | |
| C.V. | ) | |
| Plaintiff | ) | Adv. Proc. No. 08-00177 |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## ORDER

This matter coming to be heard on Wachovia Bank, National Association's **MOTION TO STRIKE DECLARATION OF LUIS V. ECHEVERRIA AND PARAGRAPHS 17-21 OF PLAINTIFF'S LOCAL RULE 7056-2 STATEMENT OF ADDITIONAL MATERIAL FACTS**, due notice having been given and the Court being fully advised in the premises,

IT IS HEREBY ORDERED THAT:

1.   The Motion is granted.

2.   Paragraphs 17-21 of Defendant's Local Rule 7056-2 Statement are stricken.

3.   Mr. Echeverria's declaration dated June 9, 2008 is stricken.

Date:  7/9/2008                    Enter:  _Bruce W. Black_

United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Casa de Cambio Majapara,          )      08 B 05230
                                  )      Chicago, Illinois
                                  )      11:00 a.m.
                    Debtor.       )      July 01, 2008


TRANSCRIPT OF PROCEEDINGS BEFORE THE
HONORABLE BRUCE W. BLACK


APPEARANCES:

For Debtor:                  Mr. Brian Shaw;

For Wachovia:                Mr. Michael Leib;
                             Ms. Pia Thompson;


Court Reporter:              Jackleen DeFini, CSR, RPR
                             U.S. Courthouse
                             219 South Dearborn
                             Room 661
                             Chicago, IL  60604.

2

1          THE CLERK:  Casa de Cambio Majapara

2  versus Wachovia Bank.

3          MR. SHAW:  Good morning, Your Honor.

4  Brian Shaw on behalf of the debtor.

5          MR. LEIB:  Michael Leib on behalf of

6  Wachovia.

7          MS. THOMPSON:  Pia Thompson on behalf

8  of Wachovia.

9          THE COURT:  Good morning, all.

10          MR. SHAW:  Your Honor, there's several

11  matters before you.  And I understand that one of the

12  matters is not contested.  And I was thinking that

13  rather than let it slip through the cracks, we could

14  deal with that first.  That's our motion to extend

15  the plan dates and the exclusivity dates.  As I

16  advised the court last time -- there's no objection

17  but I just wanted to let the court know that.

18          Although we were advised before we

19  were before the court the last time that a ruling was

20  ready to be handed down in Mexico, that was on

21  June 17, we haven't gotten that ruling yet.  So

22  that's the principal reason that we can't do anything

23  right now, and that's why the time is asked to be

24  extended.

25          THE COURT:  That motion is granted.

1          MR. SHAW:  Thank you, Judge.

2          THE COURT:  And let's deal with the

3  objection to the fee application next.  I think

4  everyone's position is clear.

5          Anything else, Miss Thompson?

6          MS. THOMPSON:  I don't have anything

7  to add to what we have submitted.

8          THE COURT:  Mr. Shaw?

9          MR. SHAW:  Your Honor, unless the

10  court has specific questions, no.

11          THE COURT:  I will overrule the

12  objection and allow the fees consistent with the

13  revisions that Mr. Shaw has made in schedule A.

14  Essentially, I'm agreeing that the five hundred and

15  fifty is reasonable, and that the debtor's judgment

16  regarding Mr. Echeverria's presence here in Chicago

17  will not be disturbed.  We will prepare an order

18  consistent with those statements.

19          MR. SHAW:  Your Honor, you said "we."

20  Do you mean chambers?

21          THE COURT:  Correct.

22          MR. SHAW:  Thank you, Judge.

23          Judge, the other thing on the fees

24  issue is the Sperling & Slater issues seemed to slip

25  through the cracks, and Miss Thompson realized that

4

1   this morning.  I don't know if the court's had an

2   opportunity to look at that or not.  I just wanted to

3   make sure that one way or another it got picked up.

4              THE COURT:  It's not on the docket,

5   but it should have been.  Is that what you're saying?

6              MS. THOMPSON:  Yes.  There was some

7   confusion, I think, because at the time that I filed

8   the Echeverria objection, I served Mr. Shaw with the

9   Sperling objection.  He, I think, thought I had also

10  filed it.  So when he filed his response to

11  Echeverria, he also filed a response to Sperling.  So

12  the ECF system had a difficult time figuring out what

13  it was a response to as I hadn't filed anything.

14  Then I filed a reply and attached the initial

15  objection as an exhibit there.  So everything is on

16  the docket now.  We're back on the 9th, if we wanted

17  to maybe put it over for a ruling then.

18              THE COURT:  That's appropriate.  I

19  have looked at it.  I haven't resolved it in detail.

20

21              MR. SHAW:  Your Honor, that's

22  obviously fine with us.

23              MS. THOMPSON:  The initial docket of

24  what Mr. Shaw filed was docket entry number 151, if

25  that helps with tracking this.

5

1              MR. SHAW:  That's impressive.

2              MS. THOMPSON:  I had to look it up a

3    few times.

4              MR. SHAW:  I know that when we filed

5    it, we couldn't find a relation back document.  I

6    told Miss Thompson the following day when I saw her

7    in court, then the lightbulb went off in everybody's

8    head.

9              THE COURT:  Okay.  That will go to

10   July 9th.  That leaves the adversary.

11             Now in the adversary, we've got a

12   status; we've got the motion for summary judgment;

13   we've got defendant's motion to strike

14   Mr. Echeverria's declaration, paragraphs 17 to 21 of

15   the local rule statement.  Are you planning to argue

16   this morning, if you would like that opportunity?  Or

17   do you want me to decide the matter based on what's

18   been filed?

19             MR. SHAW:  Your Honor, I know that --

20   well, with regard to the motion to strike, I think

21   it's pretty simple.  From my end, the only comment I

22   would like to make is that I believe paragraph 17,

23   which addresses firsthand knowledge of

24   Mr. Echeverria.  If Wachovia forgets, I will remind

25   them that he was part and parcel of all this

6

1   litigation, you brought his company in this

2   litigation.  It's relative because it talks about

3   where the funds were kept and how they were

4   maintained with regard to the Harris account versus

5   money that came from Wachovia.

6            Paragraphs 18 through 21, I'm not

7   going to -- while I disagree with the firsthand

8   knowledge statement, I'm sort of ambivalent

9   towards -- they really have to do with the underlying

10  dispute pertaining to the swap agreement and the

11  relationship between Wachovia and Majapara.  And they

12  don't really have anything to do with the particular

13  transfer issue on the summary judgment motion.

14            Obviously you've been provided more

15  color than you probably want in this case.  And

16  that's just my two comments on the motion to strike.

17            THE COURT:  You may respond to that.

18            MR. LEIB:  I would just say that

19  paragraph 17 of the statement of additional material

20  facts is also irrelevant.  So I will just add that.

21  I mean, it just talks about that they maintained an

22  account at Harris Bank, which is not really -- I

23  mean, that's obviously clear from all the facts in

24  the original statement of additional material facts

25  -- But the -- or original statement of material

7

1  facts.  But the second part about the aggregate

2  balance, as such accounts typically exceed a million

3  dollars, we have no idea one way or the other.  We

4  don't have the account numbers, nobody knows if Mr.

5  Echeverria really knows.  It's really just

6  irrelevant.  So that's as to the statement of

7  additional material facts.  As to the declaration,

8  you know, we can stick with the papers that we filed.

9           MR. SHAW:  Your Honor, I know that --

10  as with regard to the summary judgment motion, I

11  would just like to make a few short comments.  And I

12  do mean short, if that's okay with the court.

13           THE COURT:  That's fine with me.

14           MR. LEIB:  Fine.

15           MR. SHAW:  Your Honor, after reading

16  Wachovia's reply papers, and I've never done this

17  before in court, but I will say that they were very

18  good reply papers, something dawned on me.  And what

19  dawned on me was what they ignored.  And what they

20  ignored was the real issue here was -- which is what

21  was this transfer pursuant to.  And I'll tell you

22  right now, I know, Judge, that if this was a

23  post-judgment attachment based on a judgment Wachovia

24  obtained on account or arising under, or related to

25  the swap agreement under the counts that were

8

1   asserted in their complaint, there wouldn't be a

2   546(g) fight today because it clearly would apply.

3   But this is a prejudgment attachment and Mr. Radtke

4   and myself and Miss Thompson and Mr. Leib can cite

5   Interbulk.  They can cite the legislative history of

6   both the -- I think it was the '90 amendment and the

7   2005 amendments.  We can cite ABI's wonderful law

8   review articles and commentators.

9            They don't address the prejudgment

10  attachment issue.  And that is a really important

11  distinction here because the issue and the transfer

12  that took place gave rise under New York and Illinois

13  prejudgment attachment laws.  It was not an

14  adjudication on complaints that were filed.  It was

15  simply, we have the right to seek a prejudgment

16  attachment because these unusual circumstances exist

17  and we want this to happen.

18            It wasn't because of anything in the

19  swap agreement.  It wasn't because of the counts

20  contained in the complaint.  It was simply a

21  prejudgment protective mechanism that was based on

22  facts that are not related to inapplicable, and not

23  arising under the swap agreement.

24            Now, ironically, the filing of the

25  bankruptcy makes those issues go away, but the

9

1    prejudgment attachment is sitting there still.
2    That's an issue for another day.  But prejudgment
3    attachment statute isn't.  And the transfer that was
4    obtained under the prejudgment statute, which is a
5    transfer not to Wachovia, but a transfer -- they
6    requested it.  I guess it is for the benefit, but a
7    transfer -- technically it's supposed to be to the
8    sheriff in Illinois, was not a transfer under any of
9    the accounts asserted in the complaint.
10                   And, Judge, there's really two telling
11   things that have happened in this case, positions
12   that Wachovia's taken that show a disconnect between
13   the New York and Illinois attachment statutes and the
14   basis for the transfer under those statutes and what
15   is covered by 546(g).  (1) the motion to strike that
16   was brought before you:  The motion to strike sought
17   to strike as irrelevant the facts in Rule 7056
18   statement that pertain to the underlying swap
19   agreement.  You know, they are irrelevant.  They're
20   irrelevant to the issues surrounding the transfer.
21                   More interestingly was the automatic
22   stay dispute that was before the court on the
23   Citibank motion.  Wachovia was in the court and
24   talked about how their claim against Citibank, which
25   arose out of Citibank's violation of the attachment,

10

1   was entirely unrelated to their claims against the
2   debtor; had no bearing on their claims against the
3   debtor; was not a violation of the automatic stay
4   because of that. Those two positions of Wachovia
5   show the disconnect in their logic. The prejudgment
6   attachment is a statute available -- prejudgment is a
7   statute available regardless of what the underlying
8   dispute is about. And the transfer was pursuant to
9   those statutes and had nothing to do with the counts
10  in the complaint. I think everything else speaks for
11  itself.

12          MR. LEIB: I'll try and cover that in
13  the reverse order, Your Honor. I'm not sure I'll
14  stick a hundred percent to being in reverse order,
15  but I will try.

16          First of all, he just said that it was
17  not -- well, first of all, he said the Citibank
18  motion somehow shows that our position is wrong. I'm
19  not sure exactly how he could get there. The
20  Citibank motion, the reason it wasn't -- and, again,
21  we didn't argue that, Your Honor, this was argued by
22  another counsel. I was not here for that motion, but
23  I am fairly familiar with the grounds. The grounds
24  that were brought there was because it's an action
25  being brought against Citibank for Citibank having

11

1  violated, at least alleged to have violated orders

2  that were entered in that case, not a claim brought

3  against the debtor.  So I don't think that has any

4  relevancy here whatsoever.

5           As far as the motion to strike

6  Echeverria, all the facts that we have stated in our

7  statement of material facts are relevant.  The

8  additional statement of material facts, some of

9  the -- it's in pieces in here, in the statement of

10  additional facts.  It repeats some of the things we

11  had in the original statement of material facts, but

12  the additional statement are all irrelevant and has

13  nothing to do with this motion.

14           But what he said was, he questioned

15  whether this was a transfer to Wachovia because it

16  was, you know, prejudgment attachment to the sheriff,

17  or something like that.  In their adversary complaint

18  they say that each of these prejudgment attachments

19  were, and I'm just going to quote from paragraphs 16

20  and 25 of the adversary complaint, that they were,

21  quote, "transfer of an interest in the debtor's

22  property to or for the benefit of Wachovia."  They

23  have to make that allegation, otherwise it's not a

24  transfer under Section 547(b).  If it's not a

25  transfer to Wachovia, it's got to be a transfer to

12

1   Wachovia for them to sue us.  So I think they have
2   admitted that it's a transfer to Wachovia.
3               In addition, he's claiming that the
4   prejudgment attachments were not obtained because
5   these were swap agreements.  First of all, they
6   absolutely were obtained because of the underlying
7   claims, just like any claim for money brought because
8   of a failure to pay.  We alleged in our papers, and
9   we have submitted the papers to you as part of an
10  attachment to my declaration, we submitted to both
11  the Illinois court and the New York court the
12  underlying claims that were at issue in the case.  It
13  was specifically stated that it was because they had
14  failed to pay us, to pay Wachovia under the swap
15  agreements, here the foreign exchange swap
16  transactions.
17              And in fact both courts, the New York
18  court found that we had a likelihood of success on
19  the merits as to our claim for approximately
20  $24 million, which nobody disputes was $24 million
21  owed under the swap agreement, and the Illinois court
22  said we had made a prima facie case.  Those are
23  requirements under the prejudgment statutes to get
24  those.  And, in fact, Your Honor, in their adversary
25  complaint they say, and I'm going to quote, that each

1  of these prejudgment attachments was granted on
2  account of antecedent debts owed by the debtor to
3  Wachovia.  They were granted on account of antecedent
4  debts.  That antecedent debt is the money owed under
5  the swap agreement.  They have to claim that again
6  because if they don't, they haven't met the
7  application of Section 547(b)(2).  It might be a
8  transfer -- might be a transfer, but it's not on
9  account of antecedent debt; it's not a transfer
10 that's avoidable.  So on account of antecedent debt
11 is very similar, Your Honor, to in connection with.
12 And we would argue that in connection with is
13 actually broader than on account of.  In connection
14 with, as the Interbulk case found, was related to.
15 And, clearly, our prejudgment attachments were
16 related to our claims that they failed to pay us
17 under the swap agreement.  They can't really get
18 around that.
19             So, we didn't ignore anything, Your
20 Honor.  What they have just said is that was a post
21 -- that this was a post-judgment attachment -- it
22 would be -- that we -- we wouldn't be here.
23             They would admit that if it's a
24 post-judgment attachment, it would be covered by
25 Section 547(g) -- well, a post-judgment attachment is

14

1   a transfer.  And they are claiming here today and in

2   their adversary complaint that a prejudgment

3   attachment is a transfer.  The only connection -- the

4   only question is not whether it's a transfer, but

5   whether it's in connection with the swap agreement.

6   And what he's saying, what Mr. Shaw's saying is if it

7   was a post-judgment attachment, it would be in

8   connection with.  But if it's -- but prejudgment

9   attachment, it's not in connection with.  And that

10  makes no sense.  It's the same claim, it's just we

11  got preliminary relief that he's claiming is a

12  transfer.  So either it isn't a transfer and

13  therefore it can't be voidable, or it is a transfer

14  and it can't be voidable.  Either way, they lose

15  their adversary claim.  Section 546(g) absolutely

16  applies and Mr. Shaw just admitted it, and it's

17  admitted in the adversary complaint.

18              MR. SHAW:  I didn't.  But I will leave

19  it at that.

20              THE COURT:  All right.  I will take it

21  under advisement and continue both matters for

22  status, the motion to strike and the motion for

23  summary judgment, to July 9th at 10:30.

24              MR. SHAW:  Judge, I want to argue

25  more.  No.  It's the shortest argument we've had.

15

1          Actually, Miss Thompson and I

2  discussed something.  I just want to advise the court

3  in anticipation of Wednesday's hearing next week,

4  because I'm leaving town, that, happily, the debtor

5  has started getting money, and that is not from the

6  Harris account.  So it is not our intent to seek any

7  additional use of cash collateral.

8          What I spoke to Miss Thompson about,

9  and what we will work through the next couple of

10  days, is how to bring that to a conclusion before the

11  court without, hopefully, any need for a contested

12  hearing.  But I just wanted to give the court a

13  heads-up on that because I know I will be gone the

14  next few days, and then all of a sudden Wednesday

15  will be upon us again.

16          MS. THOMPSON:  Yes, that's correct,

17  Your Honor.

18          THE COURT:  Okay.  Very well.  I will

19  see you on the 9th.

20          MR. SHAW:  Thank you, Judge.

21          (Which were all the proceedings had in

22          the above-entitled cause, July 01,

23          2008, 11:00 a.m.)

24  I, JACKLEEN DE FINI, CSR, RPR, DO HEREBY CERTIFY
   THAT THE FOREGOING IS A TRUE AND ACCURATE
25  TRANSCRIPT OF PROCEEDINGS HAD IN THE ABOVE-
   ENTITLED CAUSE.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


~~Casa de Cambio Majapara,~~            )      ~~08 B 05230~~
                                        )      Chicago, Illinois
                                        )      10:30 a.m.
                         Debtor.        )      July 09, 2008


TRANSCRIPT OF PROCEEDINGS BEFORE THE
HONORABLE BRUCE W. BLACK


APPEARANCES:

For Debtor:                    Mr. Brian Shaw;

For Wachovia:                  Mr. Michael Leib;



Court Reporter:                Jackleen DeFini, CSR, RPR
                               U.S. Courthouse
                               219 South Dearborn
                               Room 661
                               Chicago, IL  60604.

2

1          THE CLERK:  Casa de Cambio Majapara,

2   and various adversaries.

3          MR. SHAW:  Good morning, Your Honor.

4   Brian Shaw on behalf of the debtor.

5          MR. LEIB:  Good morning, Your Honor.

6   Michael Leib on behalf of Wachovia.

7          THE COURT:  We have lots of things on

8   the docket, and I'm ready to make some decisions.  Do

9   you want to talk about cash collateral first or last?

10          MR. SHAW:  First, because it's going

11   to be easy.

12          Your Honor, we have, subject to the

13   court's approval, reached an agreement, so to speak,

14   on the form of an order which will preclude this

15   motion.  It's pretty straightforward.  It's

16   consistent with the comments made before the court a

17   week earlier, that money is starting to come into the

18   estate and there's no need for additional use of cash

19   collateral.

20          MR. LEIB:  And just to state what's in

21   that form order, that we're agreeing basically to the

22   form that we still reserve our objections that we

23   have made before on the record, Your Honor.

24          THE COURT:  All right.  The order will

25   be entered.

1          MR. SHAW:  Thank you, Judge.

2          Your Honor, before we forget about it,

3   there is a previously set status for tomorrow that

4   was entered in conjunction with the original plan

5   dates.  And if it's okay with the court, I request

6   that that status date be stricken and then reset for

7   the week of September 8, which coincides with the

8   current plan date of September 5th.

9          THE COURT:  That's fine.  We'll make

10  it September 10 at 10:30.

11         MR. SHAW:  Just as an aside, Judge, as

12  of yesterday evening we had yet to get a ruling from

13  the court that's ready to rule in Mexico.

14         THE COURT:  All right.  Well, I will

15  give you some rulings here.  You may have a seat.

16         A very short oral ruling on the motion

17  to strike.  I'm granting that motion.  The matter is

18  before me on the defendant's motion to strike the

19  declaration of Luis Echeverria in paragraphs 17 to 21

20  of the plaintiff's Local Rule 756-2 statement of

21  additional facts, and submitted in connection with

22  the defendant's motion for summary judgment.

23         Generally, the defendant seeks to

24  strike Echeverria's statements on the basis that the

25  statements are not made on the personal knowledge,

4

1  and it seeks to strike paragraphs 17 to 21 of the
2  additional facts on the basis that they are not based
3  on competent evidence.  And the motion will be
4  granted.
5          The defendant's argument that
6  Echeverria's statements should be stricken because
7  they are not made on personal knowledge is
8  well-taken, and the statements will be stricken on
9  that basis.  Echeverria lacks personal knowledge of
10 the defendant's affairs prior to March 5th, 2008,
11 because he was not affiliated with the debtor in any
12 capacity that would afford him personal knowledge of
13 the debtor's affairs.  The fact that he had a
14 business relationship with the debtor is not
15 sufficient personal knowledge.  Echeverria's
16 declaration will be stricken on this basis.
17          The defendant's argument, which
18 follows, that this court should strike paragraphs 17
19 through 21 of the plaintiff's statement of additional
20 facts is also well-taken.  These statements are based
21 on inadmissible declarations by Echeverria already
22 stricken by this court, therefore the statements are
23 also inadmissible and will be stricken.  The motion
24 is granted.  The matters are stricken.
25          That is of less than earthshaking

5

1   importance given the decision that I've made on the

2   motion for summary judgment.  I have just signed an

3   opinion granting the motion for summary judgment.  I

4   have copies for both of you.  And consistent with the

5   statements in the opinion, I've executed a summary

6   judgment finding the matter in favor of the defendant

7   and against the plaintiff.  So that summary judgment

8   motion is granted.

9                    Item 16 on the docket is the status

10   hearing on the adversary, and the clerk is now

11   directed to close the adversary.  And I think that

12   leaves the narrowly confusing matter of the fee

13   applications for Sperling & Slater, and for

14   Mr. Echeverria.

15                    MR. SHAW:  Actually, Your Honor, you

16   did resolve Mr. Echeverria's last week.

17                    THE COURT:  I did, but I told you what

18   I was going to do.  But we have not done an order

19   because when I started to look at the attachments,

20   they were not what I expected.  You submitted on

21   Monday to my chambers a revised amended itemization

22   of his statements.  And I trust Mr. Leib got a copy

23   of that?

24                    MR. LEIB:  I don't think so.

25                    MR. SHAW:  You should have.

6

1    MR. LEIB: I did not see it.

2    THE COURT: Well, I simply will ask

3  you, Mr. Shaw, to submit an order overruling the

4  objection and granting the fees in the amount

5  consistent with the amended itemization submitted

6  this week.

7    MR. SHAW: Your Honor, we will do

8  that. That's no problem. I apologize for the

9  miscommunication.

10    THE COURT: Well, it's Miss Thompson's

11  fault since she's not here. When this all started,

12  when we had objections to things that hadn't been

13  filed, and that's made it very confusing. We still

14  don't have an application for Sperling & Slater on

15  the docket.

16    MR. LEIB: Just to state for the

17  record, Your Honor, with Echeverria, we filed the

18  objection. I guess it's not clear who should file

19  the order in that circumstance. We will work that

20  out.

21    MR. SHAW: I understand what you're

22  saying. We'll get you an order on Echeverria.

23    He was joking, I think, about it being

24  Miss Thompson's fault.

25    Your Honor, with regard to the

7

1   Sperling & Slater objection, the confusion is in
2   part, I think we are equally to blame on the
3   confusion.  But ultimately it does stem from the
4   administrative order because, unlike a situation
5   where you have a fee application which in this case
6   are required to be filed this month for the
7   intervening four-month period, you don't have an
8   application before you until the objection is filed.
9   And in this instance we found out when we filed our
10  response to the objection that it had only been
11  served on us and not filed.  So the first, initial
12  pleading that would have put the statement before the
13  court would have been normally the objection.  It was
14  not.  And I understand the confusion.  And I don't
15  know if the court -- if there's anything the court
16  thinks it is missing at this point, I know that
17  Mr. Leib and I would be glad to provide it.
18              THE COURT:  I think because of the
19  things attached to the objection, it should be clear
20  enough for me to look at it and rule.  I have not
21  done that yet, but I will.  And I will take the
22  objection to the fee statement of Sperling & Slater
23  under advisement.
24              I will enter an order fairly quickly,
25  but I will continue it to the September 10th date at

8

1   10:30 just so that it doesn't get lost.  But I do

2   anticipate resolving it before then and sending you

3   an order.  We'll take it off the call when it's

4   resolved.

5                    MR. LEIB:  On that one, do you need an

6   order?

7                    THE COURT:  I do not.

8                    MR. LEIB:  So you just need the order

9   with regard to the Echeverria one.

10                   Otherwise the Sperling is completely

11  done, from the lawyers' perspective.

12                   THE COURT:  As far as I know.

13                   MR. SHAW:  Your Honor, we'll submit

14  that order this afternoon.

15                   THE COURT:  Very well.

16                   MR. LEIB:  Just to go back to cash

17  collateral.  My understanding is that there's still

18  some money left over from the second budget that

19  Mr. Shaw at this time will eventually take some of

20  the money out for whatever's given to Sperling, and

21  then will hold pursuant to this cash collateral

22  order.

23                   MR. SHAW:  Other than that money, I

24  don't have authority to use any additional cash

25  collateral right now.  And I haven't asked for any.

9

1   So the money is being held in a segregated debtor in

2   possession account separate and apart from other

3   proceeds.

4                    MR. LEIB:  Which is important now

5   because of the ruling on the summary judgment.

6                    MR. SHAW:  Thank you very much, Judge.

7                    THE COURT:  Thank you all.

8                    MR. SHAW:  Judge, is there a written

9   ruling on this summary judgment?

10                   THE COURT:  Yes.

11

12                   (Which were all the proceedings had in

13                   the above-entitled cause, July 09,

14                   2008, 10:30 a.m.)

15  I, JACKLEEN DE FINI, CSR, RPR, DO HEREBY CERTIFY
    THAT THE FOREGOING IS A TRUE AND ACCURATE
16  TRANSCRIPT OF PROCEEDINGS HAD IN THE ABOVE-
    ENTITLED CAUSE.

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Casa de Cambio Majapara, | ) | 08 B 05230 |
| | ) | Chicago, Illinois |
| | ) | 10:30 a.m. |
| Debtor. | ) | July 09, 2008 |

TRANSCRIPT OF PROCEEDINGS BEFORE THE
HONORABLE BRUCE W. BLACK

APPEARANCES:

For Debtor:            Mr. Brian Shaw;

For Wachovia:          Mr. Michael Leib;

Court Reporter:        Jackleen DeFini, CSR, RPR
                       U.S. Courthouse
                       219 South Dearborn
                       Room 661
                       Chicago, IL  60604.

2

1          THE CLERK:  Casa de Cambio Majapara,

2   and various adversaries.

3          MR. SHAW:  Good morning, Your Honor.

4   Brian Shaw on behalf of the debtor.

5          MR. LEIB:  Good morning, Your Honor.

6   Michael Leib on behalf of Wachovia.

7          THE COURT:  We have lots of things on

8   the docket, and I'm ready to make some decisions.  Do

9   you want to talk about cash collateral first or last?

10          MR. SHAW:  First, because it's going

11   to be easy.

12          Your Honor, we have, subject to the

13   court's approval, reached an agreement, so to speak,

14   on the form of an order which will preclude this

15   motion.  It's pretty straightforward.  It's

16   consistent with the comments made before the court a

17   week earlier, that money is starting to come into the

18   estate and there's no need for additional use of cash

19   collateral.

20          MR. LEIB:  And just to state what's in

21   that form order, that we're agreeing basically to the

22   form that we still reserve our objections that we

23   have made before on the record, Your Honor.

24          THE COURT:  All right.  The order will

25   be entered.

3

1    MR. SHAW:  Thank you, Judge.

2          Your Honor, before we forget about it,

3    there is a previously set status for tomorrow that

4    was entered in conjunction with the original plan

5    dates.  And if it's okay with the court, I request

6    that that status date be stricken and then reset for

7    the week of September 8, which coincides with the

8    current plan date of September 5th.

9          THE COURT:  That's fine.  We'll make

10   it September 10 at 10:30.

11         MR. SHAW:  Just as an aside, Judge, as

12   of yesterday evening we had yet to get a ruling from

13   the court that's ready to rule in Mexico.

14         THE COURT:  All right.  Well, I will

15   give you some rulings here.  You may have a seat.

16         A very short oral ruling on the motion

17   to strike.  I'm granting that motion.  The matter is

18   before me on the defendant's motion to strike the

19   declaration of Luis Echeverria in paragraphs 17 to 21

20   of the plaintiff's Local Rule 756-2 statement of

21   additional facts, and submitted in connection with

22   the defendant's motion for summary judgment.

23         Generally, the defendant seeks to

24   strike Echeverria's statements on the basis that the

25   statements are not made on the personal knowledge,

4

1   and it seeks to strike paragraphs 17 to 21 of the

2   additional facts on the basis that they are not based

3   on competent evidence.  And the motion will be

4   granted.

5           The defendant's argument that

6   Echeverria's statements should be stricken because

7   they are not made on personal knowledge is

8   well-taken, and the statements will be stricken on

9   that basis.  Echeverria lacks personal knowledge of

10  the defendant's affairs prior to March 5th, 2008,

11  because he was not affiliated with the debtor in any

12  capacity that would afford him personal knowledge of

13  the debtor's affairs.  The fact that he had a

14  business relationship with the debtor is not

15  sufficient personal knowledge.  Echeverria's

16  declaration will be stricken on this basis.

17          The defendant's argument, which

18  follows, that this court should strike paragraphs 17

19  through 21 of the plaintiff's statement of additional

20  facts is also well-taken.  These statements are based

21  on inadmissible declarations by Echeverria already

22  stricken by this court, therefore the statements are

23  also inadmissible and will be stricken.  The motion

24  is granted.  The matters are stricken.

25          That is of less than earthshaking

5

1   importance given the decision that I've made on the

2   motion for summary judgment. I have just signed an

3   opinion granting the motion for summary judgment. I

4   have copies for both of you. And consistent with the

5   statements in the opinion, I've executed a summary

6   judgment finding the matter in favor of the defendant

7   and against the plaintiff. So that summary judgment

8   motion is granted.

9           Item 16 on the docket is the status

10  hearing on the adversary, and the clerk is now

11  directed to close the adversary. And I think that

12  leaves the narrowly confusing matter of the fee

13  applications for Sperling & Slater, and for

14  Mr. Echeverria.

15          MR. SHAW: Actually, Your Honor, you

16  did resolve Mr. Echeverria's last week.

17          THE COURT: I did, but I told you what

18  I was going to do. But we have not done an order

19  because when I started to look at the attachments,

20  they were not what I expected. You submitted on

21  Monday to my chambers a revised amended itemization

22  of his statements. And I trust Mr. Leib got a copy

23  of that?

24          MR. LEIB: I don't think so.

25          MR. SHAW: You should have.

6

1    MR. LEIB:  I did not see it.

2    THE COURT:  Well, I simply will ask

3  you, Mr. Shaw, to submit an order overruling the

4  objection and granting the fees in the amount

5  consistent with the amended itemization submitted

6  this week.

7    MR. SHAW:  Your Honor, we will do

8  that.  That's no problem.  I apologize for the

9  miscommunication.

10    THE COURT:  Well, it's Miss Thompson's

11  fault since she's not here.  When this all started,

12  when we had objections to things that hadn't been

13  filed, and that's made it very confusing.  We still

14  don't have an application for Sperling & Slater on

15  the docket.

16    MR. LEIB:  Just to state for the

17  record, Your Honor, with Echeverria, we filed the

18  objection.  I guess it's not clear who should file

19  the order in that circumstance.  We will work that

20  out.

21    MR. SHAW:  I understand what you're

22  saying.  We'll get you an order on Echeverria.

23    He was joking, I think, about it being

24  Miss Thompson's fault.

25    Your Honor, with regard to the

7

1   Sperling & Slater objection, the confusion is in
2   part, I think we are equally to blame on the
3   confusion.  But ultimately it does stem from the
4   administrative order because, unlike a situation
5   where you have a fee application which in this case
6   are required to be filed this month for the
7   intervening four-month period, you don't have an
8   application before you until the objection is filed.
9   And in this instance we found out when we filed our
10  response to the objection that it had only been
11  served on us and not filed.  So the first, initial
12  pleading that would have put the statement before the
13  court would have been normally the objection.  It was
14  not.  And I understand the confusion.  And I don't
15  know if the court -- if there's anything the court
16  thinks it is missing at this point, I know that
17  Mr. Leib and I would be glad to provide it.

18              THE COURT:  I think because of the
19  things attached to the objection, it should be clear
20  enough for me to look at it and rule.  I have not
21  done that yet, but I will.  And I will take the
22  objection to the fee statement of Sperling & Slater
23  under advisement.

24              I will enter an order fairly quickly,
25  but I will continue it to the September 10th date at

8

1    10:30 just so that it doesn't get lost.  But I do
2    anticipate resolving it before then and sending you
3    an order.  We'll take it off the call when it's
4    resolved.
5                    MR. LEIB:  On that one, do you need an
6    order?
7                    THE COURT:  I do not.
8                    MR. LEIB:  So you just need the order
9    with regard to the Echeverria one.
10                    Otherwise the Sperling is completely
11    done, from the lawyers' perspective.
12                    THE COURT:  As far as I know.
13                    MR. SHAW:  Your Honor, we'll submit
14    that order this afternoon.
15                    THE COURT:  Very well.
16                    MR. LEIB:  Just to go back to cash
17    collateral.  My understanding is that there's still
18    some money left over from the second budget that
19    Mr. Shaw at this time will eventually take some of
20    the money out for whatever's given to Sperling, and
21    then will hold pursuant to this cash collateral
22    order.
23                    MR. SHAW:  Other than that money, I
24    don't have authority to use any additional cash
25    collateral right now.  And I haven't asked for any.

9

1    So the money is being held in a segregated debtor in

2    possession account separate and apart from other

3    proceeds.

4                    MR. LEIB:  Which is important now

5    because of the ruling on the summary judgment.

6                    MR. SHAW:  Thank you very much, Judge.

7                    THE COURT:  Thank you all.

8                    MR. SHAW:  Judge, is there a written

9    ruling on this summary judgment?

10                   THE COURT:  Yes.

11

12                   (Which were all the proceedings had in

13                   the above-entitled cause, July 09,

14                   2008, 10:30 a.m.)

15   I, JACKLEEN DE FINI, CSR, RPR, DO HEREBY CERTIFY
     THAT THE FOREGOING IS A TRUE AND ACCURATE
16   TRANSCRIPT OF PROCEEDINGS HAD IN THE ABOVE-
     ENTITLED CAUSE.

17

18

19

20

21

22

23

24

25

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

In re:                                )    Chapter 11
                                      )    Case No. 08-05230
        CASA DE CAMBIO MAJAPARA       )
        S.A. DE C.V.,                 )    Hon. Bruce W. Black
                        Debtor.       )
                                      )

## VERIFIED STATEMENT OF LUIS V. ECHEVERRIA PURSUANT
## TO FEDERAL RULE OF BANKRUPTCY PROCDURE 2014(a)

Luis V. Echeverria, pursuant to 28 U.S.C. § 1746, hereby deposes and states, under

penalty of perjury, as follows:

1.      I am President and CEO of JOM Corp. ("JOM"), which is located at 8684

Avenida de la Fuente, Suite 16, San Diego, CA 92154.  JOM is a registered money services

business ("MSB").  Although MSBs encompass many types of non-bank financial institutions,

JOM is primarily a money transmitter and was a customer of Casa de Cambio Majapara S.A. de

C.V. ("Majapara") before the Petition Date.

2.      I submit this verified statement in support of the Debtor's Motion to (I) Approve

Its Employment of Luis V. Echeverria as Debtor's Consultant Pursuant to 11 U.S.C. § 327(a)

and (II) Authorize Luis V. Echeverria to Act in a Foreign Country on Behalf of Debtor's Estate

Pursuant to 11 U.S.C. § 1505 (the "Motion")[1] in the chapter 11 bankruptcy case of Casa de

Cambio Majapara S.A. de C.V. (the "Debtor").

3.      I have more than 30 years of experience in, among other business matters,

strategic planning and management, international business development and trade, commercial

and   investment   banking,   financing   engineering,   credit,   asset   management,   treasury,

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

product/service development, performance management, financial management, business intelligence and IT management. My professional experience includes the reengineering, management and sale of two MSBs. A copy of my curriculum vitae is attached hereto as Exhibit 1.

4. Prior to the Petition Date, JOM transferred its customers' funds to Majapara, and Majapara disbursed Mexican pesos to Mexican businesses and individuals in order to complete the transfer the funds of JOM's customers from the United States to Mexico. For their services, JOM and Majapara earned a fee for each transaction. Although the services provided by JOM and Majapara have similarities, the two businesses are not competitive but complementary. Through JOM's business relationship with Majapara, I developed a strong rapport with Majapara and its CEO, Jorge Ortiz Muñoz.

5. I am aware of the circumstances that caused Majapara to commence a bankruptcy proceeding under Chapter 11 of the Bankruptcy Code. Because Mr. Ortiz has a limited ability to communicate in English, and because of the good business relationship I have developed with Majapara, I have agreed to assist, and indeed have already been assisting, Majapara in its efforts to navigate through the cross-border issues that confront its business. I can read, write and fluently speak in Spanish and English. Since Majapara commenced its U.S. bankruptcy case, I have already spent more than 100 hours assisting Majapara in this regard.

6. Majapara has requested, and I have agreed as set forth herein, to continue to assist Majapara as its consultant and to be appointed as its designated foreign representative in connection with its insolvency and bankruptcy proceedings in the United States and Mexico, and any other related proceedings. Specifically, I have agreed to:

> a. Advise and assist Majapara with the administration of its estate, operation of its business and management of its properties;



b. Consult Majapara regarding the disposition of its assets and take such action as may be necessary to effectuate those dispositions;

c. Coordinate and take any actions in foreign countries, including the commencement and oversight of ancillary insolvency proceedings in Mexico;

d. Represent Majapara with respect to inquiries and negotiations relating to its creditors and property of its estate;

e. Assist Majapara with the formulation and confirmation of a plan of reorganization;

f. Participate on behalf of Majapara in all proceedings before the United States Bankruptcy Court for the Northern District of Illinois or any other court of competent jurisdiction including courts in Mexico; and

g. Perform any and all other consulting or representative services on behalf of Majapara that may be required to aid in the proper administration of Majapara's estate.

7. I have reviewed the list of Majapara's twenty largest unsecured creditors and its shareholders to determine whether I have any relationships with such creditors, interest holders and interested parties. I am also aware of the litigation between Majapara and Wachovia Bank N.A. and Zions First National Bank. Except as set forth herein, I have determined that I do not have any connections with Majapara, its creditors or any other party in interest herein and that I neither hold nor represent any adverse interest in connection with the matters upon which I will be employed. Moreover, as of the Petition Date, neither JOM nor I was a creditor of Majapara.

8. In exchange for my services, I expect to be compensated according to customary rates for consulting engagements that are of similar size, complexity and intensity as Majapara's situation. I therefore intend to provide the previously described services to Majapara for a fixed fee of $25,000 per month retroactive to March 5, 2008 and continuing through June 30, 2008. In other words, I am requesting and, subject to the approval of the bankruptcy court, Majapara has agreed to pay a flat fee of $100,000 for my services rendered between the Petition Date and June 30, 2008.

9.    Given my understanding of Majapara's circumstances, the amount of time I have already spent assisting Majapara and the work that must be completed between now and June 30, 2008, I believe that the flat fee arrangement represents a substantial discount from the amount I would ultimately be entitled to receive under an hourly rate compensation arrangement. Absent a flat fee arrangement, I would charge an hourly rate of $550. I understand that in the event my services are required after June 30, 2008, Majapara will need to seek further authority to compensate me in a manner that is commensurate with Majapara's circumstances at that time.

10.    I will also request reimbursement for my reasonable and necessary out-of-pocket expenses. I understand that reimbursement of my expenses relating to my professional services rendered on behalf of Majapara will still be subject to further approval of the bankruptcy court in accordance with the terms of any interim procedures order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330.

11.    I further understand that the sole source of compensation and reimbursement of expenses shall be funds of Majapara's estate. I have not entered into any agreement to share such compensation except as permitted under 11 U.S.C. § 504(b).

I state under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: March 1 7, 2008

_____
Luis V. Echeverria

{6591 DEC A0202318.DOC}                4

*Luis V. Echeverria*

619-666-1125
luisecheverria@cox.net

❏ **Formal Education & Other Courses**

- Chase Manhattan Bank Credit Program                                  New York        1981
- Post Graduate Course (PhD level) in Economy & Accounting,  Universidad del Valle
                                                                      MexicoCity1976-1979
- Hambros Bank, Ltd. Leasing Program                                  London    1978
- Orion Royal Bank, Ltd. International Syndications Program   London   1978
- Crocker National Bank / Midland Bank International Banking Program
                                                                      San Francisco    1977
- Sloan Program, Stanford University, case study development group
                                                                      San Francisco    1977
- School of Business Administration, Finance – Marketing Major, La Salle University
                                                                      Mexico City       1973

❏ **Employment**

- President & CEO JOM Corp 4-2005 to date
- Managing Director & COO Giromex, Inc., San Diego, CA
- Managing Partner InterAmerican Investment Group, San Diego, CA (1990-to date).
- SVP, Republic International Bank of New York (1989-90).
- President of International Financial Engineering, San Diego, CA (1983-88).
- EVP International & Corporate Division of Probursa / Banco Bilbao-Vizcaya, (1982-83).
- Deputy Director International Division, Bancomer, Mexico(1973-82)
- International Operations Manager, Serfin, Mexico 1972-73.

❏ **Performance**

30+ years of experience in Strategic Planning and Management, International Business
Development and Trade, Commercial & Investment Banking, Financial Engineering, Credit, Asset
Management, Treasury, Product / Service Development, Performance Management, Financial
Management, Business Intelligence, IT management and other critical Business Management
issues.

- ❖ Re-engineered, managed operated and successfully sold two MSB's
- ❖ Established strategic alliances and joint venture operations between US and Mexico interests
- ❖ Accumulated a prominent contact network in the U.S. as in many countries in Latin America
  and Europe.
- ❖ Extensive works with strategic Hispanic marketing and Latin America networking.
- ❖ Two years consulting contract by a California based bank for strategic planning and the
  turnkey development of electronic funds transfer system technology, applications, POP
  network, marketing and operations solutions.
- ❖ Corporate lending and consumer credit consultant for several California based banks.
- ❖ Developed the application prospectus and negotiated the investment rating with Standard &
  Poors for several California banks.
- ❖ Established and managed lines of credit for $750 million with more than 150 international
  banks.
- ❖ TQM & ISO 9000 consultant.

**EXHIBIT**

**1**

# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| CASA DE CAMBIO MAJAPARA | ) | Case No. 08-05230 |
| S.A. de C.V., | ) | |
| | ) | Honorable Judge Black |
| Debtor. | ) | |
| | ) | |

## DECLARATION OF ARIEL MARIN

I, Ariel Marin, declare under penalty of perjury as follows:

1.    I have personal knowledge of the facts contained herein and submit this declaration, pursuant to 28 U.S.C. § 1746, in further support of Wachovia Bank, National Association's ("Wachovia") motion to dismiss the bankruptcy proceeding filed by Casa de Cambio Majapara S.A. de C.V. ("Majapara").

2.    I am the Managing Director and Regional Manager Americas for Wachovia. My office is located in Miami, Florida.

3.    As part of my responsibilities, I am responsible for supervising the Mexican City Representative that managed the relationship with Casa de Cambio Majapara S.A. de C.V. ("Majapara").

4.    I have read the Debtor's Response in Opposition to Wachovia Bank, N.A.'s Motion for an Order Dismissing Debtor's Chapter 11 Bankruptcy Case, as well as the April 22, 2008 Declaration of Luis V. Echeverria ("Echeverria Decl."). The purpose of this Declaration is to correct certain misrepresentations made in the Response and the Echeverria Declaration.

### Wachovia Did Not Provide Majapara With
### $100 Million In Daily Operating Lines Of Credit

5.    In Mr. Echeverria's declaration he swears that "In addition to FX transactions, Wachovia provided the Debtor with operating lines of credit, overdraft privileges and the ability

to process unlimited remittances. The aggregate amount of these credit facilities provided the Debtor with largely unsecured credit well in excess of $100 million on any given day." Echeverria Decl. ¶ 6.  Mr. Echeverria, however, does not substantiate this $100 million figure in either his declaration or by supporting documentation.  Indeed, Wachovia did not provide Majapara with $100 million in daily operating lines of credit.

6.     In order to provide the Court with an accurate description of the parties' past business relationship, the following explains the actual services Wachovia provide to Majapara.

## Foreign Exchange

7.     Wachovia engaged in foreign exchange spot transactions with Majapara.  The Foreign Exchange spot deals are for two day settlement, which is the market practice, meaning that the parties would agree to exchange a certain amount of currency at a certain exchange rate on any given day (say a Wednesday) and then two days later (on Friday) the parties were to exchange their respective currencies.  Wachovia would deliver the sold currency to the party indicated by Majapara and Majapara would deliver the settlement payment, at the agreed upon rate, all on the settlement date – there is no two-day float of funds for Majapara on these transactions as Majapara has previously misrepresented.  Wachovia reserved the right not to enter into any Foreign Exchange spot transaction with Majapara.  A more detailed explanation of the Foreign Exchange spot transactions can be found in the accompanying declarations of Drew Gross, dated February 11, 2008 and Carlos Perez, dated February 11, 2008 – both declarations were previously submitted to the Court in New York in opposition to Majapara's motion to vacate the order of attachment issued by Judge Jones.

2

## Checks

8.    Wachovia also provided Majapara with check-clearing services.  This service is known in financial terms as Cash Letter Services.  On all checks presented for deposit, Majapara was given immediate book or ledger credit for those deposits, but not immediate use of those funds.  This means that the funds deposited on that day would appear in Majapara's account balance, but Majapara would not be given access to use those funds on the day of deposit.  On the day following the deposit-date Wachovia would provide Majapara with provisional credit equal to 80% of the face amount of the deposited check the next day, with the remaining 20% of the funds being available, upon a provisional credit basis, on the second day after the deposit date.[1]  There was no interest rate charged for the grant of this provisional credit but there would be a fee per check presented for deposit.  The provisional credit was merely a privilege afforded to Majapara that could be granted or suspended at anytime and at Wachovia's sole discretion.

9.    If, however, Majapara wanted same-day use of the deposits, it would be charged an overdraft fee for the use of these funds until Wachovia provided Majapara with provisional credit as described above.  The average total dollar amount of the checks Majapara deposited with Wachovia, on any given day, was $4.2 million.  And to the extent it utilized this overdraft facility, Majapara was charged an Overdraft fee (an interest-rate based calculation).

10.    The intra-day overdraft facility provided to Majapara, as well as all of the other Casas de Cambio (as applicable), was suspended upon delivery of Wachovia's letter on December 5th.  Majapara, however, was given until December 13th to continue sending their Cash Letters to Wachovia and would still receive provisional credit on those deposits – the provisional

---

[1]    Provisional credit is when a bank credits an accountholder's account and makes the deposited check funds available for use by the accountholder prior to the deposited check officially clearing through the check-clearing process.  If, however, the check was ever returned by the bank upon which the check was drawn, the depository bank would reverse the credit to the accountholder's account.

credit on deposited checks was not immediately suspended. My understanding is that Majapara, upon receipt of Wachovia's notification on December 5th, immediately began sending its checks for clearance to Zions Bank, Citibank and others.

## Wire Transfers

11.    Wachovia, within its sole discretion, also provided Majapara with the privilege of, during the course of the day, sending wire transfers out of Majapara's account, subject to certain internal limitations, prior to the funds being available in Majapara's account but subject to the account balancing by the end of the business day. There was no obligation on the side of Wachovia to provide Majapara with this privilege, Majapara was not charged a fee for this internal risk exposure, and the privilege could be granted or suspended at anytime and at Wachovia's sole discretion.

12.    When Wachovia's notification was delivered to Majapara on December 5th, the privilege of wiring funds out of its account before the funds were available in its account was suspended, but Majapara was still able to send wire transfers up to December 27th for the amount of available funds in its account.

## February 2007

13.    Prior to February 2007, Wachovia discovered that Majapara was sending large wire transfers from its Wachovia account to Majapara's Harris Bank account and then returning those funds by the close of business that day. In February 2007, Wachovia met with representatives from Majapara, told them that the wire transfer privileges afforded to it by Wachovia were for legitimate wire transfer business and not to facilitate funding Majapara's Harris Bank account. Wachovia did not demand that Majapara transfer all of its wire transfer business to Wachovia.

4

Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

WACHOVIA BANK, National Association,       :    07 Civ. 11230 (BSJ)(RLE)

          Plaintiff,       :

      - against -       :

CASA DE CAMBIO MAJAPARA S.A. de C.V. a/k/a:
MAJAPARA CASA DE CAMBIO S.A. de C.V.,       :

          Defendant.       :

---------------------------------------------------------X

### DECLARATION OF ANDREW GROSS

Andrew Gross, declares as follows:

1.     I am the Head of Global Foreign Exchange for Wachovia Bank, National Association ("Wachovia"). I am fully familiar with the facts set forth herein, and submit this declaration pursuant to 28 U.S.C. §1746, in opposition to Casa de Cambio Majapara S.A. de C.V. a/k/a Majapara Casa De Cambio S.A. de C.V.'s ("Majapara") instant application to, *inter alia*, vacate the Order of Attachment issued by this Court on December 20, 2007.

### Foreign Exchange Spot Transactions

2.     I have been involved with Foreign Exchange Spot transactions for 23 years and am intimately familiar with how the industry, including Mexican Casas de Cambio, transact business. A Casa de Cambio, like Majapara, has customers with currency needs. A Casa de Cambio will act as an intermediary for a client that is in need of one currency and has Dollars or a second currency to exchange. In this regard, the Casa de Cambio would enter into Foreign

Exchange Spot transactions with a bank, like Wachovia, to fulfill the customer's needs. Those transactions must settle within two business days -- in most cases a settlement beyond two business days is no longer considered a spot transaction and no longer a transaction in which a Casa de Cambio may enter.

3.      If the Casa de Cambio has a client in need of Euros, the client would transfer the U.S. Dollars (it may be other currencies) to the Casa de Cambio. The Casa de Cambio is then supposed to exchange the currency with the bank and then forward on the Euros (or whichever currency was requested) to its client. Indeed, pursuant to Majapara's FX Agreement, Wachovia is under no obligation to transfer the outgoing bought currency until after confirmation of receipt of the incoming sold currency. Wachovia, in its sole discretion, however, may transfer the outgoing bought currency prior to confirmation of receipt of the incoming sold currency. Under those circumstances, Wachovia establishes settlement limits on the volume of transactions in which an entity may engage to manage settlement risk (the amount of bought currency the bank will transfer prior to confirming receipt of the sold currency).

4.      Accordingly, settlement limits address the risk inherent in transactions (like foreign exchange transactions) in which fund transfers are intended to occur on the same day but, due to the logistics of such arrangements, the bank may find it necessary to release funds into the system before it can confirm that it has actually received funds from its counterparty.

5.      Banks that do not wish to incur any settlement-risk exposure settle the transaction by waiting to release the outgoing currency until receipt of the incoming currency's receipt is confirmed from the Casa de Cambio. This requires more effort as the transactions have to be performed manually.

- 2 -

### Majapara

6.      As more fully detailed in the accompanying declaration of Carlos Perez, in December 2007, Wachovia decided to cease providing correspondent banking services to exchange companies outside of the United States.  Majapara was one of the foreign exchange companies notified of this cessation of services. The cessation of services, however, was neither immediate, nor abrupt. Indeed, after December 5, 2007, Majapara could (and, in fact, did) enter into additional foreign exchange spot transactions with Wachovia.

7.      For spot transactions entered into after December 5, 2007, Wachovia would no longer incur any settlement risk and required the incoming sold currency to be confirmed received before Wachovia would transfer the outgoing bought currency.

8.      For the December 5th spot transactions underlying this action, however, Wachovia still exercised its discretion and incurred settlement risk with respect to Majapara: meaning, Wachovia transferred the outgoing bought currency, as per Majapara's instructions, prior to Wachovia confirming receipt of the incoming sold current.  There was nothing different about the settlement of the December 5th spot transactions than all prior transactions.

9.      Consequently, if Majapara had been engaging in proper foreign exchange transactions, there would be no "liquidity" issue due to Wachovia's cessation of services. This is especially true for the transactions Majapara requested on December 5th as those were to proceed in the same manner as every other transaction Majapara had with Wachovia.

10.     Again, there was simply no abrupt termination of any "operating lines" nor could Wachovia's conduct have caused a "liquidity" crisis for a Casa de Cambio that engaged in proper business -- none of the other twelve Mexican Casas de Cambio, nor other 50 entities worldwide were unable to settle foreign exchange spot transactions with Wachovia as a result of Wachovia's cessation of services.

- 3 -

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _11_th day of February, 2008.

Andrew Groes

Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

WACHOVIA BANK, National Association,

               Plaintiff,

      - against -

CASA DE CAMBIO MAJAPARA S.A. de C.V. a/k/a
MAJAPARA CASA DE CAMBIO S.A. de C.V.,

               Defendant.

------------------------------------------------------X

              07 Civ. 11230 (BSJ)(RLE)

## DECLARATION OF CARLOS A. PEREZ

Carlos A. Perez, declares as follows:

1.     I am the Managing Director, Americas Group, Global Financial Institutions &
Trade Services for Wachovia Bank, National Association ("Wachovia"). I am fully familiar with
the facts set forth herein, and submit this declaration pursuant to 28 U.S.C. §1746, in opposition
to Casa de Cambio Majapara S.A. de C.V. a/k/a Majapara Casa De Cambio S.A. de C.V.'s
("Majapara") instant application to, *inter alia*, vacate the Order of Attachment issued by this
Court on December 20, 2007.

### Introduction

2.     As stated in my previous declaration to this Court, this is a case that arises out of
foreign exchange spot transactions wherein Majapara agreed to deliver to Wachovia more than
$38 million (US$) in exchange for Majapara delivering to Wachovia 26 million Euros.
Wachovia transferred the Euros; Majapara, however, did not transfer the U.S. Dollars and then

absconded with Wachovia's Euros. Majapara refused to return the Euros, and then proceeded to come up with differing stories on when, if ever, it would pay Wachovia.

3.    Consequently, Wachovia commenced this action to protect its rights and, in connection with this action, sought an order of attachment seeking to attach assets Wachovia believed Majapara had in New York.   It is my understanding that this Court granted that application and now Majapara seeks to vacate that order by claiming this Court was not provided with all of the relevant facts.

4.    This is simply not true.  Indeed, the purported "factual" picture Majapara attempts to paint in its papers is misleading in certain parts, untrue in others, but, in any event, wholly unsupported by anyone with knowledge of the relevant events.

5.    Moreover, based upon Majapara's conduct in transferring a significant amount of its funds out of Wachovia's reach, including transferring funds out of Majapara's Citibank account in New York in violation of this Court's prohibitions, the order of attachment was well deserved and Wachovia's fear that Majapara would remove funds from Wachovia's reach justified.

### Majapara's Relationship With Wachovia

6.    Majapara had several accounts with Wachovia, as well as engaged in foreign exchange spot transactions with Wachovia.  Foreign exchange spot transactions are to be settled within 48 hours and the settlement of those transactions is to be the exchange of the bought/sold currencies between the parties on the settlement date.  Pursuant to the parties' FX Agreement, Wachovia was under no obligation to transfer the outgoing bought currency until after confirmation of receipt of the incoming sold currency.  It is within Wachovia's sole discretion, however, to transfer the outgoing bought currency prior to confirmation of receipt of the incoming sold currency.  For those transactions, banks, like Wachovia, establish settlement limits

- 2 -

(which establish daily limits on the volume of transactions in which an entity may engage) in order to manage settlement risk (the amount of bought currency the bank will transfer prior to confirming receipt of the sold currency). This is why, in order to set settlement limits and assess settlement risk, Wachovia required Majapara to provide statements regarding Majapara's financial health and well-being. These financial representations are to induce Wachovia to continue to transact business with Majapara.

7.      Accordingly, settlement limits are established by banks to address, among other things, the risk inherent in transactions (like foreign exchange transactions) in which fund transfers are intended to occur on the same day but, due to the logistics of such arrangements and in order to honor its commitments to its customers, the bank may find it necessary to release funds into the system before it can confirm that it has actually received funds from its counterparty.

8.      In this regard, when the sold currency is Euros, a bank usually sends out the bought currency in the morning of the settlement date. Wachovia, again like other banks, may not be able to determine with certainty the receipt of the incoming sold currency until the day after the settlement date. This delay is inherent in the system of electronic transfers and is one of the reasons for the establishment of settlement limits.

9.      The driving reason for this procedure is operational. Wachovia engages in thousands of these transactions on a daily basis and employs an automated reconciliation program to process the confirmations. To reconcile this volume of transactions manually would require an incredible amount of man-hours. Accordingly, each day, the European banks provide Wachovia with a SWIFT 950 (containing data regarding the prior day's transactions) to allow for this automated reconciliation. Again, this delay in confirming an entity's "cover" of its intra-day obligations is considered the settlement risk. There is no charge or fee imposed upon Majapara, or any other foreign exchange customer of the bank, for Wachovia to incur this settlement risk.

- 3 -

There is no applicable interest rate; there is no agreement requiring Wachovia to incur this risk in this respect; this is a discretionary risk to which Wachovia may or may not choose to be exposed on any given transaction.

### December 5th Meeting With Majapara

10.    In December 2007, Wachovia decided to cease providing correspondent banking services to exchange companies outside the United States and went about notifying thirteen Casas de Cambio in Mexico and 50 other entities worldwide about this cessation of services. In this regard, Wachovia prepared a form letter to be delivered to these entities. This form letter listed a number of services that would be ending, but not all services listed in this letter applied to all customers.

11.    Majapara was one of the Casas de Cambio I visited the afternoon of December 5, 2007 to inform it of Wachovia's decision. The letter I provided to Majapara during that meeting, which is substantially in the same form as the letters provided to the other entities notified, is annexed hereto as Exhibit R. And while the December 5th form letter delivered to Majapara references "credit lines," this, again, was a mere form letter and included a laundry list of potential services that could be affected and not a recitation of the services each entity did, in fact, receive.

12.    I visited at least two other Casa de Cambios on December 5th before I visited with Mr. Jorge Ortiz Munoz at the offices of Majapara. During my meeting with Majapara, I gave Mr. Ortiz the letter and explained Wachovia's decision. As more fully detailed in the accompanying declaration of Andrew Gross, the cessation of services described in the December 5th form letter, however, did not cut-off Majapara from doing any further spot transactions with Wachovia, it just meant Wachovia would no longer incur any settlement risk in connection with those spot transactions and would transfer the sold currency only after the bought currency had been confirmed received by Wachovia – as set forth in the parties' FX Agreement.

- 4 -

13.    And, as the accompanying declaration of Andrew Gross explains, the spot transactions Majapara entered into on or before December 5, 2007, were not subject to these new restrictions. There simply was no "abrupt cancellation of operating lines" as Majapara now claims. Indeed, the entire basis of Majapara's business is the international transfer of funds and it is well aware of the mechanics and logistics of such transfers.    So Majapara's mischaracterization, in its motion papers, of the nature of its relationship with Wachovia is all the more difficult to understand.

### December 13 Communications

14.    I have been informed that on December 10, 2007 (the Monday after Majapara defaulted), Wachovia's back office services contacted Majapara regarding the December 5th spot transactions and was told that the missing payment would be arriving shortly. No payment was received.

15.    Thereafter, my department contacted Majapara to demand payment and to get an explanation why Majapara did not pay Wachovia as it was required to do. The morning of Thursday, December 13, 2007, I spoke by telephone with Mr. Ortiz. I asked him what Majapara did with Wachovia's money. As I stated in my prior declaration, Mr. Ortiz acknowledged and admitted that Majapara was obligated on its debt to Wachovia and owed Wachovia for the December 5th spot transactions. Mr. Ortiz then stated that Majapara had received Wachovia's Euros and used them for other purposes because Majapara was experiencing "a liquidity crisis."

16.    This was the first I had heard of this and Mr. Ortiz explained that this liquidity crisis was caused because Majapara had been improperly lending money. I note that Majapara now blames Wachovia for its claimed "liquidity crisis" and apparently claims that it is permissible for it, a Mexican Casa de Cambio, to lend money. Neither of these new claims, however, has merit. First, none of the other twelve Mexican Casas de Cambio or 50 other entities worldwide that received the same December 5th form letter were unable to settle a

foreign exchange spot transaction with Wachovia due to Wachovia's cessation of services. Second, from my reading of the Mexican statute annexed to Majapara's motion papers, nothing in that provision states a Casa de Cambio may lend money: I do not recall any of the financial statements Majapara supplied to Wachovia or Majapara's Mexican regulator's (to the extent they are available to the public) disclosing the existence of any of these "loans."

17.     I then asked Mr. Ortiz when Majapara would repay Wachovia. He said Majapara needed "two months" to collect the loans Majapara made and that, in lieu of payment, he would transfer to Wachovia two-thirds ownership of Majapara.   Mr. Ortiz valued Majapara at $70,000,000 as a going concern to value the shares for such a proposition – this valuation, however, was wholly unsupported and ridiculously high given Majapara's then current financial condition.  I declined this "offer" for several reasons, but primarily because something did not smell right with Majapara's business and its finances (*i.e.* Majapara admitted it was improperly issuing loans; Majapara's sudden and inexplicable dire financial straits, despite having provided Wachovia financial statements indicating it was a sound and financially healthy company).  I simply did not want to get myself or Wachovia involved in whatever Majapara had gotten itself into.  I note that Majapara's motion papers now claim that Majapara was worth $90 million, at the end of 2007, as a going concern.  This statement seems a little disingenuous given Majapara's other "statements" and may explain why no one from Majapara – not even Mr. Rousseau, Majapara's Treasurer who submitted the lone declaration – was able to attest to such a valuation.

18.     I then asked Mr. Ortiz when Majapara would repay Wachovia. He said Majapara needed "two months" to collect the loans Majapara made and that he would provide Wachovia with two-thirds of the shares in Majapara as security in the meantime. But given the fact that it was improper for Majapara to have issued loans in the first place, the fact that Majapara refused to return any of Wachovia's Euros, the fact that Majapara was in such dire financial straits, so suddenly and inexplicably, despite the financial statements Majapara provided to Wachovia, the

- 6 -

fact that Mr. Ortiz's claim of Majapara being worth $70 million as a going concern was completely unsupportable, this delay tactic by Majapara was not acceptable and I told him that.

19.    Regardless, Wachovia then received a letter from Mr. Ortiz, dated December 13, 2007, wherein he confirmed Majapara's liability to Wachovia. But in the short time between when our telephone conversation ended and Mr. Ortiz wrote his letter, Majapara had already backed away from its claim to repay in "two months" and took the new position that it would try to repay sometime in the indefinite future.

20.    The letter then claimed that the purported "liquidity" issue was caused by Wachovia's "abrupt cancellation of operating lines." There is no explanation of the "liquidity" issue in the December 13th letter, nor in Majapara's present motion papers. Moreover, no where in its papers does Majapara explain how this mysterious issue could arise only after December 5th and not before -- other than Majapara's bare unsupported claim that Wachovia caused it. Indeed, if Majapara was experiencing "liquidity" issues after receiving a $38 million windfall by absconding with Wachovia's money, what was its true financial condition prior to receiving this misappropriated windfall?

21.    And, as more fully detailed in the accompanying declaration of Andrew Gross, Wachovia did not abruptly cancel anything. Indeed, Wachovia continued to enter into foreign exchange spot transactions with Majapara after December 5th, but, for those transactions settling after December 7, 2007, Wachovia did not incur any settlement-risk exposure -- meaning, as per the parties' written agreement, the sold currency had to be received by Wachovia before it would transfer out the bought currency.

22.    But what Majapara attempts to have this Court overlook is that the December 5th spot transactions between Wachovia and Majapara were to be settled on December 7, 2007, with Wachovia being exposed to settlement risk. Accordingly, the only difference between the



settlement of the December 5th spot transactions and all prior spot transactions was that Majapara appears not to have intended to pay Wachovia for the December 5th spot transactions.

23.    Finally, Majapara's motion papers intimate that the parties had an agreement that Wachovia was going to allow Majapara an undefined amount of time within which to repay Wachovia.  This is not supported by either the December 5th form letter or the December 13th letter, not true and contrary to my explicit conversation with Mr. Ortiz.

24.    But the bigger questions Majapara never answers are:  Where are the Euros it took?  Where are the US$ that Majapara was supposed to deliver to Wachovia?  Where is the listing of this more than $38 million windfall on the purported "complete" listing of assets Majapara was to provide to Wachovia pursuant to Court orders?

25.    And despite Majapara's attempts to confuse the issues in this action, the basis of this dispute is quite simple.  Majapara, whose business consisted almost entirely of currency exchange and transfer, who routinely exchanged hundreds of millions of dollars a day, who was extensively familiar with the customs, practices, and duties of participants in this daily process, accepted exchange currency from Wachovia, all the while apparently fully aware, prior to the settlement date, that it was not going to pay Wachovia and understanding that Wachovia would send its funds before it discovered what Majapara intended to do.

## Majapara's Account At Wachovia

26.    Majapara also tries to paint a picture that it had been steadily depositing funds into its account at Wachovia after December 11, 2007.  This is not true.  First Majapara makes no claim that it intended funds to be deposited therein nor that it, in fact, was the depositor of those funds.  And, second, two large deposits made into the account on December 11, 2007, appear to have been by mistake because as soon as they hit, Majapara attempted to transfer them

out of the account using electronic means.  And when that did not work, it then called Wachovia and requested immediate transfer of the money out of the account.

### Majapara's Business

27.    On January 29, 2008, a Wachovia employee was dispatched to the offices of Majapara located in Mexico City in order to deliver a document Majapara had requested.  When the messenger arrived, he noticed that furniture was being moved out of the premises and was informed that Majapara was closed.  On the door of Majapara's offices was a notice, written in Spanish (I am fluent in Spanish), that translates as follows:

TO OUR CUSTOMERS

CASA DE CAMBIO MAJAPARA FULLY GUARANTEES YOU THAT IT WILL HONOR THE
OBLIGATIONS THAT IT HAS WITH YOU IN THE BRIEFEST POSSIBLE TIME.

DUE TO FORCE MAJEURE REASONS NOT ATTRIBUTABLE TO THIS CORPORATION, WE ARE
TEMPORARY UNABLE TO PERSONALLY ASSIST YOU WITH RESPECT TO PENDING TRANSACTIONS, THEREFORE IN ORDER TO CONTINUE ASSISTING YOU, PLEASE CONTACT:

PEDRO PATRICIO TORRES MARCO
JOSE VICTOR RODRIGUEZ

TELEPHONES: (55) 55116063 AND 55114346
BUSINESS HOURS: MONDAY TO FRIDAY FROM 9:00 TO 14:00.

A copy of the original notice is annexed hereto as Exhibit S.

**Majapara's Purported Counterclaim**

28.     Majapara also indicates that it will be asserting counterclaims against Wachovia based upon Wachovia's conduct.  While Majapara's papers do not set forth the basis for asserting any counterclaims, based upon the facts under this action, Wachovia denies that any such counterclaims will have any merit.

**Conclusion**

29.     Based upon Majapara's conduct, Wachovia's Order of Attachment is appropriate, should be maintained, and the instant application denied in all respects.

         I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this //th day of February, 2008.

Carlos A. Reyez

- 10 -